UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

**CARMEN OTERO Mc CULLOCH**,

                                Plaintiff,                    **NOTICE OF MOTION**

    -against-

**TOWN OF MILAN, TOWN OF MILAN TOWN BOARD, JOHN V. TALMADGE**, Town Supervisor, and **ALFRED LO BRUTTON, PAULINE COMBE-CLARK, DIANE MAY**, and **ROSS WILLIAMS**, Councilpersons, **TOWN OF MILAN PLANNING BOARD, LAUREN KINGMAN**, Chairman, and Members **JEFFREY ANAGOS, PETER GROSS, SHEILA MARGIOTTA, MARY ANN HOFFMAN,** and **PAULINE COMBE-CLARK, GARY E. BECK**, Zoning Enforcement Officer, Town of Milan, and **FRANK MARGIOTTA, BARBARA HUGHEY,** and **CHARLOTTE NORMAN,**

                                Defendants.

------------------------------------------------------------------------X

       **PLEASE TAKE NOTICE**, that upon the annexed Declaration of Terry Rice, dated October 25, 2007, the summons and complaint herein and upon the prior proceedings heretofore had had herein, a motion will be made to this Court, to be held at the United States District Courthouse, New York, New York, on the 7th day of February, 2008, at 9:30 in the forenoon of that day, or as soon thereafter as counsel can be heard, for an order pursuant to FRCP Rule 12(b)(6), dismissing the complaint herein, together with such other and further relief as to the Court may seem just and proper.

Dated: Suffern, New York
       December 21, 2007

                                                                         Rice & Amon

                                                                         _____

                                                                         By: Terry Rice (TR 1022)
                                                                         Four Executive Boulevard
                                                                         Suite 100
                                                                         Suffern, New York 10901
                                                                         (845) 357-4000

To: Kenneth Mc Culloch
     516 Fifth Avenue, 12th Floor
     New York, New York 10036

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

**CARMEN OTERO Mc CULLOCH**,

                         Plaintiff,                        **DECLARATION**

    -against-

**TOWN OF MILAN, TOWN OF MILAN TOWN BOARD, JOHN V. TALMADGE**, Town Supervisor, and **ALFRED LO BRUTTON, PAULINE COMBE-CLARK, DIANE MAY**, and **ROSS WILLIAMS**, Councilpersons, **TOWN OF MILAN PLANNING BOARD, LAUREN KINGMAN**, Chairman, and Members **JEFFREY ANAGOS, PETER GROSS, SHEILA MARGIOTTA, MARY ANN HOFFMAN,** and **PAULINE COMBE-CLARK, GARY E. BECK**, Zoning Enforcement Officer, Town of Milan, and **FRANK MARGIOTTA, BARBARA HUGHEY,** and **CHARLOTTE NORMAN,**

                         Defendants.

-----------------------------------------------------------------------X

      Terry Rice, an attorney admitted to practice law in the United States District Court for the Southern District of New York, states that the following is true, under penalty of perjury:

      1.  I am a partner in Rice & Amon, attorneys for Defendants (hereinafter collectively referred to as the "Town") in the above-captioned matter and am familiar with the facts, circumstances and prior proceedings herein.  I make this Declaration in support of the Town's motion to dismiss the complaint pursuant to Rule 12(b)(6).

      2.  The instant action was commenced by the filing of a summons and complaint on or about November 5, 2007, a copy of which is annexed hereto as Exhibit "A".

## INTRODUCTION

3. The instant action arises from Ms. Mc Culloch's claimed grievances with respect to the <u>approval</u> of her six lot subdivision in the Town of Milan. Dissatisfied with a conservation easement that was a condition of the subdivision approval and asserting various complaints regarding the implementation of the approval, she has not challenged the condition in an Article 78 proceeding or appealed any of the administrative actions by which she claims to be aggrieved to the Zoning Board of Appeals and/or in an Article 78 proceeding. Instead, she has concocted Constitutional violations and violations of the Fair Housing Act. It is respectfully submitted that the endeavor to federalize routine, run-of-the-mill land use disputes is profoundly deficient and misplaced and that the neglect of state remedies further deprives the Court of jurisdiction. Moreover, it is submitted that for the reasons set forth in the accompanying memorandum of law, the substantive claims also are deficient and fail to state a viable claim as a matter of law.

## THE COMPLAINT

4. The complaint alleges that Ms. Mc Culloch was born in Puerto Rico of of Puero Rican parents (¶ 2).

5. Ms. Mc Culloch alleges that the actions of the Planning Board alleged herein were taken with the approval of the Town Board (¶ 5). It is asserted that Frank Margiotta, Barbara Hughey and Charlotte Norman are volunteers who reside "very near" Ms. Mc Culloch's property (¶ 6).

6. The complaint alleges that the subject property consists of 35.12 acres and presently contains a house and barn (¶ 11) and was purchased by Ms. Mc Culloch on January 9, 2004 with the intent to subdivide the property into six lots (¶ 12). It is further

asserted that the property is located in a R5 zoning district which provides for a minimum lot size of five acres (¶ 13).

7.  Ms. Mc Culloch alleges that the her "authorized representatives" appeared before the Planning Board in September 2003, prior to her purchase of the property, and that the Planning Board "saw no impediment to the proposal (¶ 16). Thereafter, Plaintiff submitted a subdivision application on or about April 21, 2004 (¶ 19) with plans that depicted open space consisting of large areas near the Taconic State Parkway and the interior of the property (¶ 20).

8.  In or about December 15, 2004, Ms. Mc Culloch instituted an Article 78 proceeding to compel the Planning Board to render a decision on the preliminary subdivision application (¶ 23). Pursuant to § 177-35 of the Zoning Law by which the filing of an Article 78 proceeding stays further review of an application, Plaintiff was advised in December 2004 the further proceedings on the application were suspended pending determination of the Article 78 proceeding (¶ 24-25). As a result, Ms. Mc Culloch alleges she withdrew the Article 78 petition (¶ 25).

9.  The petition recites that conditional final subdivision approval was granted on June 29, 2005, subject to a number of conditions, including the provision of a conservation easement affecting 17 acres of the property (¶ 27) which is asserted to encompass 50.4% of the property.

10. Ms. Mc Culloch alleges, "upon information and belief," that Planning Board chairman Kingman visited the subject property on November 4, 2004 and observed trees being cult on the subject property along Willowbrook Road (¶ 29) and that, "upon information and belief," Zoning Enforcement Officer Beck issued a Stop-Work Order to

Ms. Culloch's contractor on November 5, 2004 (¶ 30) and advised Plaintiff's representatives that the Stop Work order had been issued because Plaintiff had violated the conditional final subdivision approval by such cutting of trees (¶ 31).

11. Ms. Mc Culloch alleges "upon information and belief," that the plans presented to the Planning Board or the Planning Board approval did not prohibit the cutting of trees along Willowbrook Road (¶ 32). The complaint alleges that the foregoing treatment of Ms. Mc Culloch was different than that accorded to "local residents." (¶ 33). Plaintiff alleges that the Planning Board previously had "ordered" that she relocate the entrance of on of the two common driveways and that in order to do so, she was required to cut at least 10 trees along Willowtree Road (¶ 33).

12. The complaint alleges that the tree removal was undertaken in order to install utilities for the development and that Zoning Enforcement Officer Beck advised Ms. Mc Culloch's representatives that such plans were required to be approved by the Planning Board and that if the Highway Superintendent trees had to be removed for safety purposes, such tree removal was required to be approved by the Planning Board (¶ 34). Plaintiff alleges "upon information and belief" that such a requirements is illegal and preempted (¶ 35) and "upon information and belief," that no local resident is required to obtain such approvals (¶ 37).

13. The complaint alleges that in order to obtain the removal of the stop work order, Plaintiff agreed to undertake remedial action (¶ 38).

14. Plaintiff further alleges that "in whole or in part" because of such delay, the utility installation was delayed and Plaintiff was required to post a bond instead of completing the work in a more timely manner (¶ 39-40).

15. The complaint states that the final plat was signed by the Planning Board chairman on June 26, 2006 and filed in the County Clerk's office on June 29, 2006 (¶ 41).

16. Plaintiff also alleges that the conservation easement which she signed on June 29, 2006 was different than the one shown to her prior to the June 29, 2005 approval (¶ 42-43).

17. The complaint also asserts that the Town adopted § 220-39(B)(8) of the Zoning Law, entitled "donor donations," subsequent to the June 26, 2005 final subdivision approval and that such provision is illegal (¶ 44-45). The complaint alleges that after Ms. Mc Culloch's representatives told Mr. Kingman told that she would not make such a payment, "upon information and belief," Mr. Kingman and the Planning Board retaliated by requiring an alternative method that would lessen or eliminate the time and expense for the Town to review compliance (¶ 46-48).

18. Plaintiff alleges that she had a potential purchaser of Lot 5 as of September 2007 who wanted to be able to cut trees in the area included within the conservation easement as part of "general maintenance" and for firewood (¶ 49). The complaint asserts that on October 1, 2007 Plaintiff faxed a letter to Mr. Kingman asking for assurances that the owners of lots in the subdivision could do so and that on or about October 5, 2007, the Town Board, Planning Board and Mr. Kingman advised Plaintiff's representatives that no live tree could be cut within the area of the conservation easement unless the owner had a Forest Management Program approved by the Department of Environmental Conservation ("DEC") (¶ 51). DEC informed Plaintiff that the parcel was too small to effectively manage in a Forest Management Plan (¶ 53). Plaintiff contends that such a

condition purportedly imposed by the Town Board, Planning Board and Mr., Kingman is impossible to fulfill and is arbitrary and capricious (¶ 52).

19. The complaint alleges "upon information and belief" that no other property owner who is a local resident is burdened with such a restriction such that tress may not be cut unless a Forest Management Plan is in effect for the property (¶ 56). Plaintiff further alleges "upon information and belief" that there is no reasonable conservation purpose served by such a restriction and that it is contrary to "generally accepted forest management practices." (¶ 56).

20. Plaintiff contends "upon information and belief" that, as a result, she lost a "potential customer" for Lot 5 (¶ 58). She further alleges that such action "when added to Defendants' prior actions" have so burdened Plaintiff's property so as to constitute a taking of more than 50% of Plaintiff's property without compensation or due process (¶ 58-59).

21. Based on the foregoing, the first claim, asserted against the Town, Town Board Planning Board and Frank Margiotta, Barbara Hughey and Charlotte Norman, alleges a violation of the FHA and due process rights.

22. Ms. Mc Culloch alleges that those Defendants have treated her differently and adversely because of her place of residence and her national origin, contending that the Defendants have one standard for local residents and anther for "City People." (¶ 61). Plaintiff further alleges "upon information and belief" that because Defendants do not believe that City People know how to respect the land, they impose unreasonable and arbitrary restrictions on City People (¶ 61). Ms. Mc Culloch further contends that most

City People, like herself and minorities and most residents of the Town are white (¶ 61, 70-73).

23. Plaintiff asserts that it was her intent to sell the building lots in the subdivision and "anticipated that the market for the lots would primarily be New York City (¶ 66-67). The complaint alleges "upon information and belief" that the Defendants intent was "to keep City People compacted together in the City.…" (¶ 68) and that the purported difference in treatment is not rationally related to any legitimate state interest (¶ 69).

24. Ms. Mc Culloch contends that any rules or standards that discriminate against "City People" have a statistically significant adverse impact against minorities and that the Town Board and Planning Board know that by discriminating against New York City residents, they are more than likely discriminating against a minority (¶ 75). Ms. Mc Culloch further asserts that the Town and Planning Board have discriminated against a minority because Plaintiff is a minority (¶ 75).

25. Plaintiff alleges that Mr. and Mrs. Burns ("Burns") were treated differently that Plaintiff ¶ 77-84). As is related above, Plaintiff asserts that she was required to seek approval from the Planning Board for the removal of trees (¶ 77) and that the Planning Board chairman advised Plaintiff's representatives that they could not remove vegetation once and Environmental Assessment Form ("EAF") had been filed (¶ 78). Plaintiff alleges that no such "regulation" exists and that the denial of her request to remove trees was arbitrary and capricious (¶ 79).

26. The complaint asserts that on or about October 7, 2004, Burns objected to the location of one of the proposed access roads on Plaintiff's property and that the Planning Board required Plaintiff to change the location and to remove trees for better sight

distance (¶ 81-82). As a result, Plaintiff alleges that there is one standard for her and another when a local resident is affected (¶ 84).

27. Plaintiff next contends that Paul Hughes, a long-time resident of the Town, received different treatment than her (¶ 85-92). Plaintiff essentially contends that the Hughes property, located across from the Plaintiff's property consisted mostly of wetlands- that he received a zone change from residential to a commercial designation in order to build a storage, warehouse-type facility (¶ 86); that Mr. Kingman and the Highway Superintendent knew that Hughes had illegally filled wetlands on the property (¶ 88) and that Mr. Kingman and the Planning Board required Plaintiff to make "major changes" in her plans so as not to interfere with Hughes' allegedly illegal actions (¶ 88-89).

28. Plaintiff further contends that when Plaintiff's representative complained to Mr. Kingman, he responded that Hughes was an old-times and they could not do anything about what he wants to do." (¶ 91). The complaint asserts that when Hughes applied for site plan approval for the property, the Planning Board did not impose any "environmental restraints" or require him to remedy the alleged illegal filling (¶ 92).

29. Plaintiff next contends that a member of the pubic stated at one of the public hearings on her subdivision application that "City People" don't know how to treat the land (¶ 95) and that Frank Margiotta, Barbara Hughey or Charlotte Norman complained to one of Plaintiff's agents that "City People" don't know how to respect the land (¶ 96).

30. Ms. Mc Culloch next contends that local residents Borenstein, Carreola and Savoury were treated differently that her in the processing of various land use applications over an unspecified period of time (¶ 97-136). The allegations relate to the

processing of her subdivision application which culminated in the final approval on September 29, 2005. The complaint alleges that the treatment was a result of Plaintiff being "from the City" (¶ 127) and the contention that the Town volunteers viewed people from the City as being irresponsible (¶ 127). Ms. Mc Culloch asserts that the volunteers intentionally made false statements (¶ 130-31).

31. Ms. Mc Culloch contends that the actions of the volunteers caused Plaintiff to incur at least $30,000 in additional costs to retain experts to refute claims made by them, to change plans and for other costs (¶ 135). The complaint alleges "upon information and belief," that the actions of the volunteers were motivated in whole or in part "by the fact that Plaintiff was a City Person, and not a local resident." (¶ 135).

32. As a result, Ms. Mc Culloch asserts that she is entitled to recover:

- At least $150,000 because of extra costs and expenses incurred by her as a consequence of the "difference in treatment" accorded here in violation of the FHA;

- An additional sum of money "of another $150,000" because of delays caused by the Defendants' actions, reduction in the value of her lots be reason of the "difference in treatment pursuant to the FHA;

- Punitive damages in the sum of $150,000;

- Attorneys fees pursuant to the FHA;

- A declaratory judgment that the conservation easement constitutes a taking and ordering compensation for the taking;

- A declaratory judgment that the conservation easement does not prohibit Ms. Mc Culloch or her successors "from cutting trees or removing brush, for firewood, in accordance with generally accepted conservation practices;"

- Enjoining Defendants from taking "any adverse action" against Ms. Mc Culloch or her successors for cutting trees or brush in accordance with generally accepted conservation practices;

- A declaratory judgment that the actions of Mr. Kingman, the Planning Board and the Code Enforcement Officer in issuing a stop work order in November 2005 was in retaliation for refusing to provide a "donation" to the Town and an award of damages of at least $50,000 and punitive damages "in the maount of another $150,000." (p. 32-33).

33. The second claim asserted against the Town, Town Board and Planning Board asserts that the actions of the Defendant constitute a taking or exaction; for a declaratory judgment that the conservation easement is null and void and for "injunctive relief to undo the taking without compensation and due process."

34. Ms. Mc Culloch asserts that the Planning Board "has imposed exactions on Plaintiff as a condition for granting subdivision approval;" that the exactions have "gone too far;" have substantially interfered with the reasonable investment backed expectations of Ms. Mc Culloch and do not substantially advance legitimate state interests (¶ 141). She further alleges that there is "no essential nexus" and "no proportionality" between what Defendants have required of Ms. Mc Culloch and the "public interest." (¶ 142). Ms. Mc Culloch asserts that the property is not environmentally sensitive (¶ 143-145), that the Planning Board "manufactured specious issues" to inhibit or prevent the subdivision

"solely because Plaintiff is from New York City, what the locals call one of the 'City people.'" (¶ 147). She claims that no one paid any attention to the property until she attempted to subdivide it (¶ 151).

35. She claims that the town and Planning Board have effectively precluded Plaintiff and her successors from use of the conservation easement areas (¶ 154). Lastly, Ms. Mc Culloch quotes EDPL § 101 are relates that it is the exclusive procedure by which property may be acquired by eminent domain in New York (¶ 155) and contends that the Town and Planning Board have effectuated a taking of her property without complying with the EDPL (¶ 156).

36. As a result of those allegations, Ms. Mc Culloch seeks as relief in the second claim:

- A declaration that the imposition of the conservation easement as a condition of the subdivision approval and its subsequent interpretation prohibiting the cutting of trees and brush has effectuated a taking or exaction:

- A declaration that the Town and Planning Board violated Plaintiff's rights by not providing compensation for the taking or exaction;

- A declaration that the conservation easement is null and void or, in the alternative, order that the Town or Planning Board "undertake appropriate steps for setting compensation due to Plaintiff for the taking of her Property;"

- Enjoining the Town and Planning Board from enforcing the conservation easement unless they follow the procedures set forth in the EDPL;

- Awarding other unspecified relief to place Plaintiff in the same position if the Town and Planning Board had not engaged in "the illegal actions;"

- An award of attorneys fees (p. 36-37).

37. The third claim asserted against the Town, Town Board and Planning Board seeks to assert claims pursuant to the equal protection clauses of the U.S. and New York State Constitutions and 42 U.S.C. § 1983.

38. The complaint asserts that Defendants have acted in one respect to Plaintiff and another way with respect to local residents (¶ 159). It is alleged that the distinction is arbitrary and capricious (¶ 159) and, "upon information and belief," is based on the presumption of the Town Board and Planning Board that City People don't know how to deal with nature and that, as a result, requirements most be imposed "down to the finest, most minute detail" such as prohibiting the cutting of threes on Plaintiff's property (¶ 160).

39. As a result of those allegations, Ms. Mc Culloch seeks as relief in the second claim:

40. As a result of those allegations, Ms. Mc Culloch seeks as relief in the second claim:

- A declaration that the conservation easement and the interpretation prohibiting the cutting of trees is arbitrary and capricious and serves no valid governmental purpose;

- A declaration that the conservation easement imposed as a condition of subdivision approval is null and void;

- An injunction restraining the Town from enforcing the conservation easement

- Such additional relief as would make place Plaintiff in the position she would have been in had the Town and Planning Board not "engaged in illegal actions;"

- Attorneys fees (p. 38-39).

41. The fourth claim alleging a claim for intentional interference with contract and intentional interference with prospective economic advantage is asserted against Frank Margiotta, Barbara Hughey and Charlotte Norman. The complaint asserts that "[t]he subdivision proceedings before the Town Board and MPB and Plaintiff lead to a contract. The contract is embodied in the Subdivision Plats.…" (¶ 162).

42. As a result of those allegations, Ms. Mc Culloch seeks as relief in the second claim:

- A declaration that the statements made by Defendants Margiotta, Hughey and Norman were false and known to be false when made;

- Damages in the sum of $50,000 or higher;

- Compensatory damages in the sum of $50,000 or higher;

- Punitive damages of "at least $100,000 (p. 39-40).

43. The fifth claim seeks a declaration that the conservation easement does not bar Ms. Mc Culloch or her successors from cutting trees within the conservation easement even if used for firewood (¶ 164-66).

44. The sixth claim seeks a declaration that the conservation easement is null and void. Ms. Mc Culloch alleges that she was "forced" to accept the conservation easement in whatever form as a condition of subdivision approval (¶ 168). She alleges that the conservation easement provides that its purpose was to protect and preserve open space

and forested character of the easement area pursuant to the values identified in the Town master plan (¶ 169), but that "upon information and belief," the Town did not have a valid Master Plan at that date (¶ 170).

## THE CONSERVATION AGREEMENT

45. Ms. Mc Culloch's purported grievances relate in large part to the conservation easement agreement entered into between her and the Town. A copy of the executed conservation is annexed hereto as Exhibit "B".[1] Among the provisions of the operative portion of the easement are the following:

- The purpose of the easement is "to protect the natural forested and open space conditions of the easement." (¶ 1).

- Pursuant to paragraph 2 of the easement, the following rights were convened to the Town (grantee):

    o "To preserve and protect the open space and forested character of the Easement Area pursuant to the values identified in the Town's master plan." (¶ 2(A)).

    o "In accordance with ECL 49-0305(6), to enter upon the easement area at reasonable times in order to inspect the Easement Area, gaining access through Lots 1, 2, 3, 4, 5, and 6, to monitor Grantor's compliance with and otherwise assure compliance with the terms of this Easement, it being anticipated that the easement may be inspected

---

[1] Documents referred to in a complaint may properly be referred to in a 12(b)(6) motion. *See Pryor v. National Collegiate Athletic Assoc.*,288 F.3d 548, 560 (3d Cir. 2002); *Koppell v. 4987 Corp.*, 167 F.3d 125, 127 (2 Cir. 1999); *Cortez Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46-48 (2 Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *Thomas v. Westchester County Health Care Corp.*, 2002 WL 31641472 (S.D.N.Y. 2002); *Manhattan Telecommunications Corp., Inc. v. Dialamerica Marketing, Inc.*, 156 F.Supp.2d 376 (S.D.N.Y. 2001); *The Jordan (Bermuda) Investment Co., Ltd v. Hunter Green Investments, Ltd.*, 154 F.Supp.2d 682 (S.D.N.Y. 2001).

once per year, provided that such entry shall be upon prior reasonable notice to Grantor, and Grantor shall not unreasonably interfere with Grantor's use and quiet enjoyment of the the Easement Area." (¶ 2(B)).

- Paragraph 3, "prohibited uses," provides that the following are among the uses and activities are prohibited:

    o "No structures shall be placed on land within the Easement area." (¶ 3(B)).

    o "There shall be no alteration of natural wetland areas." (¶ 3(C)).

- Paragraph 4, "reserved rights," provides that:

    Grantor reserves to herself, and to her successors and assigns, all rights accruing from ownership of the Property, including the right to sell, transfer, lease, mortgage or otherwise encumber the Property, subject to this easement; the right to engage in, or permit others to engage in, all uses of the Property that are not expressly prohibited herein and are not inconsistent with the purpose of the Easement; and including the <u>unqualified right to exclude others from the land</u> by all lawful means. All rights, interests, and privileges of the Grantor in the Easement Area not specifically donated, granted, transferred and conveyed herein shall remain with the Grantor, her heirs, successors and assigns. (emphasis added).

- Paragraph further excepts and reserves form the easement:

    A. Horticulture and managed forest land, equestrian, passive recreation and open space uses. This shall include, without limitation, passive recreational use such as private trail walking, nature viewing and similar activities.

    B. General maintenance of property, including pruning, cutting, planting, landscaping, and clearing of trees and other vegetative materials in accordance with generally accepted forest management practices.

- Paragraph 5 contains enforcement provisions.

- Paragraph 6, "access," provides that "No right of general access to any portion of the Easement Area is conveyed by this Easement."

- Paragraph 14(D) provides that "This Agreement constitutes the entire agreement of the parties as to the subject matter hereof, supersedes all prior understandings (whether written or oral).…"

- Paragraph 14(F) provides that "The parties understand that Supreme Court, Dutchess County, New York, shall have exclusive jurisdiction of any disputes arising therefrom and that all disputes shall be tr4ied before the Court without a jury."

### COMPLAINT FAILS TO STATE ANY VIABLE CLAIM

46. As is related at length in the accompanying memorandum of law, it is respectfully submitted that the complaint fails to state any viable claim because:

- Plaintiff's claims are not ripe because she has failed to obtain a "Final Decision" from the Town.

- Plaintiff's Taking claim is not ripe for the additional reason that she has not sought compensation through available state court procedures.

- The Court lacks jurisdiction over Plaintiff's endeavor to seek an interpretation of the conservation easement because the agreement specifically provides it is to be interpreted by New York Supreme Court.

- The Fair Housing Act claims are barred by the applicable two-year statute of limitations.

- The complaint fails to state a claim pursuant to the Fair Housing Act because the "City People" are not among the groups protected by the FHA.

- The complaint fails to state a claim pursuant to the Fair Housing Act because Town approved the subdivision and did not make a dwelling unavailable – Plaintiff is not aggrieved by any action of the Defendants.

- The complaint fails to state a disparate treatment claim pursuant to the Fair Housing Act.

- The complaint fails to state a disparate impact claim pursuant to the Fair Housing Act.

- Plaintiff's assertion of taking and equal protection claims precludes a substantive due process claim.

- The complaint fails to state a substantive due process claim because the allegations of the complaint fail to satisfy the "shocks the conscience" standard as a matter of law.

- The complaint fails to state a substantive due process claim because of the availability of state administrative and judicial proceedings to review her grievances.

- The complaint fails to state a procedural due process claim because of the availability of adequate state administrative and judicial proceedings.

- No taking claim exists as a matter of law because Plaintiff has not been denied of all use of her property.

- No taking claim exists as a matter of law because the conservation easement condition is not an "exaction."

- The claims against the individual Defendants are barred by the *Knorr-Pennington* doctrine.

- The individual Defendants are entitled to qualified immunity.

- The failure to allege or serve a proper and timely notice of claim bars the state law claims.

- The complaint fails to state a claim for tortous interference with contract/prospective economic advantage as a matter of law.

47. Additionally, although it is uncertain as to whether certain individuals named in the caption of the action are intended to be sued in their personal capacities, it is clear that the complaint is devoid of any allegations of culpable conduct on the part of: the Town Board which had no jurisdiction or role in the matter; the members of the Town Board; the Zoning Enforcement Officer. Additionally, the complaint is devoid of allegations of culpable conduct on the part of the members of the Planning Board. As a result, it is submitted that the Town Board, Supervisor and Councilpersons, members of the Planning Board and Zoning Enforcement Officer should be dismissed from the action as a consequence of the lack of any allegations of culpable conduct with respect to them.

48. Declarant respectfully submits that the complaint should be dismissed in its entirety.

Dated: Suffern, New York
      December 21, 2007

/s/_____
Terry Rice (TR 1022)