## PRELIMINARY STATEMENT

Ms. Mc Cullogh has endeavored to convert a run-of-the-mill land use application and the usual concomitant disputes that accompany such local matters into a federal civil rights action. As is related herein, it is respectfully submitted that no legal or factual basis exists for such claims as a matter of law and that the complaint profoundly fails to state any viable claim as a matter of law.

## POINT I
## PLAINTIFF'S CLAIMS ARE NOT RIPE
### A. Introduction

In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 194-96 (1985), the Supreme Court established two requirements for a federal regulatory-takings claim to be ripe. First, a plaintiff must demonstrate that the municipality has come to a "final" decision as to the application of the zoning regulation to the property, allowing the federal courts to assess how much use of the property is allowed ("prong-one ripeness"). *Id.* at 186-91. As is related below, prong one-ripeness applies to takings, due process, equal protection and FHA claims.

Secondly, a plaintiff asserting a Fifth Amendment taking claim must first "seek compensation through the procedures the State has provided for doing so" prior to invoking federal jurisdiction ("prong-two ripeness"). *Id.* at 194.

Because Plaintiff's claims are not ripe pursuant to either prong, it is respectfully submitted that jurisdiction is lacking herein and the complaint must be dismissed.

### B. Final Decision Requirement (Prong-One Ripeness)– All Claims

An as applied challenge to municipal actions is not ripe unless the governmental entity charged with enforcing the regulations has "reached a final decision regarding the

application of the regulations to the property at issue." *Id.* at 186. Consistent with the final decision requirement, a property owner must seek whatever administrative relief would permit the proposed development of one's property or address one's grievances. *See Williamson*, 473 U.S. at 186; *Carson Harbor Village, Ltd. v. City of Carson*, 37 F.3d 468 (9th Cir. 1994). "The meaningful application requirement … mandates that the claimants pursue the application thoroughly and not abandon it at an early stage." *Southern Pacific Transportation Co. v. City of Los Angeles*, 922 F.2d 498, 503 (9th Cir. 1990), *cert. denied* 502 U.S 943 (1991).

The final decision requirement applies to due process, taking, equal protection and FHA claims. *See Southview Associates v. Bongartz*, 980 F.2d 84, 97-98 (2d Cir. 1992), *cert. denied*, 507 U.S. 987 (1993); *Sameric Corporation Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 597 (3d Cir. 1998); *Del Monte Dunes at Montery, Ltd. v. City of Montery*, 920 F.2d 1496, 1507 (9th Cir. 1990); *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1456 (9th Cir.), *as amended*, 830 F.2d 968 (1987), *cert. denied*, 484 U.S. 1043 (1988); *Dougherty v. Town of New Hempstead Board of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002); *Norco Construction, Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir. 1986); *Murphy v. New Milford Zoning Commission*, 402 F.3d 342, 349 (2d Cir. 2005); *Unity Ventures v. Lake County*, 841 F.2d 770, 775 (7th Cir.), *cert. denied*, 488 U.S 891 (1988); *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F.Supp.2d 142, 149 (E.D.N.Y. 2006); *Marathon Outdoor, LLC v. Vesconti*, 107 F.Supp.2d 355, 362 n. 10 (S.D.N.Y. 2000); *Aki Family Limited Partnership v. City of San Marcos*, 2007 WL 628044 (S.D.Cal. 2007); *Woodfield Equities, LLC v. Village of Patchogue*, 357 F.Supp.2d 622 (E.D.N.Y.), *aff'd*, 156 Fed.Appx. 389 (2d Cir. 2005); *Tsombanidis v. City of West Haven*, 129 F.Supp.2d 136 (D.Conn. 2001);

*Marriott Senior Living Services, Inc. v. Springfield Township*, 78 F.Supp.2d 376 (E.D.Pa. 1999); *Oxford House-C v. City of St. Louis*, 77 F.3d 249 (8th Cir.), *cert. denied*, 519 U.S. 816 (1996); *Oxford House, Inc. v. City of Virginia Beach*, 825 F.Supp. 1251, 1260 (E.D.Va. 1993); *Oxford House-A v. City of University City*, 87 F.3d 1022, 1024 (8th Cir. 1996).

Plaintiff complaints that a stop work order was improperly issued to her and that her representatives were informed that Planning Board approval was required to remove additional trees, but failed to appeal the issuance of the administrative order, the necessity for the requirement or any other administrative action by which she claims to be aggrieved to the Zoning Board of Appeals.[1] Town Law § 267-a(5)(b) provides that a zoning board of appeals is authorized to hear appeals from "any order, requirement, decision, interpretation, or determination of the administrative official charged, by filing with such administrative official and with the board of appeals a notice of appeal, specifying the grounds thereof and the relief sought." Obviously, a stop work order is among the appealable determinations of a Building Inspector or Code Enforcement Officer. *See, e.g.*, *Korbel v. Zoning Board of Appeals of the Town of Horicon*, 28 A.D.3d 888, 814 N.Y.S.2d 301 (3d Dept. 2006); *Miller v. Price*, 267 A.D.2d 363, 700 N.Y.S.2d 209 (2d Dept. 1999); *Estate of Kadin v. Bennett*, 163 A.D.2d 308, 557 N.Y.S.2d 441 (2d Dept. 1990), *lv. denied,* 77 N.Y.2d 801, 566 N.Y.S.2d 586, 567 N.E.2d 980 (1991). In entertaining such an appeal, a zoning board is accorded broad authority. Pursuant to Town Law § 267-b(1), a zoning board of appeals:

> may reverse, or affirm, wholly or partly, or may modify the order, requirement, decision, interpretation or determination appealed from and shall make such order, requirement, decision, interpretation, or

---

[1] It should be noted, in any event, that a stop work order is not an interruption of constitutional consequence. *See Gottlieb v. Village of Irvington*, 69 F.Supp.2d 553, 556 (S.D.N.Y. 1999).

determination as in its opinion ought to have been made in the matter by the administrative official charged with enforcement of such ordinance or local law and to that end shall have all the powers of the administrative official from whose order, requirement, decision, interpretation or determination is taken.

"Bypassing the Zoning Board of Appeals and its hearing processes, which were statutorily designed for exploration and development of these sorts of issues, leaves the [Plaintiff's] alleged injuries ill-defined." *Murhpy*, 402 F.3d at 352. As a result, until the "appeal process is exhausted and a final, definitive decision from the local zoning authorities is rendered, this dispute remains a matter of unique local import over which we lack jurisdiction." *Id*. at 354.

As a result, it is respectfully submitted that Plaintiff's claims are not ripe as a matter of law.

### C.  Prong-Two Ripeness – Taking Claim

A taking claim is not ripe and cannot be stated unless plaintiff has sought compensation through state court procedures *See Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 194 (1985); *Sinaloa Lake Owner's Assoc. v. City of Simi City*, 882 F.2d 1398, 1402 (9th Cir. 1980), *cert. denied*, 494 U.S. 1016 (1990); *Samaad v. City of Dallas*, 940 F.2d 925 (5th Cir 1991); *Citizens Accord, Inc. v. Town of Rochester*, 2000 WL 504132 at 10 (N.D.N.Y. 2000), *aff'd* , 29 Fed.Appx. 767 (2d Cir. 2002). The State of New York provides a judicial mechanism for awarding compensation through the state courts in instances of a taking. *See Sag Harbor Port Assocs. v. Village of Sag Harbor*, 21 F.Supp.2d 179, 186 (E.D.N.Y. 1998), *aff'd*, 182 F.3d 901 (2d Cir 1999); *Frooks v. Town of Cortland*, 997 F.Supp. 438, 452 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999); *Citizens Accord, supra,* at 10; *Dockendorf v. City of Saratoga*, 184 A.D.2d 851, 584

N.Y.S.2d 216 (3d Dept. 1992), *lv. denied*, 81 N.Y.2d 818, 595 N.Y.S.2d 390, 611 N.E.2d

291 (1993); *Estabrook Construction Corp. v. Armstrong*, 205 A.D.2d 971, 613 N.Y.S.2d 776

(3d Dept. 1993); *see also De St. Aubin v. Flacke*, 68 N.Y.2d 66, 505 N.Y.S.2d 859, 496

N.E.2d 879 (1986); *Tilles Investment Company v. Town of Huntington*, 137 A.D.2d 118, 528

N.Y.S.2d 386 (2d Dept 1988), *aff'd*, 74 N.Y.2d 885, 547 N.Y.S.2d 835, 547 N.E.2d 90

(1989).

The complaint does not allege, as it must, that Plaintiff sought compensation through

a state court proceeding and, in fact, she did not. As a result, the taking claim is not ripe as a

matter of law.

### D. Easement Interpretation

Ms. Mc Culloch's pervasive complaints regarding the interpretation of the

conservation in the context of this action also are premature and unripe. Paragraph 14(F) of

the conservation easement provides that "The parties understand that Supreme Court,

Dutchess County, New York, shall have exclusive jurisdiction of any disputes arising

therefrom and that all disputes shall be tried before the Court without a jury." Plaintiff has

not sought an interpretation of the easement in such an action and, as a result, the issue is not

properly before this Court and the Court lacks the jurisdiction to review the issue.

### E. Conclusion

Because Plaintiff failed to appeal any of the determinations of the Code

Enforcement Officer by which she claims to be aggrieved and neglected to seek

compensation for the claimed taking in state court, the claims are premature and, it is

submitted, must be dismissed. Additionally, as a consequence of Plaintiff's failure to seek

an interpretation of the meaning of the terms of the easement in an action in State

Supreme Court in accordance with the terms of the agreement, the issues related to

interpretation thereof also are not within the Court's jurisdiction.

## POINT II
## FAIR HOUSING ACT CLAIMS BARRED
## BY STATUTE OF LIMITATIONS

The FHA provides for a two-year statute of limitations. *See* 42 U.S.C. §

3613(a)(1)(A). Many of the allegations of the complaint are barred by the applicable

statute of limitations.

The Planning Board granted conditional final subdivision approval to Plaintiff on

June 29, 2005 (¶ 27). The instant action was filed more than two years thereafter, on

November 5, 2007. Consequently, Plaintiff's complaint pursuant to the FHA regarding

the subdivision review process and conditions of approval are barred by the statute of

limitations. Indeed, most of the allegations of the complaint relate to events that

transpired more than two years prior to the commencement of the instant action and, as a

result, are barred.

## POINT III
## CHALLENGE TO SUBDIVSION CONDITIONS
## BARRED BY STATUTE OF LIMITATIONS

Town Law § 282 provides that one aggrieved by "any decision of the planning

board" may seek review of the same in an Article 78 proceeding commenced within 30

days after the filing of the decision. That provision and statute of limitations also applies

to the review of conditions by which one claims to be aggrieved. *See Long Island Pine*

*Barrens Soc., Inc. v. Planning Board of the Town of Brookhaven*, 78 N.Y.2d 608, 578

N.Y.S.2d 466, 585 N.E.2d 778 (1991); *Innovative Technology Group Corp. v. Planning*

*Bd. of Town of Woodbury*, 20 A.D.3d 531, 799 N.Y.S.2d 544 (2d Dept. 2005). Indeed,

those decisions conclude that one must challenge a condition by which they claim to be aggrieved as early as the time of preliminary subdivision approval.

As a result, any challenge to the propriety of the conditions of approval, adopted on June 29, 2005, is long-barred by the statute of limitations.

**POINT IV**
**THE COMPLAINT FAILS TO STATE A CAUSE OF**
**ACTION PURSUANT TO THE FAIR HOUSING ACT**
**A. Introduction**

A violation of the FHA may be asserted based upon intentional discrimination (disparate treatment) or discriminatory effect (disparate impact). *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995). Plaintiff attempts to assert both. As is related herein, it is respectfully submitted that the complaint fails to allege a viable claim pursuant to either theory.

**B. "City People" Not Covered by FHA**

The FHA, 42 U.S.C. § 3604(a), makes it unlawful to make a dwelling unavailable to any person because of "race, color, religion, sex, familial status, or national origin." Plaintiff's FHA claims are principally premised on the purported ill-will against "City People." Pursuant to the terms of the statute, such is not a protected class of people and to the extent that the FHA claims are based on that status, no cognizable FHA claim is stated as a matter of law.

### C. The Town Did Not Make a Dwelling
### Unavailable/Plaintiff Not Aggrieved

42 U.S.C. § 3604(a) makes it unlawful "to make unavailable or deny" a dwelling.

42 U.S.C. § 3613(a)(1)(A) authorizes the institution of a civil action only by an

"aggrieved person." As the complaint confirms, the Planning Board approved Plaintiff's

subdivision application for the number of lots she desired. Plaintiff complains about the

conditions of approval and certain actions of the Town in the implementation of the

approval. However, the Town has not denied or made a dwelling unavailable in any

respect and she is not aggrieved within the purview of the FHA.

Similarly, Plaintiff's complaints regarding the extent and perimeters of open

space required as a condition of the subdivision approval also are not cognizable pursuant

to the FHA. Indeed, "[n]othing in the text or legislative history of the Fair Housing Act

suggests that Congress intended to regulate and thereby subject to judicial review, a

municipality's zoning ordinances which, *inter alia*, seek to provide for open space … and

to control residential growth in a non-discriminatory manner." *Eastampton Center, L.L.C.*

*v. Township of Eastampton*, 155 F.Supp.2d 102, 121 (D.N.J. 2001).

Consequently, it is respectfully submitted that Plaintiff has not state a claim

pursuant to the FHA as a matter of law.

### D. Disparate Treatment

The Second Circuit analyzes claims of discrimination under the ADA and FHA

pursuant to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting

analysis. *See Regional Economic Community Action Program, Inc. v. City of Middletown*,

294 F.3d 35, 48 (2d Cir. 2002 The Second Circuit analyzes claims of discrimination

under the ADA and FHA pursuant to the *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973), burden-shifting analysis. *See Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002), *cert. denied*, 123 S.Ct. 74 (2002). Pursuant thereto, a plaintiff must establish a prima facie case of discrimination pursuant to the FHA and ADA by alleging facts to substantiate that animus against the protected group significantly motivated the position taken by the municipal decision-makers. *See id.* (*citing LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995)). If a plaintiff establishes a prima facie case, the burden shifts to the defendants to provide a legitimate, nondiscriminatory reason for their decision. *See id.* If the defendants offer such a basis, plaintiff must demonstrate that the reason a pretest. *See Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997).), *cert. denied*, 123 S.Ct. 74 (2002). Pursuant thereto, a plaintiff must establish a prima facie case of discrimination pursuant to the FHA and ADA by alleging facts to substantiate that animus against the protected group significantly motivated the position taken by the municipal decision-makers. *See id.* (*citing LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995)). If a plaintiff establishes a prima facie case, the burden shifts to the defendants to provide a legitimate, nondiscriminatory reason for their decision. *See id.* If the defendants offer such a basis, plaintiff must demonstrate that the reason a pretest. *See Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997).

To establish a *prima facie* case of discrimination a plaintiff must demonstrate that animus against a protected group was a "significant" or "motivating" factor in the decision made. *See Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir.), *cert. denied*, 537 U.S. 813 (2002); *LeBlanc-Sternberg*, 67 F.3d at 425; *Palmieri v. Town of Babylon*, 2006 WL 1155162 at 14

(E.D.N.Y. 2006); *see also  Village of Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252, 270 (1977); *Smith & Lee Associates, Inc. v. City of Taylor*, 102 F.3d 781, 790 (6th Cir. 1996). In addition, "[a] disparate treatment claim requires proof of 'differential treatment of similarly situated persons or groups.'" *Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007) (*quoting Bangerter v. Orem City Corp*., 46 F.3d 1491, 1501 (10th Cir. 1995). Of course, the discrimination must be intentional. *See Tsombanidis v. West Haven Fire Dept*., 352 F.3d 565, 573 (2d Cir. 2003). The complaint is devoid of any allegations to demonstrate that purported cognizable animus was a motivating factor in the challenged actions or that Plaintiff was the victim of intentional discrimination. Additionally, the allegations do not provide any basis to claim that the other applications referred to therein were similarly situated to Plaintiff's in all relevant respects.

Although the complaint alleges that Ms. Mc Culloch was born in Puerto Rico of Puerto Rican parents, it does not allege that that she was discriminated against on the basis of her race.

In order to assert a prima facie case of discrimination, the plaintiff must demonstrate that the defendant were "aware that the plaintiff belonged to a protected class. To suggest otherwise would allow rejected applicants to subsequently introduce evidence of their race, color, religion, sex, familial status, or national origin-which was not known or considered during the decision-making process-to prove that the adverse decision was made because of that applicant's race, color, religion, sex, familial status, or national origin. Such a flawed process would yield irrational results." *Tufano v. One*

*Toms Point Lane Corp.*, 64 F.Supp.2d 119, 127 (E.D.N.Y. 1999), *aff'd*, 229 F.3d 1136 (2d Cir. 2000); *see also Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir.1985)

In *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994), the Second Circuit Court affirmed the dismissal of a racial discrimination claim because the plaintiff failed to allege specific events which would support a finding of discriminatory intent. The Court observed that "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *See also Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978); *Smith v. United Federation of Teachers*, 162 F.3d 1148 (2d Cir.), *cert. denied*, 525 U.S. 883 (1998) (conclusory statements that he is black and all of the individuals who discriminated against him are white is "insufficient to give rise to a plausible inference of discrimination").

"To discriminate because of race necessarily requires knowledge or belief on the wrongdoer's part that the victim is a minority." *Tufano*, 64 F.Supp.2d at 127. Similarly, in the absence of a demonstration that one was discriminated against as a consequence of membership in one of the six groups protected by the FHA, "there is no discriminatory nexus.…" *Id.* at 126. According to the complaint, Ms. Mc Cullogh's application was processed by Mr. Mc Cullogh and other "representatives." The complaint is devoid of any of any factual allegations that the Defendants knew of Ms. Mc Cullogh's heritage, discriminated against her because of her race or that any nexus existed between her race and the actions alleged. As such, no claim is stated of based upon Ms. Mc Cullogh's race as a matter of law.

With respect to the general claims of discrimination, "[d]iscriminatory intent may be inferred from the totality of the circumstances, including ... the historical background of the decision ...; the specific sequence of events leading up to the challenged decision ...; [and] contemporary statements by members of the decisionmaking body ...." *Regional Economic Community Action Program*, 294 F.3d at 49 (*quoting LeBlanc-Sternberg*, 67 F.3d at 425).

The totality of the circumstances, historical background and sequence of events reflect a run-of-the-mill land use application which was <u>approved</u> with relevant conditions and with some disagreements regarding implementation of the approved plat. No basis exists to infer any form of cognizable discriminatory treatment. Moreover, the complaint is devoid of any relevant discriminatory action or remarks by the reviewing or implementing agencies or officials. In fact, the only statements alleged to support Plaintiff's disparate treatment claim are the purported statements of one member of the public[2] and one unidentified "volunteer" to the effect that "City People" do not know how to care for the land. Such claimed statements provide no basis to support Plaintiff's claim of intentional racial discrimination. *See Hallmark Developers, Inc. v. Fulton County*, 466 F.3d 1276, 1284 (11th Cir. 2006).

As a result, it is respectfully submitted that the allegations of the complaint fail to state a disparate treatment claim as a matter of law.

---

[2] To the extent Plaintiff implies that the Planning Board may have been influenced by the purported comment of one member of the public, such an assertion is not cognizable or evidence of an improper motive on the part of the Planning Board. *See Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 685 (3d Cir. 1991), *cert. denied*, 503 U.S. 984 (1992); *Mikels Motors, Inc. v. Township of Stroud*, 48 Fed.Appx. 844, 846 (3d Cir. 2002); *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 501 (2d Cir 2001); *Bryant Woods Inn, Inc. v. Howard County*, 911 F.Supp.2d 918, 930 (D.My 1996), *aff'd*, 124 F.3d 597 (4th Cir. 1997).

### E.  Disparate Impact
### i. Introduction

To establish a prima facie case of disparate impact, a Plaintiff must demonstrate the occurrence of certain outwardly neutral practices and a "significantly adverse or disproportionate impact" on persons of a particular type produced by the defendant's facially neutral policy. *See Regional Economic Community Action Program*, 294 F.3d at 52-53; *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997). The Courts have emphasized that only practices with "significant" discriminatory effects are cognizable. *See Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007); *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996), *cert. denied*, 519 U.S. 1041 (1996); *Southend Neighborhood Imp. Ass'n v. St. Clair County*, 743 F.2d 1207, 1209 (7th Cir. 1984).

"[T]he requirements of a prima facie disparate impact case ... are in some respects more exacting than those of a disparate treatment case." *Spaulding v. University of Washington*, 740 F.2d 686, 705 (9th Cir.) (citation omitted), *cert. denied*, 469 U.S. 1036 (1984). Conclusory allegations do not suffice to establish a prima facie case of disparate impact. *See Palmieri*, 2006 WL 1155162 at 13. Moreover, a plaintiff must do more than merely raise an inference of disparate impact to state a claim. *See Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1486, *rehearing denied*, 13 F.3d 296 (9th Cir. 1993).

As is related above, Plaintiff's subdivision application was not denied, and the open space condition and enforcement of the approval do not produce, as a matter of law, a significantly adverse or disproportionate impact on covered individuals.

### ii. No Policy or Practice

A disparate impact claim may only challenge a neutral practice or policy. *See Regional Economic Community Action Program*, 294 F.3d at 53. A disparate impact plaintiff "must show that a specific policy caused a significant disparate effect on a protected group." *Mountain Side Mobile Estate Partnership v. Secretary of Housing and Urban Development*, 56 F.3d 1243, 1251 (10th Cir. 1995); *Reinhart*, 482 F.3d at 1229. It may not be utilized to challenge a single action as opposed to a municipal policy. *See Regional Economic Community Action Program*, 294 F.3d at 53; *Ventura Village, Inc. v. City of Minneapolis*, 318 F.Supp.2d 822, 827 (D. Minn. 2004), *aff'd*, 419 F.3d 725 (8th Cir. 2005); *Simms*, 83 F.3d at 1555.

The Second Circuit determined in *Regional Economic Community Action Program* that the denial of a special permit application is "not a challenge to a facially neutral policy or practice.… * * * No comparison of the act's disparate impact on different groups of people is possible. " 294 F.3d at 53.

Just as the denial of a land use permit cannot form the basis for a disparate impact claim, the approval of a subdivision subject to conditions with which Plaintiff is dissatisfied and implementation of the same does not constitute a practice or policy that can form the basis for a disparate impact claim.  Moreover, a disparate impact claim based solely on increased costs associated with a land use approval is not cognizable under the FHA. *See Hemisphere Bldg. Co., Inc. v. Village of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999); *see also Reinhart*, 482 F.3d at 1229-30; *Edwards v. Media Borough Council*, 430 F.Supp.2d 445, 451 (E.D. Pa. 2006) ("[t]he Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but *access*

14

to housing." (*quoting Halprin v. Prairie Singe Family Homes of Dearborn Park Ass'n*,

388 F.3d 327, 329 (7th Cir. 2004)) (emphasis added). The *Edwards* Court concluded that

because the plaintiff asserted a purely economic harm, no FHA claim was stated.

Further, as is related above, to the extent the disparate impact claim is premised

on a purported policy with respect to "City People," a FHA claim is not stated as a matter

of law.

### iii. Statistical Evidence

Plaintiff's brief statistical analysis is insufficient as a matter of law to even

suggest a disparate impact claim. In the first place, because the statistical evidence relates

to a comparison of people residing in New York City to those in the Town of Milan and

is based on the purportedly disparate impact on "City People," no claim is stated.

In any event, to prevail on a disparate impact claim, a plaintiff must allege

sufficient facts to support the contention that the challenged policy "*actually*

disproportionately affected a protected class." *2922 Sherman Ave. Tenants' Ass'n v.

District of Columbia*, 444 F.3d 673, 681 (C.A.D.C. 2006) (emphasis in original); *see also

Garcia*, 998 F.2d at 1486. In *Garcia*, the Court determined that:

> [T]he plaintiff must prove the existence of adverse effects
> of the policy, must prove that the impact of the policy is on
> terms, conditions, or privileges of employment of the
> protected class, must prove that the adverse effects are
> significant, and must prove that the employee population in
> general is not affected by the policy to the same degree.

998 F.2d at 1486

The complaint is devoid of any allegation of actual disparate impact on a

protected group let alone a significant impact or one that is different in degree than the

public at large.

Additionally, the following concepts apply to statistical disparate impact claims:

- "the appropriate comparables must focus on the local housing market and local family statistics. The farther removed from local statistics the plaintiffs venture, the weaker their evidence becomes." *Mountain Side Mobile Estate Partnership*, 56 F.3d at 1253.

- "Statistics based on the general population [should] bear a proven relationship to the actual applicant flow." *Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926, 938 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988), *rehearing denied*, 488 U.S. 1023 (1989); *Hallmark Developers*, 466 F.3d at 1286.

- The effect of disputed action on a group claimed to be affected thereby may not be speculative. *See Hallmark Developers*, 466 F.3d at 1286.

Rejecting the statistical analysis*, the Hallmark Developers* Court determined that "Whether a person who currently owns a home or rents an apartment within the price ranges proposed by [plaintiff] for its development would purchase or rent one of [plaintiff's] homes is speculative. * * * There is no evidence that the statistics based on the general population of home owners and renters bears 'a proven relationship to the actual applicant flow.'" *Id.* (*quoting Huntington*, 844 F.2d at 938 n.11); *see also Macone v. Town of Wakefield*, 277 F.3d 1, 8 (1st Cir. 2002) ("there is no information that any minorities would actually move into the … project.").

Reflecting the rarity of an adequately asserted disparate impact case, the *Hallmark Developers* Court found that in the majority of cases in which disparate impact was found "invariably there was a waiting list for affordable housing or a shortage of housing for

which only a defined group qualified." 466 F.3d at 1287 (*citing Langlois v. Abington Housing Authority*, 207 F.3d 43, 47-48 (1st Cir. 2000); *Jackson v. Okaloosa County*, 21 F.3d 1531, 1543 (11th Cir. 1994); *Huntington*, 844 F.2d at 1543; *Betsey v. Turtle Creek Associates*, 736 F.2d 983, 987 (4th Cir. 1984); *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1288 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025 (1978); *U.S. v. City of Black Jack*, 508 F.2d 1179, 1186 (8th Cir. 1974), *cert. denied*, 422 U.S. 1042, *rehearing denied*, 423 U.S. 884 (1975); *Ass'n of Relatives and Friends of AIDS Patients v. Regulations and Permits Admin.*, 740 F.Supp. 95, 98 (D.P.R.1990); *Malone v. City of Fenton*, 592 F.Supp. 1135, 1162 (E.D.Mo.1984), *aff'd*, 794 F.2d 680 (8th Cir. 1986)).

In the instant matter, Ms. Mc Cullogh's disparate impact claim is premised on the speculative chain of events that she intends to market the new homes constructed to New York City residents, that a majority of residents of New York City are minorities and that the actions alleged in some matter interfere with their ability to obtain housing more significantly than non-minorities. No analysis of the local housing market is alleged. There are no allegations of a history of discrimination in the Town. There is no allegation of an actual impact on minorities or an actual interference with their ability to obtain housing. In short, it is respectfully submitted, the complaint fails to state an even arguable disparate impact claim.

### F. Conclusion

It is respectfully submitted that, as is related above, the complaint fails to state a claim pursuant to the FHA as a matter of law.

**POINT V**
**PLAINTIFFS LACK A PROPERTY INTEREST**
**A. Introduction**

An essential element of a substantive due process, procedural due process and equal protection claim is the requirement that the plaintiff possess a "cognizable property interest, rooted in state law." *See L.M. Everhardt Construction, Inc. v. Jefferson County Planning Commission*, 2 F.3d 48, 51 (4th Cir. 1993); *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995); *MKA Realty Corp. v. Town of Wallkill*, 82 Fed.Appx. 712, 714 (2d Cir. 2003); *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 503 (2d Cir.2001); *PFZ Properties v. Rodrigues,* 928 F.2d 28 (1st Cir. 1991), *cert. dismissed*, 503 U.S. 257 (1992); *Frooks v. Town of Cortlandt*, 997 F.Supp. 438, 452 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999); *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996).

**B. No Property Interest if Reviewing Agency Possesses Discretion**

In order to establish a constitutionally cognizable property interest, a litigant must demonstrate a clear entitlement to the benefit in question. *See Village Ponder v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995), *cert. denied,* 117 S.Ct. 50 (1996); *RRI Realty Corp. v. Village of Southampton*, 870 F.2d 911 (2d Cir.), *cert. denied,* 493 U.S. 893 (1989). The applicable "strict entitlement" analysis focuses on the extent to which the reviewing agency or official may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision. *See Zahra,* 48 F.3d at 680; *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 132-22 (2d Cir. 1998); *Orange Lake Associates v. Kirkpatrick*, 21 F.3d 1214, 1224-25 (2d Cir. 1994); *R-Goshen LLC v.*

*Village of Goshen,* 289 F.Supp.2d 441, 450 (S.D.N.Y. 2003), *aff'd*, 115 Fed.Appx. 465 (2d Cir. 2004); *Penlyn Development Corp. v. Village of Lloyd Harbor*, 51 F.Supp.2d 255, 262 (E.D.N.Y. 1999).[3]

If a board or official possesses discretion in reviewing an application, no property interest exists as a matter of law. *See Crowley*, 76 F.3d at 52; *Zahra*, 48 F.3d at 680; *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994); *Frooks*, 997 F.Supp. at 449. "Even if 'objective observers would estimate that the probability of [obtaining the relief sought] was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest.'" *Bower Associates v. Town of Pleasant Valley*, 2 N.Y.3d 617, 628, 781 N.Y.S.2d 240, 246, 814 N.E.2d 410, 416 (2004) (*quoting RRI Realty*, 870 F.2d at 918); *see also R-Goshen LLC*, 289 F.Supp.2d at 450.

As a result, the law is clear that a property interest does not exist if a reviewing agency possesses discretion in reviewing an application.

### C. No Property Interest in Subdivision Approval or in Unconditional Subdivision Approval

It is well-settled that planning boards in New York possess considerable discretion in reviewing a subdivision application. *See Deepwells Estates, Inc. v. Village of Head of the Harbor*, 973 F.Supp. 338 (E.D.N.Y. 1997), *appeal dismissed*, 162 F.3d 1147 (2d Cir. 1998); *Cedarwood v. Town of Schodack*, 954 F.Supp. 513 (N.D.N.Y. 1997) ("Under the New York Town Law, planning boards are vested with the authority to weigh the evidence and exercise their discretion in approving or denying approval of a

---

[3] Whether a plaintiff possesses a cognizable property interest is a question of law for determination by the court. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Barta v. Board of Regents*, 79 F.3d 717, 720 (8th Cir. 1996); *RRI Realty,* 870 F.2d at 918.

subdivision plat."); *Orange Lake Assocs. v. Fitzpatrick,* 825 F.Supp. 1169 (S.D.N.Y. 1993), *aff'd,* 21 F.3d 1214 (2d Cir. 1994); *Bower Associates v. Town of Pleasant Valley*, 2 N.Y.2d 617, 781 N.Y.S.2d 240, 814 N.E.2d 410 (2004); *Terra Homes v. Smallwood*, 247 A.D.2d 394, 667 N.Y.S.2d 920 (2d Dept.), *lv. denied,* 92 N.Y.2d 809, 678 N.Y.S.2d 595, 700 N.E.2d 1231 (1998); *Fawn Builders v. Planning Bd. of Lewisboro*, 223 A.D.2d 996, 636 N.Y.S.2d 873 (3d Dept. 1996); *M & M Partnership v. Sweenor*, 210 A.D.2d 575, 619 N.Y.S.2d 802 (3d Dept. 1994).

The provisions of Town Law § 277 confirm the extensive discretion accorded a planning board in reviewing a subdivision application. For example, Town Law § 277(1) provides that "Before the approval by the planning board of a plat … the planning board shall require that the land shown on the plat be of such character that it can be used safely for building purposes without danger to health or peril from fire, flood, drainage or other menace to neighboring properties or the public health, safety and welfare." Town Law § 277(2)(a) mandates that "[t]he planning board shall also require that: (a) the streets and highways be of sufficient width and suitable grade and shall be suitably located to accommodate the prospective traffic, to afford adequate light and air, to facilitate fire protection, and to provide access of fire fighting equipment to buildings. The balance of the substantive provisions of Town Law § 277 further demonstrate the existence of substantial discretion. In addition, Town Law § 277(3) provides additional discretion to a planning board reviewing a subdivision application by mandating that "where a zoning ordinance or local law has been adopted by the town, the lots shown on said plat shall *at least* comply with the requirements thereof.…" (emphasis added).

Confirming the broad discretion delegated a planning board, pursuant to Town Law § 277, a planning board reviewing a proposed subdivision plat can consider, among other discretionary factors, deleterious consequences of the proposed development on adjacent territory and development. *See Pearson Kent Corp. v. Bear*, 28 N.Y.2d 396, 322 N.Y.S.2d 235, 271 N.E.2d 218 (1971); *Ozols v. Henley*, 81 A.D.2d 670, 438 N.Y.S.2d 349 (2d Dept.), *appeal dismissed*, 54 N.Y.2d 1023, 446 N.Y.S.2d 263, 430 N.E.2d 1316 (1981); *Landing Estates v. Jones*, 67 Misc.2d 354, 324 N.Y.S.2d 255 (Sup. Ct. Suffolk Co. 1971); *Reed v. Planning Board of the Town of Chester*, 120 A.D.2d 510, 501 N.Y.S.2d 710 (2d Dept. 1986).

In short, as was determined in *Honess 52 Corp. v. Town of Fishkill*, 1 F.Supp.2d 294, 304 (S.D.N.Y. 1998), "[u]nder sections 276 and 277 of [the Town Law], a local planning board is vested with the authority to weigh the evidence, resolve the conflicting inferences, and exercise its discretion in approving or denying approval of a subdivision plat." (*citing Cedarwood Land Planning v. Town of Schodack*, 954 F.Supp. 513, 524 (N.D.N.Y.1997); *North Greenbush Development Corp. v. Fragomeni*, 226 A.D.2d 854, 857, 640 N.Y.S.2d 911, 913-14 (3d Dept. 1996); *M & M Partnership v. Sweenor*, 210 A.D.2d 575, 576-77, 619 N.Y.S.2d 802, 803 (3d Dept. 1994); *Thomas v. Brookins*, 175 A.D.2d 619, 620, 572 N.Y.S.2d 557, 557 (4th Dept. 1991); *Currier v. Planning Board of Town of Huntington*, 74 A.D.2d 872, 872, 426 N.Y.S.2d 35, 36 (2d Dept.), *aff'd*, 52 N.Y.2d 722, 436 N.Y.S.2d 274, 417 N.E.2d 568 (1980); Town Law §§ 276, 277 (McKinney Supp.1997-98)). As a result, "by virtue of state law the Planning Board possesses the authority to consider a host of factors in assessing [a] Preliminary Plat application and to exercise discretion in evaluating those criteria." *Id*. Therefore, the

Court concluded that "The sufficiency of [the] application is a determination for the Planning Board to make within its sound discretion, and the soundness of the Planning Board's ultimate decision – including whether its determinations … are otherwise arbitrary in violation of state law – is a matter for the state courts." *Id*. at 305.

Similarly in *Deepwells Estates, supra*, the Court succinctly determined that:

> Under N.Y. Village Law, planning boards are vested with the authority to weigh evidence and exercise their discretion in approving or denying approval of a subdivision plat. The planning board is to consider, inter alia, the prospective character of the development, whether a reservation of a parkland is necessary, and the suitability of the location, width and grade of streets and highways. See N.Y. Village Law § 7-730. Because the planning board has wide discretion in determining whether or not to approve the plaintiffs' subdivision plat, the Court finds that the plaintiffs' have no property right in such approval.[4]

*Id*. at 349.

Moreover, the Town's subdivision regulations further confirm the substantial discretion properly delegated to the Planning Board. Section 177-13(E) provides that:

> The Planning Board shall study the practicality of the preliminary plat taking into consideration the requirements of the community, the best use of the land being subdivided, environmental constraints and the policies set forth in § 177-2 of these Subdivision Regulations. Particular attention shall be given to the proposed arrangement, location and width of roads; the relationship of proposed roads to the topography of the land; location of prospective homesites; water supply; sewage disposal; drainage; proposed lot sizes and configuration; the future development of lands as yet unsubdivided, and the requirements of the Comprehensive Plan and Zoning Law of the Town of Milan; and matters enumerated in § 277 of the New York State Town Law.

Section 177-2, referred to therein, provides that:

---

[4] Village Law § 7-730 and Town Law § 277 are identical in all relevant respects.

The following objectives shall guide the Planning Board's decisions as related to the public health, safety and welfare:

A. Land to be subdivided and developed shall be of such character that it can be used safely for building purposes without danger to health or peril from fire, flood or other menace and without resulting in significant damage to the natural and scenic resources of the area in which it is located.

B. Proper provision shall be made for water supply, drainage, sewage and other needed improvements and utilities.

C. All proposed development shall be so designed as to be in harmony and compatible with the development pattern of adjacent and neighboring properties.

D. Proposed roads shall compose a convenient system and shall be of such width, grade and location as to accommodate present and prospective traffic.

E. Where a subdivision is designed to be rural in nature, roadways shall be designed in a manner which, together with the design of the lots, encourages such rural, as opposed to suburban, quality and image; and shall be, wherever appropriate, private, so that maintenance of such roadways shall not be a cost of the Town. The construction of such private roadways need not meet Town highway specifications for a public road, but shall be sufficient to service all lots on such roadway with all manner of traffic. The cost savings thus offered the applicant are intended to be considered in the nature of the subdivision and the site amenities proposed. Approval of any plan proposing any such private roadway shall further be conditioned on appropriate safeguards to protect the interest of the residents of the proposed subdivision, notification to prospective owners of the status of the roadway and assurances that roads remain private.

F. All development shall be designed to facilitate adequate fire and emergency protection and provide access for fire-fighting and related equipment.

G. Proper provision shall be made for permanent reservations of open spaces for pedestrian walkways, parks and trails as well as for the protection of natural drainage and significant historical and environmental features.

H. All subdivision, development and reservation of land shall be in harmony with the Town of Milan Comprehensive Plan, Dutchess County Master Plan, Town Zoning Law, Town Official Map, Town Capital Budget and

> Town Highway Specifications and shall be consistent, as
> applicable, with the Town's historic districts, scenic roads
> or areas and with any designated critical environmental
> areas (CEA).
> I. All reviews of applications specified in these regulations
> shall be coordinated, to the extent practicable, with
> involved agencies and boards at the Town, County and
> state levels to ensure consistent, well-designed subdivisions
> and decisionmaking that will benefit the Town of Milan.
> J. Proper provision shall be made for leaving undeveloped
> natural areas and corridors to mitigate the adverse
> environmental impacts of subdivision and to sustain a
> diversity of native vegetation and wildlife, to protect water
> resources, agricultural land and scenic viewsheds and to
> implement the Town's policies of protection of its
> environmental and cultural resources pursuant to the
> Comprehensive Plan and Zoning Law.  * * *
> M. In their interpretation and application, the provisions of
> these regulations shall be held to be minimum
> requirements. More stringent provisions may be required if
> it is demonstrated that different standards are necessary to
> promote the public health, safety and welfare.

Consequently, Plaintiff did not possess a property interest in obtaining

subdivision approval because the Planning Board possessed substantial discretion in

reviewing the application.

Moreover, particularly because Plaintiff did not possess a property interest in

subdivision approval, it could not possess a property interest in receiving subdivision

without the purportedly offending conditions.

It is well-settled that planning boards possess discretion to condition subdivision

approval. "[A] condition may be imposed upon property so long as there is a reasonable

relationship between the problem sought to be alleviated and the application concerning

the property." *Mackall v. White*, 85 A.D.2d 696, 445 N.Y.S.2d 486 (2d Dept. 1981), *lv.*

*denied,* 56 N.Y.2d 503, 450 N.Y.S.2d 1025, 435 N.E.2d 1100 (1982). The conditions

imposed herein were consistent with legitimate and indeed admirable goal of preserving

open space.

Confirming the complete absence of any claim to a cognizable property interest

herein, in *Zeigler v. Town of Kent*, 258 F.Supp.2d 49, 60 (D.Conn. 2003), the Court

determined that:

> In light of the discretion vested in the Commission to attach
> conditions and safeguards plaintiff cannot claim that he had
> a legitimate claim of entitlement – that is, a constitutionally
> protected property interest – to the permit subject only to
> the conditions which he requested.…

Consequently, the existence of the authority to impose conditions on such a

discretionary approval and the absence of any right to have a subdivision approved

without conditions further evidences the absence of a property interest herein.

Further indicative of the substantial discretion accorded the Planning Board in

reviewing subdivision applications, it is authorized to waive applicable requirements.

Town Law  277(7), entitled waiver of requirements, provides that:

> The planning board may waive, when reasonable, any
> requirements or improvements for the approval, approval
> with modifications or disapproval of subdivisions
> submitted for its approval. Any such waiver, which shall be
> subject to appropriate conditions, may be exercised in the
> event any such requirements or improvements are found
> not to be requisite in the interest of the public health,
> safety, and general welfare or inappropriate because of
> inadequacy or lack of connecting facilities adjacent or in
> proximity to the subdivision

In addition, the §§ 177-33 and 177-34 of the Town subdivision regulations

authorize the Planning Board to waive or modify provisions of the subdivision

regulations.

Consequently, because the Planning Board possessed substantial discretion in evaluating Plaintiff's subdivision application, in determining whether to impose conditions of the approval, in determining what conditions should appropriately be imposed and in possessing the authority to grant waivers from the subdivision regulations, Plaintiff lacked a cognizable property interest as a matter of law. As a result, the complaint fails to state a due process or equal protection claim as a matter of law.

### POINT VI
### PLAINTIFF DOES NOT POSSESSES A
### SUBSTANTIVE DUE PROCESS CLAIM

#### A.  Equal Protection and Taking Claims
#### Preclude Substantive Due Process Claim

Because Plaintiff has asserted claims pursuant to the more specific provisions of the Equal Protection and Fifth Amendment Taking Clauses, she may not also assert a substantive due process claim based on the same conduct. "When an explicit textual provision of the Constitution protects against challenged governmental action, *the claim must be analyzed under that specific provision alone* and not under the more general guarantee of substantive due process." *Armendariz v. Penman*, 75 F.3d 1311, 1326 (9th Cir. 1996) (en banc) (emphasis in original); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *Albright v. Oliver*, 510 U.S. 266 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995); *Ayeni v. Mottola*, 35 F.3d 680, 291 (2d Cir. 1994), *cert. denied*, 514 U.S. 1062 (1995); *Buckles v. King County*, 191 F.3d 1127, 1137 (9th Cir. 1999); *Parella v. Retirement Board*, 173 F.3d 46, 58 (1st Cir. 1999); *Besaro Mobile Home Park v. City of Fremont*, 166 F.3d 342, 1998 WL 911879 (9th Cir. 1998); *South County Sand & Gravel Co. v. Town of South Kingston*, 160 F.3d 834, 835 (1st Cir. 1998); *Marci v. King County*, 110

F.3d 1496, 1498-99 (9th Cir.), *as amended on denial of rehearing en banc*, 126 F.3d 1125 (9th Cir. 1997), *cert. denied*, 522 U.S. 1153 (1998); *Patel v. Penman*, 103 F.3d 868, 875 (9th Cir. 1996), *cert. denied,* 520 U.S. 1240 (1997); *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 407 (9th Cir. 1996), *cert. denied*, 523 U.S. 1059 (1998); *Smith v. City of Albany*, 2006 WL 839525 at 9 (N.D.N.Y. 2006), *aff'd*, 2007 WL 2973995 (2d Cir. 2007); *Caidor v. M & T Bank*, 2006 WL 839547 at 3 (N.D.N.Y. 2006) ("substantive due process analysis is not available '[w]here a particular Amendment provides an explicit textual source of constitutional protection.....'" (*citing Albright v. Oliver*, 510 U.S. 266, 273 (1994) (*quoting Graham v. Connor*, 490 U.S. at 395)); *Jones v. McMahon*, 2005 WL 928667 at 2 (N.D.N.Y. 2005), *aff'd, in part, dismissed in part*, 465 F.3d 46, 2006 WL 2828506 (2006). Because Plaintiff has asserted Equal Protection and Taking claims, the vaguely asserted claim pursuant to the amorphous substantive due process claim based upon the same facts is insufficient on its face. *See Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005); *Eby Brown Co., LLC v. Wisconsin Dept. of Agriculture*, 295 F.3d 749, 754 (7th Cir. 2002); *Bateman v. City of West Bountiful*, 89 F.3d 704, 709 (10th Cir. 1996); *Johns v. Town of East Hampton*, 942 F.Supp. 99, 108 (E.D.N.Y. 1996).

### B. The Complaint Fails to State a Substantive Due Process Claim

A plaintiff asserting a substantive due process claim must allege facts substantiating: 1) the existence of a property interest; 2) which the state has deprived the owner of; and 3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.  *See Sylvia Development Corp. v. Calvert County,* 48 F.3d 810, 827 (4th Cir. 1995); *Crowley v. Courville*, 76 F.3d

47 (2d Cir. 1996). "[T]he threshold for establishing the requisite 'abuse of government power' is a high one indeed." *Licari v. Ferruzzi*, 22 F.3d 344, 350 (1st Cir. 1994).

A substantive due process claim is not stated or viable unless the conduct alleged satisfies the exceptionally high standard of "shock the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Bryant v. City of New York*, 404 F.3d 128, 135 (2d Cir. 2005); *Velez,* 401 F.3d at 93; *Catanzaro v. Weiden*, 188 F.3d 56, 60 (2d Cir. 1999).

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is merely 'incorrect or ill advised.'" *Kaluczky v. City of While Plains*, 57 F.3d 202, 211 (2d Cir. 1995) (*quoting Lorence v. Achtyl*, 20 F.3d 529, 538 (2d Cir. 1994)); *see also Frooks v. Town of Cortlandt*, 997 F.Supp. 438 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999); *Benjamin v. Town of Fenton*, 892 F.Supp. 64, 68-69 (N.D.N.Y. 1995). Government action is arbitrary or irrational for purposes of substantive due process analysis "only when government acts with no legitimate reason for its decision." *Southview Associate*, 980 F.2d at 102. A substantive due process plaintiff must show that the governmental agency has been guilty of arbitrary and capricious action in the "strict sense," meaning that there is no conceivable rational basis for the decision. *See Triomphe Investors v. City of Northwood*, 49 F.3d 198, 201 (6th Cir.), *cert. denied*, 516 U.S. 816 (1995).[5] A substantive due process claim is not stated unless the challenged governmental action shocks the conscience, which requires "extreme irrationality." *Pearson v. City of*

---

[5] Significantly, if not involving a fundamental right, government's action is not required actually to advance its stated purpose – the courts inquire only whether the government *could* have a legitimate reason for acting as it did. *See Hoeck v. City of Portland*, 57 F.3d 781 (9th Cir. 1995), *cert. denied*, 516 U.S. 1112 (1996).

*Grand Blanc*, 961 F.2d 1211, 1222 (6th Cir. 1992); *Midkiff v. Adams County Regional Water District*, 409 F.3d. 758, 769 (6th Cir. 2005).

Moreover, "'[a]rbitrary and capricious' in this context does not mean simply erroneous. 'Actions that violate state law are properly challenged in state courts … [t]he legality of a zoning decision under applicable state law is not determinative of whether the decision violated federal substantive law." *Norton v. Village of Corrales,* 103 F.3d 928, 932 (10th Cir. 1996) (*quoting Sylvia Development Corp.*, 48 F.3d at 829). "Whether the City has followed state law is neither here nor there; the due process clause is not a means to enforce state law." *Albiero v. City of Kankakee*, 122 F.3d 417, 420 (7th Cir. 1997). Further, even a "mere bad faith refusal" to follow state law does not amount to a deprivation of due process where the state courts are available to correct error. *See Zahra*, 48 F.3d at 674; *Chiplin Enterprises v. City of Lebanon*, 712 F.2d 1524, 1528 (1st Cir. 1983); *PFZ Properties*, 928 F.2d at 32. Although no violation of state law occurred herein, such a scenario, in any event, would not provide an even arguable basis for a substantive due process claim.[6]

The actions alleged in the complaint simply do not rise, as a matter of law, to the exceptionally high level of egregious and utterly irrational behavior that is required in order to state a substantive due process claim.

---

[6] Indeed, the Third Circuit has suggested that land use decision-making cannot satisfy the requisite high standard unless, at least, the facts are typified by corruption, self-dealing, or a concomitant infringement on other fundamental liberties that cannot be rectified by pre- or post-deprivation proceedings. *See Eichenlaub v. Township of Indiana*, 385 F.3d 285, 285-86 (3d Cir. 2004); *see also Maple Properties, Inc. v. Township of Upper Providence*, 151 Fed.Appx. 174, 179 (3d Cir. 2005); *Spradlin v. Borough of Danville*, 2005 WL 3320788 at 8 (M.D.Pa. 2005), *aff'd*, 188 Fed.Appx. 149 (3d Dept. 2006); *Robinson v. Limerick Township*, 2005 WL 627880 at 2 (E.D.Pa 2005).

## C. Because of the Existence of Available Judicial
## Review, a Substantive Due Process Claim is Not Stated

In any event, a substantive due process claim cannot be stated as a matter of law as a result of the availability of state judicial review procedures. Even the "outright violation" of state law in the denial of a permit does not provide the basis for a constitutional claim if a state law remedy is available. *See Natale,* 170 F.3d at 263 ("Substantive due process … does not forbid governmental action that might fairly be deemed arbitrary and capricious and for that reason correctable in a state court lawsuit seeking review of administrative action."); *Yale Auto Parts v. Johnson*, 758 F.2d 54, 58-59 (2d Cir. 1985); *Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 441 (4th Cir. 2002) ("If state law is transgressed, state courts are open to redress that violation and remedy an unlawful deprivation of property. We have repeatedly stated that 'government actions that are violative of state law are properly challenged in the state courts which exist, in part, to protect citizens from abuses of state law.'" (*quoting Front Royal and Warren County Industrial Park Corp. v. Town of Front Royal*, 135 F.3d 275, 288 (4th Cir. 1998)); *see also Hartland Sportman's Club v. Town of Delafield*, 35 F.3d 1198, 1202 (7th Cir. 1994); *Sylvia Development Corp*, 48 F.3d at 829 ("[T]he fact that established state court procedures were available to addresses and correct illegal actions by the Board belies the existence of a substantive due process claim."); *Gottlieb v. Village of Irvington*, 69 F.Supp.2d 553, 556 (S.D.N.Y. 1999); *Hi Pockets, Inc. v. The Music Conservatory of White Plains*, 192 F.Supp.2d 143, 159 (S.D.N.Y. 2002); *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996), *cert. dismissed*, 521 U.S. 1140 (1997); *Lee v. City of Chicago*, 330 F.3d 456, 2003 WL 21196550 (7th Cir. 2003).

Plaintiffs could have sought judicial review of the conditions of the approval by which she claims to have been aggrieved in an Article 78 proceeding instituted within 30 days of the filing of the decision in June 2005. However, she choose not to do so. Because of the existence of such an adequate state court judicial remedy, Plaintiff has not, for this additional reason, stated a substantive due process claim as a matter of law.

## POINT VII
### THE COMPLAINT FAILS TO STATE A PROCEDURAL DUE PROCESS CLAIM

Although it is difficult to ascertain from the pleading herein whether Plaintiff is attempting to assert a procedural due process claim, the complaint fails to state such a claim as a matter of law.[7]

The existence of adequate state court review precludes a procedural due process claim. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]hen a state 'affords a full judicial mechanism with which to challenge the administrative decision' in question, the state provides adequate procedural due process, whether or not the plaintiff avails himself of the provided appeal mechanism." *DeBlasio v. Zoning Board of Adjustment of the Town of West Armwell*, 53 F.3d 593, 597 (3d Cir.), *cert. denied*, 516 U.S. 937 (1995); *see also Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991), *cert. denied*, 503 U.S. 984 (1992); *Bello v. Walker*, 840 F.2d 1124, 1128 (1st Cir.), *cert. denied*, 488 U.S. 868 (1988); *Creative Environment, Inc. v. Estabrook*, 680 F.2d 822, 832 (1st Cir.), *cert. denied*, 459 U.S. 989 (1982).

---

[7] In the first instance, as is related above, one cannot possess a right to procedural due process unless one possesses a cognizable property interest. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994); *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995). Since Plaintiff lacks a cognizable property interest, she cannot state a viable procedural due process claim for this additional reason.

New York State statutes provide an opportunity for full and complete judicial review of a determination of a planning board on a subdivision application. Numerous decisions have determined that the availability of judicial review satisfies the requirements of procedural due process as a matter of law. *See Brady*; 863 F.2d at 211; *Tara Circle, Inc. v. Bifano*, 1997 WL 399 683 at 8 (S.D.N.Y. 1997); *T.S. Haulers v. Town of Riverhead*, 190 F.Supp. 455, 464-65 (E.D.N.Y. 2002); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d. Cir.1988*); Orange Lake Assoc.*, 825 F.Supp. at 1179; *Hampton Bays Connections, Inc. v. Duffy*, 127 F.Supp.2d 364, 380 (E.D.N.Y. 2001); *DeBlasio*, 53 F.3d at 597-98 (3d Cir.); *Licari v. Ferruzzi*, 22 F.3d 344 (1st Cir. 1994); *Acierno v. Mitchell*. 6 F.3d 970 (3d Cir. 1993); *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32 (1st Cir. 1992); *PFZ Properties v.* Rodriguez, 928 F.2d 28 (1st Cir 1991), *cert. denied*, 503 U.S. 257 (1992); *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).

Because Plaintiff's alleged grievances were addressable through state court judicial review, a procedural due process claim fails as a matter of law.

## POINT VIII
## NO TAKING CLAIM EXISTS
## AS A MATTER OF LAW

Plaintiff apparently seeks to assert a taking claim based on the limited conservation easement on the property which was provided as a condition of the subdivision approval. For the reasons related herein, the complaint fails to state a taking claim as a matter of law.

### A. Plaintiff Not Deprived of All Use of Property

If Plaintiff is attempting to assert that the economic impact of the conservation easement constitutes a taking, the complaint fails to state such a claim. In order for the economic impact of a regulation to cause a taking pursuant the United States or New York

State Constitutions, the regulation must take "all use of property," *First English Evangelical Lutheran Church v. County of Los Angeles*, 427 U.S. 304, 318 (1987), "all economically beneficial use," *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027, 1029 (1992), or all economic value of property must have been extinguished. *See Gazza v. New York State Department of Environmental Conservation*, 89 N.Y.2d 603, 619, 657 N.Y.S.2d 555, 563, 679 N.E.2d 1035, 1043, *cert. denied,* 522 U.S. 813 (1997).

Even a drastic diminution in the value of property does not result in a taking. *See e.g., Penn Central Transportation Co. v. City of New York,* 438 U.S. 104 (1978); *Goldbaltt v. Town of Hempstead,* 369 U.S. 590, 592-93 (1962); *Hadacheck v. Sebastian,* 239 U.S. 394 (1915) (87½% diminution in value); *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926) (75% diminution in value*); Wulfsohn v. Burden*, 241 N.Y. 288, 302, 302 N.E.2d 120, 124 (1925); *McGowan v. Cohalan*, 41 N.Y.2d 434, 393 N.Y.S.2d 376, 361 N.E.2d 1025 (1978); *Northern Westchester Professional Park Assocs. v. Town of Bedford*, 60 N.Y.2d 492, 470 N.Y.S.2d 350, 458 N.E.2d 809 (1983); *De St.Aubin v. Flacke*, 68 N.Y.2d 66, 505 N.Y.S.2d 859, 496 N.E.2d 879 (1986). The complaint does not even assert a reduction in the value of Plaintiff's property, drastic or otherwise.

Moreover, it is clear from the allegations of the complaint that the conservation easement does not effectuate a taking of all economic value of the property. In the first instance, in assessing the impact of a regulation, one must view the entirety of the property and may not "segment" portions of the whole. In *Penn Central Transportation Co. v. City of New York City*, 438 U.S. 104, 130-31 (1978), the Supreme Court determined that takings jurisprudence "does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." *See also*

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302,

327 (2002); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987); *Andrus*

*v. Allard*, 444 U.S. 51 (1979); *Concrete Pipe & Products of Cal., Inc. v. Construction*

*Laborers Pension Trust for Southern Cal*., 508 U.S. 602, 644 (1993) ("a claimant's parcel of

property [cannot] first be divided into what was taken and what was left" to demonstrate a

compensable taking); *Smith v. Town of Mendon*, 4 N.Y.3d 1, 14 n.12, 789 N.Y.S.2d 696, 703

n.12, 822 N.E.2d 1214, 1221 n.12 (2004) ("the Supreme Court has been reluctant to engage

in spatial "conceptual severance" in determining whether a regulation or government action

deprives a property owner of all economically viable uses of the property (citation omitted).

Hence, we look to the effect of the government action on the value of the property as a

*whole*, rather than to its effect on discrete segments of the property (*citing Penn Central*, 438

U.S. at 130-131)). Consequently, in determining whether the value of the property has been

extinguished, the entirety of the property with its six approved building lots must be

considered. By definition, a taking has not transpired. *See also Palazzolo v. Rhode Island*,

533 U.S. 606, 631 (2001) (""A regulation permitting a landowner to build a substantial

residence on an 18-acre parcel does not leave the property 'economically idle.").

Secondly, the owners of the lots are free to use the area encumbered by the

conservation easement. Although they may not construct structures in the area or generally

cut down live trees, they may utilize the property for passive recreation, as a buffer and for

aesthetic value and, of course, are permitted to erect a dwelling on each of the lots.

On the face of the complaint, a taking has not occurred as a matter of law.

**B. Conservation Easement – Not Unconstitutional Exaction**

Plaintiff's claim of an unconstitutional exaction is repudiated by the universal case law. Significantly, as is explicitly confirmed by the conservation easement, the easement provides no right of access by the public and specifically excludes any right of public access.

In the first place, Plaintiff's "exaction" analysis is misplaced as a matter of law. The Supreme Court determined in *Lingle v. Chevron USA Inc*., 544 U.S. 528, 548 (2005), that "the 'substantially advances' formula is not a valid takings test, and … has no proper place in our takings jurisprudence." Therefore, the allegations of the complaint do not, as a threshold matter state a valid taking claim.

Secondly, to the extent that prior decisions, such as *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), have any continuing viability to Plaintiff's claim after *Lingle*, the "essential nexus" or "rough proportionality" analysis of those decisions have no applicability to the conservation easement herein.

Unlike the scenarios in *Nollan* and *Dolan*, the conservation easement agreed to by Plaintiff herein does not permit public access to the property. The Supreme Court determined in *City of Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687, 702 (1999), that it is only a condition or requirement that requires dedication of land to public use that can be characterized as an "exaction" and concluded that "we have not extended the rough-proportionality test of *Dolan* beyond the special context of exactions-land-use decisions conditioning approval of development on the dedication of property to public use." (*citing Dolan*, 512 U.S. at 385). Consequently, the conservation easement is not an "exaction" and the analysis advocated by Plaintiff is inapplicable.

The analysis of the New York Court of Appeals in *Smith v. Town of Mendon*, 4 N.Y.3d 1, 789 N.Y.S.2d 696, 703, 822 N.E.2d 1214 (2004), fully implements and explains the relationship of conservation easements and the Constitutional principles upon which Plaintiff relies. First, rejecting Plaintiff's characterization of the conservation easement, the *Smith* Court related that:

> Styling the conservation restriction an exaction, the Smiths argue that we should not review the Town's action under the *Penn Central/Agins* standard. We disagree. Exactions are defined as 'land-use decisions conditioning approval of development on the *dedication of property to public use*' (*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 702, 119 S.Ct. 1624, 143 L.Ed.2d 882 [1999] [emphasis added]). In a narrow, readily distinguishable class of cases, the Court has held such conditions unconstitutional (emphasis added by *Smith* Court).

The *Smith* Court concluded that the case involved "no property dedication of the type encountered in *Nollan* and *Dolan*. * * * Under the Supreme Court's doctrinal framework, …the Town's conservation restriction was not an 'exaction' subject to the closer scrutiny of the *Dolan* test." *Id.* at 11, 789 N.Y.S.2d at 701, 822 N.E.2d at 1219. Repudiating Plaintiff's analysis, the Court of Appeals determined that "Because the Town's conservation restriction cannot be classified as an exaction, we need not address the question whether it was roughly proportional to the impact of the development proposed by the Smiths." *Id.* at 11 n.7, 789 N.Y.S.2d at 701 n.7, 822 N.E.2d at 1219 n.7. The Court of Appeals further determined that:

> There is no such dedication of 'property' here. In practice, the Court has identified exactions in only two real property cases, *Nollan* and *Dolan*, both of which involved the transfer of the most important "stick" in the proverbial bundle of property rights, the right to exclude others. In *Twin Lakes Dev. Corp. v. Town of Monroe*, 1 N.Y.3d 98, 769 N.Y.S.2d 445, 801 N.E.2d 821 [2003], we also

characterized a fee imposed in lieu of the physical
dedication of property to public use as an exaction. Outside
of these two narrow contexts, neither the Supreme Court
nor this Court has classified more modest conditions on
development permits as exactions. Thus, we decline the
Smiths' invitation to extend the concept of exaction where
there is no dedication of property to public use and the
restriction merely places conditions on development.

*Id*. at 11-12, 789 N.Y.S.2d at 701, 822 N.E.2d at 1219.[8]

The *Smith* Court further observed that:

'property' is constituted by many possessory interests,
some of which (e.g., the rights to exclude and alienate) are
more central to commonly held understandings of property
than others. The Supreme Court's exactions jurisprudence
tracks this conception of property. In *Nollan* and *Dolan*, the
Supreme Court applied the idea of 'exaction' only to the
required dedications of a core possessory interest, the right
to exclude. * * * '[b]oth cases hinged on the owners' loss of
perhaps the most important 'stick' from the ownership
bundle: the ability to restrict access…' Notably, the
Supreme Court has never extended its exactions analysis to
the dedication of less substantial possessory interests, like
those at issue here. Thus, … the conservation restriction is
not an exaction within *Nollan* and *Dolan*, and we are
unwilling to expand the holdings of those decisions to the
case before us.[9]

As a result, "[b]ecause the Town's development condition is not an exaction, we

review it according to the standard enunciated by the Court in *Agins v. City of Tiburon*,

447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 [1980]; *see also Penn Cent. Transp. Co. v.

City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 [1978], as opposed to

*Dolan* 's rough proportionality test." *Id*. at 13, 789 N.Y.S.2d at 702, 822 N.E.2d at 1220.

---

[8] The Court affirmed the conclusion of the Appellate Division that "an 'exaction' in this context refers to
'land-use decisions conditioning approval of development on the dedication of property to public use.'"
*Smith v. Town of Mendon*, 4 A.D.3d 859, 860, 771 N.Y.S.2d 781, 782 (4th Dept. 2004).
[9] The Court similarly determined that "conditioning a development permit on its surrender should not
trigger the same constitutional scrutiny as the regulatory extortion of sticks far more integral to the bundle,
such as the right to exclude third persons." *Id*. at 13, 789 N.Y.S.2d at 702, 822 N.E.2d at 1220.

In concluding that the conservation easement did not constitute an unconstitutional taking, the Court observed that the conservation easement would not appreciably diminish the value of the property, let alone deny the owners the economically viable use of the property. *See id.*

Consistent with Supreme Court precedent, the Court further reiterated that a regulatory action need only be reasonably related to a legitimate governmental interest to satisfy the applicable "substantially advances" standard. *Id.* at 14, 789 N.Y.S.2d at 703, 822 N.E.2d at 1221. The conservation easement advanced a legitimate purpose and Plaintiff does not suggest otherwise.

Further apropos to Plaintiff's asserted disdain for the legitimacy of the conservation easement, the Court of Appeals determined that the preservation of open space is a legitimate governmental goal and concluded that:

> Ensuring perpetual protection for open spaces-along with the resources and habitats they shelter-from the vicissitudes of workaday land-use battles is hardly an inconsequential governmental interest. At the very least, the permanent character of the conservation restriction will spare the Town the administrative cost of continually being forced to maintain its conservation policies. More importantly, … the conservation restriction imposed by the Town, as a species of negative easement (citation omitted), is a 'well established land use tool' that is 'consistent with the State's longstanding commitment to protecting ... critical natural resources' (citation omitted). Further, even assuming that the marginal benefit to the Town from the conservation restriction were … modest, it would nonetheless be legitimate. Under the holdings of *Agins*, *Penn Central* and their progeny, a modest environmental advancement at a negligible cost to the landowner does not amount to a regulatory taking.

*Id.* at 14-15, 789 N.Y.S.2d at 703, 822 N.E.2d at 1221; *see also Ross v. Town of Santa Clara*, 266 A.D.2d 678, 698 N.Y.S.2d 90 (3d Dept. 1999); *Blain v. Township of Radnor*,

2004 WL 1151727 (E.D.Pa. 2004), *aff'd*, 167 Fed.Appx. 330 (3d Cir. 2006); *Westrum Land Development Corp. v. Whitpain Township*, 2002 WL 32351106 at 5 (E.D.Pa. 2002).

Consistent with the Court of Appeals validation of the legitimacy of conservation easements and the preservation of open space, the Zoning Law provides that "Conservation easements are the preferred method to protect open space under New York State law. The permanent preservation of such open space shall be legally assured to the satisfaction of the Planning Board and Town Attorney." (§ 200-39(A)(1)). The Zoning Law further provides that:

> The conservation easement or other legally binding instrument shall permanently restrict the open space from future subdivision, shall define the range of permitted activities, and, if held by a conservation organization, shall give the Town the ability to enforce these restrictions. Under no circumstances shall any development be permitted in the protected open space at any time, except for the following uses:
> [1] Conservation of open land in its natural state (for example, woodland, fallow field, or managed meadow). The clearing of woodland shall generally be prohibited, except as necessary to create trails and passive recreation facilities, to maintain scenic viewsheds identified by the Town as important aesthetic resources, and to insta ll subsurface sewage disposal systems. The determination of necessity shall lie with the Planning Board. (§ 200-20(A((1)(b)).

Similarly, the Milan subdivision regulations include among its objectives:

- Proper provision shall be made for leaving undeveloped natural areas and corridors to mitigate the adverse environmental impacts of subdivision and to sustain a diversity of native vegetation and wildlife, to protect water resources, agricultural land and scenic viewsheds and to implement the Town's policies of protection of its environmental and cultural resources pursuant to the Comprehensive Plan and Zoning Law. (§ 177-2(J).

- Existing features which would add value to residential development or whose preservation would benefit the Town, such as groves of mature trees, large individual trees, scenic vistas, watercourses, historic areas and similar irreplaceable assets, should be preserved, insofar as possible, through sensitive design of the subdivision. Lands designated for protection under provisions of regulations relating to wetlands, aquifers and other environmental/cultural resources shall also be preserved, insofar as possible, through the subdivision process. The Planning Board may, in order to ensure the preservation of such resources, and to mitigate potentially adverse impacts of land subdivision, encourage an applicant to place easements upon such lands as should be protected as a condition of subdivision approval. (§ 177-21(B)).

The zoning designation of the property pursuant to the Zoning Law is Very-Low-Density Agricultural District ("A5A"). "The purpose of the Very-Low-Density Agricultural District is to maintain the Town's rural character in areas distinguished by the presence of both small and large farms, sparse residential development, and where limitations on development are designed to protect both natural resources and open space. Clustering of residential dwellings is encouraged to maintain traditional agricultural settlement patterns and to support farming in the community." (§ 200-6.1(A)).

Consequently, the conservation easement that permitted Plaintiff to create six new lots and to build five additional dwellings in addition to the existing single-family home on the property sought to preserve the rural character of the area and to preserve open space – all legitimate governmental goals. Plaintiff could not have constructed additional dwellings in the area of the conservation easement and Plaintiff and the subsequent home owners in her development maintain the right to continue to exclude the public therefrom. In short, the conservation easement is a well-established land use tool to advance a legitimate governmental interest without burdening the property owner's interests significantly, if at all. Clearly, a cognizable taking has not been asserted as a matter of law.

**POINT IX**
**CLAIMS AGAINST INDIVIUDAL DEFENDANTS**
**BARRED BY *KNORR-PENNINGTON* DOCTRINE**

The *Noerr-Pennington* doctrine immunizes those who petition government or advocate a position before an agency. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Boulware v. Nevada Department of Human Resources*, 793 F.2d 800 (9th Cir. 1992). *Noerr-Pennington* applies to governmental entities and governmental officials. *See Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000); *Miracle Mile Associates v. City of Rochester*, 617 F.2d 18, 20 (2d Cir. 1980); *Fischer Sand & Aggregate Co. v. City of Lakeville*, 874 F.2d 957, 959-60 (D. Minn. 1994); *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1387, 1390 (E.D.N.Y. 1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990). The *Noerr-Pennington* doctrine also applies to action brought against municipalities pursuant to 42 U.S.C. § 1983, see *Manistee Town Center*, 227 F.3d at 1093; *Fischer Sand & Aggregate*, 874 F.2d at 959; *State of South Dakota v. Kansas City Southern Industires*, 880 F.2d 40 (8th Cir. 1989), *cert. denied*, 493 1023 (1990); *Gorman Towers v. Bogoslavsky*, 626 F.2d 607, 614-15 (8th Cir. 1980); *Missouri v. National Organization for Woman*, 620 F.2d 1301, 1316-19 (8th Cir.), *cert. denied*, 449 U.S. 842 (1980), and to FHA claims. *See Alpha III, Inc. v. City of San Diego*, 187 Fed.Appx. 709 (9th Cir. 2006); *Affordable Housing Development Corp. v. City of Fresno*, 433 F.3d 1182 (9th Cir. 2006); *Sanghvi v. City of Claremont*, 328 F.3d 532 (9th Cir.), *cert. denied*, 540 U.S. 1075 (2003), *rehearing denied*, 540 U.S 1170 (2004).

The rationale for the application of *Noerr-Pennington* immunity to municipalities and municipal officials was explained in *Fischer Sand & Aggregate, supra*, as follows:

> The fact that Defendants are governmental officials and
> acted in their official capacity does not deprive then of the
> *Noerr-Pennington* doctrine. In fact, it is more likely that
> such government defendants act with the intent of
> advancing the public interest in exercising their First
> Amendment rights than private petitioners; this buttresses
> the justification for clothing the Defendant with immunity
> from suit arising from their petitioning activities.

874 F.Supp. at 957 (*citing Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492,

501 (1988)).

Consequently, the volunteers and other individuals to the extent they are sued in

their personal capacities based on statements made by them possessed an absolute right to

comment on Plaintiff's applications and they are immune from suit for their commenting

on such an issue of public interest.

**POINT X**
**INDIVIDUAL DEFENDANTS ENTITLED**
**TO QUALIFIED IMMUNITY**

"[A] government official sued in his individual capacity ... is entitled to qualified

immunity in any of three circumstances: (1) if the conduct attributed to him is not

prohibited by federal law, ...; (2) where that conduct is so prohibited, if the plaintiff's

right not to be subjected to such conduct by the defendant was not clearly established at

the time of the conduct, ...; or (3) if the defendant's action was 'objective[ly] legal[ly]

reasonable[ ] ... in light of the legal rules that were clearly established at the time it was

taken.'" *X-Men Security, Inc. v. Pataki*, 196 F.3d 56 65-66 (2d Cir. 1999) (citations

omitted) (*quoting Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

With respect to the second prong, the Second Circuit determined in *Zahra*, 48

F.3d at 686, that "Whether a defendant actually violated a plaintiff's rights is not the

central issue: 'Even defendants who violate constitutional rights enjoy a qualified

immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard.'" *Id. (quoting Davis v. Scherer*, 468 U.S. 183 (1984)); *see also Natale v. Town of Ridgefield*, 927 F.2d 101, 104-05 (2d Cir. 1991) ("Essentially, if it is objectively reasonable for an official to believe that he or she is acting within constitutional and statutory bounds, the official will be insulated from liability stemming from his or her conduct."). The Second Circuit has determined that:

> We have held that in determining whether a right was clearly established at the time the defendants acted, a court should consider: '(1) whether the right in question was defined with 'reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.'"

*Wright v. Smith*, 21 F.3d 496, 500 (2d Cir.1994) (*quoting Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir.1993)).

It is submitted that no Constitutional right of Plaintiff was violated herein, that if, in fact, Plaintiff's rights were violated in some manner, such was not clearly established at the time and that, in any event, the individual Defendants' actions were objectively legally reasonable in light of the legal rules that were established at the time it was taken. As a result, it is respectfully submitted that the claims against the individual Defendants should be dismissed based on qualified immunity.

### POINT XI
### FAILURE TO ALLEGE FILING OF PROPER NOTICE
### OF CLAIM BARS CLAIM PURSUANT TO
### NEW YORK STATE CONSTITUTION, STATE LAW

A claim against a municipality seeking to recover in tort is barred unless a notice of claim is served within 90 days and an action is commenced within one-year and 90

days - after the happening of the event upon which the action is based. *See* General

Municipal Law § 50-e; *Greifenberger v. Pav*, 225 A.D.2d 731, 640 N.Y.S.2d 197 (2d

Dept. 1996), *lv. dismissed in part, denied in part*, 89 N.Y.2d 963, 655 N.Y.S.2d 883, 678

N.E.2d 495 (1997); *Magaldino v. Town of Hurley*, 177 A.D.2d 906, 576 N.Y.S.2d 664

(3d Dept. 1991); *Klein v. City of Yonkers*, 73 A.D.2d 931, 423 N.Y.S.2d 685 (2d Dept.

1980), *aff'd*, 53 N.Y.2d 1011, 442 N.Y.S.2d 477, 425 N.E.2d 865 (1981); *Pleasant Ridge*

*Townhouses Homeowners' Association v. T & D Construction Corp.*, 181 A.D.2d 871,

581 N.Y.S.2d 857 ((2d Dept. 1992); *McVan v. City of New Rochelle*, 127 A.D.2d 825,

511 N.Y.S.2d 942 (2d Dept. 1987). A claimed violation of a constitutional right pursuant

to the New York State Constitution also is subject to the State's notice of claim

requirements. *See Bidnick v. Johnson*, 253 A.D.2d 779, 677 N.Y.S.2d 614 (2d Dept.

1998); *Alaxanian v. City of Troy*, 69 A.D.2d 937, 415 N.Y.S.2d 293 (3d Dept. 1979).

Because Plaintiff did not allege that she served a notice of claim with respect to the state

law claims and, upon information and belief, did not serve a notice of claim, the claims

pursuant to the State law are defective and must be dismissed.

### POINT XII
### COMPLAINT FAILS TO STATE A CLAIM FOR
### TORTIOUS INTERFERENCE WITH CONTRACT/
### PROSPECTIVE ECONOMIC ADVANTAGE

In addition to the fact that the claims are barred as a consequence of Plaintiff's

failure to serve a proper and timely notice of claim, the complaint fails to state a cause of

action.

The elements of a tortious interference with contract claim are: (1) existence of a

valid contract between plaintiff and a third party; (2) defendant's knowledge of the

contract; (3) defendant's intentional procurement of a breach of the contract without

economic justification; (4) actual breach of the contract; and (5) resulting damages. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82, 668 N.E.2d 1370, 1375 (1996); *American Preferred Prescriptions, Inc. v. Health Management, Inc*., 252 A.D.2d 414, 417, 678 N.Y.S.2d 1, 4 (1st Dept 1998).

To establish a claim for tortious interference with prospective economic advantage, a plaintiff must demonstrate that a defendant's interference with its prospective business relations was accomplished by wrongful means or that the defendant acted for the sole purpose of harming the plaintiff. *See Caprer v. Nussbaum*, 36 A.D.3d 176, 204, 825 N.Y.S.2d 55, 78 (2d Dept. 2006); *Snyder v. Sony Music Entertainment, Inc*., 252 A.D.2d 294, 299-300, 684 N.Y.S.2d 235, 239 (1st Dept. 1999). Wrongful means requires physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure; more than simple persuasion is required. *See Guard-Life Corp. v. Parker Hardware Mfg. Corp*., 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 632, 406 N.E.2d 445, 449 (1980); *Snyder*, 252 A.D.2d at 300, 684 N.Y.S.2d at 239; *Home Town Muffler Inc. v. Cole Muffler Inc*., 202 A.D.2d 764, 608 N.Y.S.2d 735 (3d Dept. 1994).

In the first place, contrary to the basis for Plaintiff's claims the granting of subdivision or any land use approval is not the basis for a contract between a municipality and the applicant. Moreover, without prolonging the matter, it is clear that the complaint fails to allege facts to substantiate the elements of those claims.

## CONCLUSION

The Defendants respectfully submit that the complaint is deficient and fails to state any viable claim as a matter of law.

Dated: Suffern, New York
          December 21, 2007


                                    Rice & Amon


                                    /s/_____
                                    By: Terry Rice (TR 1022)
                                    Attorneys for Defendants
                                    Four Executive Boulevard
                                    Suite 100
                                    Suffern, New York 10901
                                    (845) 357-4000