## CONSERVATION EASEMENT

**THIS CONSERVATION EASEMENT** is made this 28th day of June 2006, by **CARMEN O. MCCULLOCH**, having an office/address at 2 Tudor City, Apartment 4, New York, NY 10017("Grantor"), in favor of the **TOWN OF MILAN**, a municipal corporation in Dutchess County, State of New York, having offices at Wilcox Memorial Town Hall, 1415 Route 199, Milan, NY 12571 ("Grantee").

**WITNESSETH:**

**WHEREAS,** grantor is the owner of certain property in the Town of Milan, Dutchess County, State of New York, consisting of approximately 35.216 acres and more particularly described in a deed recorded in the Dutchess County Clerk's Office on March 261, 2004, as Document # 02 2004 3996, and which property is also known as "Woodland Hill Subdivision" a subdivision as shown on a subdivision map entitled "Woodland Hills" prepared by Povall Engineering and last revised on June 16, 2006, which subdivision conditional final approval from the Town of Milan Planning Board on June 29, 2005, which map was filed on JUNE 29, 2006 in the Dutchess County Clerk's Office as filed map number 11944 ; and

**WHEREAS,** the Master Plan of the Town of Milan encourages the preservation of open and undeveloped space; and

**WHEREAS,** Grantor has offered to place certain portions of the subdivision, as described and shown on page 2 of 5 of the

above-referenced filed map, said page being titled "Woodland Hills Subdivision Layout & Easement Plan", and as further described by metes and bounds on Exhibit "A" hereto under a perpetual conservation easement (the "Easement Area"); and

WHEREAS, by resolution dated May 22, 2006 the Town Board of the Town of Milan agreed to accept this Conservation Easement; and

WHEREAS, Grantee is a municipal corporation as defined in Section 2 of the General Municipal Law and qualified under Sections 501(c)(3) and 17(h) of the Internal Revenue Code, and a "public body", as defined in ECL 49-0303(3), qualified under the NYS Environmental Conservation Law Article 49, Sections 49-0301 et seq, to accept a conservation easement; and

WHEREAS, Grantor intends, as owner of the Easement Area, to convey to Grantee the right to preserve and protect the conservation values of the conservation area in perpetuity; and Grantee agrees, by accepting this grant, to honor the intentions of Grantor stated herein and preserve and protect in perpetuity the conservation values of the Easement Area.

NOW, THEREFORE, in consideration of the above and the mutual covenants, terms, conditions, and restrictions contained herein, and pursuant the laws of New York State and in particular ECL Article 49, Title 3, Grantor hereby grants and conveys to Grantee a conservation easement in perpetuity over the Easement Area of the nature and character to the extent hereinafter set forth (the

"Easement").

1.    <u>Purpose</u> It is the purpose of this Easement to protect the natural forested and open space condition of the Easement Area.

2.    <u>Rights of Grantee</u>    To accomplish the purpose of this easement, the following rights, but not obligations, are conveyed to Grantee and its authorized agents, by this Easement:

      (A)    To preserve and protect the open space and forested character of the Easement Area pursuant to values identified in the Town's master plan.

      (B)    In accordance with ECL 49-0305(6), to enter upon the easement area at reasonable times in order to inspect the Easement Area, gaining access through Lots 1, 2, 3, 4, 5, and 6, to monitor Grantor's compliance with and otherwise assure compliance with the terms of this Easement, it being anticipated that the easement may be inspected once per year, provided that such entry shall be upon prior reasonable notice to Grantor, and Grantor shall not unreasonably interfere with Grantor's use and quiet enjoyment of the Easement Area.  Grantee shall have the right to delegate its inspection responsibilities from time to time as Grantee determines is appropriate and necessary.  Grantee shall notify Grantor in

writing by certified U.S. Mail, return receipt
requested, if Grantee delegates its inspection
responsibilities; and

(C)   To prevent any activity on, or use of, the
Easement Area that is inconsistent with the
purpose of this Easement and to require the
restoration of areas or features of the Easement
Area that may have been damaged by any
inconsistent activity or use.

3.   <u>Prohibited Uses</u>     The following activities and uses
are deemed inconsistent with the purposes of the Easement, and
are prohibited:

(A)   There shall be no industrial or commercial use of
the land.  There shall be no further subdivision
of the property burdened by this Easement.

(B)   No structures shall be placed on the land within
the Easement Area.

(C)   There shall be no alteration of natural wetland
areas.

(D)  Land within the Easement Area which is now forested
shall remain forested.

(E)  As provided for in the Town of Milan Code
provisions dealing with conservation easements,
there will be no use of rifle ranges or motorized
vehicles, such as snowmobiles and off-road

recreational vehicles, upon the Conservation

Easement Area except to provide access to all

parts of Grantor's property for normal management,

security, or emergencies purposes as deemed

necessary by Grantor.

4.    <u>Reserved Rights</u>    Grantor reserves to herself, and to her successors and assigns, all rights accruing from ownership of the Property, including the right to sell, transfer, lease, mortgage or otherwise encumber the Property, subject to this easement; the right to engage in, or permit others to engage in, all uses of the Property that are not expressly prohibited herein and are not inconsistent with the purpose of the Easement; and including the unqualified right to exclude others from the land by all lawful means. All rights, interests, and privileges of the Grantor in the Easement Area not specifically donated, granted, transferred and conveyed herein shall remain with the Grantor, her heirs, successors and assigns.

Specifically EXCEPTED and RESERVED from the grant of this easement are the rights and privileges described below, which are reserved to the Grantor, together with the right to grant the same or similar non-exclusive rights to others:

A.    Horticultural and managed forest land, equestrian, passive recreational and open space uses.  This shall include, without limitation, passive recreational use such as private trail walking,

nature viewing and similar activities.

    B.    General maintenance of property, including pruning, cutting, planting, landscaping, and clearing of trees and other vegetative materials in accordance with generally accepted forest conservation practices.

    5.   <u>Enforcement</u>    The Grantee may enforce this conservation easement against any violating party, in law or equity pursuant to the provisions of Article 49 of the Environmental Conservation law against any or all owners of the property forming the Easement Area, or any part thereof.

    A.    If Grantee determines that Grantor, Tenants, or any of her successors or assigns, is in violation of this Easement or that a violation is threatened, such enforcing party shall give written notice by certified U.S. Mail, return receipt requested, to the violating party of such violation and demand corrective action sufficient to cure the violation and, where the violation involves injury to the Easement Area resulting from a use or activity inconsistent with the purpose of this Easement, to restore the portion of the Easement Area so injured.  If the violating party fails to cure the violation within thirty (30) days after receipt of notice thereof from

Grantee, or under circumstances where the violation cannot be reasonably cured within a thirty (30) day period, fails to begin curing such violation within the thirty (30) day period, or fails to continue diligently to cure such violation until finally cured, Grantee may bring an action at law or in equity in a court of competent jurisdiction to enforce the terms of this Easement, to enjoin the violation, by temporary or permanent injunction, to recover any damages, including recovery of reasonable attorneys fees, to which it may be entitled for violation of the terms of this Easement, which damages shall be applied to defray the cost of undertaking corrective action within the Easement Area, and to otherwise require the restoration of the Easement Area to the condition that existed prior to any such injury. Grantee's rights under this paragraph apply equally in the event of either actual or threatened violations of the terms of this Easement, and Grantor agrees that Grantee's remedies at law for any violation of the terms of this Easement are inadequate and that Grantee shall be entitled to the injunctive relief described in this paragraph, both prohibitive and

mandatory, in addition to such other relief to
which Grantee may be entitled, including specific
performance of the terms of this Easement, without
the necessity of proving either actual damages or
the inadequacy of otherwise available legal
remedies.  Grantee's remedies described in this
paragraph shall be cumulative.  Where the party
alleged to be in violation disputes the allegation
that violation exists, the determination as to the
existence of such violation shall be made be a
court of competent jurisdiction.

B.    Grantee's Discretion  Enforcement of the terms
of this Easement shall be at the discretion of the
Grantee, and any forbearance by Grantee to
exercise its rights under this Easement in the
event of any breach of any term of this Easement
by Grantor shall not be deemed or construed to be
a waiver by Grantee of such terms or of any
subsequent breach of the same or any other term of
this Easement of any of Grantee's rights under
this Easement.

C.    Acts Beyond Grantor's Control      Nothing contained
herein shall be construed to entitle Grantee to bring any action
against Grantor for any injury to or change in the Easement Area
resulting from causes beyond Grantor's control, including,

without limitation, fire, flood, storm and earth movement, from
any prudent action taken by Grantor under emergency conditions to
prevent, abate or mitigate significant injury to the Easement
Area resulting from such causes.

6.    Access      No right of general access to any portion of
the Easement Area is conveyed by this Easement.

7.    Costs and Liabilities; Maintenance of Premises
Grantor retains all responsibilities and shall bear all costs and
liabilities of any kind related to the ownership, operation,
upkeep, and maintenance of the Easement Area.  Grantor retains
the obligation to pay taxes and shall pay taxes assessed and
levied on the Easement Area, but this shall not be construed as
impairing the rights of any party to challenge the assessment of
property pursuant to law.

8.    Amendment      This Conservation Easement may be
amended only with the written consent of Grantee and all the then
owners of the Easement Area.  Any such amendment shall be
consistent with the basic purpose of this Conservation Easement,
and shall comply with Article 49, Title 3 of the Environmental
Conservation Law, Section 170 of the Internal Revenue Code and
all applicable regulations.

9.    Assignment      This Easement is transferable, but
Grantee may only assign its rights and obligations under
this Easement to a qualified organization, at the time of the
transfer, under Section 170(h) of the Internal Revenue Code of

1954, as amended, and the applicable regulations promulgated thereunder, and authorized to acquire and hold conservation easements under Article 49 of the New York State Environmental Law.

10. Extinguishment    If circumstances arise such as render the purpose of this Easement impossible to accomplish, this Easement can only be terminated or extinguished, whether in whole or in part, in accordance with the provisions of ECL 49-0307.

11. Subsequent Transfers    Grantor agrees to incorporate the terms of this Easement in any deed or other legal instrument by which she divests herself of any interest in all or a portion of the Easement Area, including, without limitation, a leasehold interest. The failure of Grantor to perform any act required by this paragraph shall not impair the validity of this Easement or limit its enforceability in any way.

12. Reverter. In accordance with the Town of Milan Code §200-39(A)(1)(a)(2), in the event that the Grantee becomes unwilling or unable to continue carrying out its functions, this Easement shall, at the Grantee's option, revert back to the Grantor. The Grantee shall notify the Grantor, her successors or assigns of its intent for the Easement to revert back to the Grantor. Grantor and Grantee hereby agree to execute, within sixty days of delivery of said written notice, such document(s) or agreements(s) which are necessary for said reverter to take

effect.  Grantee shall record said document(s) or agreement(s) in the land records of Dutchess County, New York.  Payment of any recording fees shall be the responsibility of the Grantor, her successors or assigns.

13.  <u>Existing Conditions.</u>    This Conservation Easement is granted subject to any existing conditions currently shown on the "Woodland Hills Subdivision Layout & Easement Plan" which is Page 2 of 5 of the above-referenced filed subdivision map, those conditions described in Exhibit "B" (Written Description of Existing Conditions on the Easement Area), attached hereto and incorporated herein.

14.  <u>Miscellaneous Matters.</u>

(A)  Nothing in this Agreement, express or implied, is intended to confer upon any third-party any rights or remedies under or by reason of this Agreement.  Both parties represent that they are entering into this transaction as principal for their own account and not as an agent for any other party.

(B)  This Agreement is deemed to be a contract entered into and shall be interpreted under the laws of the State of New York, except the provisions thereof pertaining to the conflicts of laws.  Any general rule of construction to the contrary notwithstanding, this Easement shall be liberally construed in favor of ECL Article 49.  If any provision in this instrument is found to be ambiguous, an interpretation consistent with the purpose of this Easement that would render the provision valid

shall be favored over any interpretation that would render it invalid.

(C)   Each party will, at any time and from time to time, at the request of any other party, make, execute, acknowledge and deliver, or cause to be done, all such further acts, deeds or other documents as may reasonably be necessary or appropriate to carry out the provisions of this Conservation Easement, or which are necessary to qualify this instrument as a conservation easement under ECL Article 49, Title 3 or any regulations promulgated pursuant thereto.

(D)   This Agreement constitutes the entire agreement of the parties as to the subject matter hereof, supersedes all prior understandings (whether written or oral) and may not be amended or modified except by a written document signed by both parties and stating that it is intended to amend this Agreement.

(E)   Both parties represent to the other party that they have the power and authority to execute, deliver and perform this Agreement, that all actions necessary to authorize the execution, delivery and performance of this Agreement have been duly taken, that they have duly executed and delivered this Agreement and that this Agreement is legal, valid and binding on them, and enforceable against them, in accordance with its terms.

(F)   The parties understand that the Supreme Court, Dutchess County, New York, shall have exclusive jurisdiction of any disputes arising therefrom and that all disputes shall be

tried before the Court without a jury.

(G)  All notices and written communications between the parties concerning this Agreement, shall be deemed to have been delivered upon receipt or refusal of delivery to the following addresses:

If to the Town:        Supervisor
                       Town of Milan
                       Wilcox Memorial Town Hall
                       20 Wilcox Circle
                       Milan, NY 12571

If to Grantor:         Carmen O. McCulloch
                       2 Tudor City
                       Apartment 4
                       New York, NY 10017

Either party may change the address to which notice is to be sent by like notice.

(H)  Grantee shall record this instrument in timely fashion in the office of the Dutchess County Clerk, Town Clerk and Town Assessor.  Payment of any recording fees shall be the responsibility of the Grantor, her successors or assigns.

(I)  Payment for the title report prepared in connection with this Easement shall be the responsibility of the Grantor, her successors or assigns.

(J)   Termination of Righs and Obligations     A party's rights and obligations under this Easement terminate upon transfer of the party's interest in the Easement or Easement Area, except that liability for acts or omissions occurring prior to transfer shall survive transfer.

TOWN OF MILAN

By _____
      John V. Talmgage, Supervisor

_____
      Carmen O. McCulloch

*Kenneth M McCulloch her attorney in fact*

STATE OF NEW YORK, COUNTY OF DUTCHESS      ) ss.:

On the 20th day of June , 2006 before me, the undersigned, a notary public in and for said state, personally appeared CARMEN O. MCCULLOCH, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

CHRISTINE H. GUIDO
Notary Public, State of New York
No. 02GU6019818
Qualified in Dutchess County
Commission Expires February 16, 20__

_____
NOTARY PUBLIC

STATE OF NEW YORK, COUNTY OF DUTCHESS      ) ss.:

On the 29 day of June , 2006, before me, the undersigned, a notary public in and for said state, personally appeared JOHN V. TALMAGE, SUPERVISOR, TOWN OF MILAN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

**Record & Return to**
Janis M. Gomez Anderson
Van DeWater & Van DeWater, LLP
40 Garden Street, 5th Floor
Poughkeepsie, NY 12601

EXHIBIT A (Page 1 of 5)

Michael A. Dalbo
*Land Surveyor, P.C.*
10 Crum Elbow Road
Hyde Park, N.Y. 12538
(845) 229-9383

May 09, 2006

Survey Description
for
Woodland Hills Subdivision
Open Space #1

All that parcel of land situate in the Town of Milan, County of Dutchess and State of New York designated as Open Space #1, being more particularly bounded and described as follows:

Beginning at a point on the westerly line of the lands of the State of New York, Taconic State Park Commission, marking the northeast corner of Lot #3 and also being the northeast corner of the herein described open space parcel; thence running along the westerly line of the lands of the State of New York, Taconic State Park Commission, and the easterly line of Lot #3 and Lot #6, S20°26'05"E 1119.00' to a concrete monument found in a stone wall intersection marking the southeast corner of Lot #6 and the southeast corner of the herein described open space parcel and also being the northeast corner of a burial ground reputedly owned or in the care of the Lafayette Cemetery Association; thence running along the center of the stone wall marking the north line of the last mentioned burial ground, N84°18'00"W 51.43' and N82°19'00"W 148.69' to a stone wall corner marking the northwest corner of the last mentioned lands and the northeast corner of the burial ground of James Ward; thence running along the north, west and south boundary lines of the burial ground of James Ward, being the lands now or formerly of Anna Ward and Margaret J. Egeland, reserved in Liber 608 of deeds at page 412, along boundary lines set forth and established by this description, N62°31'00"W 30.00', S20°48'00"W 30.00' and S62°31'00"E 30.00' to a point in a stone wall marking the west line of the lands reputedly owned by the Lafayette Cemetery Association, described above; thence continuing along the stone wall and the westerly line thereof, S20°48'07"W 82.59' to a stone wall corner on the northerly line of a former highway and/or private road; thence running along the center of a stone wall marking and the assumed northerly line of said private road and/or highway, N59°16'00"W 27.68',

Page 1 of 3
file: 3458_OS1

N50°30'00"W 51.00', N54°14'00"W 32.12', N62°10'00"W 39.48',
N71°50'00"W 161.72', N73°10'00"W 355.34', N75°49'00"W
192.67', N62°01'00"W 53.15' and N59°09'00"W 109.58' to a
wall angle; thence leaving the stone wall and running along
a line of no physical bounds, distant about 16.5' northerly
of the center of the private road and/or highway,
N64°22'00"W 95.41' to a point in the last mentioned stone
wall; thence continuing along the center of a stone wall,
along the assumed northerly line of the private road and/or
highway, N76°39'00"W 119.69', N80°43'00"W 28.95',
N87°22'00"W 30.69', S84°22'00"W 112.83', N87°36'00"W 20.57'
and N68°09'00"W 50.78' to an angle in the wall; thence
leaving the wall and running N44°25'00"W 75.47' to southwest
corner of the herein described open space parcel; thence
running into and through Lot #6 and Lot #5, N45°35'00"E
79.99' to a point on the division line between Lot #5 and
Lot #4; thence running along the last mentioned division
line, S44°24'32"E 58.03', S77°52'11"E 17.75' and N86°10'35"E
147.42' to a point; thence continuing into and through Lot
#4, N05°45'37"W 184.04', to a point on the division line
between Lot #4 and Lot #1; thence running along the last
mentioned division line, N67°55'51"W 102.08' to a point;
thence continuing into and through Lot #1, N41°22'21"E
46.47', S73°09'10"E 68.62', N69°42'26"E 75.33', N87°25'05"E
87.35' to the common corner of Lot #1 and Lot #2, at a point
on the northerly line of Lot #4; thence continuing along the
division line between Lot #1 and Lot #2, N00°34'10"W 238.05'
to a point; thence running into and through Lot #2 and
continuing into and across Lot #3, S80°44'42"E 703.87',
N34°47'46"E 99.97', N35°07'21"E 93.30' and N20°14'38"W
109.52' to a point on the northerly line of Lot #3; thence
running along the northerly line thereof, S79°21'05"E
116.77' to the point of beginning.

Excepting from the above described open space parcel an area
of land within the confines thereof, being bounded and
described as follows:

Beginning at a point within the confines of Lot #5, marking
the southwest corner of the herein described parcel, at a
point distant S68°41'46"E 62.29' from the southeast corner
of Lot #4; thence running into and through Lot #5,
N19°58'17"E 100.02', N72°18'26"E 97.18', N15°10'45"W 22.68',
S73°09'52"W 79.51', N19°50'15"E 94.25' to the northwest
corner of the herein described parcel, N86°48'55"E 144.56',
N86°33'39"E 144.36', S64°43'04"E 81.95' and S87°25'04"E
50.08' to a point on the division line between Lot #5 and

Page 2 of 3
file: 3458_OS1

Lot #6; thence running into and through said Lot #6,
S79°44'44"E 132.89', S78°49'54"E 126.57' to the northeast
corner of the herein described parcel, S20°22'44"E 175.72',
S20°33'20"E 156.69' to the southeast corner of the herein
described parcel, N74°05'22"W 29.22', N84°52'47"W 76.09',
S51°42'42"W 72.19' and N71°48'10"W 164.40' to a point;
thence continuing through Lot #6 and running into Lot #5,
N76°11'13"W 137.19', N73°12'42"W 171.29', N26°25'32"W
25.35', N75°07'28"W 29.39', S50°43'00"W 20.76' and
N75°45'56"W 196.75' to the point of beginning.

Containing 5.242 acres of land, to be excluded from Open
Space Area #1, described above.

The residual land area of Open Space #1, amounts to
16.111 acres of land more or less.

Michael A. Dalbo
Land Surveyor, P.C.
10 Crum Elbow Road
Hyde Park, N.Y. 12538
(845) 229-9383

May 09, 2006

Survey Description
for
Woodland Hills Subdivision
Open Space #2

All that parcel of land designated as Open Space #2, situate in the Town of Milan, County of Dutchess and State of New York, being more particularly bounded and described as follows:

Beginning at a point within the confines of Lot #6, at a point marking the southern most corner of the herein described open space parcel, distant N58°11'14"E 129.49' from the southeast corner of Lot #5; thence running within the confines of Lot #6, N44°57'57"W 49.97' to the western most corner of the herein described open space parcel, N45°26'11"E 19.90', to the northern most corner of the herein described open space parcel, S44°44'00"E 49.62' to the eastern most corner of the herein described open space parcel, and S44°25'02"W 19.70' to the point of beginning.

Containing 0.023 acre (986 square feet) of land more or less.

Page 1 of 1
file: 3458_OS2

Michael A. Dalbo
*Land Surveyor, P.C.*
10 Crum Elbow Road
Hyde Park, N.Y. 12538
(845) 229-9383

May 09, 2006

Survey Description
for
Woodland Hills Subdivision
Open Space #3

All that parcel of land designated as Open Space #3, situate
in the Town of Milan, County of Dutchess and State of New
York, being more particularly bounded and described as
follows:

Beginning at a point on the northerly line of Lot #3, at a
point distant S79°21'05"E 84.72' from the northwest corner
of said Lot #3; thence running along the northerly line of
Lot #3, S79°21'05"E 475.28' to the northeast corner of the
herein described open space parcel; thence running into and
through Lot #3, S10°38'55"W 40.00' to a point on the
division line between Lot #3 and Lot #2; thence running
along the last mentioned division line, N79°21'05"W 332.83'
to a point; thence running into and through Lot #2 and
continuing into and through Lot #1, S35°03'23"W 144.74',
S32°09'28"W 141.76', S12°29'38"W 135.42', N68°32'18"W
38.51', N28°41'51"W 101.25', N07°30'10"W 55.82', N01°57'53"E
43.12', N20°32'01"E 37.16', N35°17'51"E 85.23', N35°55'25"E
85.76' and N28°18'14"E 69.50' to the point of beginning.

Containing 1.613 acres of land more or less.

Page 1 of 1
file: 3458_OS3

EXHIBIT B

# Conservation Easement Existing Conditions
# Woodland Hills Subdivision

Approximately 51% of the Woodland Hills 35 acre subdivision is in a conservation easement. The areas of conservation easement are distributed throughout the Woodland Hills Subdivision as follows:

| Lot # | Acres | Cons E. Acres | %Cons Easement |
|---|---|---|---|
| 1 | 5.68 | 1.21 | 21.3 |
| 2 | 5.19 | 2.33 | 44.9 |
| 3 | 5.91 | 3.69 | 62.4 |
| 4 | 5.17 | 2.70 | 52.3 |
| 5 | 6.3 | 3.67 | 53.5 |
| 6 | 6.97 | 4.45 | 63.2 |
| Total: | 35.22 | 18.02 | 51.2 |

According to the Soil Survey of Dutchess County (Natural Resources Conservation Service), Nassau-Cardigan complex and Pittstown silt loam soils predominate.

There are a substantial number of large trees, including oak, maple, and white pine, throughout the conservation easement. The wooded areas in the easement range from successional northern hardwoods to mature mesophytic lowland forest. Species include white oak (Quercus alba), red oak (Q. rubra), black oak (Q. velutina), red maple (Acer rubrum), shagbark hickory (Carva ovata), eastern red cedar (Juniperus virginiana), black birch (Betula lenta), and grey birch (B. populifolia).

Five large isolated oaks have been included in the easement as follows:
Lot 5:
   a) Two oaks (36 inch diameter and 32 inch diameter) are approximately 30 feet from each other at the eastern end of the lot.
   b) A 40-inch diameter oak is at the southern border of the lot.

Lot 6:
   a) One 36-inch dbh oak is approximately 25 feet from a triple trunk 16-inch dbh oak tree.
Also included in the easement on lot 3 are several patches of pink lady's slippers (Cypripedium acaule) listed by NYSDEC as an 'exploitably vulnerable' species. Exploitably vulnerable native plants are likely to become threatened in the near future throughout all or a significant portion of their ranges within the State if causal factors continue unchecked.

The easement along the southern border of lots 4, 5, and 6 is parallel to a dirt lane and a 100-foot NYSDEC regulated wetland (RC-22) buffer. The easement on Lot 6 surrounds a small Lafayette Cemetery Association burial ground. The easement then turns eastward along lots 6 and 3, which are parallel to the Taconic State Parkway southbound lane. This creates a buffer between the subdivision and the Taconic State Parkway buffer protecting a valuable wildlife habitat. Fauna such as hawks, owls, deer, bobcats, and coyotes can use this corridor.

The easement includes a shrubby old field on lot 4.

Other fauna of particular interest are the regionally rare red-bellied snake (Storeria occipitomaculata) found in the upland meadow on lot 1, the regionally vulnerable wood frog (Rana sylvatica), bobcat (Lynx rufus), scarlet tanager (Piranga olivacea), as well as the many species listed in the Natural Resources Survey completed by the applicant's consultant.