## INTRODUCTION

The Town of Milan, the Town of Milan Town Board, the Town of Milan Planning Board, and the individual members of those Boards, the Town Zoning Enforcement Officer, and the individual defendants, Frank Margiotta, Barbara Hughey, and Charlotte Norman, (Defendants) on December 21, 2007, moved to dismiss the Complaint pursuant to the Federal Rules of Civil Procedure (Fed.R.Civ.P.) Rule 12(b) (6). In support of their motion, Defendants submitted an 18-page Attorney's Declaration of Terry Rice (Rice Decl.) and a 46-page memo of law. On January 18, 2008, Defendants submitted a 35-page memo, having modified their original memo to comply with the Court's order of December 17, 2007 that their memo be no longer than that length. This memo is the response of Carmen Otero Mc Culloch (Plaintiff) to Defendant's motion.

On January 25, 2008, Plaintiff filed an Amended Complaint, pursuant to Fed.R.Civ.P., Rule 15(a)  as of right because no responsive pleading had been filed by Defendants. **The filing of the Amended Complaint moots Defendants' motion to dismiss** that is addressed to the original Complaint. By responding to Defendants' motion, Plaintiff is not conceding that Defendants' motion is still viable.

Defendants' memo jumps from arguing for dismissal of Plaintiff's second cause of action, then goes back to arguing for dismissal of Plaintiff's first cause of action, then makes arguments without identifying the cause of action to which the arguments purport to relate, and goes back and forth to different claims, in no particular order. In this response, Plaintiff follows the outline of the claims, as they were presented in the Complaint, and addresses Defendants' arguments relating to each cause of action, *seriatim*, in the same order as those claims were presented in the Complaint.

Defendants set forth in the Rice Declaration what they claim to be the facts. That recitation is inaccurate and omits many of the key facts. Defendants do not set forth the standards for review of a motion to dismiss pursuant to Fed.R.Civ.P., Rule 12(b)(6), so Plaintiff has done that.

Defendants make every effort to down-play the significance of this action, describing it as "concocted . . . violations . . .  to federalize routine, run-of-the-mill land use disputes". Rice Decl. ¶3. They begrudgingly acknowledge the latest imposition on Plaintiff and her property, by saying that she cannot "generally cut down live trees" on her property, Defendants' memo, at p. 26, but trivialize the impact of this latest restriction and their treatment of Plaintiff generally. Institutionalized discrimination is a "big deal". The facts in the Mc Culloch Declaration ¶¶2-18 demonstrate that the Town has institutionalized discrimination, and that Plaintiff and others like her have suffered, and are suffering, from that discrimination according to the very same plan that is laid out in the Milan Comprehensive Plan (MCP) and the Complaint.

## A. STANDARD OF REVIEW

The standard for review is discussed in one of the cases cited by Defendants. In *Deepwells Estates v. Incorporated Village of Head*, 973 F. Supp. 338, 343 (E.D.N.Y. 1997), *appeal dismissed*, 162 F.3d 1147 (2d Cir. 1998) the Court stated:

> On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". (All citations to authorities have been omitted in this quote).

> The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken".

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, and in doing so, it is well settled that the Court must accept the allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff.

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6).

## B. STANDARD FOR AMENDMENTS

Plaintiff has filed an Amended Complaint, as of right, pursuant to Fed.R.Civ.P., Rule 15(a). In the event that the Court addresses Defendants' motion to dismiss, and to the extent that the Court finds that the Complaint has to be further amended, Plaintiff requests permission to do so. In the *Deepwells Estates* case, the plaintiff indicated that after the decision on the motion to dismiss, they would move the Court to amend their complaint. *Id.* at 352. In the instant case, Plaintiff has indicated the same, if necessary, so it is also appropriate to set forth here the standard for amendments. The Court in *Deepwells Estates* stated:

Pursuant to Fed.R.Civ.P. 15(a), "leave to amend shall be freely given when justice so requires." (again all citations to authority omitted).

A motion to amend should be denied only for good reason such as "undue delay, bad faith, futility of amendment, and perhaps, most important, the resulting prejudice to the opposing party.'" . . . Mere delay alone will not suffice as a basis for the district court to deny the right to amend. Parties have been permitted to assert new claims long after they acquired the facts necessary to support such claims, and have even been permitted to amend a complaint on the eve of trial.

> In the present case, the Court finds, without considering the actual underlying merits, that the plaintiffs' claims, once amended as discussed above, are not futile and could arguably state causes of action. To conserve judicial resources, the Court grants the plaintiffs leave to amend their complaint in conformity with this Memorandum Decision and Order, without the necessity of a formal motion.

> *Id.* at 352.

## C. STANDARDS FOR SUPPLEMENTAL JURISDICTION CLAIMS

In the instant case, Plaintiff has asserted Federal claims in her first three causes of action, and those claims form the linch-pin for federal court jurisdiction. The third through sixth causes of action are state law claims. The fifth claim is for declaratory relief that is the federal court equivalent to what would be a claim pursuant to Article 78 of the New York Civil Practice Law & Rules (CPLR). If the Court sustains one or all of those first three claims, as Plaintiff believes it will, then Plaintiff requests that the Court continue those state law claims before this Court pursuant to 28 U.S.C. §1367(a).

Plaintiff has moved for dismissal of the second and third causes of action, claiming that these must be asserted *first* in state court proceedings. In the event that the Court denies Defendants' motion to dismiss Plaintiff's first cause of action, as Plaintiff believes it will, then even if the Court were to agree with Defendants' argument that these second and third causes of action may be asserted in state court proceedings, Plaintiff requests that the Court retain jurisdiction of the second and third causes of action, not because the Court would have original jurisdiction, but because this Court would still have supplemental jurisdiction, and would have jurisdiction over those other claims pursuant to 28 U.S.C. §1367(a). All of the claims arise from the same series of events, and it would conserve judicial resources, and prevent inconsistent decisions, if all of the claims were considered together.

**POINT I     PLAINTIFF'S FIRST CAUSE OF ACTION UNDER THE FHA SHOULD NOT BE DISMISSED**

Defendants present various arguments for dismissal of Plaintiff's First Cause Of Action spread throughout their memo. They are assembled and addressed in this POINT.

**A. Plaintiff's FHA Claim Is Not Barred By The Statute Of Limitations.** (Responding to Defendants' Memo, at p. 4) Defendants argue that Plaintiff's claim under the Fair Housing Act, 42 U.S.C. §3601 *et seq*. (FHA) is barred by the statute of limitations. That argument has consistently been rejected. The FHA, at 42 U.S.C. §3613(a), provides that

> An aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . . to obtain appropriate relief with respect to such housing practice or breach.

The limitations period for claims brought pursuant to the FHA begins on the date of "the last asserted occurrence of [the discriminatory] practice". *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381, 102 S. Ct. 1114, 1125, 71 L.Ed.2d 214 (1982).

> In a suit claiming that the defendant engaged in a continuous course of conduct that causes damages, however, a plaintiff can recover for damages that preceded the limitations period if they stem from a persistent process of illegal discrimination. *Stewart v. CPC International, Inc.*, 679 F.2d 117, 120 (7th Cir. 1980); *McKenzie v. Sawyer*, 684 F.2d 62,72 (D.C.Cir. 1982); *see generally, Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993).

*Tyus v. Urban Research Management et al.*, 102 F.3d 256, 265-266 (7th Cir. 1996); *see also, Eastern Paralyzed Veterans Ass'n, Inc. v. Lazurus-Burman Associates, Inc.*, 133 F.Supp. 2d 203, 212 (E.D.N.Y. 2001) (violation of FHA was continuing so statute of limitations was repeatedly being triggered); *Connolly v. Mc Call,* 254 F.3d 36 (2d Cir. 2001) (Employment discrimination); *Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) (Employment discrimination).

5

The facts set forth in the Complaint, and as summarized in the Mc Culloch Decl. at ¶¶19-29 detail the FHA violations and show why they are timely. The ten events that triggered a claim for damages are set forth in the Mc Culloch Decl. p. 9, n. 3.

**B**. **The Complaint States a Cause of Action for Violation of the FHA.** (Responding to Defendants' memo, pp. 5-14).  Defendants argue that the Complaint does not state a cause of action for violation of the FHA because Plaintiff is not "an aggrieved person", that Plaintiff does not have standing to assert a claim for violation of the FHA, and that the facts alleged do not state a claim for violation of the FHA. Defendants argue that Plaintiff has asserted her claim under the FHA too soon, because there is no "final" decision, so the claim is not "ripe" for judicial review, and they argue that Plaintiff's claim under the FHA has been filed too late, and that she should have filed her FHA claim as an Article 78 proceeding. *See* Defendants' Memo, POINT III, at p. 5.

**1. Plaintiff is "aggrieved" within the meaning of the FHA.**  The FHA has a broad definition of who is a person "aggrieved" under the FHA. *Havens Realty Corp. v. Coleman, supra, at* 372, 102 S. Ct. at 1121 (the sole requirement for standing under the FHA is the "[Article] III minima of injury in fact". To meet this standard, plaintiff must allege that he or she has suffered a distinct and palpable injury and that the injury is traceable to the defendant's discriminatory conduct". *Id*. at 376). *See also*, *Assisted Living Associates LLC v. Moorestown Tp.,* 996 F.Supp. 409, 425 (D.N.J. 1998) ("Congress has provided a cause of action under 42 U.S.C. §3613 to a particularly broad group of potential plaintiffs: 'an aggrieved person', which is defined to include 'any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person *will be injured* by a discriminatory housing practice that is *about to occur*.'

6

42 U.S.C. §3613(i) (emphasis added)." An increase in the costs for development constitutes an actionable injury. *Id*. at 425, citing to 7 other cases also. *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995), *cert. denied*, 518 U.S. 1017, 116 S.Ct. 2546, 135 L.Ed.2d 1067 (1996) ("An injury need not be economic or tangible to confer standing (Citations omitted)". *Id.* at 425.

The FHA makes it unlawful "to refuse to sell or rent . . .  or otherwise make unavailable or deny a dwelling to a person because of . . . national origin". 42 U.S.C. §3604(a). In *LeBlanc-Sternberg v. Fletcher*, *supra*, the Second Circuit stated that "The phrase 'otherwise make unavailable' has been interpreted to reach a wide variety of discriminatory housing practices, including discriminatory zoning restrictions. (Citations omitted)". *Id*. at 424.

The FHA applies to zoning regulations *and to the interpretation and application of zoning regulations*. *See LeBlanc-Sternberg v. Fletcher*, *supra* ("where it has been established that a zoning ordinance will likely be applied in a discriminatory manner, it is unnecessary that the municipality actually so apply it before the ordinance may properly be challenged" *Id.* at 425); *Regional Economic Community v. City of Middletown*, 294 F.3d 35, 45-46 (2d Cir. 2002) ("All three statutes (FHA, ADA, and the Rehabilitation Act), apply to municipal zoning decisions". *Id*. at 45-46), *cert. denied*, 537 U.S. 813 (2002); *Tsombanidis v. West Haven Fire Dept., et al.*, 352 F.3d 565, 574 (2d. Cir. 2003) (FHA applies to interpretation of fire code, and action was not mooted because municipality changed its interpretation of the fire code); *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996); *Reinhart v. Lincoln County*, 482 F.3d 1225, 1229

(10th Cir. 2007). *See also* listing of cases cited in *Assisted Living Associates LLC v. Moorestown Tp., supra,* at 425.

The facts set forth in the Complaint that establish that Plaintiff is aggrieved, has standing, and that her claims are "ripe" for adjudication are set forth in the Mc Culloch Declaration at ¶¶31-33.

**2. Plaintiff has stated a cause of action for violation of the FHA.** (Responding to Defendants' memo, at pp. 8-17). The principles developed under Title VII are applicable in FHA cases. *See Regional Economic Community, supra.* ("We analyze claims of intentional discrimination under the FHA . . . under the familiar *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973), burden-shifting analysis established for employment discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* (citations omitted)" *Id.* at 48-49). "An FHA violation may be established on a theory of disparate impact or one of disparate treatment." *LeBlanc-Sternberg v. Fletcher, supra* at 425. "A disparate-treatment claim requires proof of 'differential treatment of similarly situated persons or groups' (citations omitted)". *Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007).

The FHA applies to claims of disparate treatment, *i.e.*, "intentional" conduct. The "intent to discriminate" for purposes of determining whether a *prima facie* case has been stated may be inferred from the totality of the circumstances, including "the fact, if it is true, that the law bears more heavily on one [group] than another". *LeBlanc-Sternberg, supra* at 425, citing *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976).

. "If the motive is discriminatory, it is of no moment that the complained-of conduct would be permissible if taken for nondiscriminatory reasons". *LeBlanc-Sternberg, supra,* at 425. Statements made at public meetings, or by public officials, may be considered in assessing whether the action was taken for improper motive. *Id.* at 425-6; *see also, Regional Economic Community, supra* at 50-51 wherein the Second Circuit quoted extensively from administrative proceedings to determine "intent".

In *Village of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the Supreme Court stated that "intent" could be inferred, and set forth factors from which intent could be derived. *Id.* at 265.

"Intent" is established if discrimination was *one* significant factor in the decision making process. *Regional Economic Community, supra at 49 (*"to establish a prima facie case of discrimination (under the disparate treatment theory) under the FHA . . . the plaintiffs must present evidence that "animus against the protected group was *a* significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Id*. (Emphasis as in original); *see also, Hispanic Counseling Center, Inc.v. Village of Hempstead*, 237 F.Supp.2d 284, 292-93 (E.D.N.Y. 2002).

The FHA applies to conduct that is discriminatory even if the discrimination was not intentional. A disparate impact claim challenges a facially neutral policy that "actually or predictably results in . . . discrimination." *Tsombanidis, supra* at 575, citing *Huntington Branch, NAACP v. Town of Huntington,* 844 F.2d 926, 934 (2d Cir. 1988), *aff'd,* 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988). In a disparate impact case, the plaintiff does not have to show that the policy was formulated with discriminatory

intent. *Id.* at 934.    "[A] showing of significant discriminatory effect suffices to demonstrate a [prima facie] violation of the Fair Housing Act." *Hallmark Developers, Inc. v. Fulton County, GA.*, 466 F.3d 1276, 1286 (11th Cir. 2006).

The Town *openly* discriminates in favor of Town residents, and against City People, and *openly* states that delay should and will be used to force persons like Plaintiff to consent to Conservation Easements. The facts establishing this are in the Milan Comprehensive Plan (MCP) and the Complaint, and are assembled in the Mc Culloch Decl. at ¶¶3-18. Defendants' aim in zoning and administration of its zoning and land use regulations might be summed up by the phrase "that each community should take care of its own first", an objective which is constitutionally impermissible. *King  v. New Rochelle Municipal Housing Authority*, 442 F.2d 646, 649 (2nd Cir. 1971), *cert. denied* 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971).   A municipality may not enact zoning regulations, nor administer them, exclusively for the benefit of its residents while ignoring regional needs. Thirty two years ago, the Town of New Castle tried to do the same things that the Town of Milan is doing today. New Castle banned apartment houses, (Milan has done the same thing in its MCP, 7-7, and its zoning ordinances) because it was experiencing the same kind of growth which Milan feels at this time, and had the same concerns, that is, an influx of City People. In *Berenson v. Town of New Castle*, 38 N.Y. 2d 102, 378 N.Y.S.2d 672 (1975), the New York Court of Appeals rejected the New Castle zoning, finding that ". . . residents of Westchester County, as well as the larger New York City metropolitan region, may be searching for multiple-family housing in the area (New Castle) to be near their work and for a variety of other social and economic

reasons. There must be a balancing of the local desire to maintain the *status quo* within the community and the greater public interest that regional needs be met". *Id.* at 111.

Treating persons differently, on the basis of residency has been rejected. "The goal of preventing an influx of outsiders is constitutionally impermissible. The residency requirement is not rationally related to the goal of planning". *Cole v. Housing Authority*, 435 F.2d 807 (1st Cir. 1970), at 813; *see also, Allen v. Town of North Hempstead*, 121 Misc. 2d 795, 469 N.Y.S.2d 528, 533 (Sup. Ct. Nassau Co. 1983) (one-year residency requirement to be eligible for certain senior citizen housing is constitutionally impermissible); *Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322, 22 L.Ed.2d 600 (1969) (a durational residency requirement may not be enacted for the purpose of rewarding long-term residents for past contribution to the community).

Discrimination against persons on the basis of residency is also a violation of civil rights laws when the use of that factor has a statistically significant adverse impact against minorities or any protected group. *Newark Branch, NAACP v. Town of Harrison*, 940 F.2d 792 (3d Cir. 1991); *U.S. v. City of Warren*, 759 F. Supp. 355 (E.D. Mich. 1991); *U.S. v. Cicero*, 786 F.2d 331 (7th Cir. 1986); *U.S. v. Elmwood Park*, 43 FEP Cases 995, 1987 WL 9586 N.D.Ill. 1987).

These cases noted above were analyzed under the disparate impact theory; defendants presented the same putative defenses that Defendants present in this case; the defendants lost in those cases, and Defendants will lose in this case. It is premature at this stage to address those defenses. However, the same kind of statistical data that has been alleged in this case sufficed to state a claim in those cases.

In the *Town of Harrison* case, the Town's police force was largely white. The Town precluded persons who were not residents from applying for positions as police officers. This policy was found to be discriminatory because there was a substantial representation of African-Americans in Newark, N.J., and they were precluded from being considered for these positions.[1]

Defendants' conduct cannot be excused because of assumptions made by Defendants about City People. *See Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544 (1971) (Employer violated Title VII because it refused to accept applications from women with pre-school age children, while hiring men with pre-school age children, based on the assumption that women have to take care of the children, so they are more likely to miss work for that reason. Even though 80% of the employer's work force was females, the Supreme Court held that the sex-plus discrimination was as unlawful as a refusal to hire based on sex alone. *Id*. at 544).

Defendants' policy of imposing more onerous standards on minorities and City People, and of banning minorities and City People from cutting any live tree on their property, is disparate treatment. It is just as discriminatory as a policy of refusing to

---

[1] If Defendants had imposed different and more onerous requirements for subdivision applications being made by persons who were residents of Puerto Rico, to create lots that were to be marketed to persons who were residents of Puerto Rico, than they did for local residents, the discriminatory treatment would be obvious. If Defendants had stated, as they have here, months after the Town had approved the subdivision, that those residents of Puerto Rico could not cut any live trees on 50% of their property in Milan, and could not clear brush on 50% of their property, but did not impose such a requirement on any local residents who were subdividing their property, the discriminatory effect would be obvious. Similarly, if Defendants had one standard of treatment for local residents, and another for persons who were from Harlem, in New York City, the discriminatory effect would be obvious. Similarly, if the Town would not accept subdivision applications from persons with 'kinky' hair, the rule would be neutral on its face, but it would obviously have an adverse and discriminatory effect on minorities.

accept subdivision applications from persons who are minorities and City People. As in the *Town of Harrison* case, and the others cited with it, there is no rational basis for the difference in treatment. Defendants' explicit policy of favoring Milan residents, and disfavoring City People, may be neutral on its face insofar as race or national origin are concerned, but it has a discriminatory impact on minorities. Plaintiff is a minority, and she has been adversely affected by the policy.

A violation of the FHA can also be established if a challenged practice or ordinance discriminates against protected class members on its face and serves no legitimate governmental interest. *Horizon House Developmental Servs. v. Township of Upper Southampton,* 804 F.Supp. 683, 693 (E.D. Pa. 1992), *aff'd.*, 995 F.2d 217 (3d Cir. 1993). As the facts assembled in the Mc Culloch Decl. clearly demonstrate, the Town's MCP discriminates on its face in favor of Town residents and against City People.

The role of the MCP is significant. New York's Town Law §263 requires that Town zoning regulations be made in accordance with a comprehensive plan. *Randolph v. Town of Brookhaven*, 37 N.Y.2d 544, 547, 375 N.Y.S.2d 315 (1999). The purpose of this requirement is to ensure that the zoning regulations benefit the entire community and not just individual or special interests. *Asian Ams. For Equality v. Koch*, 72 N.Y.2d 121, 131, 531 N.Y.S.2d 782, 527 N.E.2d 265 (1999). Defendants' discriminatory actions described in the Complaint were in conformance with the MCP's intent to discriminate in favor of Milan residents, and against all others, especially City People.

 Defendants argue that a Plaintiff must allege at the Complaint stage that the Defendants actually *knew* the national origin of Plaintiff. What Defendants actually knew

is to be established by the fact-finder, after hearing, as in *Mitchell v. Shane,* 350 F.3d 39 (2d Cir.2003), and not at the pleading stage. Even then, "intent" may be inferred.

Plaintiff has stated a claim against the individual defendants Frank Margiotta, Barbara Hughey, and Charlotte Norman because she has made allegations against them, which, if proven, will establish that they participated in the discriminatory conduct in violation of the FHA. Non-government persons are certainly appropriate defendants in an FHA Case.  *See Cornwell v. Robinson, et al.*, 23 F. 3d 694 (2d Cir. 1994).

**3. Plaintiff's FHA action is "ripe" for consideration now.** (Responding to Defendant's memo, at p.1) Defendants argue that Plaintiff's claims, including Plaintiff's FHA claim, have been filed too soon, and that this claim is not "ripe" for consideration, because there has been no "final" decision.

The standards for assessing a claim that the matter is not "ripe" were summarized in *Venetian Casino Resort, LLC v. EEOC,* 409 F.3d 359 (D.C. Cir. 2005). It stated:

> The framework for assessing ripeness was established in *Abbott Laboratories v. Gardner,* 387 U.S. 136 (1967), in which the Supreme Court provided a two-pronged test that requires a reviewing court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. at 149. Under the "fitness of the issues" prong, the first question for a reviewing court is "whether the disputed claims raise purely legal questions and would, therefore, be presumptively suitable for judicial review". (Citations omitted). Next, we consider whether the court or the agency would benefit from postponing review until the policy in question has sufficiently "crystallized" by taking on a more definite form. (Citations omitted). The "hardship" prong of the *Abbott Laboratories* test is not an independent requirement divorced from the consideration of the institutional interests of the court and agency (Citation omitted).

*Id.* at 366.

These claims are "ripe". The issues are ready for judicial review. Plaintiff has suffered and is suffering substantial harm. *See* Complaint ¶¶52-59. Plaintiff has already

lost one potential purchaser, id. at ¶51, 58-59, and Defendants have destroyed her ability to market and sell these lots to any potential purchaser. *Id*. Had Defendants told Plaintiff before she started the process, or before she agreed to the CEA, that this condition would be imposed later, after she had invested hundreds of thousands of dollars to create marketable lots, she never would have started and never would have agreed to the CEA. As it is, she cannot sell these lots with this restriction. Most certainly she will tell other City Persons and other minorities that they should not do business in Milan, which is what Defendants want. This matter is fit for review by the Courts and Plaintiff is suffering substantial harm right now.

"Ripeness" of a claim is a jurisdictional issue. The Courts must consider "ripeness" of a claim, even if the opposing party does not raise the issue. In all of the cases noted above that related to standing or status of the plaintiff as "aggrieved' within the meaning of the FHA, the Courts addressed the claims. Therefore, they implicitly found them to be 'ripe' for adjudication.

Defendants also argue that Plaintiff cannot proceed because she could have attacked some of the decisions by using Article 78 of the CPLR. (Defendants' memo, p. 5). This argument has repeatedly been rejected.

Relief under the FHA is available even though the person aggrieved has not sought other remedies that might have been available. *See, e.g.*, *Groome Resources Ltd. v. Parish of Jefferson,* 234 F.3d 192, 199 (5th Cir. 2000) (ripeness addressed, and found because the FHA violation creates immediate injury. ("Ripeness in the Fair Housing Act context must be distinguished from ripeness cases involving unconstitutional takings or other zoning issues. *See Bryant Woods, Inc. v. Howard County, MD.,* 124 F.2d 597, 602

(4th Cir. 1997) ("Fair Housing Act claims are thus unlike takings claims, which do not ripen until post-decisional procedures are invoked without achieving just compensation"). *Id.* at 199, n. 6.

There is no need for developer to apply for a variance in order for a claim for violation of FHA to become "ripe" for adjudication. *Assisted Living Associates, LLC. v. Moorestwn Tp.*, *supra* at 426-7, citing  to 11 other cases so holding. *See also*, *Bryant Woods, supra at* 601, citing to the Congressional Record relating to enactment of the FHA that states that "An aggrieved person is not required to exhaust the administrative process before filing a civil action", *id*. at 601, and finding that claimant did not have to exhaust either the administrative process provided for in the FHA or administrative process provided for by the Howard County Board of Appeals before commencing an action under the FHA. *Id. See also, Patsy v. Florida Bd. of Regents*, 457 U.S. 496 (1982) ("the initial question whether exhaustion is required should be answered by reference to congressional intent; and a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent". *Id* at 502.  In *Patsy*, the Supreme Court noted at 502, n. 4, that this applied "as well to those [cases] in which state remedies are available".

The MPB, through its Chairman, Lauren Kingman, required Plaintiff to seek and obtain a DEC FMP as a condition for Plaintiff or her successors to cut any tree. Plaintiff made the application, as required. The DEC denied the application, as alleged in the Complaint. That decision by the DEC was "final" and at that point the issue was "ripe" without any need for Plaintiff to appeal the DEC's determination. *De St. Aubin v. Flacke,* 68 N.Y. 2d 66, 505 N.Y.S.2d 859, 496 N.E.2d 879 (1986).

Furthermore, Plaintiff has alleged that Defendants' own actions prevent any possible review. These facts are set forth in the Mc Culloch Decl. at ¶¶ 34-39. Defendants' failure to adhere to the administrative procedures is notorious. [2]

In *Stanley v. Bd. of Appeals of Village of Piermont,* 168 Misc. 797 (Sup. Ct., Rockland Co., 1938), the Court held that the words "filed in the office of the Board", in a statute requiring a decision of the village board of zoning appeals to be filed in the office of the Board, meant delivery of decision to the village clerk to be kept on file. *See also, Mc Cartney v. Village of East Williston,* 149 A.D.2d 556-7 (2d Dept. 1989), in which the Court held that motion to dismiss was property denied, because it was the burden of the municipality to establish that a vote had been taken, and that the vote of each member was reflected in the record filed, so as to establish that the board formally acted as a government body. Since the municipality had not met this burden, its motion was denied.

The New York Court of Appeals has ruled that the question of whether an administrative determination is "final and binding" can be a "thorny" issue, and that the nature of the record made in connection with the particular administrative action is a factor in determining whether the statutory standard has been met. *Yarbough v. Franco*, 95 N.Y.2d 342, 717 N.Y.S.2d 79, 740 N.E.2d 224 (2000). A challenge that would have been on an empty record does not have to be made. *Id.* at 347.

---

[2] *See Red Wing Properties, Inc. v. Town of Milan, et al.,* Index No. 2883/06, Decision dated February 7, 2007, invalidating Town's Master Plan ("The court's review is limited to whether the Town's determination violated lawful procedures, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion. While any one of the procedural defects standing alone could possibly be construed as a mere irregularity and inconsequential, this court cannot ignore the cumulative nature of several procedural errors nor assign relative importance to each one as that is a legislative responsibility. To ignore them all would seem to defeat the purpose of the statutes requiring these procedures").   A copy of this unpublished decision accompanies Plaintiff's Response Memo.

On a motion to dismiss pursuant to Fed.R.Civ.P., Rule 12 (b) (6), when the Complaint has alleged that Defendants have not done what they should have done so as to place Plaintiff in a position to pursue some other remedy, there is no presumption of regularity. Defendants cannot ask the Court to *presume* that Defendants have done everything necessary to 'trigger' Plaintiff's rights to take such actions.

**4. Plaintiff's FHA action is not barred by the *Noerr-Pennington* doctrine.** (Responding to Defendants' memo, at p. 31). Defendants argue that Plaintiff's claims are barred because Defendants have the right to say or do whatever they want to oppose Plaintiff's entitlement to non-discriminatory treatment because Defendants' rights to free speech would be impinged were the law otherwise.

Defendants' *Noerr-Pennington* doctrine claim is a potential affirmative defense. A motion to dismiss pursuant to Fed.R.Civ.P., Rule 12(b)(6) considers whether the Complaint fails to state a claim; consideration of affirmative defenses is done later. No case that Defendants cite considered this affirmative defense in the context of a motion to dismiss pursuant to Fed.R.Civ.P., Rule 12(b)(6).

The Second Circuit has regularly relied upon what persons said during administrative proceedings in FHA cases to establish "intent", and without concern that such consideration would infringe on rights to free speech. *See Regional Economic Community v. City of Middletown, supra* at 50 ("City officials and Planning Board members made numerous statements from which a reasonable juror could infer that they denied RECAP's permit application because of the identity of its clients. For example, Mayor DeStefano began the . . . hearing . . . by stating: . . ."). In *LeBlanc-Sternberg v. Fletcher, supra* at 418, it referenced to the flyers distributed by one of the defendants

"asking 'Why do we need to incorporate?' and listing 'Zoning control and enforcement' among the reasons to ascertain intent and motivation'." *Id.* at 418.

Defendants' confuse two separate issues. Even assuming that persons have the right to protest against activity, even for a discriminatory motive, under the *Noerr-Pennington* doctrine, that does not condone action by public officials who are knowingly responsive to those discriminatory statements and act because of the discriminatory motives voiced by these persons. The distinction was noted in *Innovative Health Systems v. City of White Plains*, 117 F.3d 37, 49 (2d Cir. 1997):

> The public hearing and submitted letters were replete with discriminatory comments about drug and alcohol dependent persons based on stereotypes and general, unsupported fears. *See supra*, notes 1.3. Although the City certainly may consider legitimate safety concerns in its zoning decisions, it may not base its decisions on the perceived harm from such stereotypes and generalized fears. As the district court found, a decision made in the context of strong, discriminatory opposition becomes tainted with discriminatory intent even if the decisionmakers personally have no strong views on the matter. . . .  *See also, Support Ministries for Persons With AIDS, Inc. v. Village of Waterford, N.Y.*, 808 F.Supp. 120, 134 (N.D.N.Y. 1992) (zoning officials who "bowed to political pressure" by those with animus against people with alcohol-and-drug related disabilities violated Fair Housing Act).

*Id.* at 49. *See also LeBlanc-Sternberg, supra* at 425, citing *U.S. v. Yonkers Bd. of Education*, 837 F.2d 1181, 1217, 1223, 1226 (2d Cir. 1987), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).

Even if the actions were to be considered "speech", they fall within the "sham" exception to the doctrine because the activity was "objectively baseless", as alleged in the Complaint, and these defendants are alleged to have been motivated by bad faith.

## POINT II – DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AND THIRD CAUSES OF ACTION SHOULD BE DENIED

Plaintiffs' second and third causes of action are asserted based on 42 U.S.C. §1983. They each incorporate all the prior allegations in the Complaint, *see* ¶¶137, 157, and ask the Court to grant make whole relief "to place Plaintiff in the position that she would have had if the Town of Milan and the MPB had not engaged in the illegal actions". Compl. p. 37, "Wherefore Clause" for Second Cause of Action, subsection (e); p. 39, "Wherefore Clause" for Third Cause of Action, subsection (e). The parts of the Complaint preceding these causes of action had alleged facts that showed that Plaintiff had been treated differently than others, and that the difference in treatment was because of her national origin and place of residence.

As the Court stated in *Deepwells Estates, Inc, supra* at 348:

> Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. Mc Collum*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. O'Connor*, 490 U.S. 386, 394, 119 S. Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) and *Baker v. O'Connor, supra*, 443 U.S. at 140, 99 S.Ct. at 2692.

Using this approach, and proceeding with the "first step", it can be seen that Plaintiff is claiming that her rights to due process and her right to equal protection have been violated. *See* Caption, Second Cause of Action, p. 33 "Without Due Process"; Caption, Third Cause of Action, "For Violation of the Equal Protection Clause"; *see also*, ¶¶158-159.

The next step is to identify what property rights Plaintiff is claiming were denied to her in violation of these provisions of the U.S. and N.Y.S. Constitutions. Plaintiff is claiming that all of the adverse actions alleged were in violation of these provisions of

these constitutions, and is asking for relief to make her whole. *See* "Wherefore Clauses" referenced above.

The statute of limitations for actions under 42 U.S.C. §1983 is three years. *See Deepwells Estates, supra* at 344-345. Since Plaintiff filed the Complaint on November 5, 2007, Plaintiff can claim entitlement to relief for events back to November 5, 2004. This is to a time *before* Plaintiff finally had succumbed to the demands of the MPB that she convey the CEA as a condition for subdivision approval. *See* Complaint, ¶¶ 21-25.

These causes of action, as they relate to the CEA, assert that there never should have been a CEA required of Plaintiff, that it was arbitrary and capricious for the Town and MPB to demand that she enter into a CEA as a condition for subdivision approval, and that a CEA never would have been required of her in the first place if she had been a local resident, who was not minority. *See* Compl. p. 38, Third Cause of Action, "Wherefore Clause, subsections (a) (b)", wherein Plaintiff seeks "(a) a Declaratory Judgment that the action of the Town of Milan and the MPB in imposing the Conservation Easement Agreement on Plaintiff as a condition of subdivision approval . . . is arbitrary and capricious and capricious, and serves no valid state purpose; (b) a Declaratory Judgment that the Conservation Easement Agreement . . . is null and void".

Pursuant to the second and third causes of action, Plaintiff is seeking "make whole" relief for the discriminatory acts that led to the damages she suffered for the illegal acts that are listed in the Mc Culloch Decl. page 9, note 3, *minus* the item that is number 10, because that is a demand made against Defendants Frank Margiotta, Barbara Hughey, and Charlotte Norman, but *plus* a declaratory judgment that the CEA is null and void, for the reasons alleged.

The Complaint states an equal protection claim. In *HBP Associates v. Marsh,* 893

F.Supp. 271, 279 (S.D.N.Y. 1995), the Court described the standards for such a claim.

> The Equal Protection Clause "is essentially a direction that all persons similarly
> situated should be treated alike." *City of Cleburne, v. Cleburne Living Center,
> Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Absent
> infringement of a "fundamental right" or the use of a "suspect classification", the
> rational basis test is the proper standard of review for equal protection challenges
> to government action. *See City of New Orleans v. Dukes*, 427 U.S.297, 303, 96
> S.Ct. 2513, 2516-17, 49 L.Ed.2d 511 (1976). Under the rational basis test, the
> Defendants may not exercise their authority in an arbitrary, capricious or
> unreasonable manner. To be sustained, their exercise of authority must be shown
> to bear a rational relationship to a legitimate governmental objective. (Citations
> omitted).

*Id*. at 279.  If the claim states that action was based on a "suspect classification",

"such as race, religion or alienage," then the "rational basis" standard of review is not

used. *Id.* at 280.  Instead the "strict scrutiny" standard of review is used.

In this case, Plaintiff contends that the treatment was based on national origin and

place of residence, so the "strict scrutiny" standard of review would be applicable.

However, as this point, it is not necessary to determine which standard of review is to be

used. Plaintiff has stated a cause of action for a violation of the equal protection clause,

through 42 U.S.C. §1983. The Supreme Court has made it clear that the exhaustion of

administrative remedies is not necessary in order to state a claim under 42 U.S.C. §1983.

*Patsy v. Florida Bd. of Regents*, *supra*.

For purposes of assessing Plaintiff's equal protection claim it is not necessary to

determine whether the imposition of the CEA as a condition for subdivision approval

constituted a "taking", as Defendants describe a "taking', *i.e*., a loss of the entire use of

the property. The decision that Plaintiff seeks to have reviewed is the decision to impose

any CEA at all on Plaintiff as a condition of her being granted subdivision approval.

Under the strict scrutiny standard, Defendants will have to establish that it was absolutely necessary for Milan to condition its approval on Plaintiff's agreeing to the CEA, whether lesser alternatives were available, and whether other persons who were Milan residents and non-minorities had a CEA imposed on them in such situations. Plaintiff has alleged ample facts to show that Mr. Borenstein had an even larger, more intrusive subdivision, and that he did not even have a Positive Declaration of Significance under SEQRA, let alone a CEA, imposed on him.

Plaintiff also seeks to have all of the decisions that will be reviewed under the equal protection clause reviewed under the due process clause. Due process claims can be for violation of substantive due process rights and/or violation of procedural due process rights. *See Deepwells Estates, supra* at 350.

A claimant asserts a cognizable claim for violation of substantive due process when he or she claims "that the defendants acted in an arbitrary and irrational manner in depriving them of their property interest. *See Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir. 1996)." *Id.* at p. 350. All that is required to assert a claim of violation of substantive due process is to allege what Plaintiff has described above, and that the action deprived the claimant of an interest in property. The acts and deprivations of property rights that Plaintiff has described above are very similar to the property rights that the Court recognized in *Deepwells, supra* at 350. In *Deepwells*, the Court told the Plaintiff to amend the Complaint, to so state, and that Plaintiff would then state a claim for violation of substantive due process rights.

With regard to procedural due process, the *Deepwell* decision noted that if the claim was that the deprivation was the consequence of a policy, and not some isolated

act, then a claim is stated for violation of procedural due process, even in a "taking" case, and that nothing further was required. *Id.* at 350.

Plaintiff has stated the Defendants have an institutionalized policy of favoring Milan residents, and disfavoring City People and minorities, and using delay as an instrument to administer the policy. The pertinent facts are set forth in the Mc Culloch Decl. at ¶¶ 3-18. Plaintiff has asserted many claims under 42 U.S.C. §1983 for violation of her equal protection and due process rights, not just a claim for an unjust 'taking' without compensation. *Id.* at page 9, n. 3.

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S. Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court established certain special rules relating to the issue of when a claim for unjust 'taking' without compensation would be "ripe" for adjudication.  It held that two conditions must be met before such a claim may be initiated, if one is using the federal courts in the first instance, that is, under 28 U.S.C. §1331. It stated:

1. the claimant must have sought a final decision as to the permitted use of the property;  and

2. the claimant must seek just compensation for the taking from the state government if a procedure is available to the claimant.

*Id*. at 194.

In the instant case, claimant has done that. There are really two "final decisions" relating to her property.[3] The first of the decisions is that made by the MPB that Plaintiff

---

[3] The cases indicate that unless and until there is a "final" decision, the courts would have to speculate about what would have happened. That is because 'takings' cases are generally presented at the point where the municipality has made a demand to which the developer does not accede, but, instead, contests. In the instant case there is no need to speculate about what would have happened, because it has already happened.

had to agree to a CEA as a condition of subdivision approval. That decision was made prior to the conditional final approval, and then embodied in the final approval, which led to the execution of the subdivision plats by Plaintiff, the MPB and the Town Board, and the execution of the CEA by the parties.

With respect to that first "final decision" there is no doubt that it is final within the meaning of *Williamson*, since there was nothing contingent, nothing speculative about subdivision approval being granted and nothing speculative about the property rights created by such decisions. That "final decision" left Plaintiff with some uses of the CEA and formally conveyed other rights in the CEA to the Town. The only conditions were that Plaintiff act as provided for in the approval, and she did that.

The second "final decision" was the decision made by Mr. Kingman, on October 5, 2007, when he modified the terms of the CEA so as to provide that no live tree could be cut in the CEA, unless the DEC provided a FMP, and Plaintiff and her successors acted pursuant to that FMP. The only contingency in that decision was that Plaintiff had to seek the FMP. Plaintiff did that, and was told that the DEC would not do a FMP for the Plaintiff's property. That decision became final when the DEC refused to create the FMP. The decision of the DEC was not subject to review. The FMP is a totally voluntary program, and the DEC can exercise its discretion to refuse to create a FMC.

This second "final decision" did three things: (1) it transformed the CEA area, which is 17 acres, to a useless area, insofar as Plaintiff and her successors were concerned, effectively reducing the acreage in each lot from 5-7 acres to 1-3 acres; (2) it effectively reduced the value of even the smaller lots, because persons who had those lots would not be able to cut trees close to their houses, if those trees were in the CEA, even if

25

those trees posed a danger to health and property, and they could not eliminate diseased and invasive trees that were in the CEA, even though those kinds of trees might threaten the trees and vegetation in the parts of their property that was not in the CEA; and (c) it effectively prevented Plaintiff from marketing her lots. Like Mr. L.S., no one wants to buy lots with such restrictions.[4]

The second element of *Williamson* is that claimant must seek just compensation for the taking from the state government "if a procedure is available to the claimant". Plaintiff moves for dismissal of the part of Plaintiff's claims that seeks compensation for an unjust "taking", and argues that Plaintiff has not sought compensation. Plaintiff's response to that argument is two-fold. First, there was not a procedure for Plaintiff to seek such compensation. *See* Mc Culloch Decl. ¶¶32-39. Second, whatever procedure that might have been available to Plaintiff is actually being used in this case. The claim under whatever procedure might be available under state law can be entertained by this court by using its authority under 28 U.S.C. §1367 (a).

The Supreme Court's concern in *Williamson* and the other cases that Defendants cite was and is that the federal courts would become the courts of first instance, *i.e.*, the forum to which claimants would go first when there were disputes about 'takings'; that those claimants would claim that there was a federal question, and invoke federal court jurisdiction under 28 U.S.C. §1331.

That concern is not present in this case. In this case, this court already has federal court jurisdiction pursuant the FHA. Because this Court already has jurisdiction under the

---

[4] Defendants argue at p. 24 of their memo that in order for there to be a "taking" a claimant must have been deprived of all use of her property. Plaintiff has done this. Plaintiff's claim is that Defendants have deprived her of all use of the 17-care CEA area. *See also*, Mc Culloch Decl. ¶41.

FHA, it can entertain any other claims that arise from the same events, even if those claims are asserted pursuant to state statutory law or common law, under its supplemental jurisdiction provided for in 28 U.S.C. §1367 (a).[5] For that reason, if this Court believes that the allegations made do not suffice to allege compliance with the second requirement of *Williamson,* and that there is some state law, statutory or otherwise, that Plaintiff could have used, but that she has not used, then the Court should indicate what that law is, and consider the claims made in the Complaint to be asserted under that law, and entertain such claims pursuant to its supplemental jurisdiction. If that other state law requires allegations that have not been made, but that could have been made by Plaintiff, then Plaintiff requests that the Court grant leave to Plaintiff to amend her complaint to include such allegations.

**POINT III    DEFNDANTS' MOTION TO DISMISS PLAINTIFF'S FOURTH CAUSE OF ACTION SHOULD BE DENIED**

Defendants argue that there was no contract between Plaintiff and the municipality so Plaintiff's Fourth Cause of Action should be dismissed. (Defendants' memo p. 45). Though there are many cases defining the term "contract", Black's Law Dictionary definition suffices here. It states that "A contract is a legally binding exchange of promises or agreement between parties that the law will enforce." It then goes on to identify the elements of a contract as being an offer and acceptance, consideration, and an intention to be legally bound.

---

[5] Plaintiff has already asked this Court to assert jurisdiction over what would be considered a state law claim under Article 78 of the CPLR by the Fifth Cause of Action and it has asked the Court to consider what would be a claim for a declaratory judgment under New York State law in the Sixth Cause of Action.

As alleged in the Complaint, there was a contract between Plaintiff and the Town. Further, Plaintiff has alleged facts sufficient to establish on a prima facie basis that the defendants Frank Margiotta, Barbara Hughey, and Charlotte Norman engaged in tortious interference with that contract and with the prospective economic advantage of Plaintiff.

The fact relating to these claims are in the Mc Culloch Decl. at ¶¶ 42-43.

## POINT IV    DEFENDANTS HAVE NOT ADDRESSED PLAINTIFF'S FIFTH AND SIXTH CAUSES OF ACTION IN THEIR MOTION TO DISMISS

Plaintiff's Fifth Cause of Action is for a declaratory judgment that the CEA even as it is stated does not prohibit the cutting of live trees, and that it is arbitrary and capricious for Defendants to interpret the CEA as prohibiting the cutting of any live tree. This is the equivalent of what would have been presented to a state court in an Article 78 proceeding. Defendants do not argue that this cause of action does not state a claim. Rather, they try to argue that the Defendants have broad discretion to do whatever they want to do, so it is okay for them to ban the cutting of any live tree. It is premature for the Court to address this claim, on the merits. Since it states a cause of action, insofar as Defendants seek dismissal of this claim, that motion should be denied.

Plaintiff's Sixth Cause of Action is for a declaratory judgment that the CEA is null and void because it was based on the MCP, and the MCP at this time was null and void. This cause of action also asserts that the CEA is arbitrary and capricious.

## POINT V    NONE OF PLAINTIFFS' CLAIMS REQUIRED AN ALLEGATION THAT A NOTICE OF CLAIM HAD BEEN FILED (Responding to Defendants' memo, p. 43).

Defendants' Notice of Claim argument is misleading. The body of the argument does not make it clear that this argument only relates to state law claims. Defendants do not and cannot claim that Plaintiff was required to allege the filing of a Notice of Claim

as a condition precedent to stating a claim for violation of 42 U.S.C. §1983. The Supreme Court made that clear twenty years ago, in *Felder v. Casey,* 487 U.S. 132 (1987), where it ruled that the Wisconsin Notice of Claim statute could not bar a claim for violation of 42 U.S.C. §1983, nor a claim for violation of federal civil rights laws.

Defendants do not and cannot claim that Plaintiff was required to allege the filing of a Notice of Claim as a condition precedent to stating a claim for violation of the FHA. *See Felder, supra*; s*ee also, Bryant, supra,* which discussed the legislative history and purpose of the FHA.

Plaintiff's Fifth and Sixth claims were for declaratory relief, akin to an Article 78 proceeding. No Notice of Claim is required in such situations. *Diaz v. Bd. of Educ. Of City Of New York,* 162 Misc. 2d 998, 618 N.Y.S. 2d 948 (Sup. Ct., Kings Co. 1994), and cases cited therein.

Defendants apparently claim that Plaintiff was required to allege the filing of a Notice of Claim as a condition precedent to stating a claim against Defendants Frank Margiotta, Barbara Hughey, and Charlotte Norman in her Fourth Cause of Action. The Complaint identified these persons as "volunteers"; if Defendants claim that these persons were employees of the public corporation, and that the public corporation is liable for their actions, those are not facts of record for purposes of these proceedings. *See* Fed.R.Civ.P. Rule 12 (b) (6).[6]

**POINT VI    DEFENDANTS' AFFIRMATIVE DEFENSE OF QUALIFIED IMMUNITY IS PREMATURE** (Responding to Defendants' memo, p. 32).

---

[6] The New York State General Municipal Law §50-e (5-6) provides for a late notice of claim to be filed under equitable circumstances. If the Court determines that a Notice of Claim should have been filed with respect to any claim asserted in Plaintiff's causes of action, Plaintiff respectfully requests the opportunity to make such an application.

Defendants assert the affirmative defense of qualified immunity. They then go on to describe the elements of this affirmative defense, omit any reference to facts to establish that the facts necessary of this affirmative defense are present in this case, and ask that the Court dismiss certain claims (they do not say which claims), against certain defendants (they do not say which defendants) for certain actions (they do not say which actions). Fed.R.Civ.P. 12 (b) (6) does not provide for consideration and disposition of affirmative defenses, especially when they are ill-defined and require findings of fact to determine whether they are appropriately asserted and applicable in a particular situation, to particular defendants.

## CONCLUSION

For the reasons stated, the motion to dismiss should be denied in its entirety.

Dated: January 25, 2008                                Respectfully submitted,

                                                        _____/s/_____
                                                        Kenneth Mc Culloch (3372)
                                                        Attorney for Plaintiff
                                                        516 Fifth Avenue, 12th Floor
                                                        New York, N.Y. 10036
                                                        Tel. 212-398-9508
                                                        e-mail KMcCulloch@BRGSLAW.com