02/22/2008   06:11      2127640900                                    PAGE   02/40

**Exhibits 2 to 14 to Declaration of Kenneth Mc Culloch**

02/22/2008  06:11    2127640900                                    PAGE   03/40



## DUTCHESS COUNTY CLERK RECORDING PAGE

RECORD & RETURN TO :

```
POUGHKEEPSIE ABSTRACT CO INC
35 MARKET ST
POUGHKEEPSIE          NY 12601
```

RECORDED: 06/30/2006

AT:          10:15:56

DOCUMENT #: 02 2006 5220

RECEIVED FROM:    POUGHKEEPSIE ABSTRACT CO INC

GRANTOR:  MCCULLOCH CARMEN O
GRANTEE:  MILAN TOWN

RECORDED IN:      DEED
INSTRUMENT TYPE:  EASE                    TAX
                                          DISTRICT: MILAN

EXAMINED AND CHARGED AS FOLLOWS:

RECORDING CHARGE:                101.00
                                              NUMBER OF PAGES:   23
TRANSFER TAX AMOUNT:

TRANSFER TAX NUMBER:   #008203

E & A FORM: N                        ***  DO NOT DETACH THIS
                                     ***  PAGE
TP-584:     Y                        ***  THIS IS NOT A BILL

COUNTY CLERK BY: MDS / _____
RECEIPT NO:   R46532
BATCH RECORD: C00226

*Colette M Lafuente*
COLETTE M. LAFUENTE
County Clerk

0 2 2 0 0 6 5 2 2 0

**Exhibit 2 to Declaration of Kenneth J. Mc Culloch**

02/22/08  FRI 14:13  [TX/RX NO 8374]  ☑003

02/22/2008  06:11    2127640900                                    PAGE  04/40

PA-9542

## CONSERVATION EASEMENT

THIS CONSERVATION EASEMENT is made this 28th day of June 2006, by CARMEN O. MCCULLOCH, having an office/address at 2 Tudor City, Apartment 4, New York, NY 10017("Grantor"), in favor of the TOWN OF MILAN, a municipal corporation in Dutchess County, State of New York, having offices at Wilcox Memorial Town Hall, 1415 Route 199, Milan, NY 12571 ("Grantee").

WITNESSETH:

WHEREAS, grantor is the owner of certain property in the Town of Milan, Dutchess County, State of New York, consisting of approximately 35.216 acres and more particularly described in a deed recorded in the Dutchess County Clerk's Office on March 261, 2004, as Document # 02 2004 3996, and which property is also known as "Woodland Hill Subdivision" a subdivision as shown on a subdivision map entitled "Woodland Hills" prepared by Povall Engineering and last revised on June 16, 2006, which subdivision conditional final approval from the Town of Milan Planning Board on June 29, 2005, which map was filed on June 29, 2006 in the Dutchess County Clerk's Office as filed map number 11944 ; and

WHEREAS, the Master Plan of the Town of Milan encourages the preservation of open and undeveloped space; and

WHEREAS, Grantor has offered to place certain portions of the subdivision, as described and shown on page 2 of 5 of the

Page 1 of 15

02/22/2008  06:11    2127640900                                          PAGE  05/40

EXHIBIT A (Page 1 of 5)

Michael A. Dalbo
Land Surveyor, P.C.
10 Crum Elbow Road
Hyde Park, N.Y. 12538
(845) 229-9383

May 09, 2006

Survey Description
for
Woodland Hills Subdivision
Open Space #1

All that parcel of land situate in the Town of Milan, County
of Dutchess and State of New York designated as Open Space
#1, being more particularly bounded and described as
follows:

Beginning at a point on the westerly line of the lands of
the State of New York, Taconic State Park Commission,
marking the northeast corner of Lot #3 and also being the
northeast corner of the herein described open space parcel;
thence running along the westerly line of the lands of the
State of New York, Taconic State Park Commission, and the
easterly line of Lot #3 and Lot #6, S20°26'05"E 1119.00' to
a concrete monument found in a stone wall intersection
marking the southeast corner of Lot #6 and the southeast
corner of the herein described open space parcel and also
being the northeast corner of a burial ground reputedly
owned or in the care of the Lafayette Cemetery Association;
thence running along the center of the stone wall marking
the north line of the last mentioned burial ground,
N84°18'00"W 51.43' and N82°19'00"W 148.69' to a stone wall
corner marking the northwest corner of the last mentioned
lands and the northeast corner of the burial ground of James
Ward; thence running along the north, west and south
boundary lines of the burial ground of James Ward, being the
lands now or formerly of Anna Ward and Margaret J. Egeland,
reserved in Liber 608 of deeds at page 412, along boundary
lines set forth and established by this description,
N62°31'00"W 30.00', S20°48'00"W 30.00' and S62°31'00"E
30.00' to a point in a stone wall marking the west line of
the lands reputedly owned by the Lafayette Cemetery
Association, described above; thence continuing along the
stone wall and the westerly line thereof, S20°48'07"W 82.59'
to a stone wall corner on the northerly line of a former
highway and/or private road; thence running along the center
of a stone wall marking and the assumed northerly line of
said private road and/or highway, N59°16'00"W 27.68',

Page 1 of 3
file: 3458_OS1

## EXHIBIT A (Page 2 of 5)

N50°30'00"W 51.00', N54°14'00"W 32.12', N62°10'00"W 39.48',
N71°50'00"W 161.72', N73°10'00"W 355.34', N75°49'00"W
192.67', N62°01'00"W 53.15' and N59°09'00"W 109.58' to a
wall angle; thence leaving the stone wall and running along
a line of no physical bounds, distant about 16.5' northerly
of the center of the private road and/or highway,
N64°22'00"W 95.41' to a point in the last mentioned stone
wall; thence continuing along the center of a stone wall,
along the assumed northerly line of the private road and/or
highway, N76°39'00"W 119.69', N80°43'00"W 28.95',
N87°22'00"W 30.69', S84°22'00"W 112.83', N87°36'00"W 20.57'
and N68°09'00"W 50.78' to an angle in the wall; thence
leaving the wall and running N44°25'00"W 75.47' to southwest
corner of the herein described open space parcel; thence
running into and through Lot #6 and Lot #5, N45°35'00"E
79.99' to a point on the division line between Lot #5 and
Lot #4; thence running along the last mentioned division
line, S44°24'32"E 58.03', S77°52'11"E 17.75' and N86°10'35"E
147.42' to a point; thence continuing into and through Lot
#4, N05°45'37"W 184.04', to a point on the division line
between Lot #4 and Lot #1; thence running along the last
mentioned division line, N67°55'51"W 102.08' to a point;
thence continuing into and through Lot #1, N41°22'21"E
46.47', S73°09'10"E 68.62', N89°42'26"E 75.33', N87°25'05"E
87.35' to the common corner of Lot #1 and Lot #2, at a point
on the northerly line of Lot #4; thence continuing along the
division line between Lot #1 and Lot #2, N00°34'10"W 238.05'
to a point; thence running into and across Lot #3, S80°44'42"E 703.87',
continuing into and through Lot #2 and
N34°47'46"E 99.97', N35°07'21"E 93.30' and N20°14'38"W
109.52' to a point on the northerly line of Lot #3; thence
running along the northerly line thereof, S79°21'05"E
116.77' to the point of beginning.

Excepting from the above described open space parcel an area
of land within the confines thereof, being bounded and
described as follows;

Beginning at a point within the confines of Lot #5, marking
the southwest corner of the herein described parcel, at a
point distant S68°41'46"E 62.29' from the southeast corner
of Lot #4; thence running into and through Lot #5,
N19°58'17"E 100.02', N72°18'26"E 97.18', N15°10'45"W 22.68',
S73°09'52"W 79.51', N19°50'15"E 94.25' to the northwest
corner of the herein described parcel, N86°48'55"E 144.56',
N86°33'39"E 144.36', S64°43'04"E 81.95' and S87°25'04"E
50.08' to a point on the division line between Lot #5 and

02/22/2008   06:11     2127640900                                    PAGE   07/40

<u>EXHIBIT A</u> (Page 3 of 5)

Lot #6; thence running into and through said Lot #6,
S79°44'44"E 132.89', S78°49'54"E 126.57' to the northeast
corner of the herein described parcel, S20°22'44"E 175.72',
S20°33'20"E 156.69' to the southeast corner of the herein
described parcel, N74°05'22"W 29.22', N84°52'47"W 76.09',
S51°42'42"W 72.19' and N71°48'10"W 164.40' to a point;
thence continuing through Lot #6 and running into Lot #5,
N76°11'13"W 137.19', N73°12'42"W 171.29', N26°25'32"W
25.35', N75°07'28"W 29.39', S50°43'00"W 20.76' and
N75°45'56"W 196.75' to the point of beginning.

Containing 5.242 acres of land, to be excluded from Open
Space Area #1, described above.

The residual land area of Open Space #1, amounts to
16.111 acres of land more or less.

02/22/08   FRI 14:13   [TX/RX NO 8374]   ☒007

EXHIBIT A (Page 4 of 5)


Michael A. Dalbo
Land Surveyor, P.C.
10 Crum Elbow Road
Hyde Park, N.Y. 12538
(845) 229-9383


May 09, 2006

Survey Description
for
Woodland Hills Subdivision
Open Space #2


All that parcel of land designated as Open Space #2, situate in the Town of Milan, County of Dutchess and State of New York, being more particularly bounded and described as follows:

Beginning at a point within the confines of Lot #6, at a point marking the southern most corner of the herein described open space parcel, distant N58°11'14"E 129.49' from the southeast corner of Lot #5; thence running within the confines of Lot #6, N44°57'57"W 49.97' to the western most corner of the herein described open space parcel, N45°26'11"E 19.90', to the northern most corner of the herein described open space parcel, S44°44'00"E 49.62' to the eastern most corner of the herein described open space parcel, and S44°25'02"W 19.70' to the point of beginning.

Containing 0.023 acre (986 square feet) of land more or less.

EXHIBIT A (Page 5 of 5)

Michael A. Dalbo
Land Surveyor, P.C.
10 Crum Elbow Road
Hyde Park, N.Y. 12538
(845) 229-9383

May 09, 2006

Survey Description
for
Woodland Hills Subdivision
Open Space #3

All that parcel of land designated as Open Space #3, situate
in the Town of Milan, County of Dutchess and State of New
York, being more particularly bounded and described as
follows:

Beginning at a point on the northerly line of Lot #3, at a
point distant S79°21'05"E 84.72' from the northwest corner
of said Lot #3; thence running along the northerly line of
Lot #3, S79°21'05"E 475.28' to the northeast corner of the
herein described open space parcel; thence running into and
through Lot #3, S10°38'55"W 40.00' to a point on the
division line between Lot #3 and Lot #2; thence running
along the last mentioned division line, N79°21'05"W 332.83'
to a point; thence running into and through Lot #2 and
continuing into and through Lot #1, S35°03'23"W 144.74',
S32°09'28"W 141.76', S12°29'38"W 135.42', N68°32'18"W
38.51', N28°41'51"W 101.25', N07°30'10"W 55.82', N01°57'53"E
43.12', N20°32'01"E 37.16', N35°17'51"E 85.23', N35°55'25"E
85.76' and N28°18'14"E 69.50' to the point of beginning.

Containing 1.613 acres of land more or less.

Page 1 of 1
file: 3458_OS3

EXHIBIT B

# Conservation Easement Existing Conditions
## Woodland Hills Subdivision

Approximately 51% of the Woodland Hills 35 acre subdivision is in a conservation easement. The areas of conservation easement are distributed throughout the Woodland Hills Subdivision as follows:

| Lot # | Acres | Cons E. Acres | %Cons Easement |
|-------|-------|---------------|----------------|
| 1 | 5.68 | 1.21 | 21.3 |
| 2 | 5.19 | 2.33 | 44.9 |
| 3 | 5.91 | 3.69 | 62.4 |
| 4 | 5.17 | 2.70 | 52.3 |
| 5 | 6.3 | 3.67 | 53.5 |
| 6 | 6.97 | 4.45 | 63.2 |
| Total: | 35.22 | 18.02 | 51.2 |

According to the Soil Survey of Dutchess County (Natural Resources Conservation Service), Nassau-Cardigan complex and Pittstown silt loam soils predominate.

There are a substantial number of large trees, including oak, maple, and white pine, throughout the conservation easement. The wooded areas in the easement range from successional northern hardwoods to mature mesophytic lowland forest. Species include white oak (Quercus alba), red oak (Q. rubra), black oak (Q. velutina), red maple (Acer rubrum), shagbark hickory (Carva ovata), eastern red cedar (Juniperus virginiana), black birch (Betula lenta), and grey birch (B. populifolia).

Five large isolated oaks have been included in the easement as follows:
Lot 5:
    a) Two oaks (36 inch diameter and 32 inch diameter) are approximately 30 feet from each other at the eastern end of the lot.
    b) A 40-inch diameter oak is at the southern border of the lot.

Lot 6:
    a) One 36-inch dbh oak is approximately 25 feet from a triple trunk 16-inch dbh oak tree.
Also included in the easement on lot 3 are several patches of pink lady's slippers (Cypripedium acaule) listed by NYSDEC as an 'exploitably vulnerable' species. Exploitably vulnerable native plants are likely to become threatened in the near future throughout all or a significant portion of their ranges within the State if causal factors continue unchecked.

The easement along the southern border of lots 4, 5, and 6 is parallel to a dirt lane and a 100-foot NYSDEC regulated wetland (RC-22) buffer. The easement on Lot 6 surrounds a small Lafayette Cemetery Association burial ground. The easement then turns eastward along lots 6 and 3, which are parallel to the Taconic State Parkway southbound lane. This creates a buffer between the subdivision and the Taconic State Parkway buffer protecting a valuable wildlife habitat. Fauna such as hawks, owls, deer, bobcats, and coyotes can use this corridor.

The easement includes a shrubby old field on lot 4.

Other fauna of particular interest are the regionally rare red-bellied snake (Storeria occipitomaculata) found in the upland meadow on lot 1, the regionally vulnerable wood frog (Rana sylvatica), bobcat (Lynx rufus), scarlet tanager (Piranga olivacea), as well as the many species listed in the Natural Resources Survey completed by the applicant's consultant.

02/22/2008  06:11    2127640900                                    PAGE  11/40

above-referenced filed map, said page being titled "Woodland Hills Subdivision Layout & Easement Plan", and as further described by metes and bounds on Exhibit "A" hereto under a perpetual conservation easement (the "Easement Area"); and

WHEREAS, by resolution dated May 22, 2006 the Town Board of the Town of Milan agreed to accept this Conservation Easement; and

WHEREAS, Grantee is a municipal corporation as defined in Section 2 of the General Municipal Law and qualified under Sections 501(c)(3) and 17(h) of the Internal Revenue Code, and a "public body", as defined in ECL 49-0303(3), qualified under the NYS Environmental Conservation Law Article 49, Sections 49-0301 et seq, to accept a conservation easement; and

WHEREAS, Grantor intends, as owner of the Easement Area, to convey to Grantee the right to preserve and protect the conservation values of the conservation area in perpetuity; and Grantee agrees, by accepting this grant, to honor the intentions of Grantor stated herein and preserve and protect in perpetuity the conservation values of the Easement Area.

NOW, THEREFORE, in consideration of the above and the mutual covenants, terms, conditions, and restrictions contained herein, and pursuant the laws of New York State and in particular ECL Article 49, Title 3, Grantor hereby grants and conveys to Grantee a conservation easement in perpetuity over the Easement Area of the nature and character to the extent hereinafter set forth (the

"Easement").

1.    <u>Purpose</u>  It is the purpose of this Easement to protect
the natural forested and open space condition of the Easement
Area.

2.    <u>Rights of Grantee</u>    To accomplish the purpose of this
easement, the following rights, but not obligations, are conveyed
to Grantee and its authorized agents, by this Easement:

(A)    To preserve and protect the open space and
        forested character of the Easement Area pursuant
        to values identified in the Town's master plan.

(B)    In accordance with ECL 49-0305(6), to enter upon
        the easement area at reasonable times in order to
        inspect the Easement Area, gaining access through
        Lots 1, 2, 3, 4, 5, and 6, to monitor Grantor's
        compliance with and otherwise assure compliance
        with the terms of this Easement, it being
        anticipated that the easement may be inspected
        once per year, provided that such entry shall be
        upon prior reasonable notice to Grantor, and
        Grantor shall not unreasonably interfere with
        Grantor's use and quiet enjoyment of the Easement
        Area.  Grantee shall have the right to delegate
        its inspection responsibilities from time to time
        as Grantee determines is appropriate and
        necessary.  Grantee shall notify Grantor in

Page 3 of 15

writing by certified U.S. Mail, return receipt
requested, if Grantee delegates its inspection
responsibilities; and

(C)   To prevent any activity on, or use of, the
Easement Area that is inconsistent with the
purpose of this Easement and to require the
restoration of areas or features of the Easement
Area that may have been damaged by any
inconsistent activity or use.

3.   <u>Prohibited Uses</u>      The following activities and uses
are deemed inconsistent with the purposes of the Easement, and
are prohibited:

(A)   There shall be no industrial or commercial use of
the land.  There shall be no further subdivision
of the property burdened by this Easement.

(B)   No structures shall be placed on the land within
the Easement Area.

(C)   There shall be no alteration of natural wetland
areas.

(D)   Land within the Easement Area which is now forested
shall remain forested.

(E)   As provided for in the Town of Milan Code
provisions dealing with conservation easements,
there will be no use of rifle ranges or motorized
vehicles, such as snowmobiles and off-road

recreational vehicles, upon the Conservation
Easement Area except to provide access to all
parts of Grantor's property for normal management,
security, or emergencies purposes as deemed
necessary by Grantor.

4.   _Reserved Rights_     Grantor reserves to herself, and to
her successors and assigns, all rights accruing from ownership of
the Property, including the right to sell, transfer, lease,
mortgage or otherwise encumber the Property, subject to this
easement; the right to engage in, or permit others to engage in,
all uses of the Property that are not expressly prohibited herein
and are not inconsistent with the purpose of the Easement; and
including the unqualified right to exclude others from the land
by all lawful means. All rights, interests, and privileges of the
Grantor in the Easement Area not specifically donated, granted,
transferred and conveyed herein shall remain with the Grantor,
her heirs, successors and assigns.

Specifically EXCEPTED and RESERVED from the grant of this
easement are the rights and privileges described below, which are
reserved to the Grantor, together with the right to grant the
same or similar non-exclusive rights to others:

A.   Horticultural and managed forest land, equestrian,
     passive recreational and open space uses.  This
     shall include, without limitation, passive
     recreational use such as private trail walking,

02/22/2008   06:11     2127640900                                                      PAGE   15/40

nature viewing and similar activities.

B.    General maintenance of property, including
      pruning, cutting, planting, landscaping, and
      clearing of trees and other vegetative materials
      in accordance with generally accepted forest
      conservation practices.

5.    <u>Enforcement</u>    The Grantee may enforce this
conservation easement against any violating party, in law or
equity pursuant to the provisions of Article 49 of the
Environmental Conservation law against any or all owners of the
property forming the Easement Area, or any part thereof.

A.    If Grantee determines that Grantor, Tenants, or
      any of her successors or assigns, is in violation
      of this Easement or that a violation is
      threatened, such enforcing party shall give
      written notice by certified U.S. Mail, return
      receipt requested, to the violating party of such
      violation and demand corrective action sufficient
      to cure the violation and, where the violation
      involves injury to the Easement Area resulting
      from a use or activity inconsistent with the
      purpose of this Easement, to restore the portion
      of the Easement Area so injured.  If the violating
      party fails to cure the violation within thirty
      (30) days after receipt of notice thereof from

nature viewing and similar activities.

B.   General maintenance of property, including
     pruning, cutting, planting, landscaping, and
     clearing of trees and other vegetative materials
     in accordance with generally accepted forest
     conservation practices.

5.   Enforcement   The Grantee may enforce this
conservation easement against any violating party, in law or
equity pursuant to the provisions of Article 49 of the
Environmental Conservation law against any or all owners of the
property forming the Easement Area, or any part thereof.

A.   If Grantee determines that Grantor, Tenants, or
     any of her successors or assigns, is in violation
     of this Easement or that a violation is
     threatened, such enforcing party shall give
     written notice by certified U.S. Mail, return
     receipt requested, to the violating party of such
     violation and demand corrective action sufficient
     to cure the violation and, where the violation
     involves injury to the Easement Area resulting
     from a use or activity inconsistent with the
     purpose of this Easement, to restore the portion
     of the Easement Area so injured.  If the violating
     party fails to cure the violation within thirty
     (30) days after receipt of notice thereof from

Grantee, or under circumstances where the
violation cannot be reasonably cured within a
thirty (30) day period, fails to begin curing such
violation within the thirty (30) day period, or
fails to continue diligently to cure such
violation until finally cured, Grantee may bring
an action at law or in equity in a court of
competent jurisdiction to enforce the terms of
this Easement, to enjoin the violation, by
temporary or permanent injunction, to recover any
damages, including recovery of reasonable
attorneys fees, to which it may be entitled for
violation of the terms of this Easement, which
damages shall be applied to defray the cost of
undertaking corrective action within the Easement
Area, and to otherwise require the restoration of
the Easement Area to the condition that existed
prior to any such injury.  Grantee's rights under
this paragraph apply equally in the event of
either actual or threatened violations of the
terms of this Easement, and Grantor agrees that
Grantee's remedies at law for any violation of the
terms of this Easement are inadequate and that
Grantee shall be entitled to the injunctive relief
described in this paragraph, both prohibitive and

02/22/2008  06:11    2127640900                                              PAGE  18/40

mandatory, in addition to such other relief to which Grantee may be entitled, including specific performance of the terms of this Easement, without the necessity of proving either actual damages or the inadequacy of otherwise available legal remedies. Grantee's remedies described in this paragraph shall be cumulative. Where the party alleged to be in violation disputes the allegation that violation exists, the determination as to the existence of such violation shall be made be a court of competent jurisdiction.

B.    <u>Grantee's Discretion</u> Enforcement of the terms of this Easement shall be at the discretion of the Grantee, and any forbearance by Grantee to exercise its rights under this Easement in the event of any breach of any term of this Easement by Grantor shall not be deemed or construed to be a waiver by Grantee of such terms or of any subsequent breach of the same or any other term of this Easement of any of Grantee's rights under this Easement.

C.    <u>Acts Beyond Grantor's Control</u>    Nothing contained herein shall be construed to entitle Grantee to bring any action against Grantor for any injury to or change in the Easement Area resulting from causes beyond Grantor's control, including,

02/22/08  FRI 14:13   [TX/RX NO 8374]  ☑018

02/22/2008  06:11   2127640900                                      PAGE  19/40

without limitation, fire, flood, storm and earth movement, from any prudent action taken by Grantor under emergency conditions to prevent, abate or mitigate significant injury to the Easement Area resulting from such causes.

6.    Access    No right of general access to any portion of the Easement Area is conveyed by this Easement.

7.    Costs and Liabilities; Maintenance of Premises Grantor retains all responsibilities and shall bear all costs and liabilities of any kind related to the ownership, operation, upkeep, and maintenance of the Easement Area.  Grantor retains the obligation to pay taxes and shall pay taxes assessed and levied on the Easement Area, but this shall not be construed as impairing the rights of any party to challenge the assessment of property pursuant to law.

8.    Amendment    This Conservation Easement may be amended only with the written consent of Grantee and all the then owners of the Easement Area.  Any such amendment shall be consistent with the basic purpose of this Conservation Easement, and shall comply with Article 49, Title 3 of the Environmental Conservation Law, Section 170 of the Internal Revenue Code and all applicable regulations.

9.    Assignment    This Easement is transferable, but Grantee may only assign its rights and obligations under this Easement to a qualified organization, at the time of the transfer, under Section 170(h) of the Internal Revenue Code of

02/22/08  FRI 14:13  [TX/RX NO 8374]  Ⓩ019

02/22/2008  06:11    2127640900                                    PAGE  20/40

1954, as amended, and the applicable regulations promulgated thereunder, and authorized to acquire and hold conservation easements under Article 49 of the New York State Environmental Law.

   10.  **Extinguishment**     If circumstances arise such as render the purpose of this Easement impossible to accomplish, this Easement can only be terminated or extinguished, whether in whole or in part, in accordance with the provisions of ECL 49-0307.

   11.  **Subsequent Transfers**     Grantor agrees to incorporate the terms of this Easement in any deed or other legal instrument by which she divests herself of any interest in all or a portion of the Easement Area, including, without limitation, a leasehold interest.  The failure of Grantor to perform any act required by this paragraph shall not impair the validity of this Easement or limit its enforceability in any way.

   12.  **Reverter.**  In accordance with the Town of Milan Code §200-39(A)(1)(a)(2), in the event that the Grantee becomes unwilling or unable to continue carrying out its functions, this Easement shall, at the Grantee's option, revert back to the Grantor.  The Grantee shall notify the Grantor, her successors or assigns of its intent for the Easement to revert back to the Grantor.  Grantor and Grantee hereby agree to execute, within sixty days of delivery of said written notice, such document(s) or agreements(s) which are necessary for said reverter to take

02/22/08  FRI 14:13  [TX/RX NO 8374]  Ø020

02/22/2008  06:11    2127640900                                    PAGE  21/40

effect.  Grantee shall record said document(s) or agreement(s) in
the land records of Dutchess County, New York.  Payment of any
recording fees shall be the responsibility of the Grantor, her
successors or assigns.

13.  <u>Existing Conditions.</u>    This Conservation Easement is
granted subject to any existing conditions currently shown on the
"Woodland Hills Subdivision Layout & Easement Plan" which is Page
2 of 5 of the above-referenced filed subdivision map, those
conditions described in Exhibit "B" (Written Description of
Existing Conditions on the Easement Area), attached hereto and
incorporated herein.

14.  <u>Miscellaneous Matters.</u>

(A)  Nothing in this Agreement, express or implied, is
intended to confer upon any third-party any rights or remedies
under or by reason of this Agreement.  Both parties represent
that they are entering into this transaction as principal for
their own account and not as an agent for any other party.

(B)  This Agreement is deemed to be a contract entered
into and shall be interpreted under the laws of the State of New
York, except the provisions thereof pertaining to the conflicts
of laws.  Any general rule of construction to the contrary
notwithstanding, this Easement shall be liberally construed in
favor of ECL Article 49.  If any provision in this instrument is
found to be ambiguous, an interpretation consistent with the
purpose of this Easement that would render the provision valid

02/22/08  FRI 14:13  [TX/RX NO 8374] ☒021

tried before the Court without a jury.

(G)   All notices and written communications between the parties concerning this Agreement, shall be deemed to have been delivered upon receipt or refusal of delivery to the following addresses:

If to the Town:           Supervisor
                          Town of Milan
                          Wilcox Memorial Town Hall
                          20 Wilcox Circle
                          Milan, NY 12571


If to Grantor:            Carmen O. McCulloch
                          2 Tudor City
                          Apartment 4
                          New York, NY 10017


Either party may change the address to which notice is to be sent by like notice.

(H)   Grantee shall record this instrument in timely fashion in the office of the Dutchess County Clerk, Town Clerk and Town Assessor.   Payment of any recording fees shall be the responsibility of the Grantor, her successors or assigns.

(I)   Payment for the title report prepared in connection with this Easement shall be the responsibility of the Grantor, her successors or assigns.

02/22/2008   06:11   2127640900

shall be favored over any interpretation that would render it invalid.

(C)   Each party will, at any time and from time to time, at the request of any other party, make, execute, acknowledge and deliver, or cause to be done, all such further acts, deeds or other documents as may reasonably be necessary or appropriate to carry out the provisions of this Conservation Easement, or which are necessary to qualify this instrument as a conservation easement under ECL Article 49, Title 3 or any regulations promulgated pursuant thereto.

(D)   This Agreement constitutes the entire agreement of the parties as to the subject matter hereof, supersedes all prior understandings (whether written or oral) and may not be amended or modified except by a written document signed by both parties and stating that it is intended to amend this Agreement.

(E)   Both parties represent to the other party that they have the power and authority to execute, deliver and perform this Agreement, that all actions necessary to authorize the execution, delivery and performance of this Agreement have been duly taken, that they have duly executed and delivered this Agreement and that this Agreement is legal, valid and binding on them, and enforceable against them, in accordance with its terms.

(F)   The parties understand that the Supreme Court, Dutchess County, New York, shall have exclusive jurisdiction of any disputes arising therefrom and that all disputes shall be

02/22/08   FRI 14:13   [TX/RX NO 83741   ☑023

(J)  Termination of Righs and Obligations    A party's rights and obligations under this Easement terminate upon transfer of the party's interest in the Easement or Easement Area, except that liability for acts or omissions occurring prior to transfer shall survive transfer.

TOWN OF MILAN

By _____
John V. Talmgage, Supervisor

_____
Carmen O. McCulloch

*Kenneth Mc Culloch
her attorney in fact*

STATE OF NEW YORK, COUNTY OF DUTCHESS        ) ss.:

On the 29th day of June , 2006 before me, the undersigned, a notary public in and for said state, personally appeared CARMEN O. MCCULLOCH, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

CHRISTINE H. GUIDO
Notary Public, State of New York        _____
No. 02GU6019818                          NOTARY PUBLIC
Qualified in Dutchess County
Commission Expires February 16, 20[?]

STATE OF NEW YORK, COUNTY OF DUTCHESS        ) ss.:

On the 29 day of June , 2006, before me, the undersigned, a notary public in and for said state, personally appeared JOHN V. TALMAGE, SUPERVISOR, TOWN OF MILAN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

Page 14 of 15

Record & Return to
Janis M. Gomez Anderson
Van DeWater & Van DeWater, LLP
40 Garden Street, 5th Floor
Poughkeepsie, NY 12601

KENNETH J. MC CULLOCH, ESQ.
516 FIFTH AVENUE, 12TH FLOOR
NEW YORK, N. Y. 10036
TEL. 212-398-9508; FAX  212-398-9512
Cell-phone 917-748-0771

October 1, 2007
By fax to 845-897-0042

Town Of Milan
1415 Route 199
P.O. Box 42
Red Hook, New York 12571
Tel. 845-758-5133
Attn:   Lauren Kingman
        Chairman, Town Planning Board

Re:    Woodland Hills Subdivision

Dear Lauren,

        As you know, my wife owns the six lots known as the Woodland Hills
Subdivision, and I have been acting as her attorney. Recently an issue has arisen that we
think requires clarification from the Planning Board regarding precisely what is meant by
the terms of the Conservation Easement. We think it is to our own best interests, and that
of the Planning Board, and that of prospective purchasers, to have this clarified.

        Specifically, may the owner of a Lot in Woodland Hills that includes land that is
part of the Conservation Easement Area (all of the lots have at least parts in the
Conservation Easement Area) cut down trees for firewood, for personal use, prudently,
and as part of a forest management program on his or her own land? We think that the
answer is "Yes", but we would like to have the Planning Board say so, and do so in
writing, to avoid having this question raised in the future, as it is being raised now.

        We have a prospective purchaser for Lot 5. His name is Larry Strickland. His cell-
phone number is 914-474-1119. Larry and his family currently live in the Town of
Stanford. Though he still has a 914 area code for his cell-phone, Larry works in Dutchess
County also. I walked the boundaries of Lot 5 with Larry and his wife. I pointed out the
conservation easement areas. I gave him and his wife a complete copy of the subdivision
plat. I also gave him the Conservation Easement.

        Larry and his family are precisely the kind of persons that I think the Town would
want to have living in Milan. He is conservation minded, and he wants to build a solar
home. By that I think he means a home that at least in part is heated by solar energy. He
has had training regarding this. Larry had a few questions that I could not answer, so I
told him to call Mike Dalbo, our surveyor. I then called Mike and asked Mike to answer
whatever questions Larry or his wife had.

1

**Exhibit 3 to Declaration of Kenneth J. Mc Culloch**

I had not heard back from Larry, so I called Mike Dalbo again. He told me that he had answered Larry's questions, but that Larry had some concerns about the Conservation Easement areas, and the Town's "looking over his shoulder" regarding what he did on his own property. I then called Larry again earlier today. He told me that he wanted to be able to cut firewood, and that he wanted to be able to do so from the forested area that is part of the Conservation Easement area on Lot 5. Larry said that he is very conservation minded, and that he wants to be able to gain part of the heat for his prospective house from firewood. He said he knows about conservation. He is talking about thinning out the underbrush and the smaller trees in a way that would be good for the remaining trees, and also allow him to have firewood.

It is not important that my wife and I think that this can be done. What is important is that you and the Planning Board say that this can be done. If Larry and his wife have this perception, that this may create a problem with the Town, then it is likely that others have that concern also. We have not sold any lots yet. I do not mean to say that if this issue is clarified that Larry will purchase Lot 5. We still have to agree on price and terms. I have told Larry that we are flexible on those, and those are subjects over which we have total discretion. The perception of potential purchasers, however, is not something that we have control over. Even if Larry and his wife were to tell me that they are not interested in this lot, for some other reason, we would still want to have this subject clarified, because it affects other potential purchasers.

We have purposely avoided mention of particular words or language in the Conservation Easement because that language apparently can and does lead to confusion. We would like to have this clarified, for now and the future, and we request the assistance of you and the Planning Board to do so.

Larry pointed out to me that the kind of use he intends seems to be the perfect first home to be built in Woodland Hills. We think that we have made a nice, conservation-minded development. It is now finished. It would be a counter-productive if we, my wife and I, and the Town, made such a restrictive development that no one wanted to buy a lot and build a house in it. I told Larry that I would be writing to you, and calling you for this kind of clarification, and that I would let him know what happens. Thank you for your assistance in this matter.

Very truly yours,

/S/

Kenneth Mc Culloch

P.S. If you want to call Larry and talk with him about this, I would urge you to do so. I think it would be helpful so you can appreciate how conservation minded he is.

2

02/22/2008  06:11    2127640900                                    PAGE  28/40

# New York State Department of Environmental Conservation
## Division of Lands and Forests

Stony Kill Environmental Education Center
79 Farmstead Lane Wappingers Falls, NY 12590
Phone: (845) 831-8780 x300 • **FAX:** (845) 831-3416
Website: www.dec.state.ny.us



October 23, 2007

Dear Mr. McCulloch,

Unfortunately, I cannot grant your request for a Forest Management Plan for the 6.3 acre lot in your subdivision. This parcel is too small to manage effectively. Forest Management Plans that the Deptartment of Environmental Conservation writes for private landowners are non-binding guidelines and recommendations based on a landowners goals and objectives for their forested land. If you would like some non-specific, general guidelines for forest management, I would be happy to write those up. Thank you for your interest in the Forest Stewardship Program within the DEC, and if you have other questions, please call.

Sincerely,

Barbara J. Lucas-Wilson
Barbara J. Lucas-Wilson
Senior Forester

**Exhibit 4 to Declaration of Kenneth J. Mc Culloch**

02/22/08  FRI 14:13  [TX/RX NO 8374] ☒028

02/22/2008  06:11    2127640900

Novell WebAccess

https://www.brglaw2.com/servlet/webacc?action=Item.Read&User.c

## Mail Message

N

Close   Previous   Next   Forward   Reply to Sender   Reply All   Move   Delete   Read Later   Properties

Print View

**From:**  "Janis Mary Gomez" <jgomez@vandewaterlaw.com>
**To:**  Kenneth McCULLOCH
**Date:**  Tuesday - November 1, 2005 1:32 PM
**Subject:** Draft Conservation Easement for Woodland Hills Subdivision

Woodland Hills Conservation Easement Draft - to KM.doc (90624 bytes)  [View] [Save As]
Mime.822 (134481 bytes)                                                [View] [Save As]

Dear Mr. McCulloch,

As you know, we represent the Planning Board of the Town of Milan.  I have attached a draft
conservation easement for the Woodland Hills Subdivision for your use.  Please review it and let me
know if you have any questions or proposed changes.  Please note that Exhibit B, which is a written
description of the existing conditions, will be drafted by the Planning Board with input by you.

There are some additional requirements from the Town for accepting a conservation easement
which I will forward to you in the next few days.

Please call if you have any questions.

Janis

Janis M. Gomez Anderson
Van DeWater & Van DeWater, LLP
40 Garden Street
Poughkeepsie, NY 12601
(845) 452-5900 ext. 114
Fax:  (845) 452-5848
jgomez@vandewaterlaw.com

This message is intended only for the use of the individual or entity for which it is addressed and may contain information that is
privileged, confidential and exempt from disclosure under applicable law. If you are neither the intended recipient nor the employee or
agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or
copying of this communication is strictly prohibited. If you have received this communication in error, please return the original to the
sender.

## Exhibit 5 to Declaration of Kenneth J. Mc Culloch

2/15/2008 10:41 AM

02/22/08  FRI 14:13  [TX/RX NO 8374]  ☑029

02/22/2008  06:11    2127640900                                                    PAGE  30/40

CONSERVATION EASEMENT                    https://www.brglaw2.com/servlet/webacc/dkcjm0Ln5ho4lp8Jq7/G...

## CONSERVATION EASEMENT

**THIS CONSERVATION EASEMENT** is made this _____ day of August, 2005,
by Carmen O. McCulloch, having an office/address at 2 Tudor City,
Apartment 4, New York, NY 10017 ("Grantor"), in favor of the TOWN OF
MILAN, a municipal corporation in Dutchess County, State of New
York, having offices at Wilcox Memorial Town Hall, 20 Wilcox Circle,
Milan, NY  12571 ("Grantee").

### WITNESSETH:

**WHEREAS**, Grantor is the sole owner in fee simple of certain property
situated on Willowbrook Road in the Town of Milan, Dutchess County,
State of New York, consisting of approximately 35.216 acres and more
particularly described in a deed recorded in the Dutchess County
Clerk's Office on _____ __, 200_ as Document No. __ 200_ ____, and
which property is also known as "Woodland Hills Subdivision" as
shown on a subdivision plat map prepared by Povall Engineering, LLC
and last revised on May 16, 2005, which final subdivision plat
received conditional final approval from the Town of Milan Planning
Board on June 29, 2005, which map was filed on _____, 2005
in the Dutchess County Clerk's Office, as filed map number
_____; and

**WHEREAS**, the Master Plan of the Town of Milan and the Greenway
Compact, which was adopted by the Town of Milan on April 12, 2004,
by Local Law No. 4 of 2004, encourage the preservation of open and
undeveloped space forested land, perpetuation of the Town's rural
character and atmosphere, and protection against erosion and
deforestation; and

**WHEREAS**, in 1988, the Dutchess County Legislature adopted the County
Master Plan, *Directions*, which, in Policy 5.19, advocates
preservation of steep slopes and ridgelines and, in Policy 5.24,
encourages the preservation of woodland "greenbelt" corridors
through communities to provide recreational space, wildlife habitat,
natural buffers and aquifer protection; and  **WHEREAS**, Grantor
desires to grant to Grantee a Conservation Easement, and Grantee
desires to accept the aforesaid Easement; and

**WHEREAS**, Grantor has offered to place certain portions of the
subdivision, consisting of approximately 17.755 acres, as described
in Exhibit "A" attached hereto (the "Easement Area") and shown on a
"Woodland Hills Subdivision Layout and Easement Plan" map prepared
by Povall Engineering, LLC and last revised on May 16, 2005, which
final subdivision plat received conditional final approval from the
Town of Milan Planning Board on June 29, 2005, under a perpetual
Conservation Easement; and

**WHEREAS**, by resolution dated August 8, 2005 the Town Board of the
Town of Milan agreed to accept this Conservation Easement; and

**WHEREAS**, Grantee is a municipal corporation as defined in

1 of 11                                                           2/15/2008 10:39 AM

02/22/2008 06:11   2127640900                                      PAGE 31/40
CONSERVATION EASEMENT                     https://www.brglaw2.com/servlet/wcbacc/dkcjm0Ln5ho4lp8Jq7/G...

Section 2 of the General Municipal Law, and a "public body", as defined in the New York State Environmental Conservation Law ("ECL") §49-0303(3), and qualified under ECL §§49-0301 et seq., to accept a Conservation Easement; and

**WHEREAS**, the Grantor intends that the conservation values of the property be preserved and maintained by the continuation of existing land use patterns, including without limitation those land use patterns relating to recreational activities and natural, scenic values existing at the time of this grant which do not significantly impair or interfere with those values; and

**WHEREAS**, Grantor intends, as owner of the Easement Area, to convey to Grantee the right to preserve, and protect, and enforce the conservation values of the Easement Area in perpetuity; and Grantee agrees, by accepting this grant, to honor the intentions of Grantor stated herein and to preserve and protect in perpetuity the conservation values of the Easement Area.

**NOW, THEREFORE**, in consideration of the above and the mutual covenants, terms, conditions, and restrictions contained herein, and pursuant the laws of New York State and in particular ECL Article 49, Title 3, General Municipal Law §247, and §200-39 of the Town of Milan Code ("Milan Code"), Grantor hereby voluntarily grants, transfers, and conveys by gift to Grantee a Conservation Easement in perpetuity over the Easement Area of the nature and character to the extent hereinafter set forth ("Easement").

   1. <u>Purpose.</u> It is the purpose of this Easement to protect

the natural and open space condition and preserve the forested character of the Easement Area, and to prevent damage to sloped areas from excessive or clear cutting.

   2. <u>Rights of Grantee.</u>  To accomplish the purpose of this Easement, the following rights, but not obligations, are conveyed to Grantee and its authorized agents, by this Easement:

      A. To preserve, protect, and enforce the conservation values of the Easement Area.

      B. In accordance with ECL §49-0305(6), to enter upon the Easement area, gaining access through Lots 1, 2, 3, 4, 5, and 6 at reasonable times to perform routine and periodic inspections of the Easement Area in a reasonable manner to monitor Grantor's compliance with and otherwise assure compliance with the terms of this Easement, it being anticipated that the Easement Area may be inspected at least once per year, provided that such entry shall be upon prior reasonable notice to Grantor, and Grantee shall not unreasonably interfere with Grantor's use and quiet enjoyment of the Easement Area.  Grantee shall have the right to delegate its

02/22/08  FRI 14:13  [TX/RX NO 0074] ...

02/22/2008  06:11   2127640900                                      PAGE  32/40
CONSERVATION EASEMENT                    https://www.brglaw.com/servlet/webacc/dkcjm0Ln5ho4lp8Jq7/G...

inspection responsibilities from time to time as
Grantee determines is appropriate and necessary.
Grantee shall notify Grantor in writing by certified
U.S. Mail, return receipt requested, if Grantee
delegates its inspection responsibilities; and

C. To prevent any activity on, or use of, the Easement
Area that is inconsistent with the purpose of this
Easement and to require the restoration of such areas
or features of the Easement Area that may have been
damaged by any inconsistent activity or use.

D.

3. <u>Prohibited Uses.</u> The following activities and uses are deemed
inconsistent with the purposes of the Easement, and are
prohibited:

A. There shall be no industrial or commercial use of the
land.  There shall be no further subdivision of the
Easement Area.

B. No buildings, mobile homes, motor vehicles, advertising
signs, billboards or other advertising materials,
man-made objects or other structures shall be placed or
constructed within the Easement Area as described in
Exhibit "A".

C. There shall be no alteration of natural wetland areas,
except for drainage facilities which are not
detrimental to water purity and which are approved by
Grantee or its designee.

D. There will be no manipulation or alteration of
watercourses, lakeshores, wetlands or other water
bodies within the Conservation Easement which are
detrimental to water purity.

E. In accordance with the Town of Milan Code
§200-39(A)(1)(b)(1), there shall be no clearing of
woodland except as necessary to create trails and
passive recreation facilities, to maintain scenic
viewsheds identified by the Town as important aesthetic
resources, and to install subsurface sewage disposal
systems.  The determination of necessity shall lie with
the Town of Milan Planning Board (the "Planning
Board").

F. There will be no filling, excavating, mining or
drilling, removal of topsoil, sand, gravel, rock,
minerals or other materials nor any change in the
topography of the land in the Easement Area except as

02/22/08  FRI 14:13  [TX/RX NO 8374]  Ø032

02/22/2008  06:11    2127640900                                    PAGE  33/48
CONSERVATION EASEMENT                        https://www.brglaw2.com/servlet/webaco/dkcjm0Ln5ho4lp8Jq7/G .

otherwise provided for herein.

(G) No pesticide, herbicide, or other chemical
treatment for land, vegetation, or animals shall be
used on the Easement Area unless its use is legal and
in accordance with all applicable laws and regulations
and the manufacturer's directions.

(H) No dumping or release of chemicals, non-composted
organic waste, sewage, solid waste, scrap materials,
sediment discharge, oil and its by-products, leached
compounds, toxic fumes or other unsightly, hazardous,
or offensive materials shall be allowed on the Easement
Area.

(I) There will be no use of rifle ranges, motorized
vehicles, such as snowmobiles and off-road recreational
vehicles upon the Conservation Easement Area except to
provide access to all parts of Grantor's property for
normal management, security, or emergencies purposes as
deemed necessary by Grantor.

(J) Any activity or condition that significantly
impairs or interferes with the conservation values of
this Easement or that impairs or interferes with the
Grantor's intention to confine the use of the property
to such activities that preserve the natural and scenic
values of the property and maintain existing land use
patterns consistent with these values shall be
prohibited.

4. Reserved Rights. Grantor reserves to itself, and to its
successors and assigns, all rights accruing from ownership of the
Property, including the right to sell, transfer, lease, mortgage or
otherwise encumber the Property, subject to this Easement; the right
to engage in, or permit others to engage in, all uses of the
Property that are not expressly prohibited herein and are not
inconsistent with the purpose of the Easement; and including the
unqualified right to exclude others from the land by all lawful
means. All rights, interests, and privileges of the Grantor in the
Easement Area not specifically donated, granted, transferred and
conveyed herein shall remain with the Grantor, its heirs, successors
and assigns.

Specifically EXCEPTED and RESERVED from the grant of this Easement
are the rights and privileges described below, which are reserved to
the Grantor, together with the right to grant the same or similar
non-exclusive rights to others:

A. Agricultural, horticultural, managed forest land,
equestrian, passive recreational and open space uses,
specifically excluding motorized off-road vehicles,
rifle ranges, and other uses similar in character and
potential impact as determined by the Planning Board,

2/15/2008 10:39 AM

02/22/2008  05:11   2127640900                                      PAGE  34/40

CONSERVATION EASEMENT                    https://www.brglaw2.com/servlet/webacc/dkcjm0Ln5ho4lp8Jq7/G...

in accordance with the Town of Milan Code
§200-39(A)(1)(b)(5).

This shall include, without limitation, the raising of
agricultural and horticultural crops, boarding or
maintenance of livestock and/or horses, horseback
riding, passive recreational uses such as private trail
walking, nature viewing and similar activities, and
educational activities relating to the above.  The
activities listed herein, including the sale of crops
raised on the premises, shall not be deemed to be a
"commercial"

use of the property in violation of paragraph A3"

above.  Specifically excluded, however, in accordance
with Town of Milan Code §200-39(A)(1)(b)(2), are
concentrated animal feeding operations ("CAFO's") as
defined by the U.S. Environmental Protection Agency, or
commercial livestock operations involving swine,
poultry, mink, rallies and other animals likely to
produce highly offensive odors.

B. General maintenance of property, including pruning,
cutting, planting, landscaping, and clearing of trees
and other vegetative materials only in accordance with
generally accepted forest conservation practices but no
living tree with a diameter in excess of five (5)
inches diameter at breast height measured from the down
slope side may be cut without permission of Grantee,
except trees may be removed which endanger public
safety, are diseased, damaged or fallen, or need to be
cleared to ensure the health of other trees.  All
clearing of trees and vegetation shall be conducted in
conformity with sound land and forest management
practices to minimize erosion and adverse impacts on
natural resources.

C. In accordance with ECL §49-0305(3)(b), this Easement
shall not limit, restrict or modify the right to
construct, operate or continue the use of any facility,
or impede any activity, duly authorized under the
applicable provisions of the federal natural gas act
(15 U.S.C. §§717-717 w.)

i. Enforcement.  The Grantee may enforce thisConservation Easement
against any violating party, in law or equity pursuant to the
provisions of Article 49 of the ECL and Milan Code
§200-39(b)(4).

(A)  If Grantee determines that Grantor, its Tenants,
or any of its successors or assigns, is in violation of
this Easement or that a violation is threatened,
Grantee shall give written notice by certified U.S.

02/22/08  FRI 14:13  [TX/RX NO 8374] ☒034

02/22/2008  06:11   2127640900                                   PAGE  35/40

CONSERVATION EASEMENT                    https://www.brglaw2.com/servlet/webacc/dkcjm0Ln5ho4lp8Jq7.Gi

Mail, return receipt requested, to the violating party
of such violation and demand corrective action
sufficient to cure the violation and, where the
violation involves injury to the Easement Area
resulting from a use or activity inconsistent with the
purpose of this Easement, to restore the portion of the
Easement Area so injured.  If the violating party fails
to cure the violation within thirty (30) days after
service of notice thereof from Grantee, or under
circumstances where the violation cannot be reasonably
cured within a thirty (30) day period, fails to begin
curing such violation within the thirty (30) day
period, or fails to continue diligently to cure such
violation until finally cured, Grantee may bring an
action at law or in equity in a court of competent
jurisdiction to enforce the terms of this Easement, to
enjoin the violation, by temporary or permanent
injunction, to recover any damages, including recovery
of reasonable costs and attorneys fees, to which it may
be entitled for violation of the terms of this
Easement, which damages shall be applied to defray the
cost of undertaking corrective action within the
Easement Area, and to otherwise require the restoration
of the Easement Area to the condition that existed
prior to any such injury.  Grantee's rights under this
paragraph apply equally in the event of either actual
or threatened violations of the terms of this Easement,
and Grantor agrees that Grantee's remedies at law for
any violation of the terms of this Easement are
inadequate and that Grantee shall be entitled to the
injunctive relief described in this paragraph, both
prohibitive and mandatory, in addition to such other
relief to which Grantee may be entitled, including
specific performance of the terms of this Easement,
without the necessity of proving either actual damages
or the inadequacy of otherwise available legal
remedies.  Grantee's remedies described in this
paragraph shall be cumulative.  Where the party alleged
to be in violation disputes the allegation that
violation(s) exist, the determination as to the
existence of such violation(s) shall be made by a court
of competent jurisdiction.

g. <u>Grantee's Discretion.</u> Enforcement of the terms of this
Easement shall be at the discretion of the Grantee, and
any forbearance by Grantee to exercise its rights under
this Easement in the event of any breach of any term of
this Easement by Grantor shall not be deemed or
construed to be a waiver by Grantee of such terms or of
any subsequent breach of the same or any other term of
this Easement or any of Grantee's rights under this
Easement.

2/15/2008 10.39 AM

                                    02/22/08  FRI 14:13  [TX/RX NO 8374]  ☑035

https://www.brglaw2.com/servlet/webacc/dkcjm0Ln5ho4lp8Jq7/G...

h. Acts Beyond Grantor's Control. Nothing contained herein shall be construed to entitle Grantee to bring any action against Grantor for any injury to or change in the Easement Area resulting from causes beyond Grantor's control, including, without limitation, natural fire, flood, storm and earth movement, or from any prudent action taken by Grantor under emergency conditions to prevent, abate or mitigate significant injury to the Easement Area resulting from such causes.

6. Access. No right of general access by the public to any portion of the Easement Area is conveyed by this Easement.

7. Costs and Liabilities; Maintenance of Premises. Grantor retains all responsibilities and shall bear all costs and liabilities of any kind related to the ownership, operation, upkeep, and maintenance of the Easement Area. Grantor retains the obligation to pay taxes and shall pay taxes assessed and levied on the Easement Area, but this shall not be construed as impairing the rights of any party to challenge the assessment of property pursuant to law. Grantor shall maintain adequate general liability insurance for the property covering the Easement Area.

8. Amendment. This Easement may be amended only with

the written consent of Grantee, its successors or assigns, Grantor its successors or assigns and all the owners of the Easement Area. Any such amendment shall be done so by written instrument executed by the Grantor and Grantee or such parties' successors or assigns and recorded by the Grantee in the land records of Dutchess County, New York. Payment of any recording fees shall be the responsibility of the Grantor, its successors or assigns. Any amendments or modifications to this Easement shall be consistent with the basic purpose of this Easement, and shall comply with Article 49, Title 3 of the ECL, Section 170 of the Internal Revenue Code and all applicable laws and regulations.

9. Assignment. This Easement is transferable, but Grantee may only assign its rights and obligations under this Easement to a qualified organization, at the time of the transfer, under Section 170(h) of the Internal Revenue Code of 1954, as amended, and the applicable regulations promulgated thereunder, and authorized to acquire and hold conservation easements under Article 49 of the ECL.

10. Extinguishment. If circumstances arise such as to render the purpose of this Easement impossible to accomplish, this Easement can only be terminated or extinguished, whether in whole or in part, in accordance with the provisions of ECL §49-0307.

11. Subsequent Transfers. Grantor agrees to incorporate the terms of

02/22/2008  06:11   2127640900                                            PAGE  37/40
CONSERVATION EASEMENT                      https://www.brglaw2.com/servlet/webacc/dkcjm0Ln5ho4lp8Jq7/G.

this Easement in any deed or other legal instrument by which it divests itself of any interest in all or a portion of the Easement Area, including, without limitation, a leasehold interest.  The failure of Grantor to perform any act required by this paragraph shall not impair the validity of this Easement or limit its enforceability in any way.  The Grantor, its successors or assigns, shall notify the Grantee, its successors or assigns, of any such conveyance in writing by certified U.S. mail, return receipt requested, at least thirty (30) days before any sale, transfer or conveyance.

12. Reverter.  In accordance with the Town of Milan Code §200-39(A)(1)(a)(2), in the event that the Grantee becomes unwilling or unable to continue carrying out its functions, this Easement shall, at the Grantee's option, revert back to the Grantor.  The Grantee shall notify the Grantor, its successors or assigns of its intent for the Easement to revert back to the Grantor.  Grantor and Grantee hereby agree to execute, within sixty days of delivery of said written notice, such document(s) or agreements(s) which are necessary for said reverter to take effect.  Grantee shall record said document(s) or agreement(s) in the land records of Dutchess County, New York.  Payment of any recording fees shall be the responsibility of the Grantor, its successors or assigns.

13. Existing Conditions.  This Conservation Easement is granted subject to any existing conditions currently shown on the "Woodland Hills Subdivision Layout & Easement Plan" map prepared by Povall Engineering, PLLC, last revised on May 16, 2005, Exhibit "A" and that which is described in Exhibit "B" (Written Description of Existing Conditions on the Easement Area), attached hereto and incorporated herein.

14. Miscellaneous Matters.

> (A) Nothing in this Agreement, express or implied, is intended to confer upon any third-party any rights or remedies under or by reason of this Agreement. Each party represents that it is entering into this transaction as principal for its own account and not as an agent for any other party.

> (B) This Agreement is deemed to be a contract entered into and shall be interpreted under the laws of the State of New York.  Any general rule of construction to the contrary notwithstanding, this Easement shall be liberally construed in favor of Article 49 of the ECL. If any provision in this instrument is found to be ambiguous, an interpretation consistent with the purpose of this Easement that would render the provision valid shall be favored over any interpretation that would render it invalid.

> (C) Each party will, at any time and from time to time, at the request of any other party, make, execute,

02/22/08  FRI 14:13  [TX/RX NO 8374] @037

02/22/2008  06:11    2127640900                                                    PAGE  38/40

CONSERVATION EASEMENT                          https://www.brglaw.com/servlet/webacc/dkcjm0Ln5ho4lp8Jq7/G...

acknowledge and deliver, or cause to be done, all such
further acts, deeds or other documents as may
reasonably be necessary or appropriate to carry out the
provisions of this Conservation Easement, or which are
necessary to qualify this instrument as a conservation
easement under ECL Article 49, Title 3 or any
regulations promulgated pursuant thereto.

(D) This Agreement constitutes the entire agreement of
the parties as to the subject matter hereof, supersedes
all prior understandings, whether written or oral, and
may not be amended or modified except by a written
document signed by both parties and stating that it is
intended to amend this Agreement.

(E) Each party represents to the other party that it
has the power and authority to execute, deliver and
perform this Agreement, that all actions necessary to
authorize the execution, delivery and performance of
this Agreement have been duly taken, that it has duly
executed and delivered this Agreement and that this
Agreement is legal, valid and binding on it, and
enforceable against it, in accordance with its terms.

(F) This Easement shall be interpreted in accordance
with the laws of the State of New York.  The parties
agree to submit any disputes rising out of this
Easement to the Supreme Court of New York in and for
the County of Dutchess except as may otherwise be
provided by applicable statutes.  The parties, their
successors and assigns, further agree, except as may
otherwise be provided by applicable statutes, to submit
to the jurisdiction of the Supreme Court of New York in
and for the County of Dutchess should either party, its
successors or assigns, submit any controversies arising
out of the Easement to that Court.

G. All notices and written communications between the

parties concerning this Agreement, shall be deemed to
have been served when deposited in the United States
mail, with postage prepaid thereon to either of the
parties at the following addresses:

If to the Town:  Supervisor

Town of Milan

Wilcox Memorial Town Hall

**20 Wilcox Circle**

Milan, NY 12571

02/22/08  FRI 14:13  [TX/RX NO 83741  @038

02/22/2008   06:11    2127640900                                    PAGE   39/40
CONSERVATION EASEMENT                       https://www.brglaw2.com/servlet/webacc/dkcjm0Ln5ho4lp8Jq7/G...

If to Grantor:   Carmen O. McCulloch

2 Tudor City

Apartment 4

New York, NY 10017


Either party may change the address to which notice is
to be sent by like notice. If the Grantor, its
successors or assigns, conveys a fee interest to all or
any party of the Easement Area, it shall notify the
Grantee, its successors or assigns, in writing by
certified U.S. mail, return receipt requested, within
10 days after the conveyance, of the name and address
of the entity or person to whom notice should be sent
under this Agreement.

H. Any reference to the Grantee in this instrument shall
include the Grantee's successors or assigns unless
specifically excluded.  Any reference to the Grantor in
this instrument shall include the Grantor's successors
or assigns unless specifically excluded.

I. Grantee shall record this instrument in timely fashion
in the offices of the Dutchess County Clerk, Town Clerk
and Town Tax Assessor.  Payment of any recording fees
shall be the responsibility of the Grantor, its
successors or assigns.

(J)  Payment for the title report prepared in
connection with this Easement shall be the
responsibility of the Grantor, its successors or
assigns.

(K) Termination of Rights and Obligations. A party's
rights and obligations under this Easement terminate
upon transfer of the party's interest in the Easement
or Easement Area and such rights and obligations shall
be transferred to the successor(s) and/or assign(s) in
interest, except that liability for acts or omissions
occurring prior to transfer shall survive transfer.

**TOWN OF MILAN    Carmen O. McCulloch**


By_____    By_____

JOHN VAN TALMAGE    CARMEN O. MCCULLOCH

2/15/2008 10:39 AM
02/22/08  FRI 14:13  [TX/RX NO 83741  ☑039

02/22/2008  06:11    2127640900

CONSERVATION EASEMENT

https://www.brglaw2.com/servlet/webacc/dkcjm0Ln5ho4lp8Jq7/G

Supervisor    OWNER

STATE OF NEW YORK )

) ss.:

COUNTY OF DUTCHESS )

On the _____ day of _____, 2005, before me, the undersigned, a
notary public in and for said state, personally appeared
_____, personally known to me or proved to me on the basis
of satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies),
and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s)
acted, executed the instrument.

_____

NOTARY PUBLIC

STATE OF NEW YORK )

) ss.:

COUNTY OF DUTCHESS )

On the _____ day of _____, 2005, before me, the undersigned,
a notary public in and for said state, personally appeared
_____, SUPERVISOR, TOWN OF MILAN, personally known to me
or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is (are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the same
in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person
upon behalf of which the individual(s) acted, executed the
instrument.

_____

NOTARY PUBLIC

**Record & Return to**

Linda Murray, Esq.

Gellert & Klein, P.C.

75 Washington Street, Poughkeepsie, NY 12601

2/15/2008 10:39 AM

02/22/08  FRI 14:13  [TX/RX NO 8374]  Ø040