**POINT I**
**STANDARD FOR SUFFICIENCY OF COMPLAINT**

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), the Supreme

Court abrogated the previous standard of *Conley v. Gibson*, 355 U.S. 41 (1957), that "a

complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief.'" 127 S. Ct. at 1968 (*quoting Conley*, 355 U.S. at 45-46)

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a

claim to relief that is plausible on its face.'" *Bell Atlantic Corp.*, 127 S. Ct. 1955, 1974

(2007); *see also Ruotolo v. City of New York*, __ F.3d __, 2008 WL 313795 at 3 (2d Cir.

2008). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atlantic*, 127 S.Ct. at 1964-65; *see also Gibbons v.

Fronton*, __ F.Supp.2d ___, 2008 WL 355514 (S.D.N.Y. 2008). *Bell Atlantic* requires

that a complaint's "[f]actual allegations be enough to raise a right to relief above the

speculative level.…" *Id.* at 1965; *see also Goldstein v. Pataki*, ___ F.3d ___, 2008 WL

269100 (2d Cir. 2008). *Bell Atlantic* obligates a pleader to amplify a claim with factual

allegations in those contexts where such amplification is needed to render the claim

plausible. *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

In any event, "bald contentions, unsupported characterizations, and legal

conclusions are not well pleaded allegations" and will not defeat a motion to dismiss. *See

Gavish v. Revlon, Inc*., 2004 WL 2210269, at *10 (S.D.N.Y. 2004) (*quoting Citibank,

N.A. v. Itochu Int'l, Inc*., 2003 WL 1797847, at *1 (S.D.N.Y. 2003)).

It is respectfully submitted that the although the complaint relates factual allegations, primarily alleged "upon information and belief," and various conjectural "conclusions," as is more fully related below, the allegations of the complaint are insufficient to state any of the claims alleged as a matter of law.

**POINT II**
**PLAINTIFF'S CLAIMS ARE NOT RIPE**
**A. Introduction**

In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 194-96 (1985), the Supreme Court established two requirements for a federal regulatory-takings claim to be ripe. First, a plaintiff must demonstrate that the municipality has come to a "final" decision as to the application of the zoning regulation to the property, allowing the federal courts to assess how much use of the property is allowed ("prong-one ripeness"). *Id*. at 186-91. As is related below, prong one-ripeness applies to takings, due process, equal protection and FHA claims.

Secondly, a plaintiff asserting a Fifth Amendment taking claim must first "seek compensation through the procedures the State has provided for doing so" prior to invoking federal jurisdiction ("prong-two ripeness"). *Id*. at 194.

Because Plaintiff's claims are not ripe pursuant to either prong, it is respectfully submitted that jurisdiction is lacking herein and the complaint must be dismissed.

**B.  Final Decision Requirement (Prong-One Ripeness) – All Claims**

An as applied challenge to municipal actions is not ripe unless the governmental entity charged with enforcing the regulations has "reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. Consistent with the final decision requirement, a property owner must seek whatever administrative relief would

permit the proposed development of one's property or address one's grievances. *See Williamson*, 473 U.S. at 186; *Carson Harbor Village, Ltd. v. City of Carson*, 37 F.3d 468 (9th Cir. 1994).

The final decision requirement applies to due process, taking, equal protection and FHA claims. *See Southview Associates v. Bongartz*, 980 F.2d 84, 97-98 (2d Cir. 1992), *cert. denied,* 507 U.S. 987 (1993); *Dougherty v. Town of New Hempstead Board of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002); *Murphy v. New Milford Zoning Commission*, 402 F.3d 342, 349 (2d Cir. 2005); *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F.Supp.2d 142, 149 (E.D.N.Y. 2006); *Marathon Outdoor, LLC v. Vesconti*, 107 F.Supp.2d 355, 362 n. 10 (S.D.N.Y. 2000); *Woodfield Equities, LLC v. Village of Patchogue*, 357 F.Supp.2d 622 (E.D.N.Y.), *aff'd*, 156 Fed.Appx. 389 (2d Cir. 2005); *Tsombanidis v. City of West Haven*, 129 F.Supp.2d 136 (D.Conn. 2001); *Marriott Senior Living Services, Inc. v. Springfield Township*, 78 F.Supp.2d 376 (E.D.Pa. 1999).

Plaintiff complains that a stop work order was improperly issued to her and that her representatives were informed that Planning Board approval was required to remove additional trees, but failed to appeal the issuance of the administrative order, the necessity for the requirement or any other administrative action by which she claims to be aggrieved to the Zoning Board of Appeals.[1] Town Law § 267-a(5)(b) provides that a zoning board of appeals is authorized to hear appeals from "any order, requirement, decision, interpretation, or determination of the administrative official charged, by filing with such administrative official and with the board of appeals a notice of appeal, specifying the grounds thereof and the relief sought." A stop work order is among the

---

[1] It should be noted, in any event, that a stop work order is not an interruption of constitutional consequence. *See Gottlieb v. Village of Irvington*, 69 F.Supp.2d 553, 556 (S.D.N.Y. 1999).

appealable determinations of a Building Inspector or Code Enforcement Officer. *See, e.g.*, *Korbel v. Zoning Board of Appeals of the Town of Horicon*, 28 A.D.3d 888, 814 N.Y.S.2d 301 (3d Dept. 2006); *Miller v. Price*, 267 A.D.2d 363, 700 N.Y.S.2d 209 (2d Dept. 1999). Pursuant to Town Law § 267-b(1), a zoning board of appeals may reverse, affirm or modify the decision appealed from and may make any decision that it determines should have been made by the Building Inspector or Code Enforcement Officer.

"Bypassing the Zoning Board of Appeals and its hearing processes, which were statutorily designed for exploration and development of these sorts of issues, leaves the [Plaintiff's] alleged injuries ill-defined." *Murhpy*, 402 F.3d at 352. As a result, until the "appeal process is exhausted and a final, definitive decision from the local zoning authorities is rendered, this dispute remains a matter of unique local import over which we lack jurisdiction." *Id*. at 354.

Consequently, it is respectfully submitted that Plaintiff's claims are not ripe as a matter of law.

### C.  Prong-Two Ripeness – Taking Claim

A taking claim is not ripe and cannot be stated unless plaintiff has sought compensation through state court procedures *See Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 194 (1985). The State of New York provides a judicial mechanism for awarding compensation through the state courts in instances of a taking. *See Sag Harbor Port Assocs. v. Village of Sag Harbor*, 21 F.Supp.2d 179, 186 (E.D.N.Y. 1998), *aff'd*, 182 F.3d 901 (2d Cir 1999); *Frooks v. Town of Cortland*, 997 F.Supp. 438, 452 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999). The complaint does

not allege, as it must, that Plaintiff sought compensation through a state court proceeding and, in fact, she did not. As a result, the taking claim is not ripe as a matter of law.

### D. Easement Interpretation

Ms. Mc Culloch's pervasive complaints regarding the interpretation of the conservation easement in the context of this action also are premature and unripe. Paragraph 14(F) of the conservation easement provides that "The parties understand that Supreme Court, Dutchess County, New York, shall have exclusive jurisdiction of any disputes arising therefrom and that all disputes shall be tried before the Court without a jury." Plaintiff has not sought an interpretation the terms of the easement or review of its reasonableness in such an action and, as a result, the issue is not properly before this Court and the Court lacks the jurisdiction to review the issue.

### E. Conclusion

Because Plaintiff failed to appeal any of the determinations of the Code Enforcement Officer by which she claims to be aggrieved and neglected to seek compensation for the claimed taking in state court, the claim are premature and, it is submitted, must be dismissed. Additionally, as a consequence of Plaintiff's failure to seek an interpretation of the meaning of the terms of the easement in an action in State Supreme Court in accordance with the terms of the agreement, the issues related to interpretation thereof also are not within the Court's jurisdiction.

### POINT III
### FAIR HOUSING ACT CLAIMS BARRED
### BY STATUTE OF LIMITATIONS

The FHA provides for a two-year statute of limitations. *See* 42 U.S.C. § 3613(a)(1)(A). The Planning Board granted conditional final subdivision approval to

Plaintiff on June 29, 2005 (¶ 27). The instant action was filed more than two years

thereafter, on November 5, 2007. Consequently, Plaintiff's complaint pursuant to the

FHA regarding the subdivision review process and conditions of approval are barred by

the statute of limitations. Indeed, most of the allegations of the complaint relate to events

that transpired more than two years prior to the commencement of the instant action and,

as a result, are barred.

## POINT IV
## CHALLENGE TO SUBDIVSION CONDITIONS
## BARRED BY STATUTE OF LIMITATIONS

Town Law § 282 provides that one aggrieved by "any decision of the planning

board" may seek review of the same in an Article 78 proceeding commenced within 30

days after the filing of the decision. That provision and statute of limitations also applies

to the review of conditions by which one claims to be aggrieved. *See Long Island Pine*

*Barrens Soc., Inc. v. Planning Board of the Town of Brookhaven*, 78 N.Y.2d 608, 578

N.Y.S.2d 466, 585 N.E.2d 778 (1991); *Innovative Technology Group Corp. v. Planning*

*Bd. of Town of Woodbury*, 20 A.D.3d 531, 799 N.Y.S.2d 544 (2d Dept. 2005). Indeed,

those decisions conclude that one must challenge a condition by which one claims to be

aggrieved as early as the time of preliminary subdivision approval. As a result, any

challenge to the propriety of the conditions of approval, adopted on June 29, 2005, is

long-barred by the statute of limitations.

## POINT V
## THE COMPLAINT FAILS TO STATE A CAUSE OF
## ACTION PURSUANT TO THE FAIR HOUSING ACT
## A. Introduction

A violation of the FHA may be asserted based upon intentional discrimination (disparate treatment) or discriminatory effect (disparate impact). *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995). Plaintiff apparently attempts to assert both. As is related herein, it is respectfully submitted that the complaint fails to allege a viable claim pursuant to either theory.

### B. "City People" Not Covered by FHA

The FHA, 42 U.S.C. § 3604(a), makes it unlawful to make a dwelling unavailable to any person because of "race, color, religion, sex, familial status, or national origin." Plaintiff's FHA claims are principally premised on the purported ill-will against "City People." Pursuant to the terms of the statute, such is not a protected class of people and to the extent that the FHA claims are based on that status, no cognizable FHA claim is stated as a matter of law.

### C. The Town Did Not Make a Dwelling Unavailable/Plaintiff Not Aggrieved

42 U.S.C. § 3604(a) makes it unlawful "to make unavailable or deny" a dwelling. 42 U.S.C. § 3613(a)(1)(A) authorizes the institution of a civil action only by an "aggrieved person." As the complaint confirms, the Planning Board approved Plaintiff's subdivision application for the number of lots she desired. Plaintiff complains about the conditions of approval and certain actions of the Town in the implementation of the approval. However, the Town has not denied or made a dwelling unavailable in any respect and she is not aggrieved within the purview of the FHA. *See R-Goshen LLC v. Village of Goshen*, 289 F.Supp.2d 441, 449 (S.D.N.Y. 2003), *aff'd*, 115 Fed.Appx. 465 (2d Cir. 2004) ("Approval-even conditional approval-is the antithesis of denial."); *see also Country View Estates @ Ridge LLC*, 452 F.Supp.2d at 154, n. 6.

Similarly, Plaintiff's complaints regarding the extent and perimeters of open space required as a condition of the subdivision approval also are not cognizable pursuant to the FHA. Indeed, "[n]othing in the text or legislative history of the Fair Housing Act suggests that Congress intended to regulate and thereby subject to judicial review, a municipality's zoning ordinances which, *inter alia*, seek to provide for open space … and to control residential growth in a non-discriminatory manner." *Eastampton Center, L.L.C. v. Township of Eastampton*, 155 F.Supp.2d 102, 121 (D.N.J. 2001).

Consequently, it is respectfully submitted that Plaintiff has not state a claim pursuant to the FHA as a matter of law.

### D. Disparate Treatment

The Second Circuit analyzes claims of discrimination under the FHA pursuant to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis. *See Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002), *cert. denied*, 123 S.Ct. 74 (2002).

To establish a *prima facie* case of discrimination, a plaintiff must demonstrate that animus against a protected group was a "significant" or "motivating" factor in the decision made. *See Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir.), *cert. denied*, 537 U.S. 813 (2002); *LeBlanc-Sternberg*, 67 F.3d at 425; *Palmieri v. Town of Babylon*, 2006 WL 1155162 at 14 (E.D.N.Y. 2006); *see also Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 270 (1977); *Smith & Lee Associates, Inc. v. City of Taylor*, 102 F.3d 781, 790 (6th Cir. 1996). In addition, "[a] disparate treatment claim requires proof of 'differential treatment of similarly situated persons or groups.'"

*Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007) (*quoting Bangerter v. Orem City Corp*., 46 F.3d 1491, 1501 (10th Cir. 1995). The claimed discrimination must be intentional. *See Tsombanidis v. West Haven Fire Dept*., 352 F.3d 565, 573 (2d Cir. 2003). The complaint is devoid of any allegations to demonstrate that purported cognizable animus was a motivating factor in the challenged actions or that Plaintiff was the victim of intentional discrimination. Additionally, the allegations do not provide any basis to claim that the other applications referred to therein were similarly situated to Plaintiff's in all relevant respects.

Although the complaint alleges that Ms. Mc Culloch was born in Puerto Rico of Puerto Rican parents, it does not allege any facts or basis to suggest that that she was discriminated against on the basis of her race or that the Defendants were aware of her ancestry. A *prima facie* case of discrimination is not alleged unless the plaintiff demonstrates that the defendant was "aware that the plaintiff belonged to a protected class. To suggest otherwise would allow rejected applicants to subsequently introduce evidence of their race, color, religion, sex, familial status, or national origin-which was not known or considered during the decision-making process-to prove that the adverse decision was made because of that applicant's race, color, religion, sex, familial status, or national origin. Such a flawed process would yield irrational results." *Tufano v. One Toms Point Lane Corp.*, 64 F.Supp.2d 119, 127 (E.D.N.Y. 1999), *aff'd*, 229 F.3d 1136 (2d Cir. 2000); *see also Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir.1985). Consistent with the requisite pleading requirements, the complaint fails to allege a plausible claim of discrimination, but, instead, bases the claim on mere speculation.

In *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994), the Second Circuit Court affirmed the dismissal of a racial discrimination claim because the plaintiff failed to allege specific events which would support a finding of discriminatory intent. The Court observed that "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *See also Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978); *Smith v. United Federation of Teachers*, 162 F.3d 1148 (2d Cir.), *cert. denied*, 525 U.S. 883 (1998) (conclusory statements that he is black and all of the individuals who discriminated against him are white is "insufficient to give rise to a plausible inference of discrimination").

 "To discriminate because of race necessarily requires knowledge or belief on the wrongdoer's part that the victim is a minority." *Tufano*, 64 F.Supp.2d at 127. Similarly, in the absence of a demonstration that one was discriminated against as a consequence of membership in one of the six groups protected by the FHA, "there is no discriminatory nexus.…" *Id.* at 126. According to the initial complaint, Ms. Mc Cullogh's application was processed by Mr. Mc Cullogh and other "representatives." The complaint is devoid of any factual allegations that the Defendants knew of Ms. Mc Cullogh's heritage, discriminated against her because of her race or that any nexus existed between her race and the actions alleged. As such, no claim is stated of based upon Ms. Mc Cullogh's race as a matter of law.

With respect to the general claims of discrimination, "[d]iscriminatory intent may be inferred from the totality of the circumstances, including ... the historical background of the decision ...; the specific sequence of events leading up to the challenged decision

...; [and] contemporary statements by members of the decisionmaking body ...." *Regional Economic Community Action Program*, 294 F.3d at 49 (*quoting LeBlanc-Sternberg*, 67 F.3d at 425). The totality of the circumstances, historical background and sequence of events reflect a run-of-the-mill land use application which was <u>approved</u> with relevant conditions and with some disagreements regarding implementation of the approved plat. No basis exists to infer any form of cognizable discriminatory treatment. Moreover, the complaint is devoid of any relevant discriminatory action or remarks by the reviewing or implementing agencies or officials. In fact, the only statements alleged to support Plaintiff's disparate treatment claim are the purported statements of one member of the public[2] and one unidentified "volunteer" to the effect that "City People" do not know how to care for the land. Such claimed statements provide no basis to support Plaintiff's claim of intentional racial discrimination. *See Hallmark Developers, Inc. v. Fulton County*, 466 F.3d 1276, 1284 (11th Cir. 2006).

    As a result, it is respectfully submitted that the allegations of the complaint fail to state a disparate treatment claim as a matter of law.

### E.  Disparate Impact
#### i. Introduction

    To establish a *prima facie* case of disparate impact, a Plaintiff must demonstrate the occurrence of certain outwardly neutral practices and a "significantly adverse or disproportionate impact" on protected persons produced by the defendant's facially

---

[2] To the extent Plaintiff implies that the Planning Board may have been influenced by the purported comment of one member of the public, such an assertion is not cognizable or evidence of an improper motive on the part of the Planning Board. *See Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 685 (3d Cir. 1991), *cert. denied*, 503 U.S. 984 (1992); *Mikels Motors, Inc. v. Township of Stroud*, 48 Fed.Appx. 844, 846 (3d Cir. 2002); *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 501 (2d Cir 2001); *Bryant Woods Inn, Inc. v. Howard County*, 911 F.Supp.2d 918, 930 (D.My 1996), *aff'd*, 124 F.3d 597 (4th Cir. 1997).

neutral policy. *See Regional Economic Community Action Program*, 294 F.3d at 52-53; *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997). The Courts have emphasized that only practices with "significant" discriminatory effects are cognizable. *See Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007); *Simms v. First Gibralter Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996), *cert. denied*, 519 U.S. 1041 (1996); *Southend Neighborhood Imp. Ass'n v. St. Clair County*, 743 F.2d 1207, 1209 (7th Cir. 1984).

"[T]he requirements of a *prima facie* disparate impact case ... are in some respects more exacting than those of a disparate treatment case." *Spaulding v. University of Washington*, 740 F.2d 686, 705 (9th Cir.) (citation omitted), *cert. denied*, 469 U.S. 1036 (1984). A plaintiff must do more than merely raise an inference of disparate impact to state a claim. *See Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1486, *rehearing denied*, 13 F.3d 296 (9th Cir. 1993). Moreover, conclusory allegations do not suffice to establish a *prima facie* case of disparate impact. *See Palmieri*, 2006 WL 1155162 at 13.

As is related above, Plaintiff's subdivision application was not denied, and the open space condition and enforcement of the approval do not produce, as a matter of law, a significantly adverse or disproportionate impact on covered individuals.

### ii. No Policy or Practice

A disparate impact claim may only challenge a neutral practice or policy. *See Regional Economic Community Action Program*, 294 F.3d at 53. A disparate impact plaintiff "must show that a specific policy caused a significant disparate effect on a protected group." *Mountain Side Mobile Estate Partnership v. Secretary of Housing and Urban Development*, 56 F.3d 1243, 1251 (10th Cir. 1995); *Reinhart*, 482 F.3d at 1229.

It may not be utilized to challenge a single action as opposed to a municipal policy. *See Regional Economic Community Action Program*, 294 F.3d at 53; *Ventura Village, Inc. v. City of Minneapolis*, 318 F.Supp.2d 822, 827 (D. Minn. 2004), *aff'd*, 419 F.3d 725 (8th Cir. 2005); *Simms*, 83 F.3d at 1555. The Second Circuit determined in *Regional Economic Community Action Program* that the denial of a special permit application is "not a challenge to a facially neutral policy or practice.… * * * No comparison of the act's disparate impact on different groups of people is possible. " 294 F.3d at 53. Just as the denial of a land use permit cannot form the basis for a disparate impact claim, the approval of a subdivision subject to conditions with which Plaintiff is dissatisfied and implementation of the same does not constitute a practice or policy that can form the basis for a disparate impact claim.  Moreover, a disparate impact claim based solely on increased costs associated with a land use approval is not cognizable under the FHA. *See Hemisphere Bldg. Co., Inc. v. Village of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999); *see also Reinhart*, 482 F.3d at 1229-30; *Edwards v. Media Borough Council*, 430 F.Supp.2d 445, 451 (E.D. Pa. 2006).[3]

### iii. Statistical Evidence

Plaintiff's brief statistical analysis is insufficient as a matter of law to even suggest a disparate impact claim. In the first place, because the statistical evidence relates to a comparison of people residing in New York City to those in the Town of Milan and is based on the purportedly disparate impact on "City People," no claim is stated.

In any event, to prevail on a disparate impact claim, a plaintiff must allege sufficient facts to support the contention that the challenged policy "*actually*

---

[3] Further, as is related above, to the extent the disparate impact claim is premised on a purported policy with respect to "City People," a FHA claim is not stated as a matter of law.

13

disproportionately affected a protected class." *2922 Sherman Ave. Tenants' Ass'n v. District of Columbia*, 444 F.3d 673, 681 (C.A.D.C. 2006) (emphasis in original); *see also Garcia*, 998 F.2d at 1486. In *Garcia*, the Court determined that:

> [T]he plaintiff must prove the existence of adverse effects of the policy, must prove that the impact of the policy is on terms, conditions, or privileges of employment of the protected class, must prove that the adverse effects are significant, and must prove that the employee population in general is not affected by the policy to the same degree.

998 F.2d at 1486

The complaint is devoid of any allegation of actual disparate impact on a protected group let alone a significant impact or one that is different in degree than the public at large.

Additionally, the following concepts apply to statistical disparate impact claims:

- "the appropriate comparables must focus on the local housing market and local family statistics. The farther removed from local statistics the plaintiff's venture, the weaker their evidence becomes." *Mountain Side Mobile Estate Partnership*, 56 F.3d at 1253.

- "Statistics based on the general population [should] bear a proven relationship to the actual applicant flow." *Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926, 938 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988), *rehearing denied*, 488 U.S. 1023 (1989); *Hallmark Developers*, 466 F.3d at 1286.

- The effect of disputed action on a group claimed to be affected thereby may not be speculative. *See Hallmark Developers*, 466 F.3d at 1286.

Rejecting the statistical analysis, the *Hallmark Developers* Court determined that "Whether a person who currently owns a home or rents an apartment within the price ranges proposed by [plaintiff] for its development would purchase or rent one of [plaintiff's] homes is speculative. * * * There is no evidence that the statistics based on the general population of home owners and renters bears 'a proven relationship to the

actual applicant flow.'" *Id.* (*quoting Huntington*, 844 F.2d at 938 n.11); *see also Macone v. Town of Wakefield*, 277 F.3d 1, 8 (1st Cir. 2002) ("there is no information that any minorities would actually move into the … project.").

Reflecting the rarity of an adequately asserted disparate impact case, the *Hallmark Developers* Court found that in the majority of cases in which disparate impact was found "invariably there was a waiting list for affordable housing or a shortage of housing for which only a defined group qualified." 466 F.3d at 1287 (citations omitted).

In the instant matter, Ms. Mc Cullogh's disparate impact claim is premised on the speculative chain of events that she intends to market the new homes to be constructed to New York City residents, that a majority of residents of New York City are minorities and that the actions alleged in some matter interfere with their ability to obtain housing more significantly than non-minorities. No analysis of the local housing market is alleged. There are no allegations of a history of discrimination in the Town. There is no allegation of an actual impact on minorities or an actual interference with their ability to obtain housing. In short, it is respectfully submitted, the complaint fails to state an even arguable disparate impact claim.

### F. Conclusion

It is respectfully submitted that, as is related above, the complaint fails to state a claim pursuant to the FHA as a matter of law.

### POINT VI
### PLAINTIFFS LACK A PROPERTY INTEREST
### A. Introduction

An essential element of a substantive due process, procedural due process and equal protection claim is the requirement that the plaintiff possess a cognizable property

interest, rooted in state law. *See Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995); *MKA Realty Corp. v. Town of Wallkill*, 82 Fed.Appx. 712, 714 (2d Cir. 2003); *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 503 (2d Cir.2001); *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996).

### B. No Property Interest if Reviewing Agency Possesses Discretion

In order to establish a constitutionally cognizable property interest, a litigant must demonstrate a clear entitlement to the benefit in question. *See Village Ponder v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995), *cert. denied,* 117 S.Ct. 50 (1996); *RRI Realty Corp. v. Village of Southampton*, 870 F.2d 911 (2d Cir.), *cert. denied,* 493 U.S. 893 (1989). The applicable "strict entitlement" analysis focuses on the extent to which the reviewing agency or official may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision. *See Zahra,* 48 F.3d at 680; *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 132-22 (2d Cir. 1998).[4]

If a board or official possesses discretion in reviewing an application, no property interest exists as a matter of law. *See Crowley*, 76 F.3d at 52; *Zahra*, 48 F.3d at 680; *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). "Even if 'objective observers would estimate that the probability of [obtaining the relief sought] was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest.'" *Bower Associates v. Town of Pleasant Valley*, 2 N.Y.3d 617, 628, 781 N.Y.S.2d 240, 246, 814 N.E.2d 410, 416 (2004)

---

[4] Whether a plaintiff possesses a cognizable property interest is a question of law for determination by the court. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Barta v. Board of Regents*, 79 F.3d 717, 720 (8th Cir. 1996); *RRI Realty,* 870 F.2d at 918.

(*quoting RRI Realty*, 870 F.2d at 918). As a result, the law is clear that a property interest does not exist if a reviewing agency possesses discretion in reviewing an application.

### C. No Property Interest in Subdivision Approval
### or in Unconditional Subdivision Approval

Planning boards in New York possess considerable discretion in reviewing a subdivision application. *See Deepwells Estates, Inc. v. Village of Head of the Harbor*, 973 F.Supp. 338 (E.D.N.Y. 1997), *appeal dismissed*, 162 F.3d 1147 (2d Cir. 1998); *Cedarwood v. Town of Schodack*, 954 F.Supp. 513 (N.D.N.Y. 1997) ("Under the New York Town Law, planning boards are vested with the authority to weigh the evidence and exercise their discretion in approving or denying approval of a subdivision plat."); *Orange Lake Assocs. v. Fitzpatrick,* 825 F.Supp. 1169 (S.D.N.Y. 1993), *aff'd,* 21 F.3d 1214 (2d Cir. 1994); *Bower Associates v. Town of Pleasant Valley*, 2 N.Y.2d 617, 781 N.Y.S.2d 240, 814 N.E.2d 410 (2004); *Terra Homes v. Smallwood*, 247 A.D.2d 394, 667 N.Y.S.2d 920 (2d Dept.), *lv. denied,* 92 N.Y.2d 809, 678 N.Y.S.2d 595, 700 N.E.2d 1231 (1998); *Fawn Builders v. Planning Bd. of Lewisboro*, 223 A.D.2d 996, 636 N.Y.S.2d 873 (3d Dept. 1996); *M & M Partnership v. Sweenor*, 210 A.D.2d 575, 619 N.Y.S.2d 802 (3d Dept. 1994).

The provisions of Town Law § 277 confirm the extensive discretion accorded a planning board in reviewing a subdivision application. For example, Town Law § 277(1) mandates that a planning board assure that the land is of such character that it can be used safely for building purposes without danger from fire, flood, drainage or other menace to neighboring properties or the public health, safety and welfare. Town Law § 277(2)(a) mandates a planning board to also require that the streets and highways be of sufficient width and suitable grade. The balance of the substantive provisions of Town Law § 277

further demonstrate the existence of substantial discretion. In addition, Town Law § 277(3) provides additional discretion to a planning board reviewing a subdivision application by mandating that "where a zoning ordinance or local law has been adopted by the town, the lots shown on said plat shall *at least* comply with the requirements thereof.…" (emphasis added).

Confirming the broad discretion delegated a planning board, pursuant to Town Law § 277, a planning board reviewing a proposed subdivision plat can consider, among other discretionary factors, deleterious consequences of the proposed development on adjacent territory and development. *See Pearson Kent Corp. v. Bear*, 28 N.Y.2d 396, 322 N.Y.S.2d 235, 271 N.E.2d 218 (1971); *Ozols v. Henley*, 81 A.D.2d 670, 438 N.Y.S.2d 349 (2d Dept.), *appeal dismissed*, 54 N.Y.2d 1023, 446 N.Y.S.2d 263, 430 N.E.2d 1316 (1981); *Landing Estates v. Jones*, 67 Misc.2d 354, 324 N.Y.S.2d 255 (Sup. Ct. Suffolk Co. 1971); *Reed v. Planning Board of the Town of Chester*, 120 A.D.2d 510, 501 N.Y.S.2d 710 (2d Dept. 1986).

In short, as was determined in *Honess 52 Corp. v. Town of Fishkill*, 1 F.Supp.2d 294, 304 (S.D.N.Y. 1998), "[u]nder sections 276 and 277 of [the Town Law], a local planning board is vested with the authority to weigh the evidence, resolve the conflicting inferences, and exercise its discretion in approving or denying approval of a subdivision plat." (citations omitted). As a result, "by virtue of state law the Planning Board possesses the authority to consider a host of factors in assessing [a] Preliminary Plat application and to exercise discretion in evaluating those criteria." *Id*. Therefore, the Court concluded that "The sufficiency of [the] application is a determination for the Planning Board to make within its sound discretion, and the soundness of the Planning

Board's ultimate decision – including whether its determinations … are otherwise arbitrary in violation of state law – is a matter for the state courts." *Id*. at 305.

Moreover, the Town's subdivision regulations further confirm the substantial discretion properly delegated to the Planning Board. Section 177-13(E) provides that the Planning Board must consider the requirements of the community, the best use of the land being subdivided, environmental constraints, location and width of roads, location of prospective homesites, water supply, sewage disposal, drainage, proposed lot sizes and configuration, the future development of lands as yet unsubdivided, and the Comprehensive Plan.

Consequently, Plaintiff did not possess a property interest in obtaining subdivision approval because the Planning Board possessed substantial discretion in reviewing the application.

Moreover, particularly because Plaintiff did not possess a property interest in subdivision approval, it could not possess a property interest in receiving subdivision without the purportedly offending conditions.

It is well-settled that planning boards possess discretion to condition subdivision approval. "[A] condition may be imposed upon property so long as there is a reasonable relationship between the problem sought to be alleviated and the application concerning the property." *Mackall v. White*, 85 A.D.2d 696, 445 N.Y.S.2d 486 (2d Dept. 1981), *lv. denied,* 56 N.Y.2d 503, 450 N.Y.S.2d 1025, 435 N.E.2d 1100 (1982). The conditions imposed herein were consistent with legitimate and indeed admirable goal of preserving open space.

Confirming the complete absence of any claim to a cognizable property interest herein, in *Zeigler v. Town of Kent*, 258 F.Supp.2d 49, 60 (D.Conn. 2003), the Court determined that:

> In light of the discretion vested in the Commission to attach conditions and safeguards plaintiff cannot claim that he had a legitimate claim of entitlement – that is, a constitutionally protected property interest – to the permit subject only to the conditions which he requested.…

Consequently, the existence of the authority to impose conditions on such a discretionary approval and the absence of any right to have a subdivision approved without conditions further evidences the absence of a property interest herein.

Further indicative of the substantial discretion accorded the Planning Board in reviewing subdivision applications, Town Law § 277(7) and §§ 177-33 and 177-34 of the Town subdivision regulations authorize the Planning Board to waive or modify provisions of the subdivision regulations.

Consequently, because the Planning Board possessed substantial discretion in evaluating Plaintiff's subdivision application, in determining whether to impose conditions of the approval, in determining what conditions should appropriately be imposed and in possessing the authority to grant waivers from the subdivision regulations, Plaintiff lacked a cognizable property interest as a matter of law. As a result, the complaint fails to state a due process or equal protection claim as a matter of law.

**POINT VII**
**PLAINTIFF DOES NOT POSSESSES A**
**SUBSTANTIVE DUE PROCESS CLAIM**

**A.  Equal Protection and Taking Claims**
**Preclude Substantive Due Process Claim**

Because Plaintiff has asserted claims pursuant to the more specific provisions of the Equal Protection and Fifth Amendment Taking Clauses, she may not also assert a substantive due process claim based on the same conduct. "When an explicit textual provision of the Constitution protects against challenged governmental action, *the claim must be analyzed under that specific provision alone* and not under the more general guarantee of substantive due process." *Armendariz v. Penman*, 75 F.3d 1311, 1326 (9th Cir. 1996) (en banc) (emphasis in original); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *Albright v. Oliver*, 510 U.S. 266 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995); *Ayeni v. Mottola*, 35 F.3d 680, 291 (2d Cir. 1994), *cert. denied*, 514 U.S. 1062 (1995); *Buckles v. King County*, 191 F.3d 1127, 1137 (9th Cir. 1999); *Smith v. City of Albany*, 2006 WL 839525 at 9 (N.D.N.Y. 2006), *aff'd*, 2007 WL 2973995 (2d Cir. 2007); *Caidor v. M & T Bank*, 2006 WL 839547 at 3 (N.D.N.Y. 2006); *Jones v. McMahon*, 2005 WL 928667 at 2 (N.D.N.Y. 2005), *aff'd, in part, dismissed in part*, 465 F.3d 46, 2006 WL 2828506 (2006). Because Plaintiff has asserted Equal Protection and Taking claims, the vaguely asserted claim pursuant to the amorphous substantive due process claim based upon the same facts is insufficient on its face. *See Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005)

### B. The Complaint Fails to State a Substantive Due Process Claim

A plaintiff asserting a substantive due process claim must allege facts substantiating: 1) the existence of a property interest; 2) which the state has deprived the owner of; and 3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.  *See Sylvia Development*

*Corp. v. Calvert County,* 48 F.3d 810, 827 (4th Cir. 1995); *Crowley v. Courville*, 76 F.3d

47 (2d Cir. 1996). "[T]he threshold for establishing the requisite 'abuse of government

power' is a high one indeed." *Licari v. Ferruzzi*, 22 F.3d 344, 350 (1st Cir. 1994).

A substantive due process claim is not stated or viable unless the conduct alleged

satisfies the exceptionally high standard of "shock the conscience." *See County of*

*Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Bryant v. City of New York*, 404 F.3d

128, 135 (2d Cir. 2005); *Velez,* 401 F.3d at 93; *Catanzaro v. Weiden*, 188 F.3d 56, 60 (2d

Cir. 1999).

"Substantive due process protects against government action that is arbitrary,

conscience-shocking, or oppressive in a constitutional sense, but not against government

action that is merely 'incorrect or ill advised.'" *Kaluczky v. City of While Plains*, 57 F.3d

202, 211 (2d Cir. 1995) (*quoting Lorence v. Achtyl*, 20 F.3d 529, 538 (2d Cir. 1994)); *see*

*also Frooks v. Town of Cortlandt*, 997 F.Supp. 438 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899

(2d Cir. 1999); *Benjamin v. Town of Fenton*, 892 F.Supp. 64, 68-69 (N.D.N.Y. 1995).

Government action is arbitrary or irrational for purposes of substantive due process

analysis "only when government acts with no legitimate reason for its decision."

*Southview Associate*, 980 F.2d at 102. A substantive due process plaintiff must show that

the governmental agency has been guilty of arbitrary and capricious action in the "strict

sense," meaning that there is no conceivable rational basis for the decision. *See Triomphe*

*Investors v. City of Northwood*, 49 F.3d 198, 201 (6th Cir.), *cert. denied*, 516 U.S. 816

(1995).[5]

---

[5] Significantly, if not involving a fundamental right, government's action is not required actually to advance its stated purpose – the courts inquire only whether the government *could* have a legitimate reason for acting as it did. *See Hoeck v. City of Portland*, 57 F.3d 781 (9th Cir. 1995), *cert. denied,* 516 U.S. 1112 (1996).

Moreover, "'[a]rbitrary and capricious' in this context does not mean simply erroneous. 'Actions that violate state law are properly challenged in state courts … [t]he legality of a zoning decision under applicable state law is not determinative of whether the decision violated federal substantive law." *Norton v. Village of Corrales,* 103 F.3d 928, 932 (10th Cir. 1996) (*quoting Sylvia Development Corp.*, 48 F.3d at 829). "Whether the City has followed state law is neither here nor there; the due process clause is not a means to enforce state law." *Albiero v. City of Kankakee*, 122 F.3d 417, 420 (7th Cir. 1997). Even a "mere bad faith refusal" to follow state law does not amount to a deprivation of due process where the state courts are available to correct error. *See Zahra*, 48 F.3d at 674; *Chiplin Enterprises v. City of Lebanon*, 712 F.2d 1524, 1528 (1st Cir. 1983); *PFZ Properties v. Rodrigues,* 928 F.2d 28, 32 (1st Cir. 1991), *cert. dismissed*, 503 U.S. 257 (1992). Although no violation of state law occurred herein, such a scenario, in any event, would not provide an even arguable basis for a substantive due process claim.[6]

The actions alleged in the complaint simply do not rise, as a matter of law, to the exceptionally high level of egregious and utterly irrational behavior that is required in order to state a substantive due process claim.

### C. Because of the Existence of Available Judicial Review, a Substantive Due Process Claim is Not Stated

In any event, a substantive due process claim cannot be stated as a matter of law as a result of the availability of state judicial review procedures. Even the "outright violation" of state law in the denial of a permit does not provide the basis for a constitutional claim if a

---

[6] Indeed, the Third Circuit has suggested that land use decision-making cannot satisfy the requisite high standard unless, at least, the facts are typified by corruption, self-dealing, or a concomitant infringement on other fundamental liberties that cannot be rectified by pre- or post-deprivation proceedings. *See Eichenlaub v. Township of Indiana*, 385 F.3d 285, 285-86 (3d Cir. 2004); *see also Maple Properties, Inc. v. Township of Upper Providence*, 151 Fed.Appx. 174, 179 (3d Cir. 2005); *Spradlin v. Borough of Danville*, 2005 WL 3320788 at 8 (M.D.Pa. 2005), *aff'd*, 188 Fed.Appx. 149 (3d Dept. 2006); *Robinson v. Limerick Township*, 2005 WL 627880 at 2 (E.D.Pa 2005).

state law remedy is available. *See Natale,* 170 F.3d at 263; *Yale Auto Parts v. Johnson*, 758 F.2d 54, 58-59 (2d Cir. 1985); *Gottlieb v. Village of Irvington*, 69 F.Supp.2d 553, 556 (S.D.N.Y. 1999); *Hi Pockets, Inc. v. The Music Conservatory of White Plains*, 192 F.Supp.2d 143, 159 (S.D.N.Y. 2002); *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996), *cert. dismissed*, 521 U.S. 1140 (1997).

Plaintiff could have sought judicial review of the conditions of the approval by which she claims to have been aggrieved in an Article 78 proceeding instituted within 30 days of the filing of the decision in June 2005 or of the violation notice by an appeal to the Zoning Board of Appeals and subsequent Article 78 proceeding. However, she choose not to do so. Because of the existence of such an adequate state court judicial remedy, Plaintiff has not, for this additional reason, stated a substantive due process claim as a matter of law.

### POINT VIII
### THE COMPLAINT FAILS TO STATE A
### PROCEDURAL DUE PROCESS CLAIM

The availability of adequate state court review precludes a procedural due process claim. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]hen a state 'affords a full judicial mechanism with which to challenge the administrative decision' in question, the state provides adequate procedural due process, whether or not the plaintiff avails himself of the provided appeal mechanism." *DeBlasio v. Zoning Board of Adjustment of the Town of West Armwell*, 53 F.3d 593, 597 (3d Cir.), *cert. denied*, 516 U.S. 937 (1995); *see also Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991), *cert. denied*, 503 U.S. 984 (1992); *Bello v. Walker*, 840 F.2d 1124, 1128 (1st Cir.), *cert. denied*, 488 U.S. 868 (1988); *Creative Environment, Inc. v. Estabrook*, 680 F.2d 822, 832 (1st Cir.), *cert. denied*, 459 U.S. 989 (1982).

New York State statutes provide an opportunity for full and complete judicial review of a determination of a planning board on a subdivision application. Numerous decisions have determined that the availability of judicial review satisfies the requirements of procedural due process as a matter of law. *See Brady*; 863 F.2d at 211; *Tara Circle, Inc. v. Bifano*, 1997 WL 399 683 at 8 (S.D.N.Y. 1997); *T.S. Haulers v. Town of Riverhead*, 190 F.Supp. 455, 464-65 (E.D.N.Y. 2002); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d. Cir.1988*); Orange Lake Assoc.*, 825 F.Supp. at 1179; *Hampton Bays Connections, Inc. v. Duffy*, 127 F.Supp.2d 364, 380 (E.D.N.Y. 2001).

Because Plaintiff's alleged grievances were addressable through state court judicial review, a procedural due process claim fails as a matter of law.[7]

## POINT IX
## NO TAKING CLAIM EXISTS
## AS A MATTER OF LAW

Plaintiff apparently seeks to assert a taking claim based on the limited conservation easement on the property which was provided as a condition of the subdivision approval. For the reasons related herein, the complaint fails to state a taking claim as a matter of law.

### A. Plaintiff Not Deprived of All Use of Property

If Plaintiff is attempting to assert that the economic impact of the conservation easement constitutes a taking, the complaint fails to state such a claim. In order for the economic impact of a regulation to cause a taking pursuant the United States or New York State Constitutions, the regulation must take "all use of property," *First English Evangelical Lutheran Church v. County of Los Angeles*, 427 U.S. 304, 318 (1987), "all economically

---

[7] In the first instance, as is related above, one cannot possess a right to procedural due process unless one possesses a cognizable property interest. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994); *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995). Since Plaintiff lacks a cognizable property interest, she cannot state a viable procedural due process claim for this additional reason.

beneficial use," *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027, 1029 (1992), or all economic value of property must have been extinguished. *See Gazza v. New York State Department of Environmental Conservation*, 89 N.Y.2d 603, 619, 657 N.Y.S.2d 555, 563, 679 N.E.2d 1035, 1043, *cert. denied,* 522 U.S. 813 (1997).

Even a drastic diminution in the value of property does not result in a taking. *See e.g., Penn Central Transportation Co. v. City of New York,* 438 U.S. 104 (1978); *Goldbaltt v. Town of Hempstead,* 369 U.S. 590, 592-93 (1962); *Hadacheck v. Sebastian,* 239 U.S. 394 (1915) (87½% diminution in value); *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926) (75% diminution in value*); Wulfsohn v. Burden*, 241 N.Y. 288, 302, 302 N.E.2d 120, 124 (1925); *McGowan v. Cohalan*, 41 N.Y.2d 434, 393 N.Y.S.2d 376, 361 N.E.2d 1025 (1978); *Northern Westchester Professional Park Assocs. v. Town of Bedford*, 60 N.Y.2d 492, 470 N.Y.S.2d 350, 458 N.E.2d 809 (1983); *De St.Aubin v. Flacke*, 68 N.Y.2d 66, 505 N.Y.S.2d 859, 496 N.E.2d 879 (1986). The complaint does not even assert a reduction in the value of Plaintiff's property, drastic or otherwise.

Moreover, it is clear from the allegations of the complaint that the conservation easement does not effectuate a taking of all economic value of the property. In the first instance, in assessing the impact of a regulation, one must view the entirety of the property and may not "segment" portions of the whole. In *Penn Central Transportation Co. v. City of New York City*, 438 U.S. 104, 130-31 (1978), the Supreme Court determined that takings jurisprudence "does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." *See also Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 327 (2002); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987); *Andrus*

*v. Allard*, 444 U.S. 51 (1979); *Smith v. Town of Mendon*, 4 N.Y.3d 1, 14 n.12, 789 N.Y.S.2d 696, 703 n.12, 822 N.E.2d 1214, 1221 n.12 (2004). Consequently, in determining whether the value of the property has been extinguished, the entirety of the property with its six approved building lots must be considered. By definition, a taking has not transpired. *See, e.g., Palazzolo v. Rhode Island*, 533 U.S. 606, 631 (2001).

Secondly, the owners of the lots are free to use the area encumbered by the conservation easement. Although they may not construct structures in the area or generally cut down live trees, they may utilize the property for passive recreation, as a buffer and for aesthetic value and, of course, are permitted to erect a dwelling on each of the lots.

On the face of the complaint, a taking has not occurred as a matter of law.

### B. Conservation Easement – Not Unconstitutional Exaction

Plaintiff's claim of an unconstitutional exaction is repudiated by the universal case law. Significantly, as is explicitly confirmed by the conservation easement, the easement provides no right of access by the public and specifically excludes any right of public access.

In the first place, Plaintiff's "exaction" analysis is misplaced as a matter of law. The Supreme Court determined in *Lingle v. Chevron USA Inc.*, 544 U.S. 528, 548 (2005), that "the 'substantially advances' formula is not a valid takings test, and … has no proper place in our takings jurisprudence." Therefore, the allegations of the complaint do not, as a threshold matter state a valid taking claim.

Secondly, to the extent that prior decisions, such as *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), have any continuing viability to Plaintiff's claim after *Lingle*, the "essential nexus" or "rough

proportionality" analysis of those decisions have no applicability to the conservation easement herein.

Unlike the scenarios in *Nollan* and *Dolan*, the conservation easement agreed to by Plaintiff herein does not permit public access to the property. The Supreme Court determined in *City of Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687, 702 (1999), that it is only a condition or requirement that requires dedication of land to public use that can be characterized as an "exaction" and concluded that "we have not extended the rough-proportionality test of *Dolan* beyond the special context of exactions-land-use decisions conditioning approval of development on the dedication of property to public use." (*citing Dolan*, 512 U.S. at 385). Consequently, the conservation easement is not an "exaction" and the analysis advocated by Plaintiff is inapplicable.

The analysis of the New York Court of Appeals in *Smith v. Town of Mendon*, 4 N.Y.3d 1, 789 N.Y.S.2d 696, 703, 822 N.E.2d 1214 (2004), fully implements and explains the relationship of conservation easements and the Constitutional principles upon which Plaintiff relies. First, the *Smith* Court concluded that the case involved "no property dedication of the type encountered in *Nollan* and *Dolan*. * * * Under the Supreme Court's doctrinal framework, …the Town's conservation restriction was not an 'exaction' subject to the closer scrutiny of the *Dolan* test." *Id*. at 11, 789 N.Y.S.2d at 701, 822 N.E.2d at 1219. Repudiating Plaintiff's analysis, the Court of Appeals determined that "Because the Town's conservation restriction cannot be classified as an exaction, we need not address the question

whether it was roughly proportional to the impact of the development proposed by the

Smiths."  *Id*. at 11 n.7, 789 N.Y.S.2d at 701 n.7, 822 N.E.2d at 1219 n.7.[8]

The *Smith* Court further observed that:

'property' is constituted by many possessory interests, some of which (e.g., the rights to exclude and alienate) are more central to commonly held understandings of property than others. The Supreme Court's exactions jurisprudence tracks this conception of property. In *Nollan* and *Dolan*, the Supreme Court applied the idea of 'exaction' only to the required dedications of a core possessory interest, the right to exclude. * * * '[b]oth cases hinged on the owners' loss of perhaps the most important 'stick' from the ownership bundle: the ability to restrict access…' Notably, the Supreme Court has never extended its exactions analysis to the dedication of less substantial possessory interests, like those at issue here. Thus, … the conservation restriction is not an exaction within *Nollan* and *Dolan*, and we are unwilling to expand the holdings of those decisions to the case before us.[9]

As a result, "[b]ecause the Town's development condition is not an exaction, we

review it according to the standard enunciated by the Court in *Agins v. City of Tiburon*,

447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 [1980]; *see also Penn Cent. Transp. Co. v.

City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 [1978], as opposed to

*Dolan* 's rough proportionality test." *Id*. at 13, 789 N.Y.S.2d at 702, 822 N.E.2d at 1220.

In concluding that the conservation easement did not constitute an unconstitutional

taking, the Court observed that the conservation easement would not appreciably

diminish the value of the property, let alone deny the owners the economically viable use

of the property. *See id*.

---

[8] The Court affirmed the conclusion of the Appellate Division that "an 'exaction' in this context refers to 'land-use decisions conditioning approval of development on the dedication of property to public use.'" *Smith v. Town of Mendon*, 4 A.D.3d 859, 860, 771 N.Y.S.2d 781, 782 (4th Dept. 2004).
[9] The Court similarly determined that "conditioning a development permit on its surrender should not trigger the same constitutional scrutiny as the regulatory extortion of sticks far more integral to the bundle, such as the right to exclude third persons." *Id*. at 13, 789 N.Y.S.2d at 702, 822 N.E.2d at 1220.

Consistent with Supreme Court precedent, the Court further reiterated that a regulatory action need only be reasonably related to a legitimate governmental interest to satisfy the applicable "substantially advances" standard. *Id*. at 14, 789 N.Y.S.2d at 703, 822 N.E.2d at 1221. The conservation easement advanced a legitimate purpose and Plaintiff does not suggest otherwise.

The Court of Appeals determined that the preservation of open space is a legitimate governmental goal and concluded that:

> Ensuring perpetual protection for open spaces-along with the resources and habitats they shelter-from the vicissitudes of workaday land-use battles is hardly an inconsequential governmental interest. At the very least, the permanent character of the conservation restriction will spare the Town the administrative cost of continually being forced to maintain its conservation policies. More importantly, … the conservation restriction imposed by the Town, as a species of negative easement (citation omitted), is a 'well established land use tool' that is 'consistent with the State's longstanding commitment to protecting ... critical natural resources' (citation omitted). Further, even assuming that the marginal benefit to the Town from the conservation restriction were …  modest, it would nonetheless be legitimate. Under the holdings of *Agins*, *Penn Central* and their progeny, a modest environmental advancement at a negligible cost to the landowner does not amount to a regulatory taking.

*Id*. at 14-15, 789 N.Y.S.2d at 703, 822 N.E.2d at 1221; *see also Ross v. Town of Santa Clara*, 266 A.D.2d 678, 698 N.Y.S.2d 90 (3d Dept. 1999); *Blain v. Township of Radnor*, 2004 WL 1151727 (E.D.Pa. 2004), *aff'd*, 167 Fed.Appx. 330 (3d Cir. 2006); *Westrum Land Development Corp. v. Whitpain Township*,  2002 WL 32351106 at 5 (E.D.Pa. 2002).

Consistent with the Court of Appeals validation of the legitimacy of conservation easements and the preservation of open space, the Zoning Law provides that "Conservation easements are the preferred method to protect open space under New York State law. The permanent preservation of such open space shall be legally assured to the

satisfaction of the Planning Board and Town Attorney." (§ 200-39(A)(1)). The Zoning

Law further provides that:

> The conservation easement or other legally binding instrument shall
> permanently restrict the open space from future subdivision, shall define
> the range of permitted activities, and, if held by a conservation
> organization, shall give the Town the ability to enforce these restrictions.
> Under no circumstances shall any development be permitted in the
> protected open space at any time, except for the following uses:
> [1] Conservation of open land in its natural state (for example, woodland,
> fallow field, or managed meadow). The clearing of woodland shall
> generally be prohibited, except as necessary to create trails and passive
> recreation facilities, to maintain scenic viewsheds identified by the Town
> as important aesthetic resources, and to insta ll subsurface sewage disposal
> systems. The determination of necessity shall lie with the Planning Board.
> (§ 200-20(A)(1)(b)).

Similarly, the Milan subdivision regulations include among its objectives:

- Proper provision shall be made for leaving undeveloped natural areas and
  corridors to mitigate the adverse environmental impacts of subdivision and
  to sustain a diversity of native vegetation and wildlife, to protect water
  resources, agricultural land and scenic viewsheds and to implement the
  Town's policies of protection of its environmental and cultural resources
  pursuant to the Comprehensive Plan and Zoning Law. (§ 177-2(J).

- Existing features which would add value to residential development or
  whose preservation would benefit the Town, such as groves of mature
  trees, large individual trees, scenic vistas, watercourses, historic areas and
  similar irreplaceable assets, should be preserved, insofar as possible,
  through sensitive design of the subdivision. Lands designated for
  protection under provisions of regulations relating to wetlands, aquifers
  and other environmental/cultural resources shall also be preserved, insofar
  as possible, through the subdivision process. The Planning Board may, in
  order to ensure the preservation of such resources, and to mitigate
  potentially adverse impacts of land subdivision, encourage an applicant to
  place easements upon such lands as should be protected as a condition of
  subdivision approval. (§ 177-21(B)).

The zoning designation of the property pursuant to the Zoning Law is Very-Low-

Density Agricultural District ("A5A"). "The purpose of the Very-Low-Density

Agricultural District is to maintain the Town's rural character in areas distinguished by

the presence of both small and large farms, sparse residential development, and where limitations on development are designed to protect both natural resources and open space. Clustering of residential dwellings is encouraged to maintain traditional agricultural settlement patterns and to support farming in the community." (§ 200-6.1(A)).

Consequently, the conservation easement that permitted Plaintiff to create six new lots and to build five additional dwellings in addition to the existing single-family home on the property sought to preserve the rural character of the area and to preserve open space – all legitimate governmental goals. Plaintiff could not have constructed additional dwellings in the area of the conservation easement and Plaintiff and the subsequent home owners in her development maintain the right to continue to exclude the public therefrom. In short, the conservation easement is a well-established land use tool to advance a legitimate governmental interest without burdening the property owner's interests significantly, if at all. Clearly, a cognizable taking has not been asserted as a matter of law.

## POINT X
### CLAIMS AGAINST INDIVIUDAL DEFENDANTS BARRED BY *KNORR-PENNINGTON* DOCTRINE

The *Noerr-Pennington* doctrine immunizes those who petition government or advocate a position before an agency. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Boulware v. Nevada Department of Human Resources*, 793 F.2d 800 (9th Cir. 1992). *Noerr-Pennington* applies to governmental entities and governmental officials. *See Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000); *Miracle Mile Associates v. City of Rochester*, 617 F.2d 18, 20 (2d Cir. 1980); *Fischer Sand & Aggregate Co. v. City of Lakeville*, 874 F.2d 957,

959-60 (D. Minn. 1994); *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1387, 1390 (E.D.N.Y. 1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990). The *Noerr-Pennington* doctrine applies to action brought against municipalities pursuant to 42 U.S.C. § 1983, see *Manistee Town Center*, 227 F.3d at 1093; *Missouri v. National Organization for Woman*, 620 F.2d 1301, 1316-19 (8th Cir.), *cert. denied*, 449 U.S. 842 (1980), and to FHA claims. *See Alpha III, Inc. v. City of San Diego*, 187 Fed.Appx. 709 (9th Cir. 2006); *Affordable Housing Development Corp. v. City of Fresno*, 433 F.3d 1182 (9th Cir. 2006*); Sanghvi v. City of Claremont*, 328 F.3d 532 (9th Cir.), *cert. denied*, 540 U.S. 1075 (2003), *rehearing denied*, 540 U.S 1170 (2004).

Consequently, the volunteers and other individuals to the extent they are sued in their personal capacities based on statements made by them possessed an absolute right to comment on Plaintiff's applications and they are immune from suit for their commenting on such an issue of public interest.

## POINT XI
## INDIVIDUAL DEFENDANTS ENTITLED
## TO QUALIFIED IMMUNITY

"[A] government official sued in his individual capacity ... is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by federal law, ...; (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct, ...; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken.'" *X-Men Security, Inc. v. Pataki*, 196 F.3d 56 65-66 (2d Cir. 1999) (citations omitted) (*quoting Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

With respect to the second prong, the Second Circuit determined in *Zahra*, 48 F.3d at 686, that "Whether a defendant actually violated a plaintiff's rights is not the central issue: 'Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard.'" *Id. (quoting Davis v. Scherer*, 468 U.S. 183 (1984)); *see also Natale v. Town of Ridgefield*, 927 F.2d 101, 104-05 (2d Cir. 1991) ("Essentially, if it is objectively reasonable for an official to believe that he or she is acting within constitutional and statutory bounds, the official will be insulated from liability stemming from his or her conduct."). The Second Circuit has determined that:

> We have held that in determining whether a right was clearly established at the time the defendants acted, a court should consider: '(1) whether the right in question was defined with 'reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.'"

*Wright v. Smith*, 21 F.3d 496, 500 (2d Cir.1994) (*quoting Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir.1993)).

It is submitted that no Constitutional right of Plaintiff was violated herein, that if, in fact, Plaintiff's rights were violated in some manner, such was not clearly established at the time and that, in any event, the individual Defendants' actions were objectively legally reasonable in light of the legal rules that were established at the time it was taken. As a result, it is respectfully submitted that the claims against the individual Defendants should be dismissed based on qualified immunity.

## POINT XII
## PENDENT STATE LAW CLAIMS SHOULD BE DISMISSED

It is respectfully submitted that the federal claims herein should be dismissed for the reasons set forth above and, as a result, the pendent state common law tort claims also should be dismissed. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir. 1995).

## POINT XIII
## FAILURE TO ALLEGE FILING OF PROPER NOTICE OF CLAIM BARS CLAIMS FOR MONETARY RELIEF PURSUANT TO NEW YORK STATE CONSTITUTION, STATE LAW

A claim against a municipality seeking to recover damages pursuant to State law is barred unless a notice of claim is served within 90 days and an action is commenced within one-year and 90 days - after the happening of the event upon which the action is based. *See* General Municipal Law § 50-e; *Greifenberger v. Pav*, 225 A.D.2d 731, 640 N.Y.S.2d 197 (2d Dept. 1996), *lv. dismissed in part, denied in part*, 89 N.Y.2d 963, 655 N.Y.S.2d 883, 678 N.E.2d 495 (1997); *Klein v. City of Yonkers*, 73 A.D.2d 931, 423 N.Y.S.2d 685 (2d Dept.  1980), *aff'd*, 53 N.Y.2d 1011, 442 N.Y.S.2d 477, 425 N.E.2d 865 (1981). A claimed violation of a constitutional right pursuant to the New York State Constitution also is subject to the State's notice of claim requirements. *See Bidnick v. Johnson*, 253 A.D.2d 779, 677 N.Y.S.2d 614 (2d Dept. 1998); *Alaxanian v. City of Troy*, 69 A.D.2d 937, 415 N.Y.S.2d 293 (3d Dept. 1979). Because Plaintiff did not allege that she served a notice of claim with respect to the state law claims and, upon information and belief, did not serve a notice of claim, the claims pursuant to the State law are defective and must be dismissed.

**POINT XIV**
**COMPLAINT FAILS TO STATE A CLAIM FOR**
**TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE**

In addition to the fact that the State law claims are barred as a consequence of Plaintiff's failure to serve a proper and timely notice of claim, the complaint fails to state a cause of action. To establish a claim for interference with prospective economic advantage, a plaintiff must demonstrate that a defendant's interference with its prospective business relations was accomplished by wrongful means or that the defendant acted for the sole purpose of harming the plaintiff. *See Caprer v. Nussbaum*, 36 A.D.3d 176, 204, 825 N.Y.S.2d 55, 78 (2d Dept. 2006); *Snyder v. Sony Music Entertainment, Inc*., 252 A.D.2d 294, 299-300, 684 N.Y.S.2d 235, 239 (1st Dept. 1999). Wrongful means requires physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure; more than simple persuasion is required. *See Guard-Life Corp. v. Parker Hardware Mfg. Corp*., 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 632, 406 N.E.2d 445, 449 (1980); *Snyder*, 252 A.D.2d at 300, 684 N.Y.S.2d at 239; *Home Town Muffler Inc. v. Cole Muffler Inc*., 202 A.D.2d 764, 608 N.Y.S.2d 735 (3d Dept. 1994).

The complaint utterly fails to make any allegation sufficient to substantiate such a claim.

**POINT XV**
**PUNITIVE DAMAGES NOT RECOVERABLE AGAINST**
**MUNICIPAL CORPORATION/OFFICIALS**

Punitive damages may not be recovered against a municipal entity, *see City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), or against a municipal official acting in his official capacity. *See Brandon v. Holt*, 469 U.S. 464, 471-73 (1985); *Ivani*

*Contracting Corp. v. City of New York*, 103 F.3d 257, 263 (2d Cir.), *cert. denied*, 520

U.S. 1211 (1997); *Greiner v. County of Greene*, 811 F.Supp. 796, 800-01

(N.D.N.Y.1993).

## POINT XVI
## STATE LAW DECLARATORY CLAIMS

Plaintiff complains about that she was charged for the review of her subdivision

proposal by Town consultants. However, it is a well-recognized and permissible method

of charging an applicant a municipality's costs of review. *See Lakes Development Corp. v.*

*Town of Monroe*, 1 N.Y.3d 98, 769 N.Y.S.2d 445, 801 N.E.2d 821 (2003), *cert. denied,*

541 U.S. 974 (2004); *Suffolk County Bldrs. Assn. v. County of Suffolk*, 46 N.Y.2d 613,

619, 415 N.Y.S.2d 821, 389 N.E.2d 133 (1979); *Jewish Reconstructionist Synagogue of*

*N. Shore v. Village of Roslyn Harbor*, 40 N.Y.2d 158, 386 N.Y.S.2d 198, 352 N.E.2d 115

(1976); *see also Kencar Associates, LLC v. Town of Kent*, 27 A.D.3d 423, 812 N.Y.S.2d

587 (2d Dept. 2006).  Plaintiff has alleged nothing to deviate from the permissibility or

propriety of the principles reiterated in the foregoing decision.

Moreover, Plaintiff has pled nothing that would provide her, the developer of

expensive single-family homes, with standing to claim that the Town Zoning Law is

exclusionary. *Berenson* is directed at the provision of opportunities for affordable

housing under appropriate circumstances principally, if not exclusively, by zoning some

portion of a municipality for multi-family housing. *See Gernatt Asphalt Products, Inc. v.*

*Town of Sardinia*, 87 N.Y.2d 668, 683, 642 N.Y.S.2d 164, 173, 664 N.E.2d 1226, 1235

(1996) ("*Berenson* involved an attack on an ordinance which prevented the construction

of multifamily residences upon open and undeveloped land within the Town of New

Castle at a time when no multifamily residences existed there."); *Continental Building*

*Company, Inc. v. Town of North Salem*, 211 A.D.2d 88, 93, 625 N.Y.S.2d 700, 704 (3d

Dept.), *appeal dismissed*, 86 N.Y.2d 818, 634 N.Y.S.2d 432, 658 N.E.2d 209 (1995)

(""[M]ultifamily housing, given the nature of its construction and function as a whole, is

one of the most affordable types of housing"); *Fresh Meadow Country Club, Inc. v.*

*Village of Lake Success*, 158 A.D.2d 581, 551 N.Y.S.2d 549 (2d Dept. 1990). If Plaintiff

is even implying a *Berenson*-type claim, it is hypocritical given her plan to develop large-

lot, single family zoning and she lacks standing to assert such a claim.

## CONCLUSION

The Defendants respectfully submit that the complaint is deficient and fails to

state any viable claim as a matter of law.

Dated: Suffern, New York
         February 29, 2008

                                        Rice & Amon


                                        /s/_____
                                        By: Terry Rice (TR 1022)
                                        Attorneys for Defendants
                                        Four Executive Boulevard
                                        Suite 100
                                        Suffern, New York 10901
                                        (845) 357-4000