## CONSERVATION EASEMENT

**THIS CONSERVATION EASEMENT** is made this 28th day of June

2006, by **CARMEN O. MCCULLOCH**, having an office/address at 2 Tudor

City, Apartment 4, New York, NY 10017("Grantor"), in favor of the

**TOWN OF MILAN**, a municipal corporation in Dutchess County, State

of New York, having offices at Wilcox Memorial Town Hall, 1415

Route 199, Milan, NY 12571 ("Grantee").

**WITNESSETH:**

**WHEREAS,** grantor is the owner of certain property in the

Town of Milan, Dutchess County, State of New York, consisting of

approximately 35.216 acres and more particularly described in a

deed recorded in the Dutchess County Clerk's Office on March 261,

2004, as Document # 02 2004 3996, and which property is also

known as "Woodland Hill Subdivision" a subdivision as shown on a

subdivision map entitled "Woodland Hills" prepared by Povall

Engineering and last revised on June 16, 2006, which subdivision

conditional final approval from the Town of Milan Planning Board

on June 29, 2005, which map was filed on JUNE 29, 2006 in the

Dutchess County Clerk's Office as filed map number

11944; and

**WHEREAS,** the Master Plan of the Town of Milan encourages the

preservation of open and undeveloped space; and

**WHEREAS,** Grantor has offered to place certain portions of

the subdivision, as described and shown on page 2 of 5 of the

above-referenced filed map, said page being titled "Woodland Hills Subdivision Layout & Easement Plan", and as further described by metes and bounds on Exhibit "A" hereto under a perpetual conservation easement (the "Easement Area"); and

**WHEREAS**, by resolution dated May 22, 2006 the Town Board of the Town of Milan agreed to accept this Conservation Easement; and

**WHEREAS**, Grantee is a municipal corporation as defined in Section 2 of the General Municipal Law and qualified under Sections 501(c)(3) and 17(h) of the Internal Revenue Code, and a "public body", as defined in ECL 49-0303(3), qualified under the NYS Environmental Conservation Law Article 49, Sections 49-0301 et seq, to accept a conservation easement; and

**WHEREAS**, Grantor intends, as owner of the Easement Area, to convey to Grantee the right to preserve and protect the conservation values of the conservation area in perpetuity; and Grantee agrees, by accepting this grant, to honor the intentions of Grantor stated herein and preserve and protect in perpetuity the conservation values of the Easement Area.

**NOW, THEREFORE,** in consideration of the above and the mutual covenants, terms, conditions, and restrictions contained herein, and pursuant the laws of New York State and in particular ECL Article 49, Title 3, Grantor hereby grants and conveys to Grantee a conservation easement in perpetuity over the Easement Area of the nature and character to the extent hereinafter set forth (the

"Easement").

1.   Purpose   It is the purpose of this Easement to protect the natural forested and open space condition of the Easement Area.

2.   Rights of Grantee   To accomplish the purpose of this easement, the following rights, but not obligations, are conveyed to Grantee and its authorized agents, by this Easement:

(A)   To preserve and protect the open space and forested character of the Easement Area pursuant to values identified in the Town's master plan.

(B)   In accordance with ECL 49-0305(6), to enter upon the easement area at reasonable times in order to inspect the Easement Area, gaining access through Lots 1, 2, 3, 4, 5, and 6, to monitor Grantor's compliance with and otherwise assure compliance with the terms of this Easement, it being anticipated that the easement may be inspected once per year, provided that such entry shall be upon prior reasonable notice to Grantor, and Grantor shall not unreasonably interfere with Grantor's use and quiet enjoyment of the Easement Area.   Grantee shall have the right to delegate its inspection responsibilities from time to time as Grantee determines is appropriate and necessary.   Grantee shall notify Grantor in

writing by certified U.S. Mail, return receipt

requested, if Grantee delegates its inspection

responsibilities; and

(C)    To prevent any activity on, or use of, the

Easement Area that is inconsistent with the

purpose of this Easement and to require the

restoration of areas or features of the Easement

Area that may have been damaged by any

inconsistent activity or use.

3.    <u>Prohibited Uses</u>    The following activities and uses

are deemed inconsistent with the purposes of the Easement, and

are prohibited:

(A)    There shall be no industrial or commercial use of

the land.  There shall be no further subdivision

of the property burdened by this Easement.

(B)    No structures shall be placed on the land within

the Easement Area.

(C)    There shall be no alteration of natural wetland

areas.

(D)    Land within the Easement Area which is now forested

shall remain forested.

(E)    As provided for in the Town of Milan Code

provisions dealing with conservation easements,

there will be no use of rifle ranges or motorized

vehicles, such as snowmobiles and off-road

recreational vehicles, upon the Conservation
Easement Area except to provide access to all
parts of Grantor's property for normal management,
security, or emergencies purposes as deemed
necessary by Grantor.

4.    <u>Reserved Rights</u>    Grantor reserves to herself, and to
her successors and assigns, all rights accruing from ownership of
the Property, including the right to sell, transfer, lease,
mortgage or otherwise encumber the Property, subject to this
easement; the right to engage in, or permit others to engage in,
all uses of the Property that are not expressly prohibited herein
and are not inconsistent with the purpose of the Easement; and
including the unqualified right to exclude others from the land
by all lawful means. All rights, interests, and privileges of the
Grantor in the Easement Area not specifically donated, granted,
transferred and conveyed herein shall remain with the Grantor,
her heirs, successors and assigns.

Specifically EXCEPTED and RESERVED from the grant of this
easement are the rights and privileges described below, which are
reserved to the Grantor, together with the right to grant the
same or similar non-exclusive rights to others:

A.    Horticultural and managed forest land, equestrian,
passive recreational and open space uses.  This
shall include, without limitation, passive
recreational use such as private trail walking,

nature viewing and similar activities.

B.    General maintenance of property, including pruning, cutting, planting, landscaping, and clearing of trees and other vegetative materials in accordance with generally accepted forest conservation practices.

5.   <u>Enforcement</u>    The Grantee may enforce this conservation easement against any violating party, in law or equity pursuant to the provisions of Article 49 of the Environmental Conservation law against any or all owners of the property forming the Easement Area, or any part thereof.

A.    If Grantee determines that Grantor, Tenants, or any of her successors or assigns, is in violation of this Easement or that a violation is threatened, such enforcing party shall give written notice by certified U.S. Mail, return receipt requested, to the violating party of such violation and demand corrective action sufficient to cure the violation and, where the violation involves injury to the Easement Area resulting from a use or activity inconsistent with the purpose of this Easement, to restore the portion of the Easement Area so injured. If the violating party fails to cure the violation within thirty (30) days after receipt of notice thereof from

Grantee, or under circumstances where the
violation cannot be reasonably cured within a
thirty (30) day period, fails to begin curing such
violation within the thirty (30) day period, or
fails to continue diligently to cure such
violation until finally cured, Grantee may bring
an action at law or in equity in a court of
competent jurisdiction to enforce the terms of
this Easement, to enjoin the violation, by
temporary or permanent injunction, to recover any
damages, including recovery of reasonable
attorneys fees, to which it may be entitled for
violation of the terms of this Easement, which
damages shall be applied to defray the cost of
undertaking corrective action within the Easement
Area, and to otherwise require the restoration of
the Easement Area to the condition that existed
prior to any such injury.  Grantee's rights under
this paragraph apply equally in the event of
either actual or threatened violations of the
terms of this Easement, and Grantor agrees that
Grantee's remedies at law for any violation of the
terms of this Easement are inadequate and that
Grantee shall be entitled to the injunctive relief
described in this paragraph, both prohibitive and

mandatory, in addition to such other relief to
which Grantee may be entitled, including specific
performance of the terms of this Easement, without
the necessity of proving either actual damages or
the inadequacy of otherwise available legal
remedies.  Grantee's remedies described in this
paragraph shall be cumulative.  Where the party
alleged to be in violation disputes the allegation
that violation exists, the determination as to the
existence of such violation shall be made be a
court of competent jurisdiction.

B.   Grantee's Discretion Enforcement of the terms
of this Easement shall be at the discretion of the
Grantee, and any forbearance by Grantee to
exercise its rights under this Easement in the
event of any breach of any term of this Easement
by Grantor shall not be deemed or construed to be
a waiver by Grantee of such terms or of any
subsequent breach of the same or any other term of
this Easement of any of Grantee's rights under
this Easement.

C.   Acts Beyond Grantor's Control      Nothing contained
herein shall be construed to entitle Grantee to bring any action
against Grantor for any injury to or change in the Easement Area
resulting from causes beyond Grantor's control, including,

without limitation, fire, flood, storm and earth movement, from

any prudent action taken by Grantor under emergency conditions to

prevent, abate or mitigate significant injury to the Easement

Area resulting from such causes.

6.   Access    No right of general access to any portion of

the Easement Area is conveyed by this Easement.

7.   Costs and Liabilities; Maintenance of Premises

Grantor retains all responsibilities and shall bear all costs and

liabilities of any kind related to the ownership, operation,

upkeep, and maintenance of the Easement Area.  Grantor retains

the obligation to pay taxes and shall pay taxes assessed and

levied on the Easement Area, but this shall not be construed as

impairing the rights of any party to challenge the assessment of

property pursuant to law.

8.   Amendment    This Conservation Easement may be

amended only with the written consent of Grantee and all the then

owners of the Easement Area.  Any such amendment shall be

consistent with the basic purpose of this Conservation Easement,

and shall comply with Article 49, Title 3 of the Environmental

Conservation Law, Section 170 of the Internal Revenue Code and

all applicable regulations.

9.   Assignment    This Easement is transferable, but

Grantee may only assign its rights and obligations under

this Easement to a qualified organization, at the time of the

transfer, under Section 170(h) of the Internal Revenue Code of

1954, as amended, and the applicable regulations promulgated
thereunder, and authorized to acquire and hold conservation
easements under Article 49 of the New York State Environmental
Law.

10. Extinguishment    If circumstances arise such as
render the purpose of this Easement impossible to accomplish,
this Easement can only be terminated or extinguished, whether in
whole or in part, in accordance with the provisions of ECL 49-
0307.

11. Subsequent Transfers    Grantor agrees to incorporate
the terms of this Easement in any deed or other legal instrument
by which she divests herself of any interest in all or a portion
of the Easement Area, including, without limitation, a leasehold
interest. The failure of Grantor to perform any act required by
this paragraph shall not impair the validity of this Easement or
limit its enforceability in any way.

12. Reverter. In accordance with the Town of Milan Code
§200-39(A)(1)(a)(2), in the event that the Grantee becomes
unwilling or unable to continue carrying out its functions, this
Easement shall, at the Grantee's option, revert back to the
Grantor. The Grantee shall notify the Grantor, her successors or
assigns of its intent for the Easement to revert back to the
Grantor. Grantor and Grantee hereby agree to execute, within
sixty days of delivery of said written notice, such document(s)
or agreements(s) which are necessary for said reverter to take

effect.  Grantee shall record said document(s) or agreement(s) in
the land records of Dutchess County, New York.  Payment of any
recording fees shall be the responsibility of the Grantor, her
successors or assigns.

13.  <u>Existing Conditions.</u>    This Conservation Easement is
granted subject to any existing conditions currently shown on the
"Woodland Hills Subdivision Layout & Easement Plan" which is Page
2 of 5 of the above-referenced filed subdivision map, those
conditions described in Exhibit "B" (Written Description of
Existing Conditions on the Easement Area), attached hereto and
incorporated herein.

14.  <u>Miscellaneous Matters.</u>

(A)  Nothing in this Agreement, express or implied, is
intended to confer upon any third-party any rights or remedies
under or by reason of this Agreement.  Both parties represent
that they are entering into this transaction as principal for
their own account and not as an agent for any other party.

(B)  This Agreement is deemed to be a contract entered
into and shall be interpreted under the laws of the State of New
York, except the provisions thereof pertaining to the conflicts
of laws.  Any general rule of construction to the contrary
notwithstanding, this Easement shall be liberally construed in
favor of ECL Article 49.  If any provision in this instrument is
found to be ambiguous, an interpretation consistent with the
purpose of this Easement that would render the provision valid

shall be favored over any interpretation that would render it
invalid.

(C)    Each party will, at any time and from time to
time, at the request of any other party, make, execute,
acknowledge and deliver, or cause to be done, all such further
acts, deeds or other documents as may reasonably be necessary or
appropriate to carry out the provisions of this Conservation
Easement, or which are necessary to qualify this instrument as a
conservation easement under ECL Article 49, Title 3 or any
regulations promulgated pursuant thereto.

(D)    This Agreement constitutes the entire agreement of
the parties as to the subject matter hereof, supersedes all prior
understandings (whether written or oral) and may not be amended
or modified except by a written document signed by both parties
and stating that it is intended to amend this Agreement.

(E)    Both parties represent to the other party that
they have the power and authority to execute, deliver and perform
this Agreement, that all actions necessary to authorize the
execution, delivery and performance of this Agreement have been
duly taken, that they have duly executed and delivered this
Agreement and that this Agreement is legal, valid and binding on
them, and enforceable against them, in accordance with its terms.

(F)    The parties understand that the Supreme Court,
Dutchess County, New York, shall have exclusive jurisdiction of
any disputes arising therefrom and that all disputes shall be

tried before the Court without a jury.

       (G)  All notices and written communications between the parties concerning this Agreement, shall be deemed to have been delivered upon receipt or refusal of delivery to the following addresses:

If to the Town:          Supervisor
                           Town of Milan
                           Wilcox Memorial Town Hall
                           20 Wilcox Circle
                           Milan, NY 12571

If to Grantor:         Carmen O. McCulloch
                           2 Tudor City
                           Apartment 4
                           New York, NY 10017

Either party may change the address to which notice is to be sent by like notice.

       (H)  Grantee shall record this instrument in timely fashion in the office of the Dutchess County Clerk, Town Clerk and Town Assessor.  Payment of any recording fees shall be the responsibility of the Grantor, her successors or assigns.

       (I)  Payment for the title report prepared in connection with this Easement shall be the responsibility of the Grantor, her successors or assigns.

(J)  Termination of Righs and Obligations    A party's rights and obligations under this Easement terminate upon transfer of the party's interest in the Easement or Easement Area, except that liability for acts or omissions occurring prior to transfer shall survive transfer.

TOWN OF MILAN

By _____
       John V. Talmgage, Supervisor

_____
Carmen O. McCulloch

Kenneth M. Culloch
her attorney in fact

STATE OF NEW YORK, COUNTY OF DUTCHESS      ) ss.:

On the 20th day of June ___, 2006 before me, the undersigned, a notary public in and for said state, personally appeared CARMEN O. MCCULLOCH, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

CHRISTINE H. GUIDO
Notary Public, State of New York
No. 02GU6019818
Qualified in Dutchess County
Commission Expires February 16, 20___

_____
NOTARY PUBLIC

STATE OF NEW YORK, COUNTY OF DUTCHESS      ) ss.:

On the 29 day of June ___, 2006, before me, the undersigned, a notary public in and for said state, personally appeared JOHN V. TALMAGE, SUPERVISOR, TOWN OF MILAN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

Page 14 of 15

**Record & Return to**
Janis M. Gomez Anderson
Van DeWater & Van DeWater, LLP
40 Garden Street, 5th Floor
Poughkeepsie, NY 12601

Michael A. Dalbo
*Land Surveyor, P.C.*
10 Crum Elbow Road
Hyde Park, N.Y. 12538
(845) 229-9383

May 09, 2006

Survey Description
for
Woodland Hills Subdivision
Open Space #1

All that parcel of land situate in the Town of Milan, County
of Dutchess and State of New York designated as Open Space
#1, being more particularly bounded and described as
follows:

Beginning at a point on the westerly line of the lands of
the State of New York, Taconic State Park Commission,
marking the northeast corner of Lot #3 and also being the
northeast corner of the herein described open space parcel;
thence running along the westerly line of the lands of the
State of New York, Taconic State Park Commission, and the
easterly line of Lot #3 and Lot #6, S20°26'05"E 1119.00' to
a concrete monument found in a stone wall intersection
marking the southeast corner of Lot #6 and the southeast
corner of the herein described open space parcel and also
being the northeast corner of a burial ground reputedly
owned or in the care of the Lafayette Cemetery Association;
thence running along the center of the stone wall marking
the north line of the last mentioned burial ground,
N84°18'00"W 51.43' and N82°19'00"W 148.69' to a stone wall
corner marking the northwest corner of the last mentioned
lands and the northeast corner of the burial ground of James
Ward; thence running along the north, west and south
boundary lines of the burial ground of James Ward, being the
lands now or formerly of Anna Ward and Margaret J. Egeland,
reserved in Liber 608 of deeds at page 412, along boundary
lines set forth and established by this description,
N62°31'00"W 30.00', S20°48'00"W 30.00' and S62°31'00"E
30.00' to a point in a stone wall marking the west line of
the lands reputedly owned by the Lafayette Cemetery
Association, described above; thence continuing along the
stone wall and the westerly line thereof, S20°48'07"W 82.59'
to a stone wall corner on the northerly line of a former
highway and/or private road; thence running along the center
of a stone wall marking and the assumed northerly line of
said private road and/or highway, N59°16'00"W 27.68',

Page 1 of 3
file: 3458_OS1

N50°30'00"W 51.00', N54°14'00"W 32.12', N62°10'00"W 39.48', N71°50'00"W 161.72', N73°10'00"W 355.34', N75°49'00"W 192.67', N62°01'00"W 53.15' and N59°09'00"W 109.58' to a wall angle; thence leaving the stone wall and running along a line of no physical bounds, distant about 16.5' northerly of the center of the private road and/or highway, N64°22'00"W 95.41' to a point in the last mentioned stone wall; thence continuing along the center of a stone wall, along the assumed northerly line of the private road and/or highway, N76°39'00"W 119.69', N80°43'00"W 28.95', N87°22'00"W 30.69', S84°22'00"W 112.83', N87°36'00"W 20.57' and N68°09'00"W 50.78' to an angle in the wall; thence leaving the wall and running N44°25'00"W 75.47' to southwest corner of the herein described open space parcel; thence running into and through Lot #6 and Lot #5, N45°35'00"E 79.99' to a point on the division line between Lot #5 and Lot #4; thence running along the last mentioned division line, S44°24'32"E 58.03', S77°52'11"E 17.75' and N86°10'35"E 147.42' to a point; thence continuing into and through Lot #4, N05°45'37"W 184.04', to a point on the division line between Lot #4 and Lot #1; thence running along the last mentioned division line, N67°55'51"W 102.08' to a point; thence continuing into and through Lot #1, N41°22'21"E 46.47', S73°09'10"E 68.62', N69°42'26"E 75.33', N87°25'05"E 87.35' to the common corner of Lot #1 and Lot #2, at a point on the northerly line of Lot #4; thence continuing along the division line between Lot #1 and Lot #2, N00°34'10"W 238.05' to a point; thence running into and through Lot #2 and continuing into and across Lot #3, S80°44'42"E 703.87', N34°47'46"E 99.97', N35°07'21"E 93.30' and N20°14'38"W 109.52' to a point on the northerly line of Lot #3; thence running along the northerly line thereof, S79°21'05"E 116.77' to the point of beginning.

Excepting from the above described open space parcel an area of land within the confines thereof, being bounded and described as follows:

Beginning at a point within the confines of Lot #5, marking the southwest corner of the herein described parcel, at a point distant S68°41'46"E 62.29' from the southeast corner of Lot #4; thence running into and through Lot #5, N19°58'17"E 100.02', N72°18'26"E 97.18', N15°10'45"W 22.68', S73°09'52"W 79.51', N19°50'15"E 94.25' to the northwest corner of the herein described parcel, N86°48'55"E 144.56', N86°33'39"E 144.36', S64°43'04"E 81.95' and S87°25'04"E 50.08' to a point on the division line between Lot #5 and

Lot #6; thence running into and through said Lot #6, S79°44'44"E 132.89', S78°49'54"E 126.57' to the northeast corner of the herein described parcel, S20°22'44"E 175.72', S20°33'20"E 156.69' to the southeast corner of the herein described parcel, N74°05'22"W 29.22', N84°52'47"W 76.09', S51°42'42"W 72.19' and N71°48'10"W 164.40' to a point; thence continuing through Lot #6 and running into Lot #5, N76°11'13"W 137.19', N73°12'42"W 171.29', N26°25'32"W 25.35', N75°07'28"W 29.39', S50°43'00"W 20.76' and N75°45'56"W 196.75' to the point of beginning.

Containing 5.242 acres of land, to be excluded from Open Space Area #1, described above.

The residual land area of Open Space #1, amounts to 16.111 acres of land more or less.

Michael A. Dalbo
Land Surveyor, P.C.
10 Crum Elbow Road
Hyde Park, N.Y. 12538
(845) 229-9383

May 09, 2006

Survey Description
for
Woodland Hills Subdivision
Open Space #2

All that parcel of land designated as Open Space #2, situate in the Town of Milan, County of Dutchess and State of New York, being more particularly bounded and described as follows:

Beginning at a point within the confines of Lot #6, at a point marking the southern most corner of the herein described open space parcel, distant N58°11'14"E 129.49' from the southeast corner of Lot #5; thence running within the confines of Lot #6, N44°57'57"W 49.97' to the western most corner of the herein described open space parcel, N45°26'11"E 19.90', to the northern most corner of the herein described open space parcel, S44°44'00"E 49.62' to the eastern most corner of the herein described open space parcel, and S44°25'02"W 19.70' to the point of beginning.

Containing 0.023 acre (986 square feet) of land more or less.

Michael A. Dalbo
*Land Surveyor, P.C.*
10 Crum Elbow Road
Hyde Park, N.Y. 12538
(845) 229-9383

May 09, 2006

Survey Description
for
Woodland Hills Subdivision
Open Space #3

All that parcel of land designated as Open Space #3, situate
in the Town of Milan, County of Dutchess and State of New
York, being more particularly bounded and described as
follows:

Beginning at a point on the northerly line of Lot #3, at a
point distant S79°21'05"E 84.72' from the northwest corner
of said Lot #3; thence running along the northerly line of
Lot #3, S79°21'05"E 475.28' to the northeast corner of the
herein described open space parcel; thence running into and
through Lot #3, S10°38'55"W 40.00' to a point on the
division line between Lot #3 and Lot #2; thence running
along the last mentioned division line, N79°21'05"W 332.83'
to a point; thence running into and through Lot #2 and
continuing into and through Lot #1, S35°03'23"W 144.74',
S32°09'28"W 141.76', S12°29'38"W 135.42', N68°32'18"W
38.51', N28°41'51"W 101.25', N07°30'10"W 55.82', N01°57'53"E
43.12', N20°32'01"E 37.16', N35°17'51"E 85.23', N35°55'25"E
85.76' and N28°18'14"E 69.50' to the point of beginning.

Containing 1.613 acres of land more or less.

Page 1 of 1
file: 3458_OS3

# Conservation Easement Existing Conditions
## Woodland Hills Subdivision

Approximately 51% of the Woodland Hills 35 acre subdivision is in a conservation easement. The areas of conservation easement are distributed throughout the Woodland Hills Subdivision as follows:

| Lot # | Acres | Cons E. Acres | %Cons Easement |
|-------|-------|---------------|----------------|
| 1 | 5.68 | 1.21 | 21.3 |
| 2 | 5.19 | 2.33 | 44.9 |
| 3 | 5.91 | 3.69 | 62.4 |
| 4 | 5.17 | 2.70 | 52.3 |
| 5 | 6.3 | 3.67 | 53.5 |
| 6 | 6.97 | 4.45 | 63.2 |
| Total: | 35.22 | 18.02 | 51.2 |

According to the Soil Survey of Dutchess County (Natural Resources Conservation Service), Nassau-Cardigan complex and Pittstown silt loam soils predominate.

There are a substantial number of large trees, including oak, maple, and white pine, throughout the conservation easement. The wooded areas in the easement range from successional northern hardwoods to mature mesophytic lowland forest. Species include white oak (Quercus alba), red oak (Q. rubra), black oak (Q. velutina), red maple (Acer rubrum), shagbark hickory (Carva ovata), eastern red cedar (Juniperus virginiana), black birch (Betula lenta), and grey birch (B. populifolia).

Five large isolated oaks have been included in the easement as follows:
Lot 5:
    a)   Two oaks (36 inch diameter and 32 inch diameter) are approximately 30 feet from each other at the eastern end of the lot.
    b)   A 40-inch diameter oak is at the southern border of the lot.

Lot 6:
    a)   One 36-inch dbh oak is approximately 25 feet from a triple trunk 16-inch dbh oak tree.
Also included in the easement on lot 3 are several patches of pink lady's slippers (Cypripedium acaule) listed by NYSDEC as an 'exploitably vulnerable' species. Exploitably vulnerable native plants are likely to become threatened in the near future throughout all or a significant portion of their ranges within the State if causal factors continue unchecked.

The easement along the southern border of lots 4, 5, and 6 is parallel to a dirt lane and a 100-foot NYSDEC regulated wetland (RC-22) buffer. The easement on Lot 6 surrounds a small Lafayette Cemetery Association burial ground. The easement then turns eastward along lots 6 and 3, which are parallel to the Taconic State Parkway southbound lane. This creates a buffer between the subdivision and the Taconic State Parkway buffer protecting a valuable wildlife habitat. Fauna such as hawks, owls, deer, bobcats, and coyotes can use this corridor.

The easement includes a shrubby old field on lot 4.

Other fauna of particular interest are the regionally rare red-bellied snake (Storeria occipitomaculata) found in the upland meadow on lot 1, the regionally vulnerable wood frog (Rana sylvatica), bobcat (Lynx rufus), scarlet tanager (Piranga olivacea), as well as the many species listed in the Natural Resources Survey completed by the applicant's consultant.