**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**CARMEN OTERO MC CULLOCH,**

                              **Civil Action No. 07 CIV 9780**
                               **(LAP) (RLE)**

          **PLAINTIFF,**
      v.

**TOWN OF MILAN, TOWN OF MILAN TOWN**
**BOARD, JOHN V. TALMADGE, Town**
**Supervisor, and ALFRED LO BRUTTON,**
**PAULINE COMBE-CLARK, DIANE MAY, and**
**ROSS WILLIAMS, Councilpersons, And**

**TOWN OF MILAN PLANNING BOARD,**
**LAUREN KINGMAN, Chairman, and**
**Members JEFFREY ANAGOS, PETER GOSS,**
**SHEILA MARGIOTTA, MARY ANN**
**HOFFMAN, AND PAULINE COMBE-CLARK**
**And GARY E. BECK, Zoning Enforcement Officer,**
**Town of Milan, And**

**Frank Margiotta, Barbara Hughey,**
**And Charlotte Norman**

               **DEFENDANTS**.
_____

      **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
    **DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Dated: March 12, 2008           Respectfully submitted,

                       Kenneth Mc Culloch (3372)
                       Attorney for Plaintiff
                       516 Fifth Avenue, 12th Floor
                       New York, N.Y. 10036
                       Tel. 212-398-9508
                       e-mail KMcCulloch@BRGSLAW.com

# TABLE OF CONTENTS

Page

INTRODUCTION..............................................................................1

A. STANDARD OF REVIEW………………………………………………...2

B.  STANDARD FOR AMENDMENTS……………………………………..3

C. STANDARDS FOR SUPPLEMENTAL JURISDICTION CLAIMS………..4

POINT I – DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
SEVENTH CAUSE OF ACTION SHOULD BE DENIED……………………...4

POINT II - PLAINTIFF'S FIRST CAUSE OF ACTION
UNDER THE FHA SHOULD NOT BE DISMISSED…………………………11

1. Plaintiff has stated a cause of action for violation of the FHA………………13.

2. Plaintiff is "aggrieved" by Defendants' violation of the FHA
and she has standing to commence this action…………………………………20

3. Plaintiff's FHA action is "ripe" for consideration now……………………...22

4. Plaintiff does not have to present her FHA claims in
an Article 78 proceeding…………………………………………………………23

5.  Plaintiff's FHA Claim Is Not Barred By The Statute Of Limitations…….26

6. Plaintiff's FHA action is not barred by the *Noerr-Pennington* doctrine…..27

POINT III – DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
SECOND CAUSE OF ACTION SHOULD BE DENIED……………………29

POINT IV – DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
CLAIMS FOR PUNITIVE DAMAGES SHOULD BE DENIED……………37

POINT V - DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
FOURTH CAUSE OF ACTION SHOULD BE DENIED…………………...38

POINT VI- DEFENDANTS HAVE NOT ADDRESSED PLAINTIFF'S
THIRD, FIFTH AND SIXTH CAUSES OF ACTION IN THEIR
MOTION TO DISMISS……………………………………………………38

**POINT VII    NONE OF PLAINTIFFS' CLAIMS REQUIRED AN ALLEGATION THAT A NOTICE OF CLAIM HAD BEEN FILED…..39**

**POINT VIII   DEFENDANTS' AFFIRMATIVE DEFENSE OF QUALIFIED IMMUITY IS PREMATURE……………………………40**

**CONCLUSION………………………………………………………...40**

# TABLE OF AUTHORITIES

**Page**

*Cases cited*

*Allen v. Town of North Hempstead*, 121 Misc. 2d 795,
469 N.Y.S.2d 528 (Sup. Ct. Nassau Co. 1983)…………………………………18

*Asian Ams. For Equality v. Koch*, 72 N.Y.2d 121,
531 N.Y.S.2d 782, 527 N.E.2d 265 (1999)…………………………………..20

*Assisted Living Associates LLC v. Moorestown Tp.,*
996 F.Supp. 409 (D.N.J. 1998)…………………………………………21-22, 24

*Berenson v. Town of New Castle*, 38 N.Y. 2d 102,
378 N.Y.S.2d 672 (1975)…………………………………………………………17

*Bryant Woods, Inc. v. Howard County, MD.,*
 124 F.2d 597 (4th Cir. 1997)…………………………………………………..24

*Cimato Bros., Inc. v. Town of Pendleton,* 237 A.D.2d 883,
654 N.Y.S.2d 888 (4th Dept. 1997)…………………………………………..6, 8

*Cole v. Housing Authority*, 435 F.2d 807 (1st Cir. 1970)……………………18

*Connolly v. Mc Call,* 254 F.3d 36 (2d Cir. 2001)……………………………27

*Cornwell v. Robinson, et al.*, 23 F. 3d 694 (2d Cir. 1994)…………………..20

*Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir. 1996)………………………..32

*Deepwells Estates v. Incorporated Village of Head*, 973 F. Supp. 338
(E.D.N.Y. 1997), *appeal dismissed*, 162 F.3d 1147 (2d Cir. 1998)……2-3, 29

*De St. Aubin v. Flacke,* 68 N.Y. 2d 66, 505 N.Y.S.2d 859,
496 N.E.2d 879 (1986)…………………………………………………………25

*Diaz v. Bd. of Educ. Of City Of New York,* 162 Misc. 2d 998,
618 N.Y.S. 2d 948 (Sup. Ct., Kings Co. 1994)…………………………….39

*Eastern Paralyzed Veterans Ass'n, Inc. v.  Lazurus-Burman Associates,*
*Inc.*, 133 F.Supp. 2d 203 (E.D.N.Y. 2001)…………………………………27

*Felder v. Casey,* 487 U.S. 132 (1987)…………………………………………39

*Groome Resources Ltd. v. Parish of Jefferson,*
234 F.3d 192 (5th Cir. 2000)……………………………………………24

*Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849 (1971)…………..12

*Hallmark Developers, Inc. v. Fulton County, GA.*,
466 F.3d 1276 (11th Cir. 2006)…………………………………………16

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999)…………………27

*Havens Realty Corp. v. Coleman*, 455 U.S. 363,
102 S. Ct. 1114, 71 L.Ed.2d 214 (1982)………………………………21, 26

*HBP Associates v. Marsh,* 893 F.Supp. 271 (S.D.N.Y. 1995)……………31

*Hispanic Counseling Center, Inc .v. Village of Hempstead*,
237 F.Supp.2d 284 (E.D.N.Y. 2002)……………………………………..16

*Horizon House Developmental Servs. v. Township of Upper*
*Southampton,* 804 F.Supp. 683 (E.D. Pa. 1992),
*aff'd.*, 995 F.2d 217 (3d Cir. 1993)………………………………………19

*Huntington Branch, NAACP v. Town of Huntington,*
844 F.2d 926, 934 (2d Cir. 1988), *aff'd,* 488 U.S. 15,
109 S.Ct. 276, 102 L.Ed.2d 180 (1988)…………………………………16

*Innovative Health Systems v. City of White Plains*,
117 F.3d 37 (2d Cir. 1997)…………………………………………………28

*In re Wright v. Town of LaGrange,* 181 Misc. 2d 625,
694 N.Y.S.2d 862 (Dutchess Co. S.Ct. 1999)………………………6, 8, 11

*Jewish Reconstructionist Synagogue of N. Shore v.*
*Village of Roselyn Harbor*, 40 N.Y.2d 158, 386 N.Y.S.2d 198,
352 N.E.2d 115 (1976)………………………………………………5-8, 11

*King v. New Rochelle Municipal Housing Authority*,
442 F.2d 646, 649 (2nd Cir. 1971), *cert. denied* 404 U.S. 863,
92 S.Ct. 113, 30 L.Ed.2d 107 (1971)……………………………………16

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995),
*cert. denied*, 518 U.S. 1017, 116 S.Ct. 2546,
135 L.Ed.2d 1067 (1996)…………………………14-15, 21-22, 28

*Mc Cartney v.  Village of East Williston,*
149 A.D.2d 556 (2d Dept. 1989)………………………………………...25

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792,
93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973)…………………………………12

*Newark Branch, NAACP v. Town of Harrison,*
940 F.2d 792 (3d Cir. 1991)…………………………………………...18-19

*Patsy v. Florida Bd. of Regents,* 457 U.S. 496 (1982)……………..24, 31

*Phillips v. Martin Marietta Corp.,* 400 U.S. 542 (1971)………………19

*Randolph v. Town of Brookhaven,* 37 N.Y.2d 544,
375 N.Y.S.2d 315 (1999)………………………………………………20

*Red Wing Properties, Inc. v. Town of Milan, et al,* Index No. 2883/06,
Dutchess County Supreme Court (J. Brands) Dated February 7, 2007
Copy attached as Exhibit 2 to Mc Culloch Declaration………………25

*Regional Economic Community v. City of Middletown,*
294 F.3d 35 (2d Cir. 2002) *cert. denied,* 537 U.S. 813 (2002).. 14-15, 22

*Reinhart v. Lincoln County,* 482 F.3d 1225, 1229 (10th Cir. 2007)..15, 22

*Shapiro v. Thompson,* 394 U.S. 618,
89 S. Ct. 1322, 22 L.Ed.2d 600 (1969)………………………………...18

*Silver v. Cormier,* 529 F.2d 161 (10th Cir. 1976)……………………5, 37

*Simms v. First Gibraltar Bank,* 83 F.3d 1546 (5th Cir. 1996)…………22

*Stanley v. Bd. of Appeals of Village of Piermont,*
168 Misc. 797 (Sup. Ct., Rockland Co., 1938)………………………..25

*Tsombanidis v. West Haven Fire Dept., et al.,*
352 F.3d 565 (2d. Cir. 2003)……………………………………16, 22

*Twin Lakes Development Corp. v. Town of Monroe,*
1 N.Y.3d 98, 769 N.Y.S.2d 445, 801 N.E.2d 821 (2003)…………….10

*Tyus v. Urban Research Management et al.,*
102 F.3d 256 (7th Cir. 1996)………………………………………….27

*U.S. v. Cicero,* 786 F.2d 331 (7th Cir. 1986)…………………………18

*U.S.  v.  City of Warren,* 759 F. Supp. 355 (E.D. Mich. 1991)……….18

*U.S. v. Elmwood Park,* 43 FEP Cases 995,
1987 WL 9586 N.D.Ill. 1987)…..………………………………………18

*U.S. v. Yonkers Bd. of Education*, 837 F.2d 1181 (2d Cir. 1987),
*cert. denied*, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988)…..28
.
*Venetian Casino Resort, LLC v. EEOC,* 409 F.3d 359 (D.C. Cir. 2005)…22

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)…………………….....15

*Washington v. Davis*, 426 U.S. 229,
96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)……………………………………15

*Williamson County Regional Planning Commission v.
Hamilton Bank of Johnson City,* 473 U.S. 172,
105 S. Ct. 3108, 87 L.Ed.2d 126 (1985)………………………………33-34

*Yarbough v. Franco*, 95 N.Y.2d 342,
717 N.Y.S.2d 79, 740 N.E.2d 224 (2000)………………………………...26

### Statutes and other authorities

Federal Rules of Civil Procedure (Fed.R.Civ.P.) Rule 12(b) (6)…………*passim*

Fed.R.Civ.P., Rule 15(a)…………………………………………………1

28 U.S.C. §1331……………………………………………………………36

28 U.S.C. §1367(a)………………………………………………………4, 36

Civil Rights Act of 1871, 42 U.S.C. §1983…………………18-19, 29 *et seq.*

Fair Housing Act, 42 U.S.C. §3601 et seq…………………………………21

Fair Housing Act, 42 U.S.C. §3604(a)…………………………………21, 22

Fair Housing Act, 42 U.S.C. §3613(a)……………………………………26

New York Civil Practice Law & Rules (CPLR), Article 78………………21

New York Town Law §263…………………………………………….…20

Town of Milan Zoning Ordinance, § 200-68 (B)………………………….9

Town of Milan Subdivision Regulations, §177-13…………………….…9-10

Town of Milan Subdivision Regulations, §177-14…………………………9-10

Town of Milan Subdivision Regulations, §177-46(E)…………………..14

Town of Milan Comprehensive Plan…………………………………16-17

## INTRODUCTION

The Town of Milan, the Town of Milan Town Board, the Town of Milan Planning Board, and the individual members of those Boards, the Town Zoning Enforcement Officer, and the individual defendants, Frank Margiotta, Barbara Hughey, and Charlotte Norman (Defendants) on December 21, 2007 moved to dismiss the original Complaint pursuant to the Federal Rules of Civil Procedure (Fed.R.Civ.P.) Rule 12(b) (6).

On January 25, 2008, Plaintiff filed an Amended Complaint, pursuant to Fed.R.Civ.P., Rule 15(a)  as of right because no responsive pleading had been filed by Defendants. At the same time, Plaintiff filed her memo and papers in opposition to Defendants' motion to dismiss. In that memo, she advised that "**The filing of the Amended Complaint moots Defendants' motion to dismiss** that is addressed to the original Complaint. By responding to Defendants' motion, Plaintiff is not conceding that Defendants' motion is still viable."

On February 25, 20008, Plaintiff filed a motion for injunctive relief. That motion is currently pending. On February 29, 2008, Defendants filed a motion to dismiss the Amended Complaint, again pursuant to Fed.R.Civ.P. Rule 12(b) (6). This memo and the Declaration of Kenneth Mc Culloch (Mc Culloch Decl.) are in response to that motion.

Defendants' memo jumps from arguing for dismissal of Plaintiff's second cause of action, then goes back to arguing for dismissal of Plaintiff's first cause of action, then makes arguments without identifying the cause of action to which the arguments purport to relate, and goes back and forth to different claims, in no particular order. In this response, Plaintiff follows the outline of the claims, as they were presented in the Amended Complaint, and addresses Defendants' arguments relating to each cause of

action, *seriatim.* There is one exception to this order. It is POINT I and the reason for that exception is explained in that POINT.

Defendants set forth in the Rice Declaration what they claim to be the facts. That recitation is inaccurate and omits many of the key facts. Defendants make every effort to down-play the significance of this action, describing it as "concocted . . . violations . . . to federalize routine, run-of-the-mill land use disputes". Declaration of Terry Rice (Rice Decl.) ¶3. They begrudgingly acknowledge the latest imposition on Plaintiff and her property, by saying that she cannot "generally cut down live trees" on her property, Defendants' memo, at p. 27, but trivialize the impact of this latest restriction and their treatment of Plaintiff generally. Institutionalized discrimination is a "big deal". The facts in the Mc Culloch Decl. ¶¶2-18 demonstrate that the Town has institutionalized discrimination, and that Plaintiff and others like her have suffered, and are suffering, from that discrimination according to the very same plan that is laid out in the Milan Comprehensive Plan (MCP) and as alleged in the Amended Complaint.

## A. STANDARD OF REVIEW

The standard for review is discussed in one of the cases cited by Defendants. In *Deepwells Estates v. Incorporated Village of Head*, 973 F. Supp. 338, 343 (E.D.N.Y. 1997), *appeal dismissed*, 162 F.3d 1147 (2d Cir. 1998) the Court stated:

> On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". (All citations to authorities have been omitted in this quote).

> The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken".

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, and in doing so, it is well settled that the Court must accept the allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff.

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6).

*Id.* at 343.

## B. STANDARD FOR AMENDMENTS

Plaintiff has filed an Amended Complaint. In the event that the Court finds that the Amended Complaint has to be further amended, Plaintiff requests permission to do so. The Court in *Deepwells Estates* summarized the standards for such amendments:

Pursuant to Fed.R.Civ.P. 15(a), "leave to amend shall be freely given when justice so requires." (again all citations to authority omitted).

A motion to amend should be denied only for good reason such as "undue delay, bad faith, futility of amendment, and perhaps, most important, the resulting prejudice to the opposing party.'" . . . Mere delay alone will not suffice as a basis for the district court to deny the right to amend. Parties have been permitted to assert new claims long after they acquired the facts necessary to support such claims, and have even been permitted to amend a complaint on the eve of trial.

In the present case, the Court finds, without considering the actual underlying merits, that the plaintiffs' claims, once amended as discussed above, are not futile and could arguably state causes of action. To conserve judicial resources, the Court grants the plaintiffs leave to amend their complaint in conformity with this Memorandum Decision and Order, without the necessity of a formal motion.

*Id.* at 352.

3

**C. STANDARDS FOR SUPPLEMENTAL JURISDICTION CLAIMS**

In the instant case, Plaintiff has asserted Federal claims and state law claims. All of the claims arise from the same series of events, and it would conserve judicial resources, and prevent inconsistent decisions, if all of the claims were considered together, as provided for in 28 U.S.C. §1367(a).

**POINT I – DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SEVENTH CAUSE OF ACTION SHOULD BE DENIED**

The Seventh Cause of Action in Plaintiff's Amended Complaint seeks recovery of money, together with such other relief as the Court deems just and proper. It alleged that Defendants improperly used $22,600 of Plaintiff's money for its own attorneys, engineers, and town planners and others. Amended Compl. ¶163; "Wherefore" Clause. The facts and law pertinent to this claim have ramifications with respect to other arguments made by Defendants, in particular, their argument that Plaintiff should have used Article 78 of the New York Civil Practice Law & Rules (CPLR) to present the claims that she makes in this action. That is why this issue is addressed first.

In the Amended Complaint, at ¶¶ 45, 108-113, Plaintiff described this claim in detail, and even provided one instance of improper use of Plaintiff's money, *e.g.,* "When Plaintiff filed her Article 78 proceeding against the MPB, in December 2004, and prior to the time that she withdrew it, the MPB used Plaintiff's money to pay for its attorney's fees while defending against the Article 78 proceeding." *Id.* ¶112. Plaintiff alleged that not only were these expenditures illegal, but also that she was treated differently "because she is a City Person and a minority". *Id.* ¶113. The facts alleged constitute valid claims, warranting denial of Defendants' motion to dismiss. The legal violations are

4

embezzlement, misappropriation of funds, breach of fiduciary duty, and violation of Plaintiff's rights under the U.S. Constitution.

In *Silver v. Cormier*, 529 F.2d 161 (10th Cir. 1976), the public official had not actually misused the monies that his agency held from the claimant; he only threatened to do so. The claimant asserted his claim pursuant to 42 U.S.C. §1983. The Court explained why this action by the public official violated the U.S. Constitution:

> Access to the courts of the United States is a constitutional right guaranteed by the due process clauses of the fifth and fourteenth amendments. (Citations omitted). A public official's threats to a citizen to withhold monies due and owing, should legal proceedings be instituted, burdens or chills rights of access to the courts. And this is true although the threat is not actually effective. For this reason, the trial court did not err in granting defendant's motion for dismissal.

*Id.* at 163.

Defendants mischaracterize Plaintiff's claim, and cite case authority that contradicts their argument. At p. 37 of their memo, they state "Plaintiff complains about that (sic) she was charged for the review of her subdivision proposal by Town consultants. However, it is well-recognized and permissible method of charging an applicant a municipality's costs of review." Plaintiff then cites to cases, including *Jewish Reconstructionist Synagogue of N. Shore v. Village of Roselyn Harbor*, 40 N.Y.2d 158, 386 N.Y.S.2d 198, 352 N.E.2d 115 (1976), the leading case on the issue.

Defendants' argument misses the point, and the cases which Defendants cite do not support the broad claim made. First of all, there is nothing in the Amended Complaint that says the charges were only for "review of her subdivision proposal by Town consultants". Certainly, defending against an Article 78 proceeding, the one instance cited in the Complaint, is not for "review of Plaintiff's subdivision proposal". Second, the cases that support the proposition that (a) under *certain circumstances* a municipality

5

may make (b) *standardized charges* for (c) *certain expenses* does not justify Defendants'
actions in the instant case.

Plaintiff claimed that *all* the charges were improper, and gave as just one example
that she was charged for the attorney's fees incurred by the Town for defense against the
Article 78 proceeding that she commenced in December 2004. Plaintiff did not go into
details in the Amended Complaint because no such detail is necessary at this stage.[1]
Based on the pertinent case law, and the record facts, Defendants' motion should be
denied. The pertinent cases are *Jewish Reconstructionist Synagogue, supra, Cimato
Bros., Inc. v. Town of Pendleton,* 237 A.D.2d 883, 654 N.Y.S.2d 888 (4th Dept. 1997),
and *In re Wright v. Town of LaGrange,* 181 Misc. 2d 625, 694 N.Y.S.2d 862 (Dutchess
Co. S.Ct. 1999).

As set forth in the *Jewish Reconstructionist Synagogue* case, whether a town
planning board has authority to charge an applicant for planning consultants,
environmental consultants, and/or engineers[2] retained by the town planning board to do
work for it, and what that authority might be, are subjects tightly circumscribed. When
the New York State Legislature delegates some of its "jealously guarded police powers"

---

[1] Plaintiff does not supplement the record with information not in the Amended
Complaint, but if there is some question about the *bona fides* of this claim, there is
already information before the Court that is not part of this motion. The Declaration of
Kenneth Mc Culloch in support of Plaintiff's motion for injunctive relief sets forth at ¶25
that the amounts paid by the MPB from Plaintiff's escrow account to the Town's
attorneys were $7051.34, the amounts paid to the town's planning consultants were
$8182.50, and that the amounts paid to the town's engineer were $6810.60. The
transmission letter from the MPB, together with a listing of the expenses charged to
Plaintiff's account were set forth as Exhibit 14 to the Declaration of Kenneth Mc Culloch
in support of Plaintiff's motion. The "back-up" for the charges was not part of Exhibit 14,
but it provided the basis for Plaintiff's allegations in the Amended Complaint.

[2] As described later, there is no authority at all to charge Plaintiff for the MPB's
attorney's fees.

to a local government "it must be accompanied by standards which guide and contain its use". *Id.* at 163. Similarly, when and if a town board delegates some of the authority it receives to a town planning board, the same holds true. At each stage, "the limitation that the fees charged must be reasonably necessary to accomplishment of the statutory command must also be implied". *Id.*

A planning board cannot just charge whatever fees it incurs, *i.e.*, reimbursement, for such services. It has to establish standards. "The fees also 'should be assessed or estimated on the basis of reliable factual studies or statistics' (citations omitted)". *Id.* It explained why *standardized fees* are required, and "pass along" charges are prohibited:

> Without the safeguard of a requirement that fees bear a relation to average costs, a board would be free to incur, in the individual case, not only necessary costs but also any which it, in its untrammeled discretion, might think desirable or convenient, no matter how oppressive or discouraging they might in fact be for applicants. * * * *
>
> At stake are the terms upon which citizens may have access to a governmental function and their right to have those terms, whether or not they are in the form of fees, fixed by standards which lend assurance that they are not "unreasonable, discriminatory nor oppressive" (citation omitted). Furthermore, if fees for seeking relief from an unduly burdensome zoning ordinance can be tailored by a board to an individual case without reference to whatever is usual or average in other such cases, the appearance for abuse or discrimination may arise, whether one actually occurs or not. Manifestly, ready accessibility of judicial and other mandated government functions is too important for that accessibility and its appearances of accessibility to be impaired by the insufficiently delineated fee system in this case, designed, as defendants admits it was, to guarantee that the community's taxpayers bear no share of the expense for maintaining the mandated function of government which the board was carrying out. That requirement puts too exclusive an obligation on the individual to bear the entire cost of a governmental function whose very existence is in furtherance of the general welfare. (citation omitted).

*Id* at 163-164. Defendants' system, *see* Mc Culloch Decl. ¶¶19-23, was designed to guarantee that the Town's taxpayers bear no share of the expense for carrying out a mandated function. The Town specifically says this. *See* McCulloch Decl. ¶23.

Insofar as requiring an applicant to pay for a planning board's own attorney's

fees, the Court of Appeals was adamant that this not be done, for much the same reasons.

> The charges for attorney's fees . . . did not represent necessary expenditures but rather convenience to the board for fulfillment of what in the end was its own decision-making responsibility. (citation omitted). . . . The trackless uncertainty was even greater with respect to the automatic charging of the applicant for the excellent legal services of which the board availed itself. Its choice of counsel, the extent to which it chose to reply on their services, indeed, whether to engage them at all, rested entirely with the board alone. Of course, the board was free, and perhaps, wise, to exercise these prerogatives, but the imposition of their cost on the plaintiff was something else again. It would have disproportionately and impermissibly conditioned the availability of the board as a tribunal on an applicant's readiness to undertake an obligation delimited by things as indefinite as the vigor and determination of zealous opponents where the happenstance at the points at issue might turn out to be unexpectedly intricate. (citation omitted).

> *Id.*

In *Cimato Bros., supra,* the Appellate Division, Fourth Department, relying on

*Jewish Reconstructionist Synagogue,* rejected the town's claim for engineering expenses

because

> there is no evidence that guidelines or standards exist to control the discretion of the Town Engineer. By requiring the developer to pay the costs billed by the Town Engineer, the amendment impermissibly requires the developer to pay "whatever the engineer chooses to charge for his services, uncontrolled by an specific standard fixed by ordinances". (Citation omitted).

> 654 N.Y.S.2d 888, at 889.

In *Wright v. Town of LaGrange, supra,* the Court rejected the town's claim for

attorney's fees and for engineering fees, for the same reasons. It also rejected the town's

claims because the section of the town code at issue provided for the developer to make

payment of expenses incurred by the town only for the period "before the plat is endorsed

by the Planning Board Chairman," and there was no provision for payment of consultant

fees incurred by the Planning Board after the dedication of the public improvements, which was the time period at issue in that case.  694 N.Y.S. 2d 862, 869.

Given the law, and the facts in this case, Defendant's argument to dismiss this claim is simplistic and ignores Defendants' own regulations. First, the Milan Town Board never conveyed any authority to the MPB to charge developers for the costs incurred for attorneys, land planners, engineers, or anyone else. *See* McCulloch Decl. ¶19-20 and the section of the Town's Zoning Ordinance, Section 200-68 (B) referenced there.

Second, the Town Board never authorized the MPB to even consult with the MPB's attorney's for review. *Id.* ¶20. In addition, it restricted the use of consultants to review of the site plan. *Id.*

Third, the MPB did exactly what the Court of Appeals said it cannot do. In the Milan Subdivision of Land regulations, §177-13 relates to the approval of the preliminary plat for major subdivisions and §177-14 relates to approval for final plat approvals. *Id.* ¶21. Both sections have the same language regarding consultants:

> Consultant review. *In its review of a (preliminary) (final) plat for a major subdivision,* the Planning Board may consult with the Town Zoning Enforcement Officer, the Town Superintendent of Highways, local fire departments, the Conservation Advisory Council and the Board's planning and engineering consultants, in addition to representatives from town, county and/or state agencies. *Reimbursable costs* incurred by the Planning Board for consultation fees, particularly for planning and engineering consultants, shall be charged to the applicant. *Such reimbursable costs* shall be paid by the applicant prior to final plat approval, in addition to the required application and recreation fees. *Maximum amounts for such reimbursement costs, by project and size, shall be in accordance with the fee schedule. (Refer to Article XI. Fee Schedule.)*  (Emphasis added).

These provisions indicate that they have been in effect since September 30, 1999, and illegal since then, for these reasons:

(a) This section does not authorize the MPB to charge the developer for consultation

with attorneys because there is nothing in the conveyance of authority from the Milan Town Board that says that.

(b) This section makes no attempt to establish a system for making standardized charges. Defendants cite to *Twin Lakes Development Corp. v. Town of Monroe,* 1 N.Y.3d 98, 769 N.Y.S.2d 445, 801 N.E.2d 821 (2003) to try to distinguish the *Jewish Reconstructionist Synagogue* case, but in *Twin Lakes* the plaintiff's only claim relating to charges was he never had an opportunity to challenge the reasonableness of those fees. He conceded that the fees could be charged if they were reasonable.

(c) This section makes reference to a "maximum amount" for which "reimbursement" can be charged, and says that this is pursuant to a "schedule". However, there is no such schedule. *See* Mc Culloch Decl. ¶22. The Schedule is supposed to be "Article XI", which is also §177-39, and states under the heading of "Fee Schedule" and "Subdivision Fees" that "Subdivision Fees shall be as defined in the Town of Milan Fee Schedule". A footnote says, "Editor's Note, See Ch. A208". There is no Ch. A208. *Id.* The Town's officials have been asked to produce it, but they have not done so. For reasons stated in the Mc Culloch Decl. ¶22, Plaintiff has reason to believe that if this Maximum Fee Schedule were produced, it would provide that the *maximum* that could have been charged for Plaintiff's six-lot subdivision would have been $3,000. *Id.* at ¶22(f).

(d) Nothing in either §177-13 or §177-14 authorizes any charges to the developer, except for *review* for the preliminary and/or final approval. The MPB regulations provide no basis for charging Plaintiff for work done by the consultants prior to these approvals, or subsequent to such reviews, nor for work for the Town's attorneys to draft a Conservation Easement Agreement (CEA), title insurance for the CEA that Plaintiff had

10

to convey to the Town, or anything like that. *See* Mc Culloch Decl. ¶24. Final approval of Plaintiff's subdivision was on June 29, 2006 and fees for the time after that were illegal for the reasons stated in the *Wright v. Town of LaGarnge* case, *supra*.

(e) Defendants persistently argue in their motion to dismiss that Plaintiff should have presented her complaints in state court, in Article 78 proceedings. Plaintiff has alleged that Defendants illegally charged Plaintiff for their attorney's fees the one time that she did initiate an Article 78 proceeding. The New York Court of Appeals specifically noted how such illegal charges "deprive citizens of their right to access to a government function", and how this "puts too exclusive an obligation on the individual to bear the entire cost of a government function". *Jewish Reconstructionist Synagogue, supra* 164-165.  In *Silver*, *supra,* the Court noted that this right to access to the courts cannot be infringed upon or burdened. Having infringed on Plaintiff's rights to access to the courts, Defendants cannot be heard to argue that Plaintiff was required to use those very same procedures before presenting her claims in this action.

## POINT II - PLAINTIFF'S FIRST CAUSE OF ACTION UNDER THE FHA SHOULD NOT BE DISMISSED

The Civil Rights Act of 1964 was omnibus legislation designed to eradicate discrimination because of race, color, and national origin and other factors. Title VII of that law dealt with employment discrimination and Title VIII dealt with housing discrimination. The principles developed in Title VII cases have been liberally applied to Title VIII cases.

After enactment of this civil rights legislation, persons would no longer openly discriminate. The U.S. Supreme Court early on ruled that such discrimination could be inferred. It developed two theories for establishing discrimination claims, one being

disparate treatment, the other being disparate impact.  In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973), a claim of discrimination in hiring, the Supreme Court ruled that a claimant presented a *prima facie* case by alleging facts to show that he was in the protected group, that he applied for a position, that he was denied hire, and that the employer continued to look for candidates with qualifications similar to those possessed by the claimant. Once a *prima facie* case was alleged and established, the employer's burden was to articulate a legitimate non-discriminatory reason for the difference in treatment. The claimant then had to demonstrate that the articulated reason was a subterfuge, and that the real reason was discrimination. Over time, this sequence was adapted to discrimination in terminations, and other aspects of employment, and to discrimination in housing.

In *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849 (1971), the employer had openly restricted the hiring of African-Americans in certain jobs. When Title VII was enacted, it terminated its openly discriminatory policies and established objective standards for entry into those jobs, namely a high school diploma requirement and a paper and pencil test, the Wonderlic test. These screening standards had a statistically significant adverse effect against African-Americans. In North Carolina, where the company was located, they were far less likely than white persons to have high school diplomas, and they scored poorly on the test. Prior to the passage of Title VII the company had hired persons into these jobs without requiring the high school diploma, and without taking the test, and these persons had performed well. The Supreme Court ruled that a *prima facie* case of discrimination could be established by the disparate impact theory, if a plaintiff can allege and establish that a facially neutral screening

device had a statistically significant disparate impact against persons in the protected group. Once the *prima facie* case was established, the employer had to validate the standard being used, that is, prove that it was a business necessity that it use that standard and that no other standard was available that had a lesser adverse impact. Over time, the disparate impact theory was also applied to other aspects of employment discrimination cases, and to housing discrimination claims.

The elements necessary to state a claim for violation of the FHA are set forth in the McCulloch Decl. ¶25. References to the Amended Complaint where Plaintiff made the pertinent allegations to state a claim are summarized in the Mc Culloch Decl. ¶26; in ¶27 there are 14 specific instances of discriminatory conduct identified and references to the Amended Complaint made for each.

   **1.   Plaintiff has stated a cause of action for violation of the FHA.** (Responding to Defendants' memo, POINT IV). Defendants argue at p. 9 of their memo that "Although the complaint alleges that Ms. Mc Culloch was born in Puerto Rico of Puerto Rican parents, it does not allege any facts to suggest that that (sic) she was discriminated against on the basis of her race or that the Defendants were aware of her ancestry (sic)." At p. 10, of their memo, Defendants allege that "The complaint is devoid of any factual allegations that the Defendants know of Ms. Mc Cullogh's (sic) heritage . . ."

   Defendants have chosen to ignore the factual allegations in the Amended Complaint, because all of these facts are alleged there, in ¶¶2-5. The facts were summed up and, in ¶5, Plaintiff alleged "Upon information and belief, from the information provided to them by Plaintiff, Defendants were aware that Plaintiff is a resident of New

York City and Hispanic, and in fact did know this."[3] Plaintiff alleged throughout the Amended Complaint that Defendants acted against her were *because* of her national origin. *See, e.g.* the Amended Complaint, ¶57. *See* Mc Culloch Decl. ¶27.

Plaintiff has alleged facts to show that in numerous instances Defendants acted against her because of her national origin. *See* Mc Culloch Decl. ¶27 for these references to the Amended Complaint. The allegations in the Amended Complaint are clearly sufficient to place her as a person who is under the umbrella of protection provided for in the FHA and to defeat Defendants' motion under Fed.R.Civ.P., Rule 12(b)(6).

Furthermore, Plaintiff has alleged facts to show that she was a resident of New York City, that Defendants knew this, that Defendants have a derogatory word for such persons, *i.e.*, City People, that Defendants discriminated against City People, and in favor of local persons, that this discrimination on the basis of place of residence has a statistically significant adverse impact against minorities, because about 66% of the City People are minorities and only about 28 % of the local persons are minorities. *See* Amended Complaint ¶¶65-70.

The principles developed under Title VII are applicable in FHA cases. *Regional Economic Community v. City of Middletown*, 294 F.3d 35 (2d Cir. 2002) *cert. denied*, 537 U.S. 813 (2002) ("We analyze claims of intentional discrimination under the FHA . . . under the familiar *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973), burden-shifting analysis established for employment discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* (citations

---

[3]The Amended Complaint alleges that one person at a public hearing made a remark deprecating "City People", ¶89, and that another such remark was made by a member of the CAC, ¶90. Plaintiff's place of residence was known and considered against her.

omitted)" *Id*. at 48-49). "An FHA violation may be established on a theory of disparate impact or one of disparate treatment." *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995), *cert. denied*, 518 U.S. 1017, 116 S.Ct. 2546, 135 L.Ed.2d 1067 (1996) "A disparate-treatment claim requires proof of 'differential treatment of similarly situated persons or groups' (citations omitted)". *Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007). (The allegations in the Amended Complaint of differences in treatment are summarized in the Mc Culloch Decl. ¶27).

The "intent to discriminate" for purposes of determining whether a *prima facie* case has been stated may be inferred from the totality of the circumstances, including "the fact, if it is true, that the law bears more heavily on one [group] than another". *LeBlanc-Sternberg, supra* at 425, citing *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976).

"If the motive is discriminatory, it is of no moment that the complained-of conduct would be permissible if taken for nondiscriminatory reasons". *LeBlanc-Sternberg, supra,* at 425. Statements made at public meetings, or by public officials, may be considered in assessing whether the action was taken for improper motive. *Id.* at 425-6; *see also, Regional Economic Community, supra* at 50-51 wherein the Second Circuit quoted extensively from administrative proceedings to determine "intent".

In *Village of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the Supreme Court stated that "intent" could be inferred, and set forth factors from which intent could be derived. *Id.* at 265.

"Intent" is established if discrimination was *one* significant factor in the decision making process. *Regional Economic Community, supra at 49 (*"to establish a prima facie

case of discrimination (under the disparate treatment theory) under the FHA . . . the plaintiffs must present evidence that "animus against the protected group was *a* significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Id*.(Emphasis as in original); *see also, Hispanic Counseling Center, Inc .v. Village of Hempstead*, 237 F.Supp.2d 284, 292-93 (E.D.N.Y. 2002).

The FHA applies to conduct that is discriminatory even if the discrimination was not intentional. A disparate impact claim challenges a facially neutral policy that "actually or predictably results in . . . discrimination." *Tsombanidis v. West Haven Fire Dept., et al.*, 352 F.3d 565, 575 (2d. Cir. 2003), citing *Huntington Branch, NAACP v. Town of Huntington,* 844 F.2d 926, 934 (2d Cir. 1988), *aff'd,* 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988).  In a disparate impact case, the plaintiff does not have to show that the policy was formulated with discriminatory intent. *Id.* at 934.  "[A] showing of significant discriminatory effect suffices to demonstrate a [prima facie] violation of the Fair Housing Act." *Hallmark Developers, Inc. v. Fulton County, GA.*, 466 F.3d 1276, 1286 (11th Cir. 2006).

The Town *openly* discriminates in favor of Town residents, and against City People, and *openly* states that delay should and will be used to force persons like Plaintiff to consent to Conservation Easements. The facts establishing this are in the Milan Comprehensive Plan (MCP) and the Amended Complaint, and are assembled in the McCulloch Decl. at ¶¶3-18. Defendants' aim in zoning and administration of its zoning and land use regulations might be summed up by the phrase "that each community should take care of its own first", an objective which is constitutionally impermissible. *King  v.*

*New Rochelle Municipal Housing Authority*, 442 F.2d 646, 649 (2nd Cir. 1971), *cert. denied* 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971). A municipality may not enact zoning regulations, nor administer them, exclusively for the benefit of its residents while ignoring regional needs. The Town of New Castle tried to do the same things that the Town of Milan is doing today. New Castle banned apartment houses, (Milan has done the same thing in its MCP, 7-7, and its zoning ordinances) because it was experiencing the same kind of growth which Milan feels at this time, and had the same concerns, that is, an influx of City People. In *Berenson v. Town of New Castle*, 38 N.Y. 2d 102, 378 N.Y.S.2d 672 (1975), the New York Court of Appeals rejected the New Castle zoning, finding that ". . . residents of Westchester County, as well as the larger New York City metropolitan region, may be searching for multiple-family housing in the area (New Castle) to be near their work and for a variety of other social and economic reasons. There must be a balancing of the local desire to maintain the *status quo* within the community and the greater public interest that regional needs be met". *Id.* at 111.

Defendants attempt to distinguish *Berenson* by noting that the instant case does not involve multi-family housing, *see* Defendants' memo at pp. 37-38. *Berenson* stands for the proposition that a town cannot make and/or apply its zoning rules and regulations without taking into consideration the needs of the regional area, including the needs of residents of New York City. Plaintiff alleges throughout the Amended Complaint that Defendants not only do nothing to accommodate the regional needs of New York City residents, but that Defendants actually put up substantial impediments to New York City residents, as they have done to Plaintiff, to stop the "influx". Furthermore, evidence that a municipality or an employer openly discriminates in one aspect of housing or

employment is certainly relevant to the issue of whether that defendant discriminated in other aspects of housing or employment.

Treating persons differently, on the basis of residency, even when ethnic discrimination is not "in the picture" is illegal and violates the U.S. Constitution. "The goal of preventing an influx of outsiders is constitutionally impermissible. The residency requirement is not rationally related to the goal of planning". *Cole v. Housing Authority*, 435 F.2d 807, 813 (1st Cir. 1970); *see also, Allen v. Town of North Hempstead*, 121 Misc. 2d 795, 469 N.Y.S.2d 528, 533 (Sup. Ct. Nassau Co. 1983) (one-year residency requirement to be eligible for certain senior citizen housing is constitutionally impermissible); *Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322, 22 L.Ed.2d 600 (1969) (a durational residency requirement may not be enacted for the purpose of rewarding long-term residents for past contribution to the community). The Constitutional protection was invoked in these cases by using 42 U.S.C. §1983.

Discrimination against persons on the basis of residency is also a violation of civil rights laws when the use of that factor has a statistically significant adverse impact against minorities or any protected group. *Newark Branch, NAACP v. Town of Harrison*, 940 F.2d 792 (3d Cir. 1991); *U.S. v. City of Warren,* 759 F. Supp. 355 (E.D. Mich. 1991); *U.S. v. Cicero*, 786 F.2d 331 (7th Cir. 1986); *U.S. v. Elmwood Park,* 43 FEP Cases 995, 1987 WL 9586 N.D.Ill. 1987).

These cases noted above were analyzed under the disparate impact theory; defendants presented the same putative defenses that Defendants present in this case; the defendants lost in those cases, and Defendants will lose in this case. It is premature at this

stage to address those defenses. However, the same kind of statistical data that has been alleged in this case sufficed to state a claim in those cases.

In the *Town of Harrison* case, the Town's police force was largely white. The Town precluded persons who were not residents from applying for positions as police officers. This policy was found to be discriminatory because there was a substantial representation of African-Americans in Newark, N.J., and they were precluded from being considered for these positions.

Defendants' conduct cannot be excused because of assumptions made by Defendants about City People. *See Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544 (1971) (Employer violated Title VII because it refused to accept applications from women with pre-school age children, while hiring men with pre-school age children, based on the assumption that women have to take care of the children, so they are more likely to miss work for that reason. Even though 80% of the employer's work force was females, the Supreme Court held that the sex-plus discrimination was as unlawful as a refusal to hire based on sex alone. *Id*. at 544).

Defendants' policy of imposing more onerous standards on minorities and City People, and of banning minorities and City People from cutting any live tree on their property, is disparate treatment. It is just as discriminatory as a policy of refusing to accept subdivision applications from persons who are minorities and City People. As in the *Town of Harrison* case, and the others cited with it, the defendant cannot validate use of this standard, which is the Title VII and Title VIII standard ( and which is also similar to the "strict scrutiny" standard applicable in cases under 42 U.S.C. §1983).

A violation of the FHA can also be established if a challenged practice or ordinance discriminates against protected class members on its face and serves no legitimate governmental interest. *Horizon House Developmental Servs. v. Township of Upper Southampton,* 804 F.Supp. 683, 693 (E.D. Pa. 1992), *aff'd.*, 995 F.2d 217 (3d Cir. 1993). As the facts assembled in the Mc Culloch Decl. ¶¶4, 6, clearly demonstrate, the Town's MCP discriminates on its face in favor of Town residents and against City People.

The role of the MCP is significant. New York's Town Law §263 requires that Town zoning regulations be made in accordance with a comprehensive plan. *Randolph v. Town of Brookhaven*, 37 N.Y.2d 544, 547, 375 N.Y.S.2d 315 (1999). The purpose of this requirement is to ensure that the zoning regulations benefit the entire community and not just individual or special interests. *Asian Ams. For Equality v. Koch*, 72 N.Y.2d 121, 131, 531 N.Y.S.2d 782, 527 N.E.2d 265 (1999). Defendants' discriminatory actions described in the Amended Complaint were in conformance with the MCP's intent to discriminate in favor of Milan residents, and against all others, especially City People.

Plaintiff has stated a claim against the individual defendants Frank Margiotta, Barbara Hughey, and Charlotte Norman because she has made allegations against them, which, if proven, will establish that they participated in the discriminatory conduct in violation of the FHA. Non-government persons are certainly appropriate defendants in an FHA Case. *See Cornwell v. Robinson, et al.*, 23 F. 3d 694 (2d Cir. 1994).

**2. Plaintiff is "aggrieved" by Defendants' violation of the FHA and she has standing to commence this action.** (Responding to Defendants' memo, pp. 5-14). Defendants argue that the Amended Complaint does not state a cause of action for violation of the

FHA because Plaintiff is not "an aggrieved person", that Plaintiff does not have standing to assert a claim for violation of the FHA, and that the facts alleged do not state a claim for violation of the FHA. Defendants argue that Plaintiff has asserted her claim under the FHA too soon, because there is no "final" decision. Paradoxically, Defendants also argue that Plaintiff's claim under the FHA has been filed too late, and that she should have filed her FHA claim as an Article 78 proceeding.

The FHA has a broad definition of who is a person "aggrieved" under the FHA. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, 102 S. Ct. 1114, 71 L.Ed.2d 214 (1982) (the sole requirement for standing under the FHA is the "[Article] III minima of injury in fact". To meet this standard, plaintiff must allege that he or she has suffered a distinct and palpable injury and that the injury is traceable to the defendant's discriminatory conduct". *Id*. at 376). *See also*, *Assisted Living Associates LLC v. Moorestown Tp.,* 996 F.Supp. 409, 425 (D.N.J. 1998) ("Congress has provided a cause of action under 42 U.S.C. §3613 to a particularly broad group of potential plaintiffs: 'an aggrieved person', which is defined to include 'any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person *will be injured* by a discriminatory housing practice that is *about to occur*.' 42 U.S.C. §3613(i) (emphasis added)." An increase in the costs for development constitutes an actionable injury. *Id*. at 425, citing to 7 other cases also. *See LeBlanc-Sternberg v. Fletcher*, *supra* at 425 ("An injury need not be economic or tangible to confer standing (Citations omitted)".

The FHA makes it unlawful "to refuse to sell or rent . . .  *or otherwise make unavailable or deny a dwelling to a person because of . . . national origin*". 42 U.S.C. §3604(a) (Emphasis added). In *LeBlanc-Sternberg v. Fletcher*, *supra*, the Second Circuit

stated that "The phrase 'otherwise make unavailable' has been interpreted to reach a wide variety of discriminatory housing practices, including discriminatory zoning restrictions. (Citations omitted)". *Id*. at 424.

The FHA applies to zoning regulations *and to the interpretation and application of zoning regulations. See LeBlanc-Sternberg v. Fletcher*, *supra* ("where it has been established that a zoning ordinance will likely be applied in a discriminatory manner, it is unnecessary that the municipality actually so apply it before the ordinance may properly be challenged" *Id.* at 425); *Regional Economic Community, supra* at 45-46 ("All three statutes (FHA, ADA, and the Rehabilitation Act), apply to municipal zoning decisions". *Id*. at 45-46), *cert. denied*, 537 U.S. 813 (2002); *Tsombanidis v. West Haven Fire Dept., et al.*, *supra* at 574 (FHA applies to interpretation of fire code, and action was not mooted because municipality changed its interpretation of the fire code); *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996); *Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007). *See also* listing of cases cited in *Assisted Living Associates LLC v. Moorestown Tp., supra,* at 425.

The facts set forth in the Amended Complaint that establish that Plaintiff is "aggrieved", has "standing", and that her claims are "ripe" for adjudication.

**3. Plaintiff's FHA action is "ripe" for consideration now.** (Responding to Defendant's memo, at p.1) Defendants argue that Plaintiff's claims, including Plaintiff's FHA claim, have been filed too soon, and that this claim is not "ripe" for consideration, because there has been no "final" decision.

The standards for assessing a claim that the matter is not "ripe" were summarized in *Venetian Casino Resort, LLC v. EEOC,* 409 F.3d 359 (D.C. Cir. 2005). It stated:

The framework for assessing ripeness was established in *Abbott Laboratories v. Gardner,* 387 U.S. 136 (1967), in which the Supreme Court provided a two-pronged test that requires a reviewing court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149. Under the "fitness of the issues" prong, the first question for a reviewing court is "whether the disputed claims raise purely legal questions and would, therefore, be presumptively suitable for judicial review". (Citations omitted). Next, we consider whether the court or the agency would benefit from postponing review until the policy in question has sufficiently "crystallized" by taking on a more definite form. (Citations omitted). The "hardship" prong of the *Abbott Laboratories* test is not an independent requirement divorced from the consideration of the institutional interests of the court and agency (Citation omitted).

*Id.* at 366.

These claims are "ripe". The issues are ready for judicial review. Plaintiff has suffered and is suffering substantial harm. Plaintiff has already "lost a potential purchaser for Lot 5", Amended Complaint, ¶55, for the reasons set forth in detail at ¶47-55, and Defendants have destroyed her ability to market and sell these lots to any potential purchaser. *Id.* Plaintiff has to tell prospective buyers that they cannot cut trees in the Conservation Easement Area (CEA), even if they are diseased, invasive, inhibiting the growth of other more desirable trees, or pose a danger to public safety. She has to tell them that they cannot cut brush in the CEA area either, even though these restrictions mean that the CEA part of the property they are considering cannot even be used for passive walking trails. She has to tell them that if they cut a tree, they may have to pay to have it replaced, and to pay the Town's costs and attorney's fees if the Town has to commence a legal action against them. *See* CEA, pp. 6-8. This matter is fit for review by the Courts and Plaintiff has suffered, and is suffering substantial harm right now.

**4. Plaintiff does not have to present her FHA claims in an Article 78 proceeding.**

(Responding to Defendants' memo, p. 23.) This argument has repeatedly been rejected.

Relief under the FHA is available even though the person aggrieved has not sought other remedies that might have been available. *See, e.g.*, *Groome Resources Ltd. v. Parish of Jefferson,* 234 F.3d 192, 199 (5th Cir. 2000) (ripeness addressed, and found because the FHA violation creates immediate injury. ("Ripeness in the Fair Housing Act context must be distinguished from ripeness cases involving unconstitutional takings or other zoning issues. *See Bryant Woods, Inc. v. Howard County, MD.,* 124 F.2d 597, 602 (4th Cir. 1997) ("Fair Housing Act claims are thus unlike takings claims, which do not ripen until post-decisional procedures are invoked without achieving just compensation"). *Id.* at 199, n. 6.

There is no need for developer to apply for a variance in order for a claim for violation of FHA to become "ripe" for adjudication. *Assisted Living Associates, LLC. v. Moorestwn Tp.*, *supra* at 426-7, citing  to 11 other cases so holding. *See also*, *Bryant Woods, supra at* 601, citing to the Congressional Record relating to enactment of the FHA that states that "An aggrieved person is not required to exhaust the administrative process before filing a civil action", *id.* at 601, and finding that claimant did not have to exhaust either the administrative process provided for in the FHA or the administrative process provided for by the Howard County Board of Appeals before commencing an action under the FHA. *Id. See also, Patsy v. Florida Bd. of Regents*, 457 U.S. 496 (1982) ("the initial question whether exhaustion is required should be answered by reference to congressional intent; and a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent". *Id* at 502.  In *Patsy*, the Supreme Court noted at 502, n. 4, that this applied "as well to those [cases] in which state remedies are available".

The MPB, through its Chairman, Lauren Kingman, required Plaintiff to seek and obtain a DEC FMP as a condition for Plaintiff or her successors to cut any live tree. As alleged in ¶50 of the Amended Complaint, this condition was impossible to fulfill, was arbitrary and capricious, and was not imposed on local residents. Nevertheless, Plaintiff made the application, as required. The DEC denied the application, as alleged in ¶51 of the Amended Complaint. That decision by the DEC was "final" and at that point the issue was "ripe" without any need for Plaintiff to appeal the DEC's determination. *De St. Aubin v. Flacke,* 68 N.Y. 2d 66, 505 N.Y.S.2d 859, 496 N.E.2d 879 (1986).

Furthermore, Plaintiff has alleged that Defendants' own actions prevent any possible review. *See* Amended Complaint, ¶¶21-23, 27, 137-141 and POINT I *supra*. Defendants' failure to adhere to the administrative procedures is notorious. [4]

In *Stanley v. Bd. of Appeals of Village of Piermont,* 168 Misc. 797 (Sup. Ct., Rockland Co., 1938), the Court held that the words "filed in the office of the Board", in a statute requiring a decision of the village board of zoning appeals to be filed in the office of the Board, meant delivery of decision to the village clerk to be kept on file. *See also, Mc Cartney v. Village of East Williston,* 149 A.D.2d 556-7 (2d Dept. 1989), in which the Court held that motion to dismiss was property denied, because it was the burden of the municipality to establish that a vote had been taken, and that the vote of each member

---

[4] *See Red Wing Properties, Inc. v. Town of Milan, et al.,* Index No. 2883/06, Decision dated February 7, 2007, invalidating Town's Master Plan ("The court's review is limited to whether the Town's determination violated lawful procedures, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion. While any one of the procedural defects standing alone could possibly be construed as a mere irregularity and inconsequential, this court cannot ignore the cumulative nature of several procedural errors nor assign relative importance to each one as that is a legislative responsibility. To ignore them all would seem to defeat the purpose of the statutes requiring these procedures").   A copy of this unpublished decision accompanies Plaintiff's Response Memo.

was reflected in the record filed, so as to establish that the board formally acted as a government body. Since the municipality had not met this burden, its motion was denied.

The New York Court of Appeals has ruled that the question of whether an administrative determination is "final and binding" can be a "thorny" issue, and that the nature of the record made in connection with the particular administrative action is a factor in determining whether the statutory standard has been met. *Yarbough v. Franco*, 95 N.Y.2d 342, 717 N.Y.S.2d 79, 740 N.E.2d 224 (2000). A challenge that would have been on an empty record does not have to be made. *Id*. at 347.

On a motion to dismiss pursuant to Fed.R.Civ.P., Rule 12 (b) (6), when the Amended Complaint has alleged that Defendants have not done what they should have done so as to place Plaintiff in a position to pursue some other remedy, there is no presumption of regularity. Defendants cannot ask the Court to *presume* that Defendants have done everything necessary to 'trigger' Plaintiff's rights to take such actions.

**5.  Plaintiff's FHA Claim Is Not Barred By The Statute Of Limitations.**  (Responding to Defendants' Memo, at p. 5) Defendants argue that Plaintiff's claim under the FHA is barred by the statute of limitations. That argument has consistently been rejected. The FHA, at 42 U.S.C. §3613(a), provides that

> An aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . . to obtain appropriate relief with respect to such housing practice or breach.

The limitations period for claims brought pursuant to the FHA begins on the date of "the last asserted occurrence of [the discriminatory] practice". *Havens Realty Corp. v. Coleman*, supra at 381.

> In a suit claiming that the defendant engaged in a continuous course of conduct that causes damages, however, a plaintiff can recover for damages that preceded

the limitations period if they stem from a persistent process of illegal discrimination. *Stewart v. CPC International, Inc.*, 679 F.2d 117, 120 (7th Cir. 1980); *McKenzie v. Sawyer*, 684 F.2d 62,72 (D.C.Cir. 1982); *see generally, Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993).

*Tyus v. Urban Research Management et al.*, 102 F.3d 256, 265-266 (7th Cir. 1996); *see also, Eastern Paralyzed Veterans Ass'n, Inc. v. Lazurus-Burman Associates, Inc.*, 133 F.Supp. 2d 203, 212 (E.D.N.Y. 2001) (violation of FHA was continuing so statute of limitations was repeatedly being triggered); *Connolly v. Mc Call*, 254 F.3d 36 (2d Cir. 2001) (Employment discrimination); *Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) (Employment discrimination).

The facts set forth in the Amended Complaint, summarized in the Mc Culloch Decl. at ¶¶31-36 detail the FHA violations and show why they are timely. Ten timely events that triggered a claim for violation of the FHA are set forth in the Mc Culloch Decl. n. 3.

**6. Plaintiff's FHA action is not barred by the *Noerr-Pennington* doctrine.** (Responding to Defendants' memo, at p. 31). Defendants argue that Plaintiff's claims are barred because Defendants have the right to say or do whatever they want to oppose Plaintiff's entitlement to non-discriminatory treatment because Defendants' rights to free speech would be impinged were the law otherwise.

Defendants' *Noerr-Pennington* doctrine claim is a potential affirmative defense. A motion to dismiss pursuant to Fed.R.Civ.P., Rule 12(b)(6) considers whether the Complaint fails to state a claim; consideration of affirmative defenses is done later. No case that Defendants cite considered this affirmative defense in the context of a motion to dismiss pursuant to Fed.R.Civ.P., Rule 12(b)(6).

The Second Circuit has regularly relied upon what persons said during administrative proceedings in FHA cases to establish "intent", and without concern that such consideration would infringe on rights to free speech. *See Regional Economic Community v. City of Middletown, supra* at 50 ("City officials and Planning Board members made numerous statements from which a reasonable juror could infer that they denied RECAP's permit application because of the identity of its clients. For example, Mayor DeStefano began the . . . hearing . . . by stating: . . ."). In *LeBlanc-Sternberg v. Fletcher, supra* at 418, it referenced to the flyers distributed by one of the defendants "asking 'Why do we need to incorporate?' and listing 'Zoning control and enforcement' among the reasons to ascertain intent and motivation'." *Id.* at 418.

Defendants' confuse two separate issues. Even assuming that persons have the right to protest against activity, even for a discriminatory motive under the *Noerr-Pennington* doctrine, that does not condone action by public officials who are knowingly responsive to those discriminatory statements and act because of the discriminatory motives voiced by these persons.  The distinction was noted in *Innovative Health Systems v. City of White Plains*, 117 F.3d 37, 49 (2d Cir. 1997):

> The public hearing and submitted letters were replete with discriminatory comments about drug and alcohol dependent persons based on stereotypes and general, unsupported fears. *See supra*, notes 1.3. Although the City certainly may consider legitimate safety concerns in its zoning decisions, it may not base its decisions on the perceived harm from such stereotypes and generalized fears. As the district court found, a decision made in the context of strong, discriminatory opposition becomes tainted with discriminatory intent even if the decisionmakers personally have no strong views on the matter. . . .  *See also, Support Ministries for Persons With AIDS, Inc. v. Village of Waterford, N.Y.*, 808 F.Supp. 120, 134 (N.D.N.Y. 1992) (zoning officials who "bowed to political pressure" by those with animus against people with alcohol-and-drug related disabilities violated Fair Housing Act).

> *Id.* at 49. *See also LeBlanc-Sternberg, supra* at 425, citing *U.S.  v. Yonkers Bd. of*

*Education*, 837 F.2d 1181, 1217, 1223, 1226 (2d Cir. 1987), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).

Even if the actions were to be considered "speech", they fall within the "sham" exception to the doctrine because the activity was "objectively baseless", as alleged in the Complaint, and these defendants are alleged to have been motivated by bad faith.

## POINT III – DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND CAUSE OF ACTION SHOULD BE DENIED

Plaintiffs' second cause of action is based on 42 U.S.C. §1983. It asks the Court to "order the same relief as previously requested in the First Cause of Action, plus such other relief as the Court deems just and proper" Amended Compl. p. 38. For purposes of this case, the difference between the two claims is that the FHA has a 2-year limitations period, and 42 U.S.C. §1983 has a 3- year limitation period. *See Deepwells Estates, supra* at 344-345. Since Plaintiff filed the Complaint on November 5, 2007, Plaintiff can claim entitlement to relief for events back to November 5, 2004. This is to a time *before* Plaintiff finally had succumbed to the demands of the MPB that she convey the CEA as a condition for subdivision approval. *See* Amended Compl. ¶ 22.

Most of Defendants' motion to dismiss focuses on the "unjust taking" part of Plaintiff's claim under 42 U.S.C. §1983. This is a 'red-herring'. Redress for the harm suffered by Plaintiff because of the restrictions placed on her property by Defendants is recoverable as damages under the FHA, whether or not they are categorized as a

"taking". Furthermore, Plaintiff's claim for an "unjust taking" is only part of the damages for which Plaintiff seeks redress by means of her claim under 42 U.S.C. §1983.[5]

42 U.S.C. §1983 provides that

Every person who, under color or any statute, ordinance, regulation, custom, or usage, or any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress. . .

As the Court stated in *Deepwells Estates, Inc, supra* at 348:

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. Mc Collum*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. O'Connor*, 490 U.S. 386, 394, 119 S. Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) and *Baker v. O'Connor, supra*, 443 U.S. at 140, 99 S.Ct. at 2692.

Using this approach, and proceeding with the "first step", it can be seen that Plaintiff is claiming that her rights to due process and her right to equal protection have been violated. *See* Caption, Second Cause of Action, p. 33; *see also*, ¶129.

The next step is to identify what property rights Plaintiff is claiming were denied to her in violation of these provisions of the U.S. Constitution. Plaintiff is claiming that all of the adverse actions alleged were in violation of these provisions.

These causes of action, as they relate to the CEA, assert that there never should have been a CEA required of Plaintiff, that it was arbitrary and capricious for the Town and MPB to demand that she enter into a CEA as a condition for subdivision approval,

---

[5] Pursuant to the second cause of action, Plaintiff is seeking relief for the damages she suffered for the illegal acts that are listed in the Mc Culloch Decl., note 3, *minus* the item that is number 10, because that is a demand made against Defendants Frank Margiotta, Barbara Hughey, and Charlotte Norman, but *plus* a declaratory judgment that the CEA is null and void, for the reasons alleged. Plaintiff would prefer to undo the "taking" rather than be paid for the damages suffered by the "taking".

and that a CEA never would have been required of her in the first place if she had been a local resident, who was not minority. *See* Amended Compl. ¶¶129, 145, and the Sixth Cause of Action.

The Amended Complaint states an equal protection claim. In *HBP Associates v. Marsh,* 893 F.Supp. 271, 279 (S.D.N.Y. 1995), the Court described the standards for such a claim.

> The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Absent infringement of a "fundamental right" or the use of a "suspect classification", the rational basis test is the proper standard of review for equal protection challenges to government action. *See City of New Orleans v. Dukes*, 427 U.S.297, 303, 96 S.Ct. 2513, 2516-17, 49 L.Ed.2d 511 (1976). Under the rational basis test, the Defendants may not exercise their authority in an arbitrary, capricious or unreasonable manner. To be sustained, their exercise of authority must be shown to bear a rational relationship to a legitimate governmental objective. (Citations omitted).

*Id*. at 279.  If the claim states that action was based on a "suspect classification", "such as race, religion or alienage," then the "rational basis" standard of review is not used. *Id.* at 280.  Instead the "strict scrutiny" standard of review is used.

In this case, Plaintiff contends that the treatment was based on national origin and place of residence, so the "strict scrutiny" standard of review would be applicable. However, as this point, it is not necessary to determine which standard of review is to be used. Plaintiff has stated a cause of action for a violation of the equal protection clause, through 42 U.S.C. §1983. The Supreme Court has made it clear that the exhaustion of administrative remedies is not necessary in order to state a claim under 42 U.S.C. §1983. *Patsy v. Florida Bd. of Regents*, *supra*.

For purposes of assessing Plaintiff's equal protection claim it is not necessary to determine whether the imposition of the CEA as a condition for subdivision approval constituted a "taking", as Defendants describe a "taking', *i.e.*, a loss of the entire use of the property. The decision that Plaintiff seeks to have reviewed is the decision to impose any CEA at all on Plaintiff as a condition of her being granted subdivision approval. Under the strict scrutiny standard, Defendants will have to establish that it was absolutely necessary for the MPB to condition its approval on Plaintiff's agreeing to the CEA, whether lesser alternatives were available, and whether other persons who were Milan residents and non-minorities had a CEA imposed on them in such situations. Plaintiff has alleged ample facts to show that Mr. Borenstein, for example, had an even larger, more intrusive subdivision, and that he did not even have a Positive Declaration of Significance under SEQRA, let alone a CEA, imposed on him.

Plaintiff also seeks to have all of the decisions that will be reviewed under the equal protection clause reviewed under the due process clause. Due process claims can be for violation of substantive due process rights and/or violation of procedural due process rights. *See Deepwells Estates, supra* at 350.

A claimant asserts a cognizable claim for violation of substantive due process when he or she claims "that the defendants acted in an arbitrary and irrational manner in depriving them of their property interest. *See Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir. 1996)." *Id.* at p. 350. All that is required to assert a claim of violation of substantive due process is to allege what Plaintiff has described above, and that the action deprived the claimant of an interest in property. The acts and deprivations of property rights that Plaintiff has described above are very similar to the property rights that the Court

recognized in *Deepwells, supra* at 350. In *Deepwells*, the Court told the Plaintiff to amend the Complaint, to so state, and that Plaintiff would then state a claim for violation of substantive due process rights.

With regard to procedural due process, the *Deepwell* decision noted that if the claim was that the deprivation was the consequence of a policy, and not some isolated act, then a claim is stated for violation of procedural due process, even in a "taking" case, and that nothing further was required. *Id.* at 350.

Plaintiff has stated the Defendants have an institutionalized policy of favoring Milan residents, and disfavoring City People and minorities, and using delay as an instrument to administer the policy. *See* Mc Culloch Decl. at ¶¶ 3-18. This policy when implemented has resulted in Plaintiff being treated differently, and more harshly, than local residents in at least 14 different ways. All of these are alleged in various parts of the Amended Complaint, and references are collated in the Mc Culloch Decl.¶27.

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S. Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court established certain special rules relating to the issue of when a claim for unjust 'taking' without compensation would be "ripe" for adjudication.  It held that two conditions must be met before such a claim may be initiated, if one is using the federal courts in the first instance, that is, under 28 U.S.C. §1331. It stated:

1. the claimant must have sought a final decision as to the permitted use of the property;  and

2. the claimant must seek just compensation for the taking from the state government if a procedure is available to the claimant.

*Id*. at 194.

In the instant case, claimant has done that. There are really two "final decisions" relating to her property.[6] The first of the decisions is that made by the MPB that Plaintiff had to agree to a CEA as a condition of subdivision approval. That decision was made prior to the conditional final approval, and then embodied in the final approval, which led to the execution of the subdivision plats by Plaintiff, the MPB and the Town Board, and the execution of the CEA by the parties.

With respect to that first "final decision" there is no doubt that it is final within the meaning of *Williamson*, since there was nothing contingent, nothing speculative about subdivision approval being granted and nothing speculative about the property rights created by such decisions. That "final decision" left Plaintiff with some uses of the CEA and formally conveyed other rights in the CEA to the Town. The only conditions were that Plaintiff act as provided for in the approval, and she did that.

The second "final decision" was the decision made by Mr. Kingman, on October 5, 2007, when he modified the terms of the CEA so as to provide that no live tree could be cut in the CEA, unless the DEC provided a FMP, and Plaintiff and her successors acted pursuant to that FMP. The only contingency in that decision was that Plaintiff had to seek the FMP. Plaintiff did that, and was told that the DEC would not do a FMP for the Plaintiff's property. That decision became final when the DEC refused to create the FMP. The decision of the DEC was not subject to review. The FMP is a totally voluntary program, and the DEC can exercise its discretion to refuse to create a FMC.

---

[6] The cases indicate that unless and until there is a "final" decision, the courts would have to speculate about what would have happened. That is because 'takings' cases are generally presented at the point where the municipality has made a demand to which the developer does not accede, but, instead, contests. In the instant case there is no need to speculate about what would have happened, because it has already happened.

This second "final decision" did three things: (1) it transformed the CEA area, which is 17 acres, to a useless area, insofar as Plaintiff and her successors were concerned, effectively reducing the acreage in each lot from 5-7 acres to 1-3 acres; (2) it effectively reduced the value of even the smaller lots, because persons who had those lots would not be able to cut trees close to their houses, if those trees were in the CEA, even if those trees posed a danger to health and property, and they could not eliminate diseased and invasive trees that were in the CEA, even though those kinds of trees might threaten the trees and vegetation in the parts of their property that was not in the CEA; and (c) it effectively prevented Plaintiff from marketing her lots. Like Mr. L.S., no one wants to buy lots with such restrictions.[7]

The second element of *Williamson* is that claimant must seek just compensation for the taking from the state government "if a procedure is available to the claimant". Plaintiff moves for dismissal of the part of Plaintiff's claims that seeks compensation for an unjust "taking", and argues that Plaintiff has not sought compensation. Plaintiff's response to that argument is two-fold. First, there was not a procedure for Plaintiff to seek such compensation. Plaintiff has alleged that Defendants' own actions prevent any possible review. *See* Amended Complaint, ¶¶21-23, 27, 137-141 and POINT I *supra*. On a motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6) all those allegations must be accepted as true.

Second, whatever procedure that might have been available to Plaintiff, an action under some state law, is actually being used in this case. Defendants can identify with

---

[7] Defendants argue at p. 24 of their memo that in order for there to be a "taking" a claimant must have been deprived of all use of her property. Plaintiff has done this. Plaintiff's claim is that Defendants have deprived her of all use of the 17-care CEA area. *See* Amended Compl. ¶129(b)

some specificity the claim and procedure that they assert was available to Plaintiff under state law. That state law claim, if it not already being asserted, can be entertained by this court by using its authority under 28 U.S.C. §1367 (a).

There would be good reason to follow this approach, if necessary. The Supreme Court's concern in *Williamson* and the other cases that Defendants cite was and is that the federal courts would become the courts of first instance, *i.e.*, the forum to which claimants would go first when there were disputes about 'takings'; that those claimants would claim that there was a federal question, and invoke federal court jurisdiction under 28 U.S.C. §1331.

That concern is not present in this case. In this case, this Court already has federal court jurisdiction pursuant the FHA and Plaintiff's other claims under 42 U.S.C. §1983. Because this Court already has jurisdiction, it can entertain any other claims that arise from the same events, even if those claims are asserted pursuant to state statutory law or common law, under its supplemental jurisdiction provided for in 28 U.S.C. §1367 (a).[8]

Plaintiff believes that the allegations set forth in ¶129 of the Amended Complaint properly set forth the basis for an "unjust taking" claim. However, if this Court believes that the allegations made do not suffice to allege compliance with the second requirement of *Williamson,* and that there is some state law, statutory or otherwise, that Plaintiff could have used, but that she has not used, then the Court should indicate what that law is, and consider the claims made in the Amended Complaint to be asserted under that law, and entertain such claims pursuant to its supplemental jurisdiction. If that other state law

---

[8] Plaintiff has already asked this Court to assert jurisdiction over what would be considered state law claims under Article 78 of the CPLR by the Third-Sixth, and part of her Seventh Causes of Action.

requires allegations that have not been made, but that could have been made by Plaintiff, then Plaintiff requests that the Court grant leave to Plaintiff to amend her complaint to include such allegations.

Such a procedure is the only reasonable one. In this case, Plaintiff is asking the Court, first, to undo the imposition of the CEA, and, second, if it does not undo it, to deem it a taking and award compensation. It would be incongruous for the Court to order that Plaintiff's claim for an unjust taking be entertained in some other court, while this Court retains jurisdiction of Plaintiff's claim for dissolution of the CEA. Theoretically, Plaintiff could end up with the dissolution of the CEA in this Court, and damages being awarded by another court for an unjust taking.

## POINT IV – DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES SHOULD BE DENIED

In POINT XV of their motion to dismiss, at pp. 36-37, Defendants seek dismissal of Plaintiff's claims for punitive damages. (This POINT and these pages are not part of Defendants' Table of Contents). That motion should be denied.

In *Silver v. Cormier, supra,* punitive damages had been awarded against public officials. The defendants appealed that award. The Court held:

> A jury may properly find that such conduct by a public official manifests a reckless indifference to property rights of others, ill will, a desire to injure or malice. Punitive damages are recoverable in a section 1983 action provided such aggravating circumstances are found. (Citations omitted). Recovery of punitive damages had been held to be permitted in actions under section 1983 even in the absence of actual loss. (Citations omitted).

*Id.* Plaintiff has amply alleged facts to show that the public official acted with manifests a reckless indifference to property rights of others, ill will, a desire to injure or malice. References to these allegations are summarized in the Mc Culloch Decl. ¶30.

**POINT V DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FOURTH CAUSE OF ACTION SHOULD BE DENIED**

Defendants argue in POINT XIV at p. 36 of their memo that there Plaintiff's Fourth Cause of Action should be dismissed. Defendants assert that there was no notice of claim filed. The answer to that is that there was no need to serve a notice of claim because the defendants against whom this claim is asserted were not public officials. Plaintiff has alleged that these persons "are not public officials". Amended Compl. ¶127. If defendants want to claim that defendants Margiotta, Hughey and Norman are public officials, they have to do so by presenting facts to support that claim, and they cannot do that on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

Defendants also argue that this claim should be dismissed because the Amended Complaint fails to allege that the interference with Plaintiff's prospective economic advantage was accomplished through wrongful means or that these defendants acted for the sole purpose of harming Plaintiff. Plaintiff has amply made the allegations in the Amended Compl.¶¶ 117-126 to establish a valid claim.

**POINT VI    DEFENDANTS HAVE NOT ADDRESSED PLAINTIFF'S THIRD, FIFTH AND SIXTH CAUSES OF ACTION IN THEIR MOTION TO DISMISS**

Plaintiff's Third Cause of Action is for a declaratory judgment that the MCP is void. Plaintiff's Fifth Cause of Action is for a Declaratory Judgment that the CEA does not bar Plaintiff and her successors from cutting any live tree. Plaintiff's Sixth Cause of Action is for a Declaratory Judgment that the CEA is void. These are the equivalent of what would have been presented to a state court in an Article 78 proceeding. Defendants do not argue that these causes of action do not state a claim. It is premature for the Court

to address these claims. Since they state causes of action, insofar as Defendants seek dismissal of these claims, that motion should be denied.

Plaintiff's Sixth Cause of Action is for a declaratory judgment that the CEA is null and void because it was based on the MCP, and the MCP at this time was null and void. This cause of action also asserts that the CEA is arbitrary and capricious.

**POINT VII    NONE OF PLAINTIFFS' CLAIMS REQUIRED AN ALLEGATION THAT A NOTICE OF CLAIM HAD BEEN FILED** (Responding to Defendants' memo, p. 35.).

Defendants' Notice of Claim argument is misleading. Defendants do not and cannot claim that Plaintiff was required to allege the filing of a Notice of Claim as a condition precedent to stating a claim for violation of 42 U.S.C. §1983. The Supreme Court made that clear twenty years ago, in *Felder v. Casey,* 487 U.S. 132 (1987), where it ruled that the Wisconsin Notice of Claim statute could not bar a claim for violation of 42 U.S.C. §1983, nor a claim for violation of federal civil rights laws.

Defendants do not and cannot claim that Plaintiff was required to allege the filing of a Notice of Claim as a condition precedent to stating a claim for violation of the FHA. *See Felder, supra*; s*ee also, Bryant, supra,* which discussed the legislative history and purpose of the FHA.

Plaintiff's Third-Sixth, and part of her Seventh claims were for declaratory relief, akin to an Article 78 proceeding. No Notice of Claim is required in such situations. *Diaz v. Bd. of Educ. Of City Of New York,* 162 Misc. 2d 998, 618 N.Y.S. 2d 948 (Sup. Ct., Kings Co. 1994), and cases cited therein.

Plaintiff's Fourth Claim was against persons who she alleged are not public officials. No notice of claim is required in such instances.

**POINT VIII  DEFENDANTS' AFFIRMATIVE DEFENSE OF QUALIFIED IMMUITY IS PREMATURE** (Responding to Defendants' memo, p. 33).

Defendants assert the affirmative defense of qualified immunity. They then go on to describe the elements of this affirmative defense, omit any reference to facts to establish that this affirmative defense are present in this case, and ask that the Court dismiss certain claims (they do not say which claims), against certain defendants (they do not say which defendants) for certain actions (they do not say which actions). Fed.R.Civ.P. 12 (b) (6) does not provide for consideration and disposition of affirmative defenses, especially when they are ill-defined and require findings of fact to determine whether they are appropriately asserted and applicable in a particular situation, to particular defendants.

## CONCLUSION

For the reasons stated, the motion to dismiss should be denied in its entirety.

Dated: March 11, 2008                              Respectfully submitted,

_____/s/_____
Kenneth Mc Culloch (3372)
Attorney for Plaintiff
516 Fifth Avenue, 12th Floor
New York, N.Y. 10036
Tel. 212-398-9508
e-mail KMcCulloch@BRGSLAW.com