UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

**CARMEN OTERO Mc CULLOCH,**

                        Plaintiff,                        **AFFIDAVIT**

      -against-                                  07 CV 9780 (LAP)(RLE)

**TOWN OF MILAN, TOWN OF MILAN TOWN BOARD, JOHN V. TALMADGE**, Town Supervisor, and **ALFRED LO BRUTTON, PAULINE COMBE-CLARK, DIANE MAY**, and **ROSS WILLIAMS**, Councilpersons, **TOWN OF MILAN PLANNING BOARD, LAUREN KINGMAN**, Chairman, and Members **JEFFREY ANAGOS, PETER GROSS, SHEILA MARGIOTTA, MARY ANN HOFFMAN**, and **PAULINE COMBE-CLARK, GARY E. BECK**, Zoning Enforcement Officer, Town of Milan, and **FRANK MARGIOTTA, BARBARA HUGHEY**, and **CHARLOTTE NORMAN**,

                        Defendants.
------------------------------------------------------------------X

    R. Peters Hubbell, Jr., being duly sworn, deposes and says:

    1. I am president of Hubbell Realty Services, Inc., an independent fee based real estate appraisal service located in Poughkeepsie, New York. I am a (MAI) member of the Appraisal Institute and a New York State Certified General Real Estate Appraiser. I have appraised virtually all types of real estate, including improved and vacant residential and farm properties for the purpose of estimating the market value of properties before and after the imposition of conservation easements for both charitable donation and acquisition. A copy of my resume is annexed hereto as Exhibit "A".

2. I have been requested to and did review the affidavit of Ron Gasparro in the instant matter. I have also reviewed the conservation easement agreement applicable to the Woodland Hills Estates subdivision and the subdivision plat.

3. In his affidavit sworn to on January 30, 2008, Mr. Gasparro offers what purports to be his opinion regarding the effect of the conservation easement herein on the value and marketability of the lots in McCullough's subdivision and regarding other miscellaneous matters.

4. Mr. Gasparro acknowledges that he has "served as a real estate broker in selling property for Mr. and Mrs. McCulloch." (¶ 3). He also acknowledges that he and his agency "have listed for sale the six (6) lots owned by Carmen McCulloch in the Town of Milan known as Woodland Hills Estates subdivision." (¶ 3).

5. It is my opinion that it is inappropriate for Mr. Gasparro to offer purportedly objective expert opinion on value when he is the active broker with a financial interest in the property for which he offers his opinion. In clear violation of the Uniform Standards of Professional Appraisal Practice (USPAP), 2008-2009 Edition, to which all Certified and Licensed Real Estate appraiser, such as myself, are subject.

6. Pursuant to the Uniform Standards of Professional Appraisal Practice USPAP Ethics Rule § Conduct, "[a]n appraiser must perform assignments ethically and competently, in accordance with USPAP. * * * An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests." Additionally, "[i]n appraisal practice, an appraiser must not perform as an advocate for any party or issue."

7. USPAP Ethics Rule § Conduct also provides that "An appraiser must not accept an assignment that includes the reporting of predetermined opinions and conclusions."

8. Moreover, in order for an appraisal report to be credible the following certification is required by USPAP Standards Rule 2-3. Although the affidavit may not technically constitute an "appraisal,"; however, because Mr. Gasparro has offered his purportedly objective expert opinion on value (¶ 17), the standards and considerations related therein illustrate that his opinion is not objective and is not worthy of credibility under the circumstances.

9. Standards Rule 2-3 provides:

> Each written real property appraisal report must contain a signed certification that is similar in content to the following form:
>
> I certify that, to the best of my knowledge and belief:
>
> - the statements of fact contained in this report are true and correct.
> - the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
> - I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
> - I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
> - My engagement in this assignment was not contingent upon developing or reporting predetermined results.
> - My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a

>   subsequent event directly related to the intended use of this appraisal.
> - My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

10. The lack of any such certification when, at the same time, Mr. Gasparro has a financial interest in the sale of the lots, results in the conclusion that the opinion offered is neither supported nor objective.

11. Moreover, I find that Mr. Gasparro's purportedly objective conclusions are inaccurate.

12. In (¶ 6) of his affidavit, Mr. Gasparro states that the Conservation Easement Area and Conservation Easement Agreement "in and of themselves, reduce the prospective market for those lots." I do not agree.

13. It is my opinion that the conservation easement, herein, does NOT in and of itself necessarily reduce the value of the property. Each lot has a generous area available to site a home, accessory structures, lawn, etc. The area of conservation easement can be used for passive use. In addition, because the areas covered by the conservation easement have environmental constraints, such as wetlands, steep slopes, the areas could not, in any event, be built on and their utility is greatly diminished. The preservation of the areas in the conservation easement also ensures that each lot is buffered from noisome activity and any construction on adjoining lots. Essentially, the subsequent owners of the lots in the subdivision benefit from a "reciprocity of advantage," that is, although the conservation easement somewhat limits use within the conservation easement area, the adjoining lots also are subject to the same conditions. The owner of each lot thereby benefits by virtue of the mutual restrictions on the adjoining lots.

14. In addition, it is my professional opinion that, contrary to Mr. Gasparro's conjecture, an inability to cut fire wood on a lot in and of itself does not impact value.

15. With respect to his conjecture on the effects of the conservation easement on use, Mr. Gasparro has shown no basis to conclude that the inability to prune eliminates the ability to walk on any part of the area covered by the conservation easement.

16. It is a mischaracterization to claim (¶ 13), that due to the conservation easement, the area of the lots is effectively reduced. As is discussed more fully above (Hubbell ¶ 13), buyers look upon the conservation easement area as a buffer from neighbors, providing for greater privacy than what might be available from smaller lots.

17. I also do not believe that potential purchasers would be overly concerned about the purported inability to cut down a large tree near a prospective new home site. There is adequate amount of land area surrounding proposed building sites, outside of the conservation easement area, in which trees may be removed such that any concern regarding dangerous trees is purely speculative.

18. With respect to Mr. Gasparro's contention in (¶ 14-15) of his affidavit, Mr. Gasparro offers no support for his conclusions and lacks market evidence in support of his opinion that if people find out about prior "problems" in the review process of the subdivision, it will affect valuation or marketability. Moreover, I am unaware of any basis to conclude that such a scenario would affect value or marketability.

19. Mr. Gasparro offers no market support for his value conclusions recited in (¶ 17) of his affidavit, as required by USPAP Standard Rule 1-4. He has not demonstrated nor supported that the value of each lot would decline by $30,000 to $60,000. He

similarly has not demonstrated nor supported that the market would view the lots as much smaller than their actual size.

20. As was related in (Hubbell ¶ 13) above, buyers consider a conservation easement area as part of the lot providing visual and sound barrier/buffer from neighbors' activities. Based on the filed subdivision map, much of the conservation easement area consists of a rather steep ridge that provides a natural dividing line between the neighboring lots and noise from traffic on the Taconic State Parkway. The fact that cutting and clearing appears to be prohibited in the conservation easement area, in fact, only increases the buffering impact of the conservation easement. Vegative growth tends to limit noise intrusions during the warmer seasons when leaf growth is evident and the inability to "cut and prune", from my experience, does not adversely impact market value significantly, if at all.

21. Consequently, it is my professional opinion that the existence of the conservation easement on the subject lots will not adversely impact their market value or the ability to sell the lots.

                                                  R. Peters Hubbell, Jr.

Sworn to before me this
12th day of March, 2008

JEANMARIE DUFFY
Notary Public, State of New York
No. 01DU6138638
Qualified in Dutchess County
Term Expires December 27, 2009