**Exhibit 5**

## BALLARD, ROSENBERG, GOLPER & SAVITT, LLP.

| NEW YORK OFFICE | CALIFORNIA OFFICE |
|---|---|
| 516 FIFTH AVE., 12TH FLOOR<br>NEW YORK, N.Y. 10036<br>TEL. 212-398-9508<br>FAX. 212-398-9512 | 10 UNIVERSAL CITY PLAZA<br>SIXTEENTH FLOOR<br>UNIVERSAL CITY, CALIFORNIA<br>91608-1097<br>TEL. 818-508-3700<br>FAX. 818-506-4827; 818-985-8167 |

This fax is from the New York Office. Please call immediately if this transmission is illegible or incomplete.

Date: 04/30/06    Recipient's Fax Number: 845-452-5848

Deliver to: James Nelson, Esq.

Number of pages being transmitted (including this cover page) 3

Sender's name: Ken Mc Culloch

Message: See letter attached.

**Confidentiality Notice:**

This facsimile transmission is intended solely for the use of the individual or entity named above and may contain information that is confidential, privileged, and exempt from disclosure under the applicable law. If you are not the intended recipient, any use or this information is prohibited. If you have received this transmission in error, please notify the sender immediately. Thank you.

KENNETH J. MC CULLOCH
BALLARD, ROSENBERG, GOLPER & SAVITT, LLP.
516 FIFTH AVENUE, 12TH FLOOR
NEW YORK, N. Y. 10036
TEL. 917-748-0771; FAX 212-398-9512

April 30, 2006 (By fax)

Van de Water & Van de Water, LLP
40 Garden Street
Poughkeepsie, New York 12601
Attn: James Nelson, Esq.
Fax Number 845-452-5848

Re: Town of Milan, Woodland Hills Subdivision, Conservation Easement

Dear Jim,

First, let me thank you and your secretary for making a copy of the materials that I had previously sent to you. I have had the benefit of having those materials in drafting this letter.

We have a telephone conference set for tomorrow, May 1, 2006 at 12:00 Noon. To make that conference as productive as possible, I have marked in parentheses on the new proposed Conservation Easement the sections that did not appear on the Conservation Easement that we previously agreed to. Rather than go into a long discussion in this letter, I would like you to imagine a possible real situation. Assume that an owner wanted to put in a modest vegetable garden, 10 feet by 50 feet, on his land that is part of the Conservation Easement Area. Under the Conservation Easement that we had agreed to, he could do that. (I am assuming that he did not cut down any of the particular trees that we have protected.) Under the proposed new Conservation Easement, that owner would have real problems, which I will describe to you when we talk.

As a guide for our discussion, I have made note of wording and concepts that concern me.

P.1. At the bottom of the page reference is made to "encourages the preservation of open and undeveloped space" which is what we referenced in the existing Conservation Easement, but it adds "forested land, …. and protection against erosion and deforestation". This is a "Whereas" Clause, but mention of this concept is carried forward in different wording on p. 2, and p. 3 ("continuation of existing land use patterns"), p. 4 (" preserve the forested character of the Easement Area"), p. 6, ("no clearing of woodland except to create trails. . ."), p. 7 ("Any activity or condition that significantly impairs or interferes with the Conservation Easement Area"). *But see* p. 8 which specifically permits

1

"agricultural, horticultural, managed forest land". *But see* p. 9, which permits general maintenance of property, but "no living tree in excess of five (5) inches diameter at breast height measured from the downward slope side may be cut without permission of Grantee". There is at best ambiguity, but the owner has to pay costs and attorneys fees if there is litigation, and the owner's interpretation is not followed.

P. 3. The paragraph that starts with "NOW, THEREFORE," includes the statement that "Grantor hereby voluntarily . . . conveys by gift to Grantee." One might say that I volunteered to enlist in the U.S. Army Reserves, Special Forces, which I did. At the time I already had my draft notice. Is this "voluntarily" like the volunteering I did to enlist in the U.S. Army? This new Conservation Easement is not a "gift". The owner does not want to have to file a gift tax return, pay a gift tax, or risk the consequences that arise if she does or does not treat this as a gift.

P. 6. What the Town of Milan Code requires does not have to be in this Conservation Easement. Presumably, there is an enforcement mechanism for whatever rules and regulations the Town of Milan has enacted. If that mechanism provides for costs and attorneys fees to be awarded to the Town for violation of its Rules and Regulations, then that provision is applicable to the owners of these lots. If there is no such provision for costs and attorneys fees in the Town of Milan enforcement mechanism, then it is wrong for the Town of Milan to incorporate this provision, and others like it, into a Conservation Agreement that permits it to recover costs and attorneys' fees. To say that it can be put in there because the Town now has leverage to get it put in there is not just or fair.

P. 7. There was no prohibition against using snowmobiles or off-road recreational vehicles on the owner's own property in the Conservation Agreement that we agreed to. There is such a restriction in the proposed Conservation Agreement. If this property belongs to the lot owner, and the Declaration of Restrictions does not prohibit this, then it should not be in here now. Ironically, the neighbor across the street on Willowbrook Road has regularly accessed our property, and the road to the cemetery, with his own recreational vehicle. Is the lot owner to also become a policeman who must prohibit others from using the Conservation Easement Area for their rvs?

P. 8. As noted, there is an express permission to use the property for agricultural purposes. However, that might include putting up a mesh fence to keep the animals from eating the plants. I am concerned about someone saying that what is done to grow vegetables is interfering with the "Existing Conditions", which are in Exhibit B, which is referenced at p. 15.

P. 9. In the Conservation Easement that we agreed to there is no mention of trees five inches in diameter. If the owner wants to put in his vegetable garden but has to cut a tree that is five inches or more in diameter, he now has to have permission. It would be cheaper for him to buy his vegetables than to go through such a time-consuming, adversarial process.

2

P. 13 "Grantor shall maintain adequate general liability insurance for the property covering the Easement Area." Who is to say what is adequate, and what is the owner suppose to be insuring against? Is this insurance to protect against lawsuits from persons injured while trespassing on the Conservation Easement Area? Against suits from hunters? Are hunters still allowed to hunt the property? If the owner has not even built a house on the lot, what is he insuring? I do not even know if homeowners' insurance is available for this, if there is no home. I do not know what this might cost, and who provides for this. If the owner has cut down five trees that are more than five inches in diameter, and the Town says put back the same size trees, at a cost of $20,000 per tree, is this insurance intended to restore the *status quo ante*. These are questions that a buyer will ask, and a buyer will ask these questions of the Seller, who is my wife.

P. 14. This has a provision requiring notice 30 days before any sale. Why? Because at the time of a sale the Seller is vulnerable, and the Buyer is skittish. The Town can ignore its inspections, and still not forfeit its rights. Because of this provision, it will not even have to file a suit. It will just have to tell the Seller and the Buyer that there is a problem, and the Buyer will have to do whatever the Town demands. This provision was not in the original Conservation Easement. This is another provision that should not be required.

P. 15. "Existing conditions". The Town has added this part. It has then added a part that lets the Town, on its own, identify whatever it wants for "existing conditions". Other parts of the Conservation Easement require that the Owner preserve "existing conditions". We went through an entire SEQRA process. There was no mention of "bobcats". We wrote to the DEC and the U.S. Government, asking about rare and/or endangered species. These agencies did not identify "bobcats". We do not know how or why "bobcats" have been identified as part of the "existing conditions". We never had the opportunity to contest this. We do not know whether someone has said that this is the kind of environment that "bobcats" like, or whether someone claims to have seen "bobcats". We do not know the environment that bobcats like. We do not know what to do to preserve habitat for bobcats. We are told just a short time before our last extension expires to have the plat signed that the "existing conditions" include "bobcats" and many other animals that we never heard of. So much for due process.

P. 19. "Payment for the title report prepared in connection with this Easement shall be the responsibility of the Grantor". This is new. What title report? My wife has title, and she has a recorded deed. She has title insurance, but it is not in favor of the Town. We had utilities installed, like electric and telephone. Those companies have an easement. They did not require title insurance in their favor. The Town does not have any title. It has an easement under the Conservation Easement that we agreed to. Even under this proposed Conservation Easement, it would not have title.

I have asked for and I am asking again for a copy any Conservation Easements that the Town has sent to us, but ones that have been executed by others. We also would like copies of the general liability insurance agreements, referenced at p. 13, that the Town accepted in other instances, copies of the title insurance reports that are referenced at p. 19, that the Town accepted in other instances, and copies of the agreements by

3

which banks agreed that their mortgages would be subordinate to the Conservation Easement that you sent to us, and copies of the Exhibit "B" (Written Description of Existing Conditions on the Easement Area) that the Town presented to other persons and that were accepted by other persons.

I hope you can understand that we have real concerns about this new proposed Conservation Easement. We very much want to continue and "finalize" the process with the Conservation Easement that was used through the entire process for gaining the approvals.

Very truly yours,

*Kenneth McCulloch*

Kenneth Mc Culloch

4

## CONSERVATION EASEMENT

**THIS CONSERVATION EASEMENT** is made this ____ day of August, 2005, by Carmen O. McCulloch, having an office/address at 2 Tudor City, Apartment 4, New York, NY 10017 ("Grantor"), in favor of the TOWN OF MILAN, a municipal corporation in Dutchess County, State of New York, having offices at Wilcox Memorial Town Hall, 20 Wilcox Circle, Milan, NY 12571 ("Grantee").

**WITNESSETH:**

**WHEREAS**, Grantor is the (sole) owner in fee simple of certain property situated on Willowbrook Road in the Town of Milan, Dutchess County, State of New York, consisting of approximately 35.216 acres and more particularly described in a deed recorded in the Dutchess County Clerk's Office on _____ __, 200_ as Document No. __ 200_ ____, and which property is also known as "Woodland Hills Subdivision" as shown on a subdivision plat map prepared by Povall Engineering, LLC and last revised on May 16, 2005, which final subdivision plat received conditional final approval from the Town of Milan Planning Board on June 29, 2005, which map was filed on _____, 2005 in the Dutchess County Clerk's Office, as filed map number _____; and

**WHEREAS**, the Master Plan of the Town of Milan and the Greenway Compact, which was adopted by the Town of Milan on April 12, 2004, by Local Law No. 4 of 2004, encourages the preservation of open and undeveloped space, forested land, perpetuation of the

1

Town's rural character and atmosphere, and protection against erosion and deforestation; and

**WHEREAS**, in 1988, the Dutchess County Legislature adopted the County Master Plan, *Directions*, which, in Policy 5.19, advocates preservation of steep slopes and ridgelines and, in Policy 5.24, encourages the preservation of woodland "greenbelt" corridors through communities to provide recreational space, wildlife habitat, natural buffers and aquifer protection; and

**WHEREAS**, Grantor desires to grant to Grantee a Conservation Easement, and Grantee desires to accept the aforesaid Easement; and

**WHEREAS**, Grantor has offered to place certain portions of the subdivision, consisting of approximately 17.755 acres, as described in Exhibit "A" attached hereto (the "Easement Area") and shown on a "Woodland Hills Subdivision Layout and Easement Plan" map prepared by Povall Engineering, LLC and last revised on May 16, 2005, which final subdivision plat received conditional final approval from the Town of Milan Planning Board on June 29, 2005, under a perpetual Conservation Easement; and

**WHEREAS**, by resolution dated August 8, 2005 the Town Board of the Town of Milan agreed to accept this Conservation Easement; and

**WHEREAS**, Grantee is a municipal corporation as defined in Section 2 of the General Municipal Law, and a "public body", as

defined in the New York State Environmental Conservation Law ("ECL") §49-0303(3), and qualified under ECL §§49-0301 et seq., to accept a Conservation Easement; and

**WHEREAS**, the Grantor intends that the conservation values of the property be preserved and maintained by the continuation of existing land use patterns, including without limitation those land use patterns relating to recreational activities and natural, scenic values existing at the time of this grant which do not significantly impair or interfere with those values; and

**WHEREAS**, Grantor intends, as owner of the Easement Area, to convey to Grantee the right to preserve, and protect, and enforce the conservation values of the Easement Area in perpetuity; and Grantee agrees, by accepting this grant, to honor the intentions of Grantor stated herein and to preserve and protect in perpetuity the conservation values of the Easement Area.

**NOW, THEREFORE**, in consideration of the above and the mutual covenants, terms, conditions, and restrictions contained herein, and pursuant the laws of New York State and in particular ECL Article 49, Title 3, General Municipal Law §247, and §200-39 of the Town of Milan Code ("Milan Code"), Grantor hereby voluntarily grants, transfers, and conveys by gift to Grantee a Conservation Easement in perpetuity over the Easement Area of the nature and character to the extent hereinafter set forth ("Easement").

1. <u>Purpose.</u> It is the purpose of this Easement to protect

3

the natural and open space condition (and preserve the forested character) of the Easement Area, (and to prevent damage to sloped areas from excessive or clear cutting.)

2. <u>Rights of Grantee.</u> To accomplish the purpose of this Easement, the following rights, but not obligations, are conveyed to Grantee and its authorized agents, by this Easement:

    (A) To preserve, protect, and enforce the conservation values of the Easement Area.

    (B) In accordance with ECL §49-0305(6), to enter upon the Easement area (gaining access through Lots 1, 2, 3, 4, 5, and 6) at reasonable times (to perform routine and periodic inspections of the Easement Area in a reasonable manner) to monitor Grantor's compliance with and otherwise assure compliance with the terms of this Easement, it being anticipated that the Easement Area may be inspected at least once per year, provided that such entry shall be upon prior reasonable notice to Grantor, and Grantee shall not unreasonably interfere with Grantor's use and quiet enjoyment of the Easement Area. (Grantee shall have the right to delegate its inspection responsibilities from time to time as Grantee determines is appropriate and necessary. Grantee shall notify Grantor in writing by certified U.S. Mail, return

4

receipt requested, if Grantee delegates its inspection responsibilities; and

(C) To prevent any activity on, or use of, the Easement Area that is inconsistent with the purpose of this Easement and to require the restoration of such areas or features of the Easement Area that may have been damaged by any inconsistent activity or use.

3. <u>Prohibited Uses.</u> The following activities and uses are deemed inconsistent with the purposes of the Easement, and are prohibited:

(A) There shall be no industrial or commercial use of the land. There shall be no further subdivision of the Easement Area.

(B) No buildings, mobile homes, motor vehicles, advertising signs, billboards or other advertising materials, man-made objects or other structures shall be placed or constructed within the Easement Area as described in Exhibit "A".

(C) There shall be no alteration of natural wetland areas except for drainage facilities which are not detrimental to water purity and which are approved by Grantee or its designee.

(D) There will be no manipulation or alteration of watercourses, lakeshores, wetlands or other water

5

bodies within the Conservation Easement which are detrimental to water purity.

(E) In accordance with the Town of Milan Code §200-39(A)(1)(b)(1), there shall be no clearing of woodland except as necessary to create trails and passive recreation facilities, to maintain scenic viewsheds identified by the Town as important aesthetic resources, and to install subsurface sewage disposal systems. The determination of necessity shall lie with the Town of Milan Planning Board (the "Planning Board").

(F) There will be no filling, excavating, mining or drilling, removal of topsoil, sand, gravel, rock, minerals or other materials nor any change in the topography of the land in the Easement Area except as otherwise provided for herein.

(G) No pesticide, herbicide, or other chemical treatment for land, vegetation, or animals shall be used on the Easement Area unless its use is legal and in accordance with all applicable laws and regulations and the manufacturer's directions.

(H) No dumping or release of chemicals, non-composted organic waste, sewage, solid waste, scrap materials, sediment discharge, oil and its by-products, leached compounds, toxic fumes or other

6

unsightly, hazardous, or offensive materials shall be allowed on the Easement Area.

(I) There will be no use of rifle ranges, motorized vehicles, such as snowmobiles and off-road recreational vehicles upon the Conservation Easement Area except to provide access to all parts of Grantor's property for normal management, security, or emergencies purposes as deemed necessary by Grantor.

(J) Any activity or condition that significantly impairs or interferes with the conservation values of this Easement or that impairs or interferes with the Grantor's intention to confine the use of the property to such activities that preserve the natural and scenic values of the property and maintain existing land use patterns consistent with these values shall be prohibited.

4. <u>Reserved Rights.</u> Grantor reserves to itself, and to its successors and assigns, all rights accruing from ownership of the Property, including the right to sell, transfer, lease, mortgage or otherwise encumber the Property, subject to this Easement; the right to engage in, or permit others to engage in, all uses of the Property that are not expressly prohibited herein and are not inconsistent with the purpose of the Easement; and including the unqualified right to exclude others

7