UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

CARMEN OTERO MC CULLOCH,

                Civil Action No. 07 CIV 9780
                (LAP) (RLE)

        PLAINTIFF,
  v.

TOWN OF MILAN, TOWN OF MILAN TOWN
BOARD, JOHN V. TALMADGE, Town
Supervisor, and ALFRED LO BRUTTON,
PAULINE COMBE-CLARK, DIANE MAY, and
ROSS WILLIAMS, Councilpersons, And

TOWN OF MILAN PLANNING BOARD,
LAUREN KINGMAN, Chairman, and
Members JEFFREY ANAGOS, PETER GOSS,
SHEILA MARGIOTTA, MARY ANN
HOFFMAN, AND PAULINE COMBE-CLARK
And GARY E. BECK, Zoning Enforcement Officer,
Town of Milan, And

Frank Margiotta, Barbara Hughey,
And Charlotte Norman

              **DEFENDANTS**.
───────────────────────────────────────────

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT
OF HER MOTION FOR INJUNCTIVE RELIEF**


Dated: March 14, 2008             Respectfully submitted,

                                        Kenneth Mc Culloch (3372)
                                        Attorney for Plaintiff
                                        516 Fifth Avenue, 12th Floor
                                        New York, N.Y. 10036
                                        Tel. 212-398-9508
                                        e-mail KMcCulloch@BRGSLAW.com

**Request For Oral Argument**

Pursuant to the Court's Rules, Rule 2 (E), Carmen Otero Mc Culloch (Plaintiff) respectfully requests oral argument on her motion for injunctive relief.

**Introduction**

Plaintiff has set forth in her motion and the proposed Order attached to it the relief sought by this motion for injunctive relief. The Town of Milan *et al.* (Defendants) ignore the issues presented and the relief sought. To re-focus the Court's attention to the issues pertinent for purposes of this motion, Plaintiff has set forth here the Proposed Order requested in this matter:

> 29. For the reasons stated, Plaintiff is entitled to permanent injunctive relief. Plaintiff is entitled to
>
> 1.) A permanent injunction restraining the Defendants, their successors and assigns, from taking any adverse action against Plaintiff, or her successors and assigns, because they have engaged in the following activities on their own lands, which are part of the Conservation Easement Areas of the Woodland Hills subdivision in Milan, New York, and from imposing any condition for engaging in these activities:
>
> A. Horticultural and managed forest land, equestrian, passive recreational and open space uses. This shall include, without limitation, passive recreational use such as private trail walking, nature viewing and similar activities.
> B. General maintenance of property, including pruning, cutting, planting, landscaping, and clearing of trees and other vegetative materials in accordance with generally accepted forest conservation practices.
>
> For purposes of this injunction, the following activities shall be deemed to be consistent with "generally accepted forest conservation practices": cutting of living trees with a diameter not in excess of five (5) inches diameter at breast height measured from the down slope side. Trees, even if larger, may be removed which endanger public safety, are diseased or invasive, damaged or fallen, or need to be cleared to ensure the health of other trees.
>
> 2.) Reasonable costs and attorneys' fees pursuant to the provisions of the FHA.

**ARGUMENT**

**DEFENDANTS HAVE NOT PRESENTED ANY REASON
WHY THE RELIEF REQUESTED SHOULD NOT BE GRANTED**

In her Opening Memo, Plaintiff summarized the facts. *Id*. at 1 *et seq*. She demonstrated that she has suffered and is suffering irreparable harm because of Defendants' actions. *Id* at 4 *et seq*. She demonstrated likelihood of success. *Id* at 8 *et seq*. She has presented the legal basis for her entitlement to relief. *Id* at 15 *et seq.*

Plaintiff's motion before the Court seeks injunctive relief and focuses on a provision of a Conservation Easement Agreement (CEA) between Plaintiff and Defendants.  The CEA provides that Plaintiff and her successors and assigns could act on the part of her property covered by the CEA ( an area of approximately 17 acres of the 35 acre parcel) as follows:

> B. General maintenance of property, including pruning, cutting, planting, landscaping, and clearing of trees and other vegetative materials only in accordance with generally accepted forest conservation practices.

Opening Declaration of Kenneth J. Mc Culloch (KJM Opening Decl.), Exhibit 2, p. 6.  In fact, as can be seen, the proposed injunction restates this section and adds only a part that construes what is meant by the term "generally accepted conservation practices". The *status quo*, up until October 5, 2007, was that Plaintiff thought that this provision "generally accepted conservation practices" meant what is stated in the Proposed Order.  In fact, Defendants have said nothing to indicate that this is not still the *status quo*.

By a letter dated October 1, 2007, Plaintiff had sought confirmation from the Milan Planning Board (MPB), whose Chairman is Defendant Lauren Kingman, regarding her interpretation of this provision. The request was made because Plaintiff had a potential purchaser for one of the lots, Lot 5 of her 6-lot subdivision, and that prospect

wanted the confirmation. That letter is Exhibit 3 to the KJM Opening Decl. Mr. Kingman orally told Plaintiff on October 5, 2007 that this term meant that Plaintiff and her successors could not cut down any live tree in any of the area covered by the CEA unless and until there was a Forest Management Program (FMP) established and implemented by the New York State Department of Conservation (DEC). Plaintiff tried to obtain the DEC FMP, but the DEC declined to create such a FMP for the Lot 5 because it was too small, *i.e.*, it was only 6.31 acres.

Defendants' response to Plaintiff's motion is a non-response. Defendants submit an affidavit from Mr. Kingman in which he states that he did not have the authority to give the answer to Plaintiff on October 5, 2007. Defendants assert that "[A]ny advice related by Mr. Kingman was purely gratuitous". Response Declaration of Terry Rice (Rice Decl.) ¶7. Defendants submit volumes of material in response to the motion, but no where do they indicate what they think this term "generally accepted conservation practices" means. Defendants do not even say that they disagree with the interpretation of the term that Plaintiff asks this Court to incorporate into the Order granting injunctive relief. Defendants say that only the Town Board can render an interpretation of what is meant by this term. The Town Board is a Defendant in this action, and a Defendant for purposes of this motion, but it has chosen not to render an opinion of what this term means. This is not the classic confrontation in which two parties have conflicting views. This is a situation in which Plaintiff has put forth its interpretation, and the reasons for it, and the Defendants have not given their interpretation nor the reasons for it. In litigation, by refusing to address the issue, Defendants do not "draw a bye". They lose.

The issue has to be resolved. The CEA, which is Exhibit 2 to the KJM Opening Decl.,

states that "Grantor retains all responsibilities and shall bear all costs and liabilities of any kind related to ownership, operation, upkeep, and maintenance of the Easement Area." *Id.* at p. 15, ¶7. Plaintiff has presented an Affidavit from Gregory M. DeSylva, a DEC-approved Forester. Mr. DeSyla states in that Affidavit that an owner has to be able to engage in the activities that are described in the Proposed Order.[1] Defendants do not confront this claim either. They do not submit any affidavit from anyone to contradict or even question the truth of what Mr. DeSyla states. They do not say how, if at all, Plaintiff, or her successors, can be expected to comply with her responsibility for "maintenance of the Easement Area" if Defendants do not let her do that.

There are Draconian sanctions that can be levied against Plaintiff, and/or her successors, if they engage in activities not permitted by the CEA. For example, Plaintiff can be required to replace each and every tree that the Defendants believe should not have been cut, and Plaintiff has to pay all costs, including the costs for attorneys, that Defendants might incur in enforcing the CEA. *See* CEA, Exhibit 3, pp. 6-8 to KJM Opening Decl. Defendants do not have to act. They can lay back and enforce the terms of the CEA at any time that they chose. *Id.* at p. 8.

Plaintiff has demonstrated that in only 4 out of the 40 land-use applications that have been presented before the MPB has there been a CEA of any kind required of the

---

[1] Mr. DeSylva states in ¶3 of his Affidavit:

There are occasions when "generally accepted forest conservation practices" require the cutting of trees or the removal of brush. For example, the cutting of live trees may be appropriate and necessary to remove diseased trees or invasive species, to clear some trees to ensure the health of other trees, or to remove trees that endanger public safety. For this reason, an absolute ban on the cutting of any live tree is not consistent with what is required by "generally accepted forest conservation practices".

5

applicant. She has demonstrated that even in those four instances in which the MPB required a CEA as a condition for subdivision approval, the applicants' CEA contained the language that is precisely the same as that which Plaintiff has incorporated into the Proposed Order. Plaintiff has asked "What is the harm to Defendants if Plaintiff is allowed to act with regard to the CEA that is within her property in the same manner that these other, *i.e.*, local persons have been allowed to act?" Defendants have not answered. They have not claimed that the Town, or any of the Defendants will be harmed in any way if Plaintiff is treated the same way that the local residents who have CEAs on their property are treated.

Plaintiff has presented an Affidavit from Ron Gasparro, a local realtor with many years experience who also has been a member of the Planning Board of a nearby town, the Town of Pleasant Valley. After reciting the provisions of the CEA that "Except and Reserve" rights to the Grantor, that is, Plaintiff in this case, Mr. Gasparro swears:

> 10. It had been my understanding that because of these provisions the cutting of trees would be permitted, "in accordance with generally accepted forest conservation practices". I did not view this provision as requiring a formal FMP created by the DEC as a condition to the cutting of trees. If the term "General maintenance of property, . . . in accordance with generally accepted forest conservation practices" means that a DEC FMP must be in place before any live tree might be cut in the areas covered by the CEA, then it seems to me, and more importantly, it will appear to prospective buyers, that such a DEC FMP must be in place in order for the owner to do any of the things that are described in subsection B above. In other words, the prohibition of cutting any live tree would also include a prohibition of "pruning, cutting, planting, landscaping, and clearing of trees and other vegetative matter" unless a DEC FMP is in place.
> ]
> 11. In my opinion, this restriction completely eliminates the value of the part of the property for each lot that is in the CEA. Prospective purchasers will not be able to use the CEA part of their lots to do anything. They cannot walk in that part of their property if they cannot prune it. I know this property, and I know that there is a great deal of brush and "living fence" type of vegetation on this property. The brush and some trees have to be cut in order to make a path through this CEA part of each lot.

6

Mr. Gasparro goes on in his Affidavit to state that unless and until it is finally determined what can be done in the CEA, these lots must be considered to be 1-3 acre lots, and marketed and sold as such. He estimates that the value of each lot is reduced by $30,000 to $60,000 because of the restrictions, that is, the CEA and the Defendants' interpretation of the CEA.

Defendants present no testimonial evidence from anyone who has visited the property, as Mr. Gasparro has. They present no evidence relating to the value of the lots when considered as encumbered by not only the CEA but also by the interpretation that Mr. Kingman placed on it, *i.e.*, that no live tree or brush can be cut in the CEA because there is not and cannot be a DEC FMP for any lot.

Defendants present an Affidavit from an appraiser, R. Peters Hubbell, Jr. Mr. Hubbell does not say that he has ever viewed the property. Mr. Hubbell makes equivocal statements. In ¶13 he states "It is my opinion that the conservation easement, herein, does NOT *in and of itself necessarily* reduce the value of the property. . . . The area of conservation easement can be used for passive use." Defendants apparently have not told Mr. Hubbell what this motion is about. The issue is not the value of the lots with or without the CEA. The issue is the value of each lot with part of it in the CEA, if trees are allowed to be cut, and brush removed, as provided for in the Proposed Order, and the value of each lot with the same facts, but with a total prohibition against any removal of brush or trees in the CEA. Mr. Gasparro has sworn that he has seen the property, that there is a great deal of brush and "living fence" on the property, and that these have to be cut in order to make a path through this CEA part of each lot. Mr. Hubbell does not explain how he thinks it is possible to use this CEA area for passive recreation if this

7

cannot be done. Mr. Hubbell states in ¶14 "it is my professional opinion that. . . an inability to cut firewood on a lot *in and of itself* does not impact value". Apparently, Defendants are contending that what one does with the trees cut makes a difference, that it is okay to burn felled trees as rubbish, but that it is not okay to use them for firewood.[2] Someone should have told Mr. Hubbell that Defendants' interpretation, as originally presented by Mr. Kingman, barred Plaintiff and her successors from cutting any live trees, whether diseased, invasive, a danger to the public, or necessary to benefit other trees, as by thinning, as Larry Strickland wanted to do.

Another equivocal statement by Mr. Hubbell in ¶17 is that "I do not believe that potential purchasers would be *overly concerned* about the purported inability to cut down a large tree near a prospective new home site." Perhaps, a little concerned that a tree might fall on their house? Mr. Hubbell's statement further in this paragraph ignores that the building site for Lot 5 is very close to the CEA area that contains large trees.

Despite Mr. Hubbell's conjecture, Mr. Gasparro's first hand opinion, and the facts in this case make it clear that buyers are concerned about the CEA and what can be done in the CEA area. Mr. Strickland, a potential buyer, was so concerned about it that he asked for a confirmation, which led to Plaintiff's letter of October 1, 2007 to the MPB. Plaintiff, as a Seller, was sufficiently concerned that she sought a written answer, which has never been received.

---

[2] The Plaintiff's letter to Mr. Kingman dated October 1, 2007, is Exhibit 3 to the KJM Opening Decl. It states: "Larry said that he is very conservation minded, and that he wants to be able to gain part of the heat for his prospective house from firewood. He said he knows about conservation. He is talking about thinning out the underbrush and the smaller trees in a way that would be good for the remaining trees, and also allow him to have firewood". Mr. Kingman says in his Affidavit that if the wood that is cut is used for firewood, then the purpose of the CEA is destroyed.

8

Mr. Hubbell devotes most of his Affidavit attacking Mr. Gasparro for rendering an opinion, because Mr. Gasparro could make money by selling one or more of the lots. Mr. Hubbell latches onto the use of the statement made by Mr. Gasparro, "have listed for sale the six (6) lots", and misunderstands it, accidentally or intentionally, and thereafter criticizes Mr. Gasparro in his Affidavit at ¶¶5-10.[3]

## CONCLUSION

Plaintiff has demonstrated irreparable harm. She has demonstrated likelihood of success on this issue. She has demonstrated that the balance of equities tips decidedly in her favor. Throughout proceedings, and to date, Defendants have not identified any harm that the public would incur if Defendants treated Plaintiff just like the local people.

Dated: March 14, 2008                    Respectfully submitted,

                                         _____/s/_____
                                         Kenneth Mc Culloch (3372)
                                         Attorney for Plaintiff
                                         516 Fifth Avenue, 12th Floor
                                         New York, N.Y. 10036
                                         Tel. 212-398-9508
                                         e-mail KMcCulloch@BRGSLAW.com

---

[3] This personal attack is baseless. As the KJM Reply Declaration makes clear, Kenneth Mc Culloch is a real estate broker, he is a member of Mid-Hudson Multiple Listing Service, he is the "listing broker", and has always been the "listing broker" within Mid-Hudson MLS and in every other way and at every other time, for these lots. Virtually every large real estate broker in Dutchess and Columbia Counties is a member of Mid-Hudson MLS. When there is a sale, the "listing broker" gets part of the commission, usually 50%, and the "selling broker" gets the other 50%. Every broker who is a member of Mid-Hudson MLS has "listed for sale" these lots. Part of the contract that one signs when one joins Mid-Hudson MLS requires that every member make available to other members all of his or her own "listings". Ron Gasparro's firm, Realty Stop, is a member of Mid-Hudson MLS. This being the case, he and every broker who is a member has "listed for sale" these six lots. Using Mr. Hubbell's definition of conflict of interest, Plaintiff could not have asked any major real estate broker in Dutchess or Columbia Counties for an affidavit.

Case 1:07-cv-09780-LAP-RLE   Document 62   Filed 03/14/2008   Page 10 of 10