**POINT I**
**PLAINTIFF'S CLAIMS ARE NOT RIPE**

It is respectfully submitted that the moving papers demonstrate that Plaintiff's claims are not ripe because she failed to the determination of the Code Enforcement Officer by which she claims to be aggrieved to the Zoning Board of Appeals and failed to seek compensation for the claimed taking in state court. Moreover, the issues related to interpretation of the conservation easement also are premature because Plaintiff failed to seek an interpretation of the terms of the easement in an action in State Supreme Court in accordance with the explicit terms of the agreement. Plaintiff offers a number of explanations to avoid the preclusive failure. However, none are legally availing.

Not addressing the case law precluding her due process and taking claims pursuant to "prong-one" ripeness, Plaintiff asserts that there is no need to apply for a variance in order for a FHA claim to be ripe. Plaintiff is mistaken. First, the cases relied on by Plaintiff are inapposite because they involved "reasonable accommodation" claims, a claim that was not and could not be asserted herein. *See Groome Resources Ltd, LLC v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000); *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 602 (4th Cir. 1997) ("While the County must be afforded an opportunity to make a final decision, the issue is sufficiently concrete for judicial resolution once an <u>accommodation</u> is denied. * * * Under the Fair Housing Act … a violation occurs when the disabled resident is first denied a reasonable accommodation.…"). Moreover, *Assisted Living Associates of Moorestown LLC v. Moorestown Township*, 996 F.Supp. 409 (D.N.J. 1998), is inappropriately cited for the proposition that a request for a variance is never necessary in order for a FHA claim to be ripe. Instead, the Court concluded that it was unnecessary under the facts of that case because

such an application was futile and, again, because it was a different type of case, a reasonable accommodation case.

Similarly, Plaintiff's claim that she need not exhaustion administrative remedies is not germane and fails consider an important distinction. The distinction between the concept of exhaustion of administrative remedies, which is not a condition of institution of a § 1983 or FHA action, and the final decision requirement, which must be satisfied as a jurisdictional condition precedent to assertion of a § 1983 or FHA calim, was emphasized by the Supreme Court in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 193 (1985):

> The question whether administrative remedies must be exhausted is conceptually distinct … from the question whether an administrative action must be final before it is judicially reviewable (citations omitted). While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy* [*v. Florida Board of Regents*, 457 U.S. 496 (1982)] concerned the later not the former.

*See also Tari v. Collier County*, 56 F.3d 1533, 1536 (11th Cir. 1995); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1574 n. 6 (11th Cir. 1989); *Kittay v. Giuliani*, 112 F.Supp.2d 342, 348-49 (S.D.N.Y. 2000), *aff'd*, 252 F.3d 645 (2d Cir. 2001); *Marathon Outdoor, LLC v. Vesconti*, 107 F.Supp.2d 355, 361-62 ((S.D.N.Y. 2000); *Weissman v. Fruchtman*, 700 F.Supp. 746, 748 ((S.D.N.Y. 1988).

Despite Plaintiff's arguments to the contrary, she has not obtained a final determination as to the application of the purportedly offending regulations.

Lastly, Plaintiff fails to relate any law whatsoever that refutes that "prong-two" ripeness" precludes her taking claim as a matter of law. As is related in the Town's initial memorandum of law, counsel's claim that "there was not a procedure for Plaintiff to seek such compensation.

Plaintiff had viable means of appeal or review of all of her grievances whereby a final decision of the municipality could be obtained. However, she failed to avail herself of those expeditious and accessible procedures. Moreover, such avenues of review were necessary in order to obtain a final decision as to interpretation by the municipality and to develop a reviewable record.

## POINT II
## CHALLENGE TO SUBDIVSION CONDITIONS
## BARRED BY STATUTE OF LIMITATIONS

As is related in the moving papers, if Plaintiff was dissatisfied with any of the conditions of the preliminary or final subdivision approval, she was required to seek judicial review of the same within 30-days of the filing of the decision granting preliminary approval or the decision granting final approval in the Town Clerk's office.[1] As is related in the accompanying affidavit, Plaintiff failed to do so.

Pursuant to New York law, the filing of a memorandum containing the action taken by a planning board is sufficient to commence the running of the 30-day statute of limitations. In *Open Space Council v. Planning Board of the Town of Brookhaven*, 152 A.D.2d 698, 543 N.Y.S.2d 754 (2d Dept. 1989), it was determined that it was the filing of a "decision calendar" reflecting the Planning Board's conditional final approval of a

---

[1] Plaintiff's contention that she "has already asked this Court to assert jurisdiction over what would be considered state law claims under Article 78 of the CPLR.…" (p. 36 n. 8) is nonsensical because the claims are unquestionably barred by the statute of limitations. There is no basis to assert barred state law claims in a subsequent federal action. Plaintiff's assertion is profoundly frivolous.

subdivision commenced the running of the 30-day statute of limitations. *See also Kennedy v. Zoning Board of Appeals of the Village of Croton-on-Hudson*, 78 N.Y.2d 1083, 578 N.Y.S.2d 120, 585 N.E.2d 369 (1991); *Casolaro v. Zoning Board of Appeals of the Village of Elmsford*, 200 A.D.2d 742, 607 N.Y.S.2d 79 (2d Dept. 1994).

In *Kennedy*, the filing of draft minutes which had not yet been approved by the Zoning Board of Appeals was sufficient to commence the running of the 30-day statute of limitations even though "the minutes were unsigned [and] … a public agenda of the Board's next meeting erroneously stated that the variance application was continued to a later date." *Kennedy*, 78 N.Y.S.2d at 1085, 578 N.Y.S.2d at 121, 585 N.E.2d at 370. Similarly, it was determined in *Pickett v. Town of Tusten Zoning Board of Appeals,* 169 A.D.2d 906, 564 N.Y.S.2d 625 (3d Dept. 1991), that the filing of minutes of a meeting was sufficient to start the running of the 30-day statute of limitations. *See also Casolaro v. Zoning Board of Appeals of the Village of Elmsford*, 200 A.D.2d 742, 607 N.Y.S.2d 79 (2d Dept. 1994).[2]

Regardless of whether one considers that the 30-day statute of limitations began to run upon the filing of the letters containing the sum and substance of the action taken by the Planning Board or upon the filing of the minutes, Plaintiff's complaints regarding the conditions of approval, particularly regarding the conservation easement, are long-since time barred.

---

[2] Plaintiff's citation of *Mc Cartney v. Village of East Williston*, 149 A.D.2d 597, 540 N.Y.S.2d 456 (2d Dept. 1989), for the proposition that the vote of each member of the board must be depicted in the decision, is governed by a specific statutory provision that relates only to zoning boards of appeal, Town Law § 267-a(1). Although the letters informing Plaintiff and filed with the Town Clerk provide the vote of the entire board and the minutes reflect the vote of each member and hence would satisfy Town Law § 267-a(1) if the approvals were granted by a zoning board of appeals, as opposed to a planning board, no similar statutory or decisional requirement applies to decisions of planning boards. Plaintiff incorrectly relied on a decision that relates solely to decisions of zoning boards of appeal.

**POINT III**
**FAIR HOUSING ACT CLAIMS BARRED**
**BY STATUTE OF LIMITATIONS**

As is related in the moving papers, the applicable statute of limitations for FHA claims is two-years and the majority of Plaintiff's allegations relate to events that occurred more than two years prior to the filing of the action. However, Plaintiff suggests that all events alleged, even those that allegedly occurred more than two years prior to institution of the action, are, nevertheless, cognizable pursuant to a continuing violation theory.

Plaintiff seeks to graft onto the statute of limitations jurisprudence a "continuing violation theory" when none is applicable in a vain attempt to revive long-barred claims. "[I]n determining when the statute begins to run, the proper focus is on the time of the [illegal] act, not the point at which the consequences of the act become painful." *Covington v. City of New York*, 916 F.Supp. 282, 285 (S.D.N.Y. 1996) (*quoting Bailey v. Tricolla*, 1995 WL 548714 at 3 (E.D.N.Y. 1995) (*quoting Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)) (internal quotation marks deleted).

The Second Circuit has sparring applied the continuing violation theory to the commencement of § 1983 and FHA actions. "Generally, the courts in this circuit look upon continuing violations arguments unfavorably, however, and thus, only approve in 'compelling circumstances.'" *Bailey v. New York City Transit Authority*, 1994 WL 376046 at p. 3 (S.D.N.Y. 1993) (*quoting Ishikawa v. New York Dept. of Cultural Affairs*, 1993 WL 362393 at 9 (S.D.N.Y. 1993) (*citing LaBeach v. Nestle Co*., 658 F.Supp. 676, 687 (S.D.N.Y.1987)); *see also Findlay v. Reynolds Metal Co., Inc.*, 82 F.Supp.2d 27, 37 (N.D.N.Y. 2000); *Town of Southold v. Town of East Hampton*, 406 F.Supp.2d 227, 238

(E.D.N.Y. 2005), *affirmed in part, vacated in part*, 477 F.3d 38 (2d Cir. 2007); *Blankman v. County of Nassau*, 819 F.Supp. 198, 207 (E.D.N.Y. 1993), *aff'd*, 14 F.3d 592 (2d Cir. 1993) (*quoting Blesedell v. Mobil Oil Co*., 708 F.Supp. 1408, 1415 (S.D.N.Y. 1989)) (the Second Circuit has "'consistently ... looked unfavorably on continuing violation arguments ... and [has] applied the theory only under compelling circumstances.'"). Moreover, "[s]ome courts have observed that the 'continuing violation doctrine' has rarely been applied outside of the Title VII employment discrimination context (citations omitted). Other courts, while not expressly stating any limitations to its application, have discussed it as if it were a concept which applies only to employment discrimination cases." *Rassam v. San Juan College Board*, 113 F.3d 1247, 1997 WL 253048 at 3 (10th Cir. 1997); *see also Blankman*, 819 F.Supp. at 208 n.9 ("The continuing violation doctrine 'is usually employed in connection with employment suits.…'" (*quoting Day v. Moscow*, 769 F.Supp. 472, 477 (S.D.N.Y. 1991), *aff'd*, 955 F.2d 807 (2d Cir.), *cert. denied*, 506 U.S. 821 (1992)).

Since § 1983 and FHA claims accrue when each violation occurs, the so-called continuing violation or conspiracy theory cannot be utilized to revive a stale claim. As the Tenth Circuit noted in *Rassam*, the continuing violation doctrine

> is to be narrowly applied, and is not intended to excuse Respondents from diligently pursuing their claims. As we expressed in *Martin* [*v. Nannie and the Newborns, Inc.,* 3 F.3d 1410 (3d Cir. 1993)], '[t]he continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated.

*Rassam*, 1997 WL 253048 at 3 (*quoting Martin*, 3 F.3d at 1415, n. 6).

As a result,

> [I]f an event or series of events should have alerted a
> reasonable person to act to assert his or her rights at the
> time of the violation, the victim cannot later rely on the
> continuing violation doctrine to overcome the statutory
> requirement of filing a charge with the EEOC with respect
> to that event or series of events.

*Id.* (*quoting Martin*, 3 F.3d at 1415, n. 6).

The Supreme Court has determined that the continuing violation doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that "cannot be said to occur on any particular day." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113-15 (2002). *See also Lee v. Town Board of the Town of Ellicott*, 151 Fed.Appx. 18 (2d Cir. 2005).

The Second Circuit has determined that:

> [t]he crucial time for accrual purposes is when the plaintiff
> becomes aware that he is suffering from a wrong for which
> damages may be recovered in a civil action. To permit
> [plaintiff] to wait and toll the running of the statute simply
> by asserting that a series of separate wrongs were
> committed pursuant to a conspiracy would be to enable
> [plaintiff] to defeat the purpose of the time-bar, which is to
> preclude the resuscitation of stale claims.

*Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980), *cert. denied*, 450 U.S 920 (1981); *see also Blankman*, 819 F.Supp.2d at 208; *Gleason v. McBride*, 715 F.Supp. 59, 63 (S.D.N.Y.1988), *modified on other grounds*, 869 F.2d 688 (2d Cir.1989).

The cases cited by Plaintiff do not substantiate her endeavor to revive long past discrete actions based on a claim that they are related discriminatory actions. *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), does not support Plaintiff's claim. The action in *Havens* was subject to 180-day statute of limitations. *See id.* at 366, 380. Moreover, the allegations of the complaint in *Havens* asserted a continuing pattern of

identical actions of racial steering over a considerable period of time. In the instant

action, Plaintiff alleges various distinct, routine land use decisions which she subjectively

perceives as being related. The separate actions alleged, clearly distinct and unrelated,

provide no basis to even arguably substantiate a continuing conspiracy to derail

Plaintiff's <u>approved</u> six-lot subdivision application based on any impermissible FHA

basis.

As a result, the allegations regarding conduct prior to November 5, 2005 are time-

barred.

**POINT IV**
**THE COMPLAINT FAILS TO STATE A CLAIM**
**PURSUANT TO THE FAIR HOUSING ACT**

Although the complaint alleges that Ms. Mc Culloch was born in Puerto Rico of

Puerto Rican parents, it does not allege any facts or basis to suggest that that she was

discriminated against on the basis of her race or that the Defendants were aware of her

ancestry. Counsel's suggestion to the contrary is refuted by the allegations of the

complaint. Indeed, counsel's reference to paragraph 27 of his declaration for an

enumeration of the "numerous instances Defendants acted against [Plaintiff] because of

her national origin…." confirms the absence of any such fact-based claims of

discrimination. Particularly given the pleading requirement of *Bell Atlantic Corp. v.*

*Twombly*, 127 S. Ct. 1955 (2007), the complaint fails to allege a viable claim, let alone

causation.

Secondly, as was previously related (Point V(B)), the classification "City People"

is not a protected class pursuant to the FHA. Plaintiff has not cited any statutory

provision or decision that even implies protection for such a group.

Plaintiff endeavors to concoct a protected group by citing a number of decisions that are not premised on the FHA but relate to other principles of law and have no application to the facts alleged herein. *King v. New Rochelle Municipal Housing Authority*, 442 F.2d 646 (2d Cir.), *cert. denied,* 404 U.S. 863 (1971), was an equal protection challenge to a five-year residency requirement for admission to public housing. Similar to *King*, *Cole v. Housing Authority of the City of Newport*, 435 F.2d 807 (1st Cir. 1970), invalidated a two-year residency requirement for admission to federally subsidized, low-rent housing, not based on the FHA, but instead, on "right to travel." *Shapiro v. Thompson*, 394 U.S. 618 (1969), also involved an equal protection challenge, not a FHA claim, to a one-year residency requirement for receiving welfare benefits. *Allen v. Town of North Hempstead,* 121 Misc.2d 795, 469 N.Y.S.2d 795 (Sup. Ct. Nassau Co. 1983), involved a challenge to a one-year residency requirement for eligibility for admission to senior housing. The lower court invalidated the provision based on equal protection. Plaintiff fails to note that the Appellate Division affirmed the conclusion of the lower court but did so on the grounds that pursuant to New York case law, zoning laws may regulate and restrict the uses of property, but may not place restraints on the users or owners of the property. *See Allen*, 103 A.D.2d 144, 146, 478 N.Y.S.2d 919, 921 (2d Dept. 1984).

Plaintiff also inappropriately cites *Berenson v. Town of New Castle*, 28 N.Y.2d 102, 378 N.Y.S.2d 672, 341 N.E.2d 236 (1975), as implicit support for her FHA claim. In the first instance, *Berenson* was premised on State law issues. Secondly, the issue in *Berenson* was whether and under what circumstances a municipality may entirely prohibit the construction of multi-family housing within its borders. *See id.* at 107, 109,

378 N.Y.S.2d at 678, 680, 341 N.E.2d at 240, 241. Of course, Plaintiff does not propose multi-family housing but seeks to construct expensive, single-family homes in order to fund her retirement. Indeed, it is somewhat hypocritical of Plaintiff to rely on *Berenson* given the type and pricing of the housing proposed and the lack of any advancement of affordable housing by Plaintiff.[3]

None of those decisions have any conceivable application to Plaintiff's FHA claim and provide no support whatsoever for either a disparate treatment or disparate impact claim.

Further, as is related in the moving papers, Plaintiff is not "aggrieved" because the Town did not in any respect make a dwelling "unavailable" – Plaintiff's subdivision of large-lot, presumably expensive single-family homes was approved.

Plaintiff also seeks to impute an intent to discriminate against "City People" (but not Plaintiff as one of purported Puerto Rican heritage) based on a claimed statement of an unidentified member of the public during a public hearing that "City People" do not know how to take care of the land and upon a claimed statement of one unidentified member of the CAC to the same effect. In addition to the fact that "City People" clearly does not constitute a suspect or protected classification, as is related in the moving papers, a comment of the public, let alone from one unidentified individual, does not substantiate a claim of discrimination, particularly when the comment has a conceivable relationship to land use issues. Similarly, Plaintiff's claim of such a similar remark by

---

[3] Although providing no support for an FHA claim, the dictate of *Berenson* that regional housing needs should be considered pursuant to State law has been satisfied by the Town and Plaintiff cites no provision of the Zoning Law to the contrary. Indeed, the comprehensive plan did consider regional housing needs and how to permissibly balance the provision of affordably housing units with the rural character of the area and lack of infrastructure. Indeed, the Town created a Committee on Affordable Housing to address the issue and the Zoning Law provides opportunities for affordable housing.

one of the members of the CAC utterly fails to substantiate a claim of prejudice by the entirety of the Planning Board, particularly when Plaintiff continues to contend that the members of the CAC are not public officials but are mere "volunteers."

**POINT V**
**PLAINTIFFS LACK A PROPERTY INTEREST**

As is related in the moving papers, the complaint fails to state a substantive due process, procedural due process or equal protection claim because Plaintiff lacks a cognizable property interest. Plaintiff does not dispute the established case law set froth in the moving papers that demonstrates that the existence of discretion by a reviewing agency precludes a cognizable property interest and that a planning board possesses considerable discretion in reviewing a subdivision application. Additionally, the moving papers establish that the authority to impose conditions on such a discretionary approval and the absence of any right to have a subdivision approved without conditions further established the complete absence of a credible claim of a property interest herein.

Ignoring the universal case law, Plaintiff seeks to construct a property interest by proclaiming that the complaint asserts that "there never should have been a CEA required of Plaintiff, that it was arbitrary and capricious for the Town and MPB to demand that she enter into a CEA as a condition of subdivision approval, and that a CEA never would have been required of her in the first place if she had been a local resident, who is not a minority." (p. 30-31). Plaintiff's own argument acknowledges the existence of discretion on the part of the Planning Board in imposing conditions but contends that the authority was arbitrarily exercised arbitrarily. Pursuant to Plaintiff's own reasoning, she does not possess a cognizable property interest as a matter of law.

## POINT VI
## CONSULTANT FEES PROPER

Emphasizing that Plaintiff' claims are premised on State law claims and not on arguable Constitutional or FHA claims, Plaintiff bases her first argument in her memorandum of law on the claim that she was improperly assessed consultant fees for the review of her subdivision application and essential reviews associated therewith.

In the first instance, Plaintiff's grievances regarding the review fees attributable to her application are long barred by the statute of limitations. For example, the Appellate Division, Third Department determined in *Properties of New York, Inc. v. Planning Board of the Town of Stuyvesant*, 35 A.D.3d 941, 825 N.Y.S.2d 575 (3d Dept. 2006), that the applicable four-month statute of limitations with respect to claims that the fees for engineering and legal review of its subdivision application were improper began to run when the fees were imposed and not when final approval was granted. *See id.* at 943, 825 N.Y.S.2d at 577; *see also Home Builders Association of Central New York v. Town of Onondaga*, 267 A.D.2d 973, 974, 701 N.Y.S.2d 542, 544 (4th Dept. 1999).

The complaint does not assert the date on which the potential claims arose, that is, when the fees were imposed. However, as is related in the complaint and opposition memorandum of law (p. 4), the Article 78 upon which Plaintiff primarily bases her complaint was instituted in December 2004, more than three and a half years prior to the commencement of the instant action, and promptly discontinued. Further, although a considerably later and impermissible time for such claims to accrue, conditional final approval was granted on June 29, 2005. Consequently, under any scenario, Plaintiff's complaint regarding consultant fees is long barred by the statute of limitations.

In any event, as was previously related, escrow fee arrangements for reimbursement of consultants' review fees are well-recognized in New York. Plaintiff fails to appreciate the distinction between two distinct methods of charging for review of land use applications. The first, initial form of charges, is based on a standard fee by which all applications within specified classes are charges a fee based on number of lots, square footage or similar classification. The fee is intended to cover the expenses incurred by the municipality in the review of the application. Plaintiff's discussion of establishment of standardized fees based on factual studies or statistics (p. 7), relates to such a standard fee schedule and not to consultant reimbursement scenarios.

However, as SEQRA and environmental issues became relevant and land use planning and design became more complex, an alternative method was implemented by many communities by which a small fee is charged for ordinary administrative expenses and an applicant is required to reimburse the municipality for the fees charged by its planning, engineering and legal consultants in the review and processing of a land use application.

Plaintiff's implication that such a consultant reimbursement arrangement is impermissible is specious.[4] For example, in *Home Builders Association of Central New York*, the Court related that the Town's method by which subdivision developers must reimburse the Town of "engineering and legal expenses rather than pay a fixed fee calculated to cover those expenses" was permissible. 267 A.D.2d at 974, 701 N.Y.S.2d at 544.

---

[4] Plaintiff's reference to § 200-68(b) of the Zoning Law is misplaced in that that provision relates to site plan review. Plaintiff's application was for subdivision approval.

Despite the brief reference in the 32-year old *Jewish Reconstructionist Synagogue of N. Shore v. Village of Roslyn Harbor*, 40 N.Y.2d 158, 386 N.Y.S.2d 198, 352 N.E.2d 115 (1976), to legal fees constituting a mere convenience to a Planning Board, subsequent decisions, including those of the Court of Appeals, recognizing the complexity of the land use review process and the necessity to ensure that a land use application complies with all environmental, substantive, regulatory and procedural laws, have implicitly sanctioned the appropriateness of reimbursement for "necessary" legal expenses incurred by a municipality in the processing and implementation of a land use application. *See Howard v. Town of Bethel*, 481 F.Supp.2d 295, 304-05 (S.D.N.Y. 2007); *Coates v. Planning Board of the Village of Bayville*, 58 N.Y.2d 800, 802, 459 N.Y.S.2d 259, 260, 445 N.E.2d 642, 643 (1983); 90 Op.Cptr. 14, 1990 WL 507605 (1990).[5]

Moreover, the Court of Appeals has determined that local legislation is not required to provide a discrete mechanism for the auditing of consultants' bills and are not considered to be "open-ended" because Town Law §§ 118 and 119 provide for such an review and auditing function. *See Twin Lakes Development Corp. v. Town of Monroe*, 1 N.Y.3d 98, 108, 769 N.Y.S.2d 445, 451, 801 N.E.2d 821, 827 (2003); *Wildlife Associates v. Town Board of the Town of Southampton*, 141 A.D.2d 651, 529 N.Y.S.2d 548 (2d Dept. 1988).

---

[5] Although it would be improper to use such fees to defend an Article 78 proceeding brought by an applicant, Plaintiff has provided no evidence beyond her incorrect speculation "upon information and belief" that the funds were utilized for such a purpose and the affidavit of Janis Anderson submitted in opposition to Plaintiff's motion for a preliminary injunction repudiates such an assertion.

Plaintiff did not seek an audit of the funds expended, did not timely object and did not timely institute an Article 78 for review of the matter. Consequently, the claim is time-barred and is baseless.

Lastly, even if there was validity to any of Plaintiff's claims, Plaintiff should be related to an action in state court because of the total absence of any cognizable federal claim.[6]

## POINT VII
## PLAINTIFF DOES NOT POSSESSES A
## SUBSTANTIVE DUE PROCESS CLAIM

First, Plaintiff has not even attempted to challenge the unassailable case law asserted by the Town that establishes that because she asserted claims pursuant to the more specific provisions of the Equal Protection and Fifth Amendment Taking Clauses, a substantive due process claim based on the same conduct is precluded as a matter of law. Consequently, a substantive due process claim is precluded on this threshold defect.

Moreover, Plaintiffs has provided no case law or referenced any specific factual allegation beyond speculation asserted "upon information and belief" to even remotely assert a claim that the conduct alleged satisfies the exceptionally high standard of conscience shocking behavior. Instead, despite Plaintiff's superficial effort to federalize her grievances, the complaint, assuming its truth for the sake of the motion, evidences solely a local land use dispute in which the party is frustrated by a municipal agency's efforts to discharge its duties. Moreover, to the extent there is any mistake of State law, and the Town suggests that it has demonstrated that it has not violated any applicable State or local regulation, the Town has demonstrated in its moving papers that any such

---

[6] Additionally, as is related in the Town's moving papers (Point XII), any claim for monetary relief pursuant to New York State law is barred by Plaintiff's failure to timely file a notice of claim pursuant to General Municipal Law § 50-e.

error does not constitute a basis for a substantive due process claim for this additional reason.

Lastly, because administrative and State judicial remedies exist to review and, if appropriate, rectify any potential errors of State law, the complaint fails to state a substantive due process claim as a matter of law.

Plaintiff has asserted no case law to refute the preclusive law related by the Town and has pointed to no fact-based assertion in the complaint that even arguably asserts a substantive due process claim.

## POINT VIII
## THE COMPLAINT FAILS TO STATE A
## PROCEDURAL DUE PROCESS CLAIM

Because the Town has demonstrated that the availability of local administrative and/or State judicial mechanisms of review, a procedural due process claim is precluded as a matter of law. Plaintiff's superficial and bald claims that it could not utilize such readily available means of review is erroneous as a matter of law. Because of the existence of such means of review of all of Plaintiff's subjective grievances, a procedural due process claim is baseless as a matter of law.

## POINT IX
## NO TAKING CLAIM EXISTS
## AS A MATTER OF LAW

Defendant's moving papers establish that Plaintiff's taking claim, based on a conservation easement that does not permit public access to unbuildable, environmentally sensitive areas on Plaintiff's lots, but allows the development of six lots, does not deprive Plaintiff of all economically viable use of the property and utterly fails to state a taking

claim as a matter of law. Plaintiff has submitted no case law to contradict this unassailable principle of law.

## POINT X
### CLAIMS AGAINST INDIVIUDAL DEFENDANTS BARRED BY *KNORR-PENNINGTON* DOCTRINE

The Town's moving papers demonstrate that the *Noerr-Pennington* doctrine immunizes those who petition government or advocate a position before an agency. Although the amended complaint apparently seeks personal liability only against the members of the CAC, Plaintiff's response to the First Amendment protections afforded by the *Noerr-Pennington* doctrine is that *Noerr-Pennington* "does not condone action by public officials who are knowingly responsive to those discriminatory statements and act because of the discriminatory motives voiced by these persons." (p. 28). Plaintiff completely misunderstands the point. *Noerr-Pennington* insulates liability against individuals and entities for expressing their views or opinions on issues of public interest. Plaintiff has sued the members of the CAC for expressing their view, continually contending that they are not public officials (not a germane issue for purposes of *Noerr-Pennington*). The individual Defendant's expression of opinion on public issues accords them absolute immunity pursuant to the *Noerr-Pennington* doctrine and Plaintiff has not refuted that preclusive bar to individual liability.

## POINT XI
### FAILURE TO ALLEGE FILING OF PROPER NOTICE OF CLAIM BARS CLAIMS FOR MONETARY RELIEF PURSUANT TO NEW YORK STATE CONSTITUTION, STATE LAW

As is related in the moving papers, the failure to serve a notice of claim bars Plaintiff's damage claims pursuant to New York law against the Town and the individual's sued in their official capacities.

**POINT XII**
**PUNITIVE DAMAGES NOT RECOVERABLE AGAINST**
**MUNICIPAL CORPORATION/OFFICIALS**

As is related in the moving papers, punitive damages may not be recovered against a municipal entity or against a municipal official acting in his official capacity. Plaintiff has asserted no applicable case law to refute this unassailable principle and her continuation of the claim is frivolous as a matter of law.

**POINT XIII**
**DECLATORY RELIEF BARRED**

Contrary to Plaintiff's claim (Point VI), the Town does indeed challenge the viability of Plaintiff's declaratory judgment claims regarding the conservation easement. The Town contended that because it implicated solely State law issues the Court should decline pendent jurisdiction. More to the point, the Town related that the conservation could have been challenged in a timely Article 78 proceeding. The time to do so has long since passed. Moreover, the Town asserted that federal jurisdiction is lacking because the agreement, negotiated by Mr. Mc Culloch on behalf of Ms. Mc Culloch, exclusively provided for interpretation of the agreement by Supreme Court, Dutchess County.

Those preclusive principles mandate dismissal of the claims. The Town has not sought to justify the evident governmental purpose other than the facial validity of such universally accepted and, indeed, acclaimed arrangements because any such further substantiation would be beyond the scope of a 12(b)(6) motion.

## CONCLUSION

The Defendants respectfully submit that the complaint is deficient and fails to state any viable claim as a matter of law.

Dated: Suffern, New York
            March 21, 2008

                                    Rice & Amon


                                    /s/_____
                                    By: Terry Rice (TR 1022)
                                    Attorneys for Defendants
                                    Four Executive Boulevard
                                    Suite 100
                                    Suffern, New York 10901
                                    (845) 357-4000